AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California ▼

| | |
|---|---|
| JEANNE AND NICOLAS STATHAKOS | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. |
| COLUMBIA SPORTSWEAR COMPANY | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  COLUMBIA SPORTSWEAR COMPANY
14375 NW SCIENCE PARK DRIVE
PORTLAND, OREGON 97229

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  WAYNE S. KREGER, ESQ.
LAW OFFICES OF WAYNE KREGER
100 WILSHIRE BOULEVARD, SUITE 940
SANTA MONICA, CALIFORNIA 90401
310-917-1083 TEL
310-917-1001 FAX
wayne@kregerlaw.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

JS 44 (Rev. 12/12) cand rev (1/15/13)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JEANNE AND NICOLAS STATHAKOS | COLUMBIA SPORTSWEAR COMPANY |

**(b)** County of Residence of First Listed Plaintiff    ALAMEDA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

WAYNE S. KREGER, LAW OFFICES OF WAYNE KREGER, 100 WILSHIRE BOULEVARD, SUITE 940, LOS ANGELES, CA 90401, Tel 310-917-1083, FAX 310-917-1001, wayne@kregerlaw.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332 (D)(2) & (6)
Brief description of cause:
CLASS ACTION FOR VIOLATIONS OF CALIFORNIA STATUTES FOR DECEPTIVE & MISLEADING PRICING

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
+$5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
10/01/2015

SIGNATURE OF ATTORNEY OF RECORD
*Wayne S. Kreger*

FOR OFFICE USE ONLY

(Place an "X" in One Box Only)    ☑ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☐ EUREKA

**LAW OFFICES OF WAYNE S. KREGER, P.A.**
WAYNE S. KREGER, California Bar No. 154759
wayne@kregerlaw.com
100 Wilshire Boulevard, Suite 940
Santa Monica, California 90401
Telephone (310) 917-1083
Facsimile (310) 917-1001

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, California Bar No. 181547
hzavareei@tzlegal.com
JEFFREY D. KALIEL, California Bar No. 238293
jkaliel@tzlegal.com
2000 L Street, NW, Suite 808
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

**KOPELOWITZ OSTROW P.A.**
JEFFREY M. OSTROW, Florida Bar No. 121452
ostrow@kolawyers.com
Scott A. Edelsberg, Florida Bar No. 0100537
edelsberg@kolawyers.com
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
(*pro hac vice to be filed*)

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNE and NICOLAS STATHAKOS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COLUMBIA SPORTSWEAR COMPANY,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Violation of the "Unfair" Prong of the UCL<br>2. Violation of the "Fraudulent" Prong of the UCL<br>3. Violation of the "Unlawful" Prong of the UCL<br>4. Violation of the California False Advertising Law, California Business & Professions Code Sections 17500, *et seq.*<br>5. Violation of the Consumers Legal Remedies Act, California Civil Code Sections 1750, *et seq.* |

# CLASS ACTION COMPLAINT

Plaintiffs, Jeanne and Nicolas Stathakos ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following based upon personal knowledge as to allegations regarding Plaintiffs and on information and belief as to other allegations:

## INTRODUCTION

1.     This is a civil class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendant, Columbia Sportswear Company ("Columbia"), arising from its deceptive and misleading labeling and marketing of merchandise it sells at its company-owned Columbia Outlet stores.

2.     During the Class Period (defined below), Columbia misrepresented the existence, nature, and amount of price discounts on products sold in Columbia Outlet stores (collectively "Columbia Outlet Products") by purporting to offer discounts off of a false "Former Price." The term "Columbia Outlet Products" expressly excludes products sold at Columbia Outlet stores that advertised a "Former Price" that was a prevailing market retail price within the three months preceding.

3.     Specifically, Columbia represented—on the price tags of Columbia Outlet Products—"Former Price" points that were overstated and did not represent a bona fide price at which the Columbia Outlet Products were previously sold. Nor was the advertised "Former Price" a prevailing market retail price within three months immediately preceding the publication of the advertised former prices, as required by California law.

4.     Based on the represented price reduction, reasonable consumers would believe that Columbia is offering bona fide discounts off of true former prices.

5.     But the "Former Price" represented by Columbia was a sham. In fact, Columbia sells certain goods manufactured for *exclusive* sale at its Columbia Outlet stores and other outlet stores, which means that such items were never sold—or even intended to be sold—at the "Former Price" advertised on the price tags. Columbia

Outlet Products were never offered for sale in non-outlet retail stores in California, or in any other state. The truth is that the Columbia Outlet Products are not discounted off "original prices." The Columbia Outlet Products are *never* offered for sale at the Columbia main line retail stores (or any other retail stores) and are typically of lesser quality than the goods sold in those main line retail stores.

6.     The Columbia Outlet Product's tags bearing the "Former Price" and false discounted price constitute advertisements under California law. Indeed, the coupling of the "Former Price" representation and so-called discounted price makes a statement to the public as to the existence of a price discount and promotes the sale of Columbia Outlet Products on that basis.

7.     The "Former Price" listed on Columbia Outlet Products' tags did not represent a former price at all—much less a prevailing market price in the preceding three months. They are fictional amounts intentionally selected so that Columbia Outlet could advertise phantom markdowns. The entire price tag – indeed the entire "outlet store" motif – is designed to falsely convince consumers that they are buying main line retail designer brand products at reduced prices. In fact, consumers are buying lower quality goods that were never offered or sold as genuine quality designer brand clothing and accessories. By designing its price tags in this way, Columbia intended for reasonable consumers to understand as much.

8.     The Federal Trade Commission ("FTC") explicitly describes the fictitious pricing scheme employed at Columbia Outlet stores as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious -- for example, where an artificial, inflated price was established for the purpose of enabling the

subsequent offer of a large reduction -- the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1.

9. Similarly, California statutory and regulatory law expressly prohibits false pricing schemes. *Business & Professions Code* § 17501, entitled "*Value determinations; Former price advertisements*," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

(emphasis added).

10. The Columbia Outlet "Former Price" pricing scheme was prominently displayed on all Columbia Outlet Products available for sale at Columbia Outlet stores in California. To illustrate, a "Former Price" tag for an item sold at Columbia Outlet is pictured below:

1
2
3
4
5
6
7
8
9
10



11

11.     Upon information and belief, thousands of California consumers were

12  victims of Columbia's deceptive, misleading, and unlawful false pricing scheme and

13  thousands more will be deceived if the practice continues.

14       12.     Columbia fraudulently concealed from, and intentionally failed to

15  disclose to, Plaintiffs, and others similarly situated, the truth about its "Former Price."

16       13.     Columbia's    false    representations    of    original    prices    and    false

17  representations of purported savings, discounts, and bargains are objectively material

18  to a reasonable consumer.

19       14.     Plaintiffs relied upon such false representations of "Former Price" when

20  purchasing apparel from a Columbia Outlet store in California.  Plaintiffs would not

21  have made such purchase, or would not have paid the amount they did, but for

22  Columbia's false representations of the "Former Price" of the items they purchased, as

23  compared to the supposedly discounted price at which Columbia Outlet offered the

24  items for sale.

25       15.     Plaintiffs, in short, reasonably believed the truth of the price tags attached

26  to the products they purchased at Columbia Outlet stores, which suggested that they

27  were  getting  a  significant  percentage  discount  off  the  original  price. Plaintiffs

28  reasonably understood the "Former Price" representation to indicate a true former

**CLASS ACTION COMPLAINT**

price.  Indeed, one cannot truly "save" off anything other than a true former price on the identical product.  Otherwise, one is not "saving," one is simply buying a different product than the one that bears a higher price.

16.     To put it simply, one may pay $30,000 for a Prius and $100,000 for a Tesla, but no reasonable consumer would understand himself to have "saved" $70,000 by buying a Prius. Rather, he has simply chosen to buy a different car.

17.     Through its false and deceptive advertising and pricing scheme, Columbia violated (and continues to violate) California law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions. Specifically, Columbia violated (and continues to violate) California's *Business & Professions Code* §§ 17200, *et seq*. (the "UCL"), California's *Business and Professions Code* §§ 17500, *et seq*. (the "FAL"), the California Consumers' Legal Remedies Act, *Civil Code* §§1750, *et seq*. (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. 15 U.S.C. §§ 52(a) and 15 U.S.C. § 45(a)(1).

18.     Plaintiffs, individually and on behalf of all others similarly situated, seek restitution and other equitable remedies, including an injunction under the UCL, FAL and CLRA.

## **PARTIES**

19.     Plaintiffs, Jeanne and Nicolas Stathakos, are individuals who are citizens of the city of Oakland, in the county of Alameda, California. In reliance on Columbia's false and deceptive advertising, marketing, and pricing schemes, Jeanne and Nicolas Stathakos purchased six items from the Columbia Outlet store located in Vacaville, California, on July 26, 2015, and as detailed herein, were damaged as a result thereof.

20.     Defendant Columbia Sportswear Company is a corporation duly

**CLASS ACTION COMPLAINT**

organized and existing under the laws of the State of Oregon, with its principal place of business at 14375 NW Science Park Drive, Portland, OR 97229.

21.   As of 2015, Columbia operates nine (9) Columbia Outlet stores in California.

## JURISDICTION AND VENUE

22.   This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the members of the putative Class exceed $5 million, exclusive of costs, and at least two members of the proposed Class are citizens of a different state than Columbia.

23.   The Northern District of California has personal jurisdiction over Columbia because Columbia is licensed and doing business in Alameda County, California, authorized to do business in California and registered with the California Secretary of State, and has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this Court consistent with traditional notions of fair play and substantial justice.

24.   Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391, because Plaintiffs are residents of Alameda County, California; Defendant operates its stores in Alameda County, California and because the events giving rise to the claims occurred in Alameda County, California.

## FACTUAL ALLEGATIONS

25.   Traditionally, retail outlet stores were located in remote areas and typically maintained an inventory of defective and excess merchandise. Customers often flocked to these outlets in hopes of finding steep discounts and bargains. *See http://www.forbes.com/sites/investopedia/2012/12/29/7-tips-for-outlet-mall-shopping/* (last visited August 11, 2014).

26.    However, in an effort to increase profits, major retailers such as Columbia Outlet have, without notice to consumers, begun using company-owned outlet stores to sell made-for-outlet goods that are never intended to be sold at non-outlet stores: "Once a destination for out-of-season or damaged full-priced inventory, *outlets have grown into a lucrative and somewhat deceptive place for retailers to hawk an entirely new line of lower-quality goods* geared toward a different customer." *http://www.buzzfeed.com/sapna/customers-finally-aware-that-most-outlet-merchandise-is-now* (last visited August 11, 2014) (emphasis added).

27.    The very term "outlet" conveys to reasonable consumers that at least some products are comprised of merchandise formerly offered for sale at full-price retail locations. Similarly, the Columbia Outlet name connotes a store selling at least some truly discounted outlet clothing.

28.    Instead, retailers like Columbia create the illusion of traditional outlet discounts and bargains by offering the made-for-outlet goods at prices reduced from fabricated, arbitrary, and false prices.  In short, outlet stores such as Columbia Outlet are using false and fraudulent price comparison tactics. *See http://www.buzzfeed.com/sapna/customers-finally-aware-that-most-outlet-merchandise-is-now* ("While price tags on outlet goods may list a manufacturer-suggested retail price (known as an MSRP) or, a 'valued at' price, that's little more than a number ascribed by the retailer and doesn't mean it was ever sold for such a sum in an actual full-price retail location.").

29.    The intentional use of false and fraudulent price comparison tactics is increasingly deceiving consumers in the market. To illustrate, on January 30, 2014, four Members of Congress demanded an FTC investigation of misleading marketing practices by outlet stores across the United States. The four Members of Congress described a pricing scheme similar to the one implemented at Columbia Outlet stores and stated, "[i]t is a common practice at outlet stores to advertise a retail price alongside the outlet store price—even on made-for-outlet merchandise that does not

sell at regular retail locations. Since the item was never sold in the regular retail store or at the retail price, the retail price is impossible to substantiate. We believe this practice may be a violation of the FTC's Guides Against Deceptive Pricing (16 CFR 233)." *See http://www.whitehouse.senate.gov/news/release/sens-and-rep-to-ftc-outlet-stores-may-be-misleading-consumers* (last visited August 11, 2014).

30.     Plaintiffs'   expert,   Dr.   Compeau,   further   evidences   Columbia's intentionally deceptive pricing scheme.

31.     Dr. Compeau is a Professor of Consumer/Organizational Studies at Clarkson University who conducts extensive research regarding the behavioral and strategic effects of comparative (reference) price advertising on consumers' judgments, evaluations, perceptions, and purchase intentions. Dr. Compeau often serves as an expert witness in litigation pertaining to comparative (reference) pricing and was deemed, in a similar lawsuit held before by Judge Wayne S. Carvil of the Superior Court of the State of California, Alameda County, a credible and reliable expert witness. *People of the State of California v. Overstock.com, Inc.*, Case No. RG10-546833.

32.     According to Dr. Compeau's research, companies like Columbia have a monetary incentive to advertise false former prices and in fact use "Former Price" advertisements, without more explanation, to mislead consumers. Dr. Compeau will opine about the following:

(a) Consumers' perceptions of value influence their purchasing behavior. By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product. *See* Barnes, James G. (1975) "Factors Influencing Consumer Reaction to Retail Newspaper 'Sale' Advertising," in *Proceedings,* Edward M. Mazze, ed. Fall Educators' Conference, Chicago, Ill.: American Marketing Association, 37, 471-477; Bearden, William O., Donald R. Lichtenstein, and Jesse E. Teel (1984), "Comparison Price, Coupon, and Brand Effects on Consumer Reactions to Retail Newspaper Advertisements," *Journal of Retailing*, 60 (Summer), 11-36; Della Bitta, Albert J., Kent B. Monroe, and John M. McGinnis (1981), "Consumer   Perceptions   of   Comparative   Price

Advertisements," *Journal of Marketing Research*, 18 (November), 416-427; Friedman, Hershey H., Philip E. Weingaten, Linda W. Friedman, and Ralph Gallay (1982), "The Effects of Various Price Markdowns on Consumers' Ratings of a New Product," *Journal of the Academy of Marketing Science*, 10(Fall), 432-437; Inman, J. Jeffrey, Leigh McAlister, and Wayne Hoyer (1990), "Promotion Signal: Proxy for a Price Cut?" *Journal of Public Policy & Marketing*, 7, 1-10; Keiser, Stephen K. and James R. Krum (1976), "Consumer Perceptions of Retail Advertising With Overstated Price Savings," *Journal of Retailing*, 52 (Fall), 27-36; Urbany Joel E., William O. Bearden, and Dan C. Weilbaker (1988) "The Effect of Plausible and Exaggerated Reference Prices on Consumer Perceptions and Price Search," *Journal of Consumer Research*, 15 (June), 95-110; Varadarajan, P. Rajan (1986), "Consumers' Behavioral Responses to Coupon Price Promotions: An Empirical Inquiry," in *AMA Educators' Proceedings*, Terence A. Shimp et al., eds. Chicago, Ill.: American Marketing Association, 52, 211.

(b) If the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value. In this situation the advertisement is no longer informative but deceptive. In fact, empirical studies indicate that as discount size increases, consumers' perceptions of value and their willingness to buy the product increases, while their intention to search for a lower price decreases. *See* Berkowitz, Eric N. and John R. Walton (1980), "Contextual Influences on Consumer Price Responses: An Experimental Analysis," *Journal of Marketing Research*, 17 (August), 349-358; Burton, Scot and Donald R. Lichtenstein (1988), "The Effect of Ad Claims and Ad Context on Attitude Toward the Advertisement," *Journal of Advertising*, 17(1), 3-11; Chapman, Joseph D. (1987), "The Impact of Discounts on Subjective Product Evaluations," Ph.D. diss., Virginia Polytechnic Institute and State University, Blacksburg, VA; Della Bitta, Albert J., Kent B. Monroe, and John M. McGinnis (1981), "Consumer Perceptions of Comparative Price Advertisements," *Journal of Marketing Research,* 18 (November), 416-427; Friedman, Hershey H., Philip E. Weingaten, Linda W. Friedman, and Ralph Gallay (1982), "The Effects of Various Price Markdowns on Consumers' Ratings of a New Product," *Journal of the Academy of Marketing Science*, 10(Fall), 432-437; Oglesby, Bobbie D. (1984), "Price and Semantic Cues' Effect on Perceived Quality and Attitude," *Marketing Comes of Age,* David M. Klein and Allen E. Smith, eds. Boca Raton, Fla.: Southern Marketing Association, 308-312; Raju, P.S. and Manoj Hastak (1983), "Pre-Trial Cognitive Effects of Cents-Off Coupons," *Journal of Advertising*, 12 (2), 24-33.

(c) There is an incentive for outlet stores to advertise inflated reference prices. Because retailers are not required by law to include a reference price on a

**CLASS ACTION COMPLAINT**

hang tag, they affirmatively choose to include this information due to its effect on consumers. The retailer's motivation for using false reference prices is obvious: retailers knowingly use false reference prices to make consumers believe that they are getting a better deal than they actually are getting.

(d) Regarding "Former Price" language often used by advertisers, research indicates that "'Former Price' is another semantic phrase that, in order to be informative, requires more specific information." *Consumers' Interpretations of the Semantic Phrases Found in Reference Price Advertisements,* Compeau, Lindsey-Mullikin, Grewal and Petty, *The Journal of Consumer Affairs*, Volume 31, Issue 1, pages 178-187, Summer 2004. Additionally, "It seems that to be informative, the seller should provide an explanation to the consumer as to how the "Former Price" prices were determined." *Id.*

(e) Additionally, "both consumers and retail employees [report] that [a] "Former Price" phrase refers to prices found in a 'regular price' department store." *Id*. at 184.

33.     Tying the empirical research conducted by Compeau and others with evidence of Columbia's false original prices demonstrates that Columbia acted to deceive reasonable consumers, including Plaintiffs, into believing the "Former Price" is the original price at which Columbia or other mainline retailers previously sold the same merchandise.

## **Plaintiffs' Purchases**

34.     On July 26, 2015, Plaintiffs entered the Columbia Outlet store located in Vacaville, California. They observed that merchandise was advertised with price tags denoting the "Former Price" and the sales sticker price tag, which represented a significant savings. Enticed by the idea of paying significantly less than the "Former Price" charged outside of Columbia Outlet, Plaintiffs were induced to purchase one pair of Women's Shorts with a "Former Price" price of $30.00 and an actual price of $14.97."

35.     When they purchased the shorts for the $14.97 instead of the "Former Price" price of $30.00, Plaintiffs believed that they saved approximately 50% on their

purchase. Plaintiffs understood the "Former Price" to be a true former price of the item, as sold at a mainline Columbia store or other non-outlet retailer. The price tag also advertised an additional markdown. Plaintiffs understood that one cannot truly "save" off anything other than a true former price on the identical product. They relied on these false comparisons, which caused them to purchase the shorts.

36.    On the same date, Plaintiffs made five other purchases at the Columbia Outlet store, again enticed by the idea of paying significantly less than the "Former Price" charged outside of Columbia Outlet.

37.    Plaintiffs did not understand the "Former Price" to indicate only a comparison to a non-identical product because the price tag did not specify that the savings was in relation to a different product, nor did it specify what that different product might have been.

38.    Plaintiffs specifically selected certain products over other products because the price tags represented price savings.

39.    Plaintiffs would not have purchased the products, or would not have paid the price they did, if they had known they were not truly receiving the savings off a true former price, as he was led to believe.

40.    In reality, Columbia never intended, nor did it ever, sell the items Plaintiffs purchased at the represented "Former Price" price, thus inflating the Plaintiffs' conception of their savings.

41.    Despite the "Former Price" scheme used at Columbia Outlet stores, Plaintiffs would purchase Columbia Outlet Products in the future from Columbia Outlet stores and/or other retail establishments, if price tags accurately reflect "former" prices and discounts. If the Court were to issue an injunction ordering Columbia to comply with California's comparative price advertising laws, and prohibiting Columbia's use of the deceptive practices discussed herein, the Plaintiffs would likely shop for Columbia Outlet Products again in the near future at Columbia Outlet stores.

42.     As alleged above, Plaintiffs believed that that the "Former Price" meant that the products they bought were previously sold at the higher original prices.

43.     Plaintiffs would not have purchased the Columbia Outlet items but for the "Former Price" representation.

44.     Plaintiffs' and class members' reliance on Columbia's false price comparison advertising was inherently reasonable. In fact, empirical marketing studies establish beyond cavil that customers do indeed reasonably rely on such comparative price advertising, which provides an incentive for retailers to engage in this false and fraudulent behavior.

45.     Plaintiffs' expert, Dr. Compeau, has conducted research that shows, *inter alia*, that consumers do rely on false former pricing in making purchasing decisions because they think that they are getting a great value:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings…[A] comparative price advertisement can be construed as deceptive if it makes any representation, . . . or involves any practice that may materially mislead a reasonable consumer.

*Comparative Price Advertising: Informative or Deceptive?,* Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing* , Vol. 11, No. 1, at 52 (Spring 1992). In short:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product. . . . Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id*. at 55, 56.

**CLASS ALLEGATIONS**

46.     Plaintiffs incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as if set forth herein in full.

47.     Plaintiffs bring this action on behalf of himself and the members of the proposed Class. The proposed Class consists of:

> All individuals residing in the State of California who, within the applicable statute of limitations preceding the filing of this action, purchased a Columbia Outlet Product with a price tag bearing a "Former Price."

48.     Excluded from the Class are Columbia, its parents, subsidiaries, affiliates, officers and directors, any entity in which Columbia has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

49.     The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the precise number which is within the knowledge of and can be ascertained only by resort to Columbia's records.

50.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether, during the Class Period, Columbia used false price representations and falsely advertised price discounts on Columbia Outlet Products;

(b) Whether Columbia intended its "Former Price" price to be synonymous with item's original price;

(c) Whether, during the Class Period, the "Former Price" prices advertised by Columbia were the prevailing market prices for the Columbia Outlet

Products during the three month periods preceding the dissemination and/or publication of the advertised former prices;

(d) Whether Columbia's use of false or deceptive price advertising constituted false advertising under California Law;

(e) Whether Columbia engaged in unfair, unlawful and/or fraudulent business practices under California law;

(f) Whether Columbia misrepresented and/or failed to disclose material facts about its product pricing and discounts.

(g) Whether Columbia made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(h) Whether Columbia's conduct, as alleged herein, was intentional and knowing;

(i) Whether Class members are entitled to damages and/or restitution, and in what amount;

(j) Whether Columbia is likely to continue using false, misleading or illegal price comparisons such that an injunction is necessary; and

(k) Whether Plaintiffs and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

51.     Plaintiffs' claims are typical of the claims of the members of the Class and, like all members of the Class, purchased goods from a Columbia Outlet store that falsely conveyed a "Former Price" and a fictitious discount. Accordingly, the Stathakoses have no interests antagonistic to the interests of any other member of the Class.

52.     Plaintiffs are adequate representations who will fully and adequately assert and protect the interests of the Class, and have retained counsel who is experienced in prosecuting class actions.

53.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all

members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Columbia's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

54.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Columbia. For example, one court might enjoin Columbia from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

55.     The conduct of Columbia is generally applicable to the Class as a whole and Plaintiffs seek, inter alia, equitable remedies with respect to the Class as a whole. As such, the systematic policies and practices of Columbia make declaratory relief with respect to the Columbia California class as a whole appropriate.

## <u>COUNT I</u>

### (Violation of the "Unfair" Prong of the UCL)

56.     Plaintiffs incorporate and reallege by reference paragraphs 1-55 as if fully set forth herein.

57.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Business & Professions Code § 17200.

58.     A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

59.     Columbia has violated the "unfair" prong of the UCL by representing a

**CLASS ACTION COMPLAINT**

false "Former Price" and corresponding percentage discount price for Columbia Outlet Products. As a result, the inflated "Former Price" was nothing more than a false, misleading and deceptive illusion of a discount.

60.     These acts and practices are unfair because they caused Plaintiffs, and are likely to cause consumers, to falsely believe that Columbia Outlet is offering value, discounts or bargains from the prevailing market worth of the products sold that did not, in fact, exist. For Columbia, "Former Price" is synonymous with a higher original price. As a result, purchasers, including Plaintiffs, reasonably perceived that they were receiving products that regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception has induced reasonable purchasers, including Plaintiffs, to buy Columbia Outlet Products, which they otherwise would not have purchased.

61.     The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of Columbia Outlet for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Columbia engages in unfair business practices within the meaning of California Business & Professions Code §§ 17200, et seq.

62.     Through its unfair acts and practices, Columbia has improperly obtained money from Plaintiffs and the Class. As such, Plaintiffs request that this court cause Columbia to restore this money to Plaintiffs and all Class members, and to enjoin Columbia from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## **COUNT II**

### **(Violation of the "Fraudulent" Prong of the UCL)**

63.     Plaintiffs incorporate and reallege by reference paragraphs 1-62 as if

1 fully set forth herein.

2  64.   The UCL defines unfair business competition to include any "unlawful,

3 unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or

4 misleading" advertising. Cal. Bus. & Pro. Code § 17200.

5  65.   A business act or practice is "fraudulent" under the UCL if it is likely to

6 deceive members of the consuming public.

7  66.   The labels on the Columbia Outlet Products and advertising materials

8 concerning false former prices were fraudulent within the meaning of the UCL

9 because they deceived Plaintiffs, and were likely to deceive members of the class, into

10 believing that Columbia was offering value, discounts or bargains at Columbia Outlet

11 stores from the prevailing market value or worth of the products sold that did not, in

12 fact, exist.

13  67.   Columbia deceived consumers into believing that it was offering value,

14 discounts or bargains at Columbia Outlet stores from the prevailing market value or

15 worth of the Columbia Outlet products sold that did not, in fact, exist. For Columbia,

16 "Former Price" is synonymous with a higher original price.

17  68.   As a result, purchasers, including Plaintiffs, reasonably perceived that

18 they were receiving products that regularly sold in the non-outlet retail marketplace at

19 substantially higher prices (and were, therefore, worth more) than what they paid.

20 This perception induced reasonable purchasers, including Plaintiffs, to buy Columbia

21 Outlet Products, which they otherwise would not have purchased.

22  69.   Columbia's acts and practices as described herein have deceived

23 Plaintiffs and were highly likely to deceive members of the consuming public.

24 Specifically, in deciding to purchase Columbia Outlet Products, Plaintiffs relied on

25 Columbia's misleading and deceptive representations regarding its "Former Price"

26 and discounted prices. Each of these factors played a substantial role in Plaintiffs'

27 decision to purchase those products, and Plaintiffs would not have purchased those

28 items in the absence of Columbia's misrepresentations. Accordingly, Plaintiffs

suffered monetary loss as a direct result of Columbia's pricing practices described herein.

70.     As a result of the conduct described above, Columbia has been unjustly enriched at the expense of Plaintiffs and members of the proposed Class. Specifically, Columbia has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

71.     Through its unfair acts and practices, Columbia has improperly obtained money from Plaintiffs and the Class. As such, Plaintiffs request that this court cause Columbia to restore this money to Plaintiffs and all Class members, and to enjoin Columbia from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT III

### (Violation of the "Unlawful" Prong of the UCL)

72.     Plaintiffs incorporate and reallege by reference paragraphs 1-71 as if fully set forth herein.

73.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Business & Professions Code § 17200.

74.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

75.     California statutory and regulatory law also expressly prohibits false former pricing schemes. Business & Professions Code § 17501, entitled "Value determinations; Former price advertisements," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if

the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

*No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

(Emphasis added).

76. Civil Code § 1770, subsection (a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

77. Columbia also violated and continues to violate Business & Professions Code § 17501, and Civil Code § 1770, sections (a)(9) and (a)(13) by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months next preceding the publication and dissemination of advertisements containing the false former prices.

78. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. (15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a)). The FTC has established guidelines which prohibit false pricing schemes, similar to Columbia's "Former Price" scheme in material respects, as deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious -- for example, where an artificial, inflated price was established for the

purpose of enabling the subsequent offer of a large reduction -- the ``bargain'' being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1.

79.     Columbia's use of and reference to a materially false "Former Price" in connection with its marketing and advertisements concerning the Columbia Outlet Products violated and continues to violate the FTCA, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at 16 C.F.R. § 233.

80.     As a result of the conduct described above, Columbia has been unjustly enriched at the expense of Plaintiffs and members of the proposed Class. Specifically, Columbia has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

81.     Through its unlawful acts and practices, Columbia has improperly obtained money from Plaintiffs and the Class. As such, Plaintiffs request that this court cause Columbia to restore this money to Plaintiffs and all Class members, and to enjoin Columbia from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## <u>COUNT IV</u>

### (Violation of the California False Advertising Law,

### California Business & Professions Code Sections 17500, *et seq.*)

82.     Plaintiffs incorporate and reallege by reference paragraphs 1-81 as if fully set forth herein.

83.     California's Business and Professions Code §§ 17500, et seq. prohibits unfair, deceptive, untrue, or misleading advertising, including, but not limited to, false statements as to worth, value and former price.

84.    Columbia's practice of advertising the "Former Price" on price tags on Columbia Outlet Products, which were materially greater than the actual prices of those products was an unfair, deceptive and misleading advertising practice because it gave the false impression that the Columbia Outlet Products were regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than they actually were. In fact, the exclusive, Columbia Outlet Products did not have a prevailing market price anywhere close to the "Former Price" advertised because the merchandise was always sold under the percentage discounted price when placed on sale at the Columbia Outlet stores.

85.    Through its unfair acts and practices, Columbia has improperly obtained money from Plaintiffs and the Class. As such, Plaintiffs request that this court cause Columbia to restore this money to Plaintiffs and all Class members, and to enjoin Columbia from continuing to violate the FAL as discussed herein and/or from violating the FAL in the future. Otherwise, Plaintiffs and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### COUNT V

**(Violation of the Consumers Legal Remedies Act,**

**California Civil Code Sections 1750, *et seq.*: Injunctive Relief*)**

86.    Plaintiffs incorporate and reallege by reference paragraphs 1-85 as if fully set forth herein.

87.    This cause of action is brought pursuant to the CLRA.

88.    The Stathakoses and each member of the proposed class are "consumers" within the meaning of California Civil Code § 1761(d).

89.    Columbia's selling of Columbia Outlet Products to the Stathakoses and the Class were "transactions" within the meaning of California Civil Code § 1761(e). The Columbia Outlet Products purchased by the Stathakoses and the Class are "goods" within the meaning of Civil Code §1761(a).

**CLASS ACTION COMPLAINT**

90.     As described herein, Columbia violated the CLRA by falsely representing the nature, existence and amount of price discounts by fabricating an inflated "Former Price." Such a pricing scheme is in violation of Civ. Code § 1770, subsection (a)(9) ("[a]dvertising goods or services with intent not to sell them as advertised") and subsection (a)(13) ("[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions").

91.     The Stathakoses relied on Columbia's false representations in deciding to purchase Columbia Outlet Products. The Stathakoses would not have purchased Columbia Outlet Products absent Columbia's unlawful conduct.

92.     Stathakos request this Court enjoin Columbia from continuing to violate the CLRA as discussed herein and/or from violating the UCL in the future. Otherwise, the Stathakoses, the Class and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Jeanne and Nicolas Stathakos, and the members of the Class demand a jury trial on all claims so triable and judgment against Defendant, Columbia Sportswear Company, as follows:

A.     An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representative and Plaintiffs' counsel be appointed Class Counsel;

B.     Pursuant to Plaintiffs' first four causes of action, a judgment awarding Plaintiffs and all members of the Class restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Columbia obtained from Plaintiffs and the Class as a result of its unlawful, unfair and fraudulent business practices described herein;

C.     An order enjoining Columbia from continuing to violate the UCL, False

Advertising Law and CLRA as described herein.

       D.     A judgment awarding the Stathakoses their costs of suit; including reasonable attorneys' fees pursuant to California Civil Code § 1780(d), Code of Civil Procedure § 1021.5 and as otherwise permitted by statute; and pre and post-judgment interest; and

       E.     Such other and further relief as may be deemed necessary or appropriate.

DATED: October 1, 2015         LAW OFFICES OF WAYNE S. KREGER, P.A.


By: /s/ *Wayne S. Kreger*
      Wayne S. Kreger
      Attorneys for Plaintiff


## JURY TRIAL DEMANDED

    PLAINTIFF demands a jury trial on all triable issues.

DATED: October 1, 2015         LAW OFFICES OF WAYNE S. KREGER, P.A.


By: /s/ *Wayne S. Kreger*
      Wayne S. Kreger
      Attorneys for Plaintiff