# Exhibit D

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **ED CV 15-1143 RGK (SPx)** | Date | October 6, 2015 |
|---|---|---|---|
| Title | *Steven Russell v. Kohl's Department Stores, Inc* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED.STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**     **(IN CHAMBERS) Defendant's Motion to Dismiss (DE 16)**

## I.     INTRODUCTION

On August 14, 2015, Steven Russell ("Russell") and Donna Caffey ("Caffey") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members"), filed a First Amended Complaint ("FAC") against Kohl's Department Stores, Inc. ("Defendant"). Plaintiffs allege the following claims: (1) unfair, fraudulent, and unlawful business practices in violation of California Business & Professions Code § 17200 *et seq*. ("UCL") and (2) false advertising in violation of California Business & Professions Code § 17500 *et seq*. ("FAL").

Presently before the Court is Defendant's motion to dismiss the FAC. For the following reasons, the Court **DENIES** Defendant's motion.

## II.     FACTUAL BACKGROUND

Plaintiffs allege the following facts:

Defendant is a large national retailer that owns and operates approximately 116 retail stores within California. Russell purchased products from Defendant on approximately 15 occasions throughout the Class Period[1]. Caffey purchased products from Defendant on over 10 occasions throughout the Class Period.

Each item that Defendant offers for sale in its stores displays two prices: (1) the selling price and (2) a significantly higher price that is represented to be the item's "regular" or "original" price ("Actual Retail Price" or "ARP"). By simultaneously displaying these two prices, Defendant leads consumers to believe that they are receiving a certain discount. Plaintiffs and Class Members were each confronted with these ARPs on the items they purchased from Defendant. Plaintiffs reasonably believed that the

---

[1]The Class Period is the period from June 11, 2011 to the present.

ARPs represented the price at which Defendant regularly sold each respective item, and that they were receiving a significant discount.

Plaintiffs allege that the ARPs affixed to each item at Defendant's California stores throughout the Class Period were false prices and not true ARPs for Defendant's merchandise. Plaintiffs also allege that the advertised ARPs were not the prevailing market retail prices within the three months immediately preceding the publication of the advertised ARPs, as required by California law. Therefore, Plaintiffs argue, Defendant falsely claims that each of its products has previously sold at a far higher ARP in order to induce Plaintiffs and Class Members to purchase merchandise at a purportedly marked down "sale" price.

Plaintiffs were exposed to Defendant's comparative price advertising and each relied upon such false representations of discounts when purchasing merchandise from Defendant. Plaintiffs were deceived and misled into buying products from Defendant that they would not have purchased if not for Defendant's false advertising. Plaintiffs lost money and/or property as a result thereof.

### III.   JUDICIAL STANDARD

A party may move to dismiss a claim for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Dismissal for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Furthermore, in order to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The standard set forth in *Twombly* "governs the pleading standard in all civil actions and proceedings in the United States district courts." *Ashcroft*, 556 U.S. at 684.

For the purposes of a motion to dismiss, the court must assume that all factual allegations in the complaint are true, and must construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the court need not accept as true conclusory legal allegations cast in the form of factual allegations. *Ashcroft*, 556 U.S. at 678.

### IV.   DISCUSSION

#### A.   Plaintiffs' Claim For Restitution

Defendant seeks dismissal of Plaintiffs' claim for restitution. According to Defendant, the exclusive measure of restitution under the UCL and FAL is the difference between the amount paid and the value received ("cost minus value"). Defendant contends that Plaintiffs have failed to establish their entitlement to restitution because they have not alleged that the amount they paid exceeds the value of the merchandise they purchased.

The courts are authorized by statute "to fashion remedies to prevent, deter, and *compensate* for unfair business practices." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 176 (2000) (emphasis added); Cal. Bus. & Prof. Code §§ 17203, 17535. This includes broad discretion under the UCL and FAL to make "such orders or judgments . . . as may be necessary to restore to any person . . . any money or property" which may have been acquired by means of behavior prohibited by California's consumer protection laws. Cal. Bus. & Prof. Code §§ 17203, 17535; *See Fletcher v. Sec. Pac. Nat'l Bank*, 591 P.2d 51, 57 (Cal. 1979). The court's discretion is not entirely unbounded, however, because "restitution under the [UCL and FAL] must be of a measurable amount to restore to the plaintiff what

has been acquired by violations of the statutes, and that measurable amount must be supported by evidence." *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 61 (Ct. App. 2006).

1. *Standing Distinguished from Entitlement to Restitution*

At the outset, the Court distinguishes between two interrelated—but distinct—issues that commonly arise under the UCL and FAL: standing and entitlement to restitution. In light of some confusion in the briefing, the Court begins its analysis by clarifying the difference between these two concepts.

In 2004, the California electorate cabined the scope of eligible litigants who have standing to bring a claim under the UCL and FAL. *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 884 (Cal. 2011). Whereas prior to 2004, standing to bring UCL and FAL claims was available to "any person acting for the interests of itself, its members, or the general public," Prop 64 curtailed the scope to only a "person who has suffered an injury in fact and lost money or property as a result of unfair competition." *Id.* The California Supreme Court explained that "standards for establishing standing . . . and eligibility for restitution . . . are wholly distinct." *Id.* Standing is a broader concept that allows an aggrieved party to sue for an injunction and restitution under the UCL and FAL. *Id.* at 895. Thus, while plaintiffs may not be entitled to restitution or unable to prove a measurable amount of damages, they are, nonetheless, afforded standing to sue under the UCL and FAL. *Id.* ("Accordingly, we hold ineligibility for restitution is not a basis for denying standing under [the UCL and FAL] and disapprove those cases that have concluded otherwise.").

In arguing that they are entitled to alternative measures of restitution, Plaintiffs blur the line between standing and entitlement to restitution by relying on a case that exclusively discusses standing. *Hinojos v. Kohl's*, 718 F.3d 1098 (9th Cir. 2013). In *Hinojos*, the plaintiff brought UCL and FAL claims, alleging that Kohl's had misrepresented the amount and nature of discounts; as a result, the plaintiff purchased merchandise he would not have otherwise purchased. *Id.* at 1102. The district court dismissed the UCL and FAL claims, reasoning that the plaintiff did not have standing because he "had acquired the merchandise he wanted at the price advertised." *Id.* The Ninth Circuit reversed, holding that "when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has *standing* to sue under the UCL and FAL because he has suffered an *economic injury*." *Id.* at 1107 (emphasis added). Notably absent from the opinion is any discussion about whether the plaintiffs were, in fact, entitled to an alternative measure of restitution; the court merely decided that the plaintiff had suffered an economic injury sufficient to confer standing. Therefore, the *Hinojos* case does not bear the weight Plaintiffs place upon it, for it does not reach the issue of alternative restitution measures.

2. *Alternative Measures of Restitution*

Having established the distinction between the requirements for standing and entitlement to restitution under the UCL and FAL, the Court now proceeds to the heart of the current dispute. According to Defendant, the only available method of measuring restitution is to calculate the difference between the amount paid and the value received ("cost minus value"). Defendant posits that Plaintiffs' request for restitution fails because they have not alleged a discrepancy between the amount they paid and the value of the merchandise they received. Instead, the FAC only alleges that Defendant induced Plaintiffs to purchase merchandise by misrepresenting the nature and amount of price discounts. Therefore, Defendant contends, Plaintiffs have failed to plead sufficient facts to support a claim for relief under the exclusive measure of restitution. The Court disagrees.

Two recent appellate court decisions are particularly instructive on the issue of alternative

restitution measures. In a recent California appellate court decision, this exact issue arose, requiring the court to decide whether cost minus value is the exclusive measure of restitution. *In re Tobacco Cases II*, No. 65615, 2015 WL 5673070, —Cal. Rptr. 3d—, at *6 (Cal. Ct. App. Sept. 28, 2015). The court explained, "We agree that [cost minus value] does not set forth the exclusive measure of restitution potentially available in a UCL case. It remains, however, that plaintiffs ha[ve] the burden of proving entitlement to an alternative measure of restitution proper under the circumstances." *Id.* In so holding, the court articulated an important distinction between the availability of alternative measures and the viability of alternative measures. Put differently, while plaintiffs are allowed to advance alternative measures of restitution, not all such measures will ultimately prevail because "[t]he amount of restitution ordered under the UCL 'must be supported by substantial evidence.'" *Id.* (quoting *Colgan,* 38 Cal. Rptr. 3d at 63). In fact, the court in *In re Tobacco Cases II* actually rejected the plaintiffs' alternative basis for restitution in that case—not because of a categorical ban on alternative measures of restitution but because the plaintiffs failed to adduce sufficient evidence to support their theory.[2] *Id.* at *8. The California Court of Appeal in *In re Tobacco Cases II* definitively rejected the argument that cost minus value constitutes the exclusive measure of restitution under the UCL and FAL.

Another recent decision, this one from the Ninth Circuit, bears directly on the issue of alternative restitution measures. *Pulaski & Middleman, LLC v. Google, Inc.*, No. 12-16752, 2015 WL 5515617, —F.3d— (9th Cir. Sept. 21, 2015). In *Pulaski*, the plaintiffs used Google's Adwords program, which allowed them to bid for advertisement placement on various websites of their choosing; Google, however, failed to inform plaintiffs that their advertisements could appear on certain other websites that they had not authorized. *Id.* at *1-2. Plaintiffs were charged each time a consumer clicked on their advertisements—even those advertisements placed on websites that plaintiffs did not choose or know about. *Id.* Consequently, plaintiffs sued Google under the UCL and FAL, proposing a measure of restitution based on "the difference between what [plaintiffs] actually paid and what they would have paid had Google informed them" of the undisclosed websites. *Id.* at *2. Admittedly, plaintiffs did gain some value from having their advertisement placed on the unauthorized websites, which prompted the district court to reject plaintiffs' measure of restitution because it did not account for the benefits that plaintiffs acquired. *Id.* at *3. The Ninth Circuit reversed, holding that "UCL and FAL restitution is based on what a purchaser would have paid at the time of purchase had the purchaser received all the information." *Id.* at *7.

The Ninth Circuit in *Pulaski* did not eschew the traditional definition of restitution, it merely clarified that alternative measures of restitution may be appropriate based on the circumstances of each case. For instance, in situations where a defendant's misrepresentations induce the plaintiff to part with money for a service or good, "the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Id.* at *8. In fact, in such situations, the restitution "calculation need not account for benefits received after purchase because the focus is on the value of the service [or good] *at the time of purchase*." *Id.* (emphasis added). The Ninth Circuit, much like the California Court of Appeal, has refused to accept cost minus value as the exclusive measure of restitution under the UCL and FAL.

Even before the recently decided cases of *Pulaski* and *In re Tobacco Cases II*, lower courts had rejected the notion of cost minus value as the exclusive measure of damages. For instance, in *Johns v. Bayer Corp.*, the court acknowledged the potential for restitutionary disgorgement, holding that no "case relied upon by [defendant] suggest[s] that the difference in price paid and value received is *the only* proper measure of restitution." No. 09-CV-1935-AJB (DHB), 2012 WL 1520030, at *5 (S.D. Cal. Apr. 30, 2012) (emphasis in original). Similarly, in *Spann v. J.C. Penny Corp.*, the court recognized three

---

[2]The *In re Tobacco Cases II* court also rejected plaintiffs' argument that restitution is available under the UCL exclusively for purposes of deterrence—a claim not at issue in the present action.

alternative measures of restitution, ruling that "although California case law makes clear that [cost minus value] can be a measure of restitution, defendant has not cited, nor has the court found, any authority indicating that is the *only way* restitution can be calculated." No. CV-12-0215 FMO (RNBx), 2015 WL 1526559, at *4 (C.D. Cal. Mar. 23, 2015) (emphasis added). Overall, this Court finds ample support in the case law for the proposition that cost minus value does not constitute the exclusive measure of restitution.

Defendant argues that California courts have developed a uniform body of case law that forecloses the possibility of alternative restitution measures. Defendant points to several representative examples of this jurisprudence—all cases ostensibly holding that the exclusive measure of restitution is cost minus value. For instance, Defendant invokes *In re Vioxx Class Cases* where the California Court of Appeal ruled that "[t]he difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution." 103 Cal. Rptr. 3d 83, 96 (Ct. App. 2009). Similarly, Defendant cites to *Cortez* where the California Supreme Court defined restitution as "the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received." 23 Cal. 4th at 174.

Neither of these cases, however, articulate an exclusive measure of restitution; they merely reiterate the unremarkable proposition that restitution requires the plaintiff to account both for what she gave up and any benefits she received. A plaintiff may account for benefits received in a variety of ways beyond the cost minus value measure. *See Pulaski*, 2015 WL 5515617; *In re Tobacco Cases II*, 2015 WL 5673070. In other words, plaintiffs may pursue alternative measures of restitution as long as the recovery sought represents a measurable amount supported by the evidence. *Colgan*, 38 Cal. Rptr. 3d at 61 ("From the authorities we conclude that restitution under the statutes involved here must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be supported by evidence.").

Defendant also invokes a litany of federal decisions purportedly holding that cost minus value stands as the exclusive measure of restitution under the UCL and FAL. *See e.g.*, *In re POM Wonderful LLC*, No. ML 10–02199 DDP (Rzx), 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014); *Caldera v. J.N. Smucker Co.*, No. CV 12–4936–GHK (VBKx), 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014); *Red v. Kraft Foods, Inc.*, No. CV 10–1028–GW(AGRx), 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012). The Court is not convinced. Far from imposing an ironclad rule that alternative restitution measures are categorically unavailable, each of these decisions merely holds that plaintiffs have not proffered sufficient evidence to support the alternative theory of restitution in that specific case. In fact, Defendant's reliance on these cases suggests that it has conflated the availability of alternative measures with the viability of alternative measures. As the California Court of Appeal recently explained, "We agree that [cost minus value] does not set forth the exclusive measure of restitution potentially available in a UCL case. It remains, however, that plaintiffs ha[ve] the burden of proving entitlement to an alternative measure of restitution proper under the circumstances." *In re Tobacco Cases II*, 2015 WL 5673070 at *6.

While it remains to be seen whether Plaintiffs can adduce sufficient evidence of a measurable amount of restitution, such an inquiry is premature at this early pleading stage. Plaintiffs need only plead sufficient facts to support a legally cognizable theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (holding that under Rule 12(b)(6), dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory").

Here, Plaintiffs allege that Defendant's misrepresentation as to the nature and amount of price discounts induced them to purchase Defendant's merchandise which they otherwise would not have purchased. As a result, Plaintiffs seek restitution for the amount by which Defendant has been unjustly enriched. Even though Plaintiffs have not alleged that the price they paid exceeds the value of the

merchandise they purchased, they have still alleged sufficient facts to support a claim for restitution under the UCL and FAL. As discussed at length above, Plaintiffs need not allege a cost-minus-value measure of restitution to survive a Motion to Dismiss because alternative measures of restitution are available. For instance, Plaintiffs here can rely on a measure of restitution similar to the one pursued by the plaintiff in *Pulaski*. 2015 WL 5515617 at *7 (measuring restitution as "what a purchaser would have paid at the time of purchase had the purchaser received all the information"). Alternatively, Plaintiffs may pursue a measure of restitution similar to any of the methods discussed in *Spann*. 2015 WL 1526559 (recognizing three measures of restitution: "rescission and refund," "transaction value," or "restitutionary disgorgement"). Regardless of the specific measure of restitution Plaintiffs pursue, they have, at this point, alleged sufficient facts to proceed.

Accordingly, this Court denies Defendant's motion to dismiss Plaintiffs' claim for restitution.

### B.    Plaintiffs' Claim for Injective Relief

Defendant asks the Court to dismiss the FAC because Plaintiffs' request for injunctive relief fails. Specifically, Defendant claims that Plaintiffs lack Article III standing to seek injunctive relief because they are now aware of Defendant's allegedly false pricing practices.

Any person or organization who violates the UCL or FAL may be enjoined in any court of competent jurisdiction. Cal. Bus. & Prof. Code §§ 17203, 17535. A plaintiff seeking to obtain injunctive relief must establish that he or she is realistically threatened by a repetition of the violation in order to establish that the relief sought would redress the alleged injuries. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). "[W]here the defendants have repeatedly engaged in the injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future to satisfy the 'realistic repetition' requirement." *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005). The Ninth Circuit has warned that "[w]hen determining what constitutes the same type of relief or the same kind of injury, [courts] must be careful not to employ too narrow or technical an approach . . . [and] must reject the temptation to parse too finely[.]" *Id*. at 867.

There is a split among the district courts in the Ninth Circuit as to whether a plaintiff lacks Article III standing to seek injunctive relief under the UCL and FAL when the plaintiff has knowledge of the defendant's alleged misconduct.

For instance, in *Campion v. Old Republic Home Protection Company*, Inc., plaintiff sued defendant, a seller of home warranty plans, alleging that defendant made misrepresentations to fraudulently induce plaintiff to purchase the plan. 861 F. Supp. 2d 1139, 1142 (S.D. Cal. 2012). Defendant argued that plaintiff lacked Article III standing because plaintiff was no longer a plan holder, had no intention of purchasing another plan from defendant and, even if he were to purchase another plan from defendant, he was now aware of the alleged business practices. *Id*. at 1146. The court found that plaintiff lacked Article III standing to seek injunctive relief because: (1) his UCL claim was based entirely on a past transaction, (2) he no longer had a warranty plan with defendant and testified that he did not intend to ever purchase another one from defendant, and (3) plaintiff had knowledge of defendant's alleged misconduct. *Id*. at 1150; *see also In re Intel Laptop Battery Litig.*, No. C09-02889 JW, 2011 WL 7290487, at *2 (N.D. Cal. Apr. 7, 2011) (finding that plaintiff who had knowledge of defendant's alleged misconduct and did not intend to purchase another laptop from defendant in the future lacked Article III standing).

In contrast, other district courts within this circuit have found the requisite Article III standing for injunctive relief even where a plaintiff has knowledge of the alleged wrongful conduct. For example,

in *Henderson v. Gruma Corporation*, plaintiffs, regular purchasers of defendant's food products, sought to enjoin defendant under the UCL and FAL from continuing to use false and misleading statements on their products. No. CV 10-04173 AHM (AJWx), 2011 WL 1362188, at *1 (C.D. Cal. Apr. 11, 2011). Defendant claimed that plaintiffs lacked standing to seek injunctive relief because there was no threat of future injury, as plaintiffs were now aware of the misleading statements and alleged that they would not purchase the products at issue in the future. *Id*. at *7. The court found that plaintiffs met the requirements for Article III standing, reasoning that "if the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ("once bitten, twice shy") and would never have Article III standing." *Id*. Although the plaintiffs may never again have purchased the products at issue from the defendant because of this awareness, "to prevent them from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws." *Id*. at *8. "That purpose is 'to protect both consumers *and competitors* by promoting fair competition in commercial markets for goods and services.'" *Id*. (citing *Kwikset*, 246 P.3d at 883) (emphasis in original).

The Court finds the reasoning of *Henderson* to be in accord with the Ninth Circuit's admonition in *Armstrong*. To construe the Article III standing requirements for UCL and FAL claims as narrowly as Defendant requests would render federal courts powerless to enjoin the very acts that California consumer protection laws were designed to redress. An injunction is the primary form of relief available to protect consumers from unfair business practices. *In re Tobacco II Cases*, 207 P.3d 20, 34 (Cal. 2009). To hold that a plaintiff lacks standing to seek an injunction because he is now aware of the alleged misconduct would conflict with the very purpose of this relief—to stop such practices in their tracks.

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's claim for injunctive relief.

### V.     CONCLUSION

Accordingly, the Court **DENIES** Defendant's motion to dismiss.

**IT IS SO ORDERED.**

                                                                                                       :

                                                            Initials of Preparer