

WASHINGTON DC
1828 L Street, NW | Suite 1000
Washington, DC 20036
202.973.0900
www.tzlegal.com

▶ CALIFORNIA
483 Ninth Street | Suite 200
Oakland, CA 94607
510.254.6808

September 26, 2016

Hon. Yvonne Gonzalez Rogers
United States District Court, Courtroom 1
1301 Clay Street
Oakland, CA 94612

RE: *Stathakos v. Columbia Sportswear Co.*, Case No. 4:15-cv-04543 (N.D. Cal.)

Dear Judge Gonzalez Rogers,

Pursuant to Section 8 of the Court's standing order, Plaintiffs Jeanne and Nicolas Stathakos ("Plaintiffs") and Defendant Columbia Sportswear ("Columbia") submit this joint letter-brief regarding the discovery dispute outlined below. The parties attest that they met and conferred by video-conference on September 23 regarding the issues below in addition to significant meet and confer by email and telephone, and have reached an impasse.[1] Plaintiffs contend that the information sought is highly relevant to Plaintiffs' motion for class certification, due November 18, 2016, and the Court's guidance is needed to timely complete class discovery.

## Joint Summary of the Dispute

Plaintiffs' lawsuit concerns the pricing of items sold exclusively at Columbia's Outlet stores, products referred to as "Outlet SMU Builds." Outlet SMU Builds are modeled after products sold through other sales channels (known as "Inline" products). In discovery, Columbia has produced spreadsheets sufficient to identify all Outlet SMU Builds. The spreadsheets identify 580 unique Outlet SMU Builds offered for sale from the Fall 2014 season, when Outlet SMU Builds were first introduced, through the Fall 2016 season.

Of the 580 unique Outlet SMU Builds, Plaintiffs purchased 7 of the items. For those 7 items, Columbia has produced a one-page "CAD" design schematic, plus a 2-to-4 page "Tech Sketch." Columbia has also produced the CADs and Tech Sketches for each item's corresponding Inline counterpart. With respect to costing information, Columbia has provided the total, per-unit cost for each of the 7 items and each of their respective Inline counterparts. Columbia has also agreed to provide the same information as to 3 additional products, which Plaintiffs will choose no later than September 30.

---

[1] Due to counsel's trial and travel schedules, the parties are unable to meet and confer in person regarding the contents of this motion in compliance with Section 8 of the Court's Standing Order in Civil cases until September 27, 2016. The parties submit this letter-motion on September 26 to coincide with the filing of their Case Management Statement in advance of the Case Management Conference scheduled for October 3, 2016, and because they believe they have reached impasse after significant good-faith meet and confer.



Plaintiffs have requested the same documents and information (CADs, Tech Sketches, and costing information) for a randomly selected sample of 10% of all Outlet SMU Builds and their Inline counterparts. With respect to the costing information, Plaintiffs have requested that Columbia provide not only the total, per-unit cost, but also a breakdown of that cost showing each line item that comprises the total cost (e.g. materials, labor, rent, payroll, transport, and/or other overhead).

The parties have reached an impasse on both issues. Columbia objected to providing the information (CADs, Tech Sketches and costing information) for more than the 7 items plus the 3 additional items to be selected by Plaintiffs. Columbia has also objected to providing a line-item break down of costs (but has provided the total, per unit cost).

### Plaintiffs' Statement

The design, manufacturing, and costing data Plaintiffs seek is highly relevant to multiple class issues. First, the design, manufacturing, and cost comparisons between the Outlet SMU Build and the Inline product upon which it was modeled go to Columbia's repeated assertion that SMU Builds are "identical to [the Inline] product, with small stylistic changes," *see* Def.'s Mot. to Dismiss at 1–2 (Doc. 38, Mar. 29, 2016). If the SMU Build is truly identical to the Inline product, Columbia argues, it is not deceptive to use the higher Inline price as a reference price on the corresponding SMU Build, even if the Outlet SMU Build has never sold at the higher reference price. Plaintiffs allege that SMU Builds are uniformly lower cost and lower quality than their Inline counterparts, making reference pricing pegged to the MSRP of Inline models misleading, and thus seek discovery of the design and cost differences between the products.

Detailed costing data, broken out to include labor and all materials inputs and overhead, will further elucidate the differences between SMU Builds and Inline products and will directly inform the class-wide damages calculations Plaintiffs propose. Obtaining a representative, random sample of the design, manufacturing, and costing details is important to proving that these issues can be resolved on a class basis, e.g. that the class-wide policies and practices Columbia uses to make Outlet SMU Builds predominate over the design and manufacturing differences specific to individual products purchased by the class.

The burden on Columbia to produce CAD images and Tech Sketches for a 10% sample of Outlet SMU Builds and their corresponding Inline builds is not high. Based on information produced to date, the requested design schematics consist of between 3 and 5 pages of information per product that is readily accessible and used in Columbia's normal course of business. At this time, Plaintiffs are unaware what line-item costing data is available to Columbia. Nonetheless, Columbia was able to produce a per-unit net cost for each of the seven Outlet SMUS purchased by Plaintiffs and their inline counterparts, for each season in which those items were produced. Plaintiffs contend any burden on Columbia to itemize those per-unit costs is proportional to the needs of the case, particularly at the class certification stage.



For the foregoing reasons, Plaintiffs ask the Court to order Defendant to produce by October 10, 2016: CAD images and Tech Sketches for a randomly selected 10% sample of all SMU Builds, including those sold in Fall 2016, as well as their Inline counterparts; and to produce documents sufficient to determine all cost inputs leading to the per-unit cost for each such product, broken out to indicate the cost of labor, materials, and all other cost inputs.

## Columbia's Statement

The reasons Plaintiffs' requested discovery is improper and unduly burdensome are manifest, and Columbia would appreciate an opportunity to explain them fully. For now, Columbia has explained the key points below.

***Columbia should not be ordered to provide CADs, Tech Sketches and Costing Information as to 10% of the Outlet SMU Builds.*** Discovery is not limitless. Rule 26, which was amended in December 2015, sets forth the scope of permissible discovery, and explicitly states that discovery must be not only relevant to the claims and defenses asserted, but also proportional to the needs of the case, particularly when balanced against any burdens. Adding to that, although the Court did not bifurcate class and merits discovery, it stressed that discovery should be limited and tailored to the class certification issue.

In this case, Plaintiffs claim that Columbia's pricing was deceptive because it suggests an allegedly false bargain. As the Court recognized in its ruling on the motion to dismiss, however, if the Outlet SMU Builds were sufficiently similar to Inline counterparts, then Columbia's pricing practices would not be deceptive. The Court also recognized that this would be a factual issue: "Whether products exist that are similar enough to the products sold . . . is a fact issue not ripe for disposition at this time." (ECF Dkt. No. 41, pg. 7, n.6.) Of course, reviewing each product against its Inline counterpart – which the Court will be required to do – should create individualized issues that preclude class certification. The only exception to this would be if Plaintiffs somehow prove that Columbia followed a practice or procedure so formulaic that it resulted in identical or nearly identical changes to each Outlet SMU Build, resulting in a product line that was uniformly worth less than the line of Inline counterparts.

With respect to this issue, Columbia has provided interrogatory responses and documents concerning its practice of creating Outlet SMU Builds that are identical to Inline counterparts, with small, aesthetic changes. Columbia's 30(b)(6) designees are also set to testify at length about this topic on September 27 and 28, 2016. And, to show some examples of the results of this procedure, Columbia has provided CADs and Tech Sketches for each of the 7 items purchased by Plaintiffs and each item's Inline counterpart, as well as per-unit cost information for each item and Inline counterpart. Notably, the articles that Plaintiffs' purchased are varied and provide a nice cross-section of Columbia product; those items include a pair of shorts, a women's jacket, two different men's jackets, a woman's dress, and two woman's shirts. To supplement this sample, Columbia has also agreed to



provide the same information on three other items of Plaintiffs' choosing. This should be more than enough to test whether Columbia makes uniform changes resulting in goods of uniform less quality. (Not surprisingly, the discovery has shown that there is no such uniformity in design changes or costs. Indeed, contrary to Plaintiff's allegation above that it will prove that the "SMU Builds are uniformly lower cost and lower quality," the costing information produced to date is varied, and the cost of SMU items is sometimes higher and sometimes lower than the cost for the Inline counterparts, although they are generally about the same.)

Nevertheless, Plaintiffs now want to multiply the discovery by 600%, requesting information about a yet identified 10% sample. That would consist of 58 SMU Builds, plus information about 58 Inline counterparts, bringing the total to 116 products (up from 20). Gathering this information for that many products would be unduly burdensome in light of the needs of the case and what has already been produced. Contrary to Plaintiffs' unsupported suggestion that the documents are "readily accessible," the CADs and Tech Sketches are not stored in one central database and have to be gathered from two separate departments, sometimes from different designers. In addition, contrary to Plaintiffs' suggestion that the documents are also "used in Columbia's normal course of business," the documents are used when the products are made, and then not used again. Columbia is not using these documents on a day-to-day basis.

In short, Plaintiffs already have sufficient information about Columbia's policies and practices and have a sample of ten items to test those policies and practices. That is more than enough to try and show a uniform practice at the class certification stage – if they can't prove uniformity as to 10 items, expanding discovery by 600% to 58 items is unnecessary and unduly burdensome. Further, Plaintiffs seem to suggest that they need a 10% sample so they can generate a "representative" sample, from which they presumably will attempt to draw statistical conclusions. The Supreme Court and others have rejected a classwide trial by statistical sampling, and so this justification for the discovery is meritless.

**Columbia should not be ordered to provide line-item costing information.** Plaintiffs stated purpose in obtaining costing information is to compare the cost of Outlet SMU Builds to their Inline counterparts. To do that, Plaintiffs need only the total, per-unit cost of each, which Columbia has provided. They are also free to explore during the depositions what inputs are included in the per-unit costs, but they do not need, and have not provided any justification for, an exact breakdown of the various inputs. Moreover, gathering that type of information is burdensome. Total, per-unit cost is accessible from Columbia's day-to-day systems, and is information that Columbia can access in the normal course, but the break down requires pulling old information from a separate database. Pulling the line-item costing data for just the 10 will be burdensome, let alone for the 58 that Plaintiff's want.



Respectfully submitted,

*/s/ Kristen Law Sagafi*
Kristen Law Sagafi
Martin D. Quiñones
TYCKO & ZAVAREEI, LLP; Attorneys for Plaintiffs


*/s/ P. Craig Cardon*
P. Craig Cardon
Jay T. Ramsey
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP;
Attorneys for Defendant


**ATTESTATION FOR E-FILING**

I hereby attest pursuant to Local R. 5-1(i)(3) that I obtained concurrence in the filing of this document from the other Signatories prior to filing.


DATED: September 26, 2016            By: */s/ Kristen Law Sagafi*
                                            Kristen Law Sagafi