**TYCKO & ZAVAREEI LLP**
KRISTEN LAW SAGAFI, California Bar No. 222249
ksagafi@tzlegal.com
MARTIN D. QUIÑONES, California Bar No. 293318
mquinones@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone (510) 254-6808
Facsimile (510) 210-0571

*Attorneys for Plaintiffs*
*Additional Attorneys on Signature Page*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JEANNE and NICOLAS STATHAKOS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COLUMBIA SPORTSWEAR COMPANY; COLUMBIA SPORTSWEAR USA CORPORATION,<br><br>Defendants. | Case No. 4:15-cv-04543 (YGR)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Hon. Yvonne Gonzalez Rogers<br><br>Hearing Date: March 28, 2017; 2:00 PM<br>Courtroom: 1, 4th Floor, Oakland Courthouse |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that on March 28, 2017, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the Ronald V. Dellums Federal Building & United States Courthouse, 4th Floor, 1301 Clay Street, Oakland California 94612, before the Honorable Yvonne Gonzalez Rogers, United States District Judge, Plaintiffs Jeanne and Nicolas Stathakos will, and hereby do, move the Court pursuant to Fed. R. Civ. P. 23 for an order certifying a plaintiff class consisting of all consumers who purchased an Outlet SMU Build garment at a Columbia Outlet store in the State of California since July 1, 2014, through the conclusion of this action.

This Motion for Class Certification ("Motion") is made on the basis of this Notice of Motion and Motion; the Memorandum of Points and Authorities submitted herewith; the Declaration of Martin D. Quiñones submitted herewith and all attached exhibits; the Declarations of Jeanne Stathakos and Nicolas Stathakos submitted herewith; the Report of plaintiffs' expert witness Gabriele Goldaper and all attached exhibits; the Report of plaintiffs' expert witness Dr. Larry Compeau and all attached exhibits; the Report of plaintiffs' expert witness Arthur Olsen and all attached exhibits; the resumes of the law firms representing Plaintiffs, Tycko & Zavareei LLP and Kopelowitz Ostrow P.A.; all pleadings, papers and other documentary materials in the Court's file for this action; those matters of which this Court may or must take judicial notice; and such other matters as the Court may consider. All elements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) are satisfied, and certification of Plaintiffs' proposed class is warranted.

DATED: November 18, 2016    Respectfully submitted,


By:  */s/ Kristen Law Sagafi*
    Kristen Law Sagafi
    Attorney for Plaintiffs

    **TYCKO & ZAVAREEI LLP**
    KRISTEN LAW SAGAFI, California Bar No. 222249
    ksagafi@tzlegal.com
    MARTIN D. QUIÑONES, California Bar No. 293318
    mquinones@tzlegal.com
    483 Ninth Street, Suite 200
    Oakland, CA 94607
    Telephone (510) 254-6808
    Facsimile (510) 210-0571

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, California Bar No. 181547
hzavareei@tzlegal.com
JEFFREY D. KALIEL, California Bar No. 238293
jkaliel@tzlegal.com
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

**KOPELOWITZ OSTROW P.A.**
JEFFREY M. OSTROW, Florida Bar No. 121452
ostrow@kolawyers.com
Scott A. Edelsberg, Florida Bar No. 0100537
edelsberg@kolawyers.com
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

**TYCKO & ZAVAREEI LLP**
KRISTEN LAW SAGAFI, California Bar No. 222249
ksagafi@tzlegal.com
MARTIN D. QUIÑONES, California Bar No. 293318
mquinones@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone (510) 254-6808
Facsimile (510) 210-0571

*Attorneys for Plaintiffs*
*Additional Attorneys on Signature Page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JEANNE and NICOLAS STATHAKOS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> COLUMBIA SPORTSWEAR COMPANY; COLUMBIA SPORTSWEAR USA CORPORATION, <br><br> Defendants. | Case No. 4:15-cv-04543 (YGR) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR <u>CLASS CERTIFICATION</u>** <br><br> Hon. Yvonne Gonzalez Rogers <br><br> Hearing Date:   March 28, 2017; 2:00 PM <br> Courtroom:   1, 4th Floor, Oakland Courthouse |

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………………......ii

TABLE OF AUTHORITIES………………………………………………..iv

I.    **INTRODUCTION**………………………………………………………1

II.   **SUMMARY OF THE EVIDENCE** ……………………………………2

    A.  **Columbia Designed and Implemented a Uniform "Value Pricing" Scheme at its Outlet Stores** ████████████████████ ████████████████████………………3

    B.  **Columbia Introduced Outlet-Exclusive Products Under the Value Pricing Model** ████████████████ ████████████████………………4

    C.  **Plaintiffs Purchased Outlet-Exclusive Columbia Products Relying on Their Understanding That the Highest Prices on the Price Tags Were Former Prices.** …………………5

III.  **LEGAL STANDARD** ………………………………………………6

IV.  **ARGUMENT** ………………………………………………………7

    A.  **Plaintiffs' Proposed Class is Sufficiently Definite and "Ascertainable."** ………7

    B.  **Plaintiffs Have Satisfied All Elements of Fed. R. Civ. P. 23(a).** ………………8

        1.  Numerosity: Joinder of All Parties Would Be Impracticable. …………8

        2.  Commonality: All Major Issues are Subject to Common Proof. …………8

            i.  *Common Evidence Shows That Columbia's Pricing Scheme is Uniform Across All its Outlet-Exclusive Products* …………9

            ii.  *Whether Columbia's Price Tags Mislead Reasonable Consumers is a Common, Objective Issue Subject to Common Proof* …………10

            iii.  *Whether Columbia's Misrepresentations are Material, and Whether Consumers Rely on Them, Can Be Determined on a Class Basis* …12

        3.  Typicality: Plaintiffs are Typical Class Members. …………15

        4.  Adequacy of Representation: Plaintiffs and Their Counsel are Adequate. …………16

    C.  **Plaintiffs Have Satisfied All Elements of Fed. R. Civ. P. 23(b)(2) & (b)(3).** …17

        1.  Common Issues Predominate Over Any Individualized Legal or Factual Dispute. …………17

            i.  *Legal Standard* …………17

            ii.  *The Common Legal and Factual Liability Issues Predominate Over Any Individual Questions* …………18

            iii.  *Damages and Restitution Can Be Calculated in a Systematic Manner Consistent with Plaintiffs' Theory of Liability.* …………20

2.   The Class Action Procedure is Superior to Individual Adjudication of
     Class Members' Claims. .........................................................................23

3.   Certification is Appropriate Under Rule 23(b)(2), Because Columbia
     Has Acted Identically with Respect to All Class Members, Such That
     a Single Injunction is Appropriate as to Every Member of the Class........24

V.   **CONCLUSION** ...........................................................................................25

**CASES**

*Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952 (9th Cir. 2013)................11

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ..................21

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)............8, 24

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013)…………………………........22

*Bateman v. American Multi–Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)..........................8

*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014)......................9

*Brockey v. Moore*, 107 Cal. App. 4th 86 (Cal. App. 2003). ......................12

*Brown v. Hain Celestial Grp., Inc.*, No. 11-CV-03082-LB, 2015 WL 3398415 (N.D. Cal. May 26, 2015)..........................18

*Bruno v. Quten Research Inst.*, LLC, 280 F.R.D. 524 (C.D. Cal. 2011) ..........................13

*Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (Cal. App. 2006) ..........................13

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ..........................8, 22

*Dudum v. Carter's Retail, Inc.*, No. 14-CV-00988-HSG, 2016 WL 946008 (N.D. Cal. Mar. 14, 2016)..........................9

*F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993) ..........................26

*Goldemberg v. Johnson & Johnson Consumer Cos.*, Case No. 130-cv-3072 (S.D.N.Y. Oct. 4, 2016) ..........................23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..........................19

*Hinojos v. Kohl's Corp*, 731 F.3d 1098 (9th Cir 2013) ..........................2, 16, 17, 18

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606 (N.D. Cal. 2015)..........................24

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161(9th Cir. 2014), *cert. denied*, 135 S. Ct. 2835 (2015)..........................11

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (Cal. 2003)…………………..........22

*Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016)..........................10, 18, 23

Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (Cal. 2011) ..........................16

*Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496 (2003) ..........................13

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013) ..........................10, 22

*Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631 (S.D. Cal. 2015) .....................................26

*Mazur v. eBay, Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009) ........................................9

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ...........................................19, 29

*Rahman v. Mott's LLP*, No. 13-CV-03482-SI, 2014 WL 6815779
    (N.D. Cal. Dec. 3, 2014) ...............................................17

*Rogers v. Epson Am., Inc.*, 648 F. App'x 717 (9th Cir. 2016)................................12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ............7

*Spann v. J.C. Penney Corp.*, 307 F.R.D. 508 (C.D. Cal. 2015),
    *modified*, 314 F.R.D. 312 (C.D. Cal. 2016) ......................17, 23, 26, 27

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................20

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011)....................15, 16, 17, 22

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012)........................13

*Thurston v. Bear Naked, Inc.*, No. 11-CV-2985-H BGS, 2013 WL 5664985
    (S.D. Cal. July 30, 2013)…………………………………………………………………22

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ...........................21, 22, 23

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)...........................27

*Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192 (N.D. Cal. 2012)..........................9

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................7, 29

*Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008). ...............................13

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir.2010)......................28

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010).......................22

*Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113
    (N.D. Cal. June 7, 2011)…………………………………………………………………22

**STATUTES AND RULES**

Cal. Civil Code 1780(a)(1) .............................................................23

Fed. R. Civ. P. 23.................................................................. *passim*

# I. INTRODUCTION

Defendants Columbia Sportswear Company and Columbia Sportswear USA Corp. (collectively "Columbia") engage in a uniform, materially misleading advertising practice that affects each and every consumer shopping at their Columbia Outlet stores in California. Columbia affixes price tags to products it designs and manufactures for exclusive sale at its outlet stores that mislead consumers into believing those products have been marked down from a higher, former price. In fact, none of those products ever sold anywhere at the higher price on their price tags. Columbia's misleading advertising is identical across the nearly 600 outlet exclusive products covered by Plaintiffs' proposed class definition. Every member of the Proposed Class has been exposed to the same materially misleading price representations, and has suffered the same injury as a result. Class certification is appropriate.

The following facts, common to every product within the Class definition, are undisputed:

(1) Since the Fall 2014 season, Columbia has designed, manufactured, and sold nearly 600 unique products for exclusive sale at its Columbia Outlet stores ("Outlet SMU Builds");

(2) some Outlet SMU Builds are inspired by—but are not identical to—so-called "Inline" Columbia products that are offered for sale through Columbia's other sales channels, namely its website, its branded retail stores, and its wholesale partners;

(3) Outlet SMU Builds are not offered for sale anywhere other than Columbia Outlet stores;

(4) every Outlet SMU Build bears a price tag with two prices printed on it, one 20–30% lower than the other, and no explanatory language; the tag simply displays a higher dollar amount, and a lower dollar amount;[1] and

(5) the higher dollar amount printed on the Outlet SMU Build's price tag is neither a price at which Columbia ever sold that product, nor a price at which Columbia offered it for sale.

Based on these undisputed facts, Plaintiffs are prepared to prove all liability and damages issues on a class basis. Columbia's pricing scheme is likely to mislead consumers into believing products they purchase at Columbia Outlets have been marked down from a true former price, when

---

[1] A true and accurate representative photograph of Columbia's Outlet SMU Price tags is depicted in Ex. B to Declaration of Martin D. Quiñones ("Quiñones Decl."), Deposition of Columbia's Fed. R. Civ. P. 30(b)(6) Designee James Bui (Sept. 28, 2016) ("Bui Dep.") at Ex. 28.

in fact they have not. *See* Part IV.D.2, *infra.* That misrepresentation is material, and the trier of fact

may infer that members of the Class relied on it, because the Outlet SMU Builds' false reference

prices increase consumers' perceived value of the products and increase the likelihood consumers

will buy them. *See* Part V.A.2., *infra*. The Ninth Circuit has recognized a presumption that "price

advertisements matter" under California's consumer protection laws, and price misrepresentations

are therefore material. *See Hinojos v. Kohl's Corp*, 731 F.3d 1098, 1102 (9th Cir 2013). Decades of

academic research shows, moreover, that reference prices like the ones Columbia uses make

consumers more likely to purchase a product, even when the reference prices are implausibly high.

*See* Ex. A, Report of Larry D. Compeau, Ph. D. at 4 ("[T]he presence of an advertised (i.e.,

external) Reference Price increases the consumers' ...perception of the value of the deal...").

Plaintiffs were affected in just this way here, and their purchases were driven by the discounts they

perceived. *See, e.g.*, Ex. D to Quiñones Decl., Deposition of Jeanne Stathakos at 58:10–59:7 (Nov.

2, 2016) ("J. Stathakos Dep."); Ex. E to Quiñones Decl., Deposition of Nicolas Stathakos at 34:9–

38:9 (Nov. 3, 2016) ("N. Stathakos Dep."). Plaintiffs' damages models are consistent with their

theory of liability, and can be proven on a class basis. *See* Part V.A.3., *infra*. And because

Columbia's conduct is uniform across the class, a single injunction modifying the price tags'

content can prevent future harm to all members of the class.

All elements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) are satisfied, and class certification

is warranted. Plaintiffs therefore move the Court for an order certifying a plaintiff class consisting

of all consumers who purchased an Outlet SMU Build at a Columbia Outlet store in the State of

California since July 1, 2014, through the conclusion of this action ("the Class").

## II.    SUMMARY OF THE EVIDENCE

Discovery to date establishes that class treatment is appropriate. The facts are

straightforward: Columbia sells hundreds of outlet-exclusive products at its Outlet stores, all of

which bear two prices on their price tags—one higher and one lower. The tags do not explain what

those two prices mean, but Plaintiffs reasonably understood the higher number to represent a former

price at which the item had previously sold. Plaintiffs relied on that reasonable belief to calculate

the "discount" they were receiving on each purchase. Columbia concedes, and Plaintiffs' expert

apparel witness Gabriele Goldaper confirms, that Columbia's outlet-exclusive products differ from Columbia's Inline products, even where the inline product served as the inspiration for the outlet-exclusive product. *See* Ex. B, Report of Gabriele Goldaper. Accordingly, *none* of Columbia's outlet-exclusive items were ever sold anywhere for the higher prices appearing on their price tags.

A.     <u>Columbia Designed and Implemented a Uniform "Value Pricing" Scheme at its Outlet Stores</u> ████████████████████████████████████████████████.

Columbia manufactures and sells outdoor recreational outerwear and sportswear for men, women, and youth. Columbia's former Director of Retail Merchandising for North America, James Robert "Bobby" Bui, testified that until approximately 2010, Columbia operated only ten physical stores worldwide, and primarily offered its products through major third party retailers, such as Sports Authority and Macy's, who purchased Columbia branded products from Columbia at wholesale. *See* Bui Dep. at 93:10–96:6. ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████ Columbia dramatically expanded its direct-to-consumer operations, including by opening many new Outlet stores that offer Columbia branded products at steep discounts, routinely offering discounts as high as 50–70% off the highest price on the price tag. *Id.* at 88:2–24; 94:10–95:16. Prior to the Fall 2014 season, most products offered at Columbia outlets were so-called "Inline" products, identical to Columbia items sold wholesale and online. *See* Columbia's Supplemental Responses to Interrogatories at 5–6 (June 10, 2016).

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████ Mr. Bui devised a "value pricing model" beginning in 2010, which imposed a uniform, consistent markdown structure for starting prices on products sold at Columbia's Outlets. *Id.* at 82:17–84:6; Ex. 13. Under Columbia's value pricing model, outlet products are first offered for sale at a so-called "outlet price" that is 20–30% less than the higher price appearing on the price tag. *See id.* at 91:22–92:14. ███████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Columbia internally refers to the highest price printed on a garment's price tag at the outlet store as the item's "MSRP" and the lower price as its "outlet price," although the words "MSRP" and "outlet price" never appear on the tag. *Id.* at 123:8–19; *see also* Bui Dep. at Ex. 28 (exemplar image of Columbia Outlet price tag affixed to Outlet SMU Build garment). Every item's lower "outlet price" is the highest price at which the item is offered for sale at any Columbia Outlet, and any further discounts are taken from that starting "outlet price." *Id.* at 123:8–124:12.

**B.** **Columbia Introduced Outlet-Exclusive Products Under the Value Pricing Model** [REDACTED]

After Columbia instituted the value pricing model, [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Outlet SMU Builds are sold only at Columbia Outlet stores, and are not offered through any other sales channel. *See* Ex. G to Quiñones Decl., Response to Plaintiffs' Second Set of Requests for Admission at 1 (Sept. 15, 2016). Starting in the Fall 2014 season, Columbia began to offer Outlet SMU Builds that were intentionally differentiated from Inline products sold through other sales channels, [REDACTED] *Id.* at 48:23–49:2; 105:22–106:2; *see also* Ex. F to Quiñones Decl., Columbia's Supplemental Responses to Interrogatories at 5–6 (June 10, 2016).

Importantly, Columbia applies [REDACTED]. For all

---

[2] Curiously, however, Mr. Bui testified that he did not know what Columbia intends to communicate to consumers by including two prices on its price tags, and that no one at Columbia has ever attempted to assess the value pricing model's effect on consumers, if any. See Bui Dep. at 102:22–104:13.

products covered by Plaintiffs' proposed class definition, the two prices appear on the garment's price tag. Bui Dep. at 106:4–13. Because Outlet SMU Builds are sold only at the Outlet, the items are never sold at the higher price on the price tag. *See* Olson Dep. at 80:7–22. The lower price is always the item's actual original price. *See* Bui Dep. at 123:8–124:12.

Columbia's representatives acknowledge two critical facts. First, Outlet SMU Builds are intentionally to different from Columbia's inline styles. *See, e.g.*, Olson Dep. at 41:13–42:20. Second, as noted above, Outlet SMU Builds are never sold anywhere at the higher price appearing on their tags. Bui Dep. at 123:8–124:12. The percentage of inventory at Columbia Outlets that are Outlet SMU Builds ███████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ The rest of the Columbia Outlet inventory is made up of overstock or out of season inline Columbia products, and some non-Columbia-branded products. *Id.* Columbia has designed, manufactured, and sold 580 Outlet SMU Builds, all of which bore a fictitious former price on the price tag. *See* Doc. 53, Joint Discovery Letter at 1 (Sept. 26, 2016).

### C. Plaintiffs Purchased Outlet-Exclusive Columbia Products Relying on Their Understanding That the Highest Prices on the Price Tags Were Former Prices.

Plaintiffs are dedicated bargain-hunters, who have purchased numerous items at Columbia Outlet stores since 2009, and have never shopped at a Columbia branded retail store or shopped through Columbia's website. *See, e.g.*, J. Stathakos Dep. at 14:4–12. Plaintiffs trusted the Columbia brand name as a high-quality but "expensive" product line, which they would normally not consider purchasing in a full-price retail setting, but were interested in buying at what they understood to be deeply discounted prices available at a Columbia Outlet. *See* J. Stathakos Dep. at 19:2–20:10; Deposition of Nicolas Stathakos at 30:24–31:6 (Nov. 3, 2016).

Seven items Plaintiffs have purchased at Columbia Outlets since 2014 were Outlet SMU Builds. *See* Quiñones Decl. at ¶10 & Ex. H. Plaintiffs thought that the highest price printed on each of those items' price tags was a regular, former price at which Columbia offered the same items for sale at a retail store. N. Stathakos Dep. at 21:7–26:5, 92:1–93:14 ("I went by this tag, which is a regular Columbia tag, and it had a retail price on there and that made me assume that it was sold at a

retail store."); J. Stathakos Dep. at 98:7–14 ("[I]f I go in, I look at this tag, . . . I'm thinking it's an item that was sold at a retail store originally at this retail price.").

Plaintiffs were motivated to purchase from Columbia and other outlet stores in large part based on the discount off the perceived original, former retail price, which determined the depth of the "discount" they received from their purchases. *See* N. Stathakos Dep. at 34:9–38:9 ("The discount is usually what helps me make my decision."); J. Stathakos Dep. at 58:10–59:7 ("It still depends on what I think the retail price is and, after the discount, if that price is to me a bargain . . . ."). Plaintiffs based their purchasing decisions on the reasonable but mistaken belief that the higher reference price printed on Outlet SMU Build price tags was a true former price, when in fact the seven items they purchased were never sold at the higher price; as a result, they feel "duped" and "fooled," because they "made a decision on . . . false information." *See* N. Stathakos Dep. at 70:20–71:19; J. Stathakos Dep. at 26:6–14. As detailed below, the legal questions arising from these facts warrant class treatment.

### III.  LEGAL STANDARD

Over the past half-decade, the United States Supreme Court has clarified the district court's task in analyzing a motion for class certification. "A class action may be maintained if two conditions are met: The suit must satisfy the criteria set forth in [Fed. R. Civ. P. 23] subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) (internal quotation marks omitted). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)). "The same analytical principles govern Rule 23(b)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim. That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (quotations and citations omitted).

Nonetheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at

the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) (citing Rules Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23 ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.")). Ultimately, the class certification determination is committed to the trial court's broad discretion. *Bateman v. American Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

## IV.  ARGUMENT

All claims of Plaintiffs and of the Class are appropriate for adjudication on a common class basis. All elements of Fed. R. Civ. P. 23(a) are satisfied. In addition, class issues as to both liability and damages predominate over any individual questions as to the claims in the Amended Complaint, and class treatment is the best method to resolve them as required by Fed. R. Civ. P. 23(b)(3). Certification under Fed. R. Civ. P. 23(b)(2) is also appropriate because Columbia's conduct is identical with respect to every member of the Class and a single injunction can remedy it.

### A.  Plaintiffs' Proposed Class is Sufficiently Definite and "Ascertainable."

In addition to Rule 23's explicit requirements, "courts have recognized that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (internal quotation marks omitted). "[A] class definition is sufficient if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Id.* (internal quotation marks omitted). However, "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).

Plaintiffs' class definition here is objective, and membership can feasibly be determined. The Class consists of: All consumers who have purchased an Outlet SMU Build at a Columbia Outlet store in the State of California since July 1, 2014, through the conclusion of this action. Columbia has already produced lists of the 580 Outlet SMU Builds it has sold at its California Outlet stores since July 1, 2014, when the class period began. *See* Doc. 53, Joint Discovery Letter at

1; Quiñones Decl. at ¶11. Any California resident who purchased one of those products at any time after July 1, 2014 is a member of the Class. Putative class members can identify themselves in a number of ways, including by reference to a purchase receipt, which includes each item's style number, or by locating the style number printed on a garment's care tag, to determine whether it is one of the included style numbers. Columbia can also identify class members who participate in the "Columbia Greater Rewards" incentive program, because Columbia tracks participants' purchases and retains their contact information. Bui Dep. at 76:12–77:1. Thus, the implied ascertainability requirement is satisfied. *See Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *7 (N.D. Cal. July 15, 2016) (consumer class ascertainable where class members could present "receipts or store/club card data" or "evidence of purchase by affidavit on a claim form").

**B.** __Plaintiffs Have Satisfied All Elements of Fed. R. Civ. P. 23(a).__

"To be certified, the putative class and sub-classes must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

1. Numerosity: Joinder of All Parties Would Be Impracticable.

Rule 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." That requirement is satisfied here. Columbia's detailed sales transaction data for the seven Outlet SMU Builds purchased by Plaintiffs reveals that ███████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████ Columbia has offered 580 Outlet SMU Build products at its Outlet stores in California during that time period, █████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████ The proposed Class of consumers who purchased those products in California therefore likely number in the tens of thousands, if not hundreds of thousands. Joinder of all individually class members is facially impracticable, and Rule 23(a)(1) is satisfied.

2. Commonality: All Major Issues are Subject to Common Proof.

"The Supreme Court has recently emphasized that commonality requires that the class

members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)). "This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'" *Id.* (quoting *Mazza*, 666 F.3d at 589) (emphasis in original). "These common questions may center on 'shared legal issues with divergent factual predicates [or] a common core of salient facts coupled with disparate legal remedies.'" *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2835 (2015) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). "Whether a question will drive the resolution of the litigation necessarily depends on the nature of the underlying legal claims that the class members have raised." *Id.*

Plaintiffs' claims here present numerous common legal and factual issues that are central to the litigation. First, it is undisputed that Columbia's price representation scheme is common to all products encompassed by the class definition, both as to the presence of an allegedly misleading higher reference price, and how the reference and sales prices are displayed. The key factual questions in the case therefore turn on common evidence. Second, the central legal questions in the action turn on objective questions that generate common answers. The key legal determinations here are whether Columbia's price tags are likely to mislead a reasonable consumer, and whether that misrepresentation is material. Both are objective inquiries that do not require the trier of fact to evaluate the facts and circumstances of individual class members, and therefore lend themselves to class-wide determination. At bottom, nearly every major question of law or fact in this case can be answered on a class basis. Rule 23(a)(2) is satisfied.

i) _Common Evidence Shows That Columbia's Pricing Scheme is Uniform Across All its Outlet-Exclusive Products._

Under California law, "the primary evidence in a false advertising case is the advertising itself." *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (Cal. App. 2003). The Ninth Circuit has therefore recently observed that at class certification "[i]n a case of this nature, one based upon product labeling, advertising, and the like, it is critical that the misrepresentation in question be

made to all of the class members." *Rogers v. Epson Am., Inc.*, 648 F. App'x 717, 719 (9th Cir. 2016) (collecting cases). It is undisputed here that the allegedly misleading price representations were uniform, and were presented to every member of the class. Every Outlet SMU Build has a price tag affixed at the factory. *See* Bui Dep. at 123:8–19. Every such price tag displays two prices, namely a higher reference price and an "outlet price" that is 20–30% lower. *Id.* at 91:22–25 & Ex. 28 (exemplar image of Outlet SMU Build price tag). Outlet SMU Build price tags never explain the meaning or source of the two prices. Bui Dep. at 123:12–19. They are sold only at Columbia Outlet stores (Ex. G to Quiñones Decl., Response to Plaintiffs' Second Set of Requests for Admission at 1) and are first offered for sale at the lower "outlet price." Bui. Dep. at 103:9–20; 124:1–12. Every single member of the Class therefore necessarily saw the same allegedly misleading price tags on the items they purchased. The most important factual question in the case, the identical Outlet SMU Build price tags themselves, is therefore common to the Class.

ii) *Whether Columbia's Price Tags Mislead Reasonable Consumers is a Common, Objective Issue Subject to Common Proof.*

The central legal questions in the case are also subject to common proof. On each of their claims, Plaintiffs must prove the key element that Columbia's price tags are likely to mislead "the ordinary consumer acting reasonably under the circumstances." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (Cal. App. 2006), *as modified on denial of reh'g* (Jan. 31, 2006). Claims under the UCL, "the FAL[,] and CLRA rely on the same objective test, that is, whether 'members of the public are likely to be deceived'" by the advertisement in question. *Bruno v. Quten Research Inst.*, LLC, 280 F.R.D. 524, 532 (C.D. Cal. 2011) (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009)); *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "'Likely to deceive' . . . indicates that the ad[vertisement] is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). "The 'misleading character' of a given representation "appears on applying its words to the facts,'" and there is no requirement that "a plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation." *Id.* at 679,

681–82 (quoting *People v. Wahl*, 100 P. 2d 550 (Cal. App. 1940)). The inquiry is an objective one that can be answered as to all members of the class, and "[f]or this reason, district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012).

Here, the objective inquiry into likelihood of deception can be determined on a class basis: the price representations are identical across all products within the Class, and the trier of fact can determine whether those representations are objectively misleading in a single ruling. The uniform price tags affixed to Outlet SMU Builds, which advertise the fictitious former price and the outlet price, are likely to mislead consumers into believing the highest number printed on them is a true former price for the item when in fact it is not. Those consumers, like Plaintiffs, are in turn misled into believing Columbia is offering a steep discount that is either non-existent or artificially inflated.

Plaintiffs' expert witness, Professor Larry D. Compeau, Ph. D., is prepared to testify regarding the well-documented effect of "reference prices" on consumer retail behavior. *See generally* Ex. A, Report of Larry D. Compeau. Dr. Compeau is a Professor of Marketing and Consumer Psychology at Clarkson University, who has studied the effects of pricing representations on consumer purchasing for nearly 30 years. *Id.* at 2. Based on his experience and research, Dr. Compeau will testify that "external reference prices," defined as a comparative price for an item "provided by a seller that is typically higher than the selling price," have been shown in numerous studies to increase consumers perceived value of the items in question, increase the price they are willing to pay for those items, and reduce their intentions to search for a lower price. *Id.* at 4. Dr. Compeau opines that external reference prices can be useful to consumers when they reflect a bona fide former price, but that when they are not anchored to a true price at which the item was offered for sale, reference prices artificially inflate consumers' perceptions of value and increase their willingness to by, and thus "consumers base their purchase decision on a false sense of value and thus, the offer is no longer informative, but deceptive." *Id.* at 5.

In this case, Dr. Compeau concludes that Columbia makes extensive use of external reference pricing by including the two un-annotated prices on every Outlet SMU Build price tag, and that the higher reference price is certain to increase consumers' perceived value of Outlet SMU

Builds. *Id.* at 7–8. Because Columbia has never sold or intended to sell Outlet SMU Builds at the reference price, however, Columbia's price tags are likely to deceive consumers regarding the value of the products and the depth of the discount they are receiving, if any, rather than provide useful information. *Id.* at 7–8. Plaintiffs' testimony dovetails with Dr. Compeau's opinions: they were misled and believed that the higher numbers on the tags were bona fide former prices, and relied on those false representations to determine the extent of the "bargain" they received on their purchases. *See, e.g.*, J. Stathakos Dep. at 39:1–10; 42:2–12; N. Stathakos at 34:7–16; 37:24–38:9. Whether or not a jury determines that the price tags are misleading, the objective question will be answered as to all members of the class, based on common evidence.

iii) <u>*Whether Columbia's Misrepresentations are Material, and Whether Consumers Rely on Them, Can Be Determined on a Class Basis.*</u>

A second key liability issue under Plaintiffs' CLRA claim is causation, i.e. whether each member of the Class relied on, and was injured by, the misleading statement. The false impression Columbia's price tags create here is objectively material, under conclusive presumptions of California law, and as a matter of common sense.

The Ninth Circuit has held, interpreting the CLRA, 17501, and statutory context, that misleading price representations, and particularly false markdowns, are *per se* material under California law. In *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011), the court noted that under the CLRA, unlike the UCL, plaintiffs must show "not only that a defendant's conduct was deceptive but that the deception caused them harm." *Id.* at 1022 (quotation omitted). The court recognized that under settled California law, however, "[c]ausation, on a classwide basis, may be established by materiality. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.'" *Id.* (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (Cal. App. 2009)). Thus, the court observed, by broadly forbidding false advertising "California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury . . . ." *Id.* at 1021 n.13. In short, where an advertisement is misleading to the reasonable consumer and is material, causation may be inferred as to the entire class of consumers who were exposed to the

misrepresentation and purchased the falsely advertised product. *Id.*

The court's decision in *Hinojos v. Kohl's Corp.* discussed this point in detail in the pricing context. There, the plaintiff alleged that Kohl's Department Stores advertised home goods for sale "as being substantially reduced from their 'original' or 'regular' prices but that were, in reality, routinely sold by Kohl's at the advertised 'sale' prices rather than the purported 'original' or 'regular' prices." 731 F.3d 1098, 1102 (9th Cir 2013). The district court dismissed the complaint, finding that the plaintiff could not have been injured and therefore no standing to sue, because he "had acquired the merchandise he wanted at the price advertised," and thus received the benefit of the bargain. *Id.* The Ninth Circuit reversed, in reliance on the California Supreme Court's recent guidance in *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310 (Cal. 2011). There, the court held that for purposes of statutory standing, "[a] consumer who relies on a product label and challenges a misrepresentation contained therein" has standing when "he or she would not have bought the product but for the misrepresentation," or "has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately." *See Kwikset*, 51 Cal. 4th at 329, 342 (emphasis in original). The benefit-of-the-bargain argument is only a valid defense that defeats standing where "the misrepresentation at issue should be deemed not a material part of the bargain." *Id.* at 332.

Interpreting *Kwikset*, the Ninth Circuit observed that a representation is "material," when "a reasonable consumer would attach importance to it *or* if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Hinojos*, 718 F.3d at 1107 (quoting *Kwikset*, 51 Cal. 4th at 322); *Stearns*, 655 F.3d at 1022.[3] "Moreover," the court noted, "the legislature's decision to prohibit a

---

[3] Similarly, California courts have long held that a misrepresentation is material even if it is not the dispositive factor in a consumer's purchasing decision. "It is not necessary that a plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 976–77 (Cal. 1997), *as modified* (July 30, 1997) (quoting Restatement (Second) of Torts, § 546, com. b, p. 103 (2d Ed. 1977)) (internal punctuation omitted).

particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Hinojos*, 718 F.3d at 1107. That is, "because both state and federal law specifically prohibit retailers from advertising false 'sales,'" there is a strong legal presumption that false discounts are "material misrepresentations that induce… [consumers] to buy products [they] would not otherwise have purchased." *Id.* The court then squarely held: "In sum, *price advertisements matter*. Applying *Kwikset* in a straightforward manner, we hold that when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation," the representation is a material one. *Id.*; *see also Stearns*, 655 F.3d at 1027.

Applying *Hinojos* and *Stearns*, a Central District of California court found in a similar false pricing case that materiality and causation were subject to class-wide proof, and therefore that class issues existed and predominated over any individual reliance questions under the CLRA. *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 522 (C.D. Cal. 2015), *modified*, 314 F.R.D. 312 (C.D. Cal. 2016). Courts in this district have similarly applied the same reasoning to find that violations of other California false advertising provisions are material, based on the legislative prohibition of the conduct in question. *See, e.g.*, *Rahman v. Mott's LLP*, No. 13-CV-03482-SI, 2014 WL 6815779, at *7 (N.D. Cal. Dec. 3, 2014). ("Plaintiff has made a prima facie showing that the 'No Sugar Added' statement constitutes a violation of California's Sherman Law, and is thus independently actionable under the unlawful prong of the UCL. Such a showing gives rise to a presumption of materiality…. Therefore, the Court finds that Rahman has satisfied the predominance requirement as to issues of liability."); *Brown v. Hain Celestial Grp., Inc.*, No. 11-CV-03082-LB, 2015 WL 3398415, at *9 (N.D. Cal. May 26, 2015) ("COPA violations are material: full stop. From that initial conclusion, the likely-deception inference flows."); *Kumar*, 2016 WL 3844334, at *8 (N.D. Cal. July 15, 2016) (relying on *Kwikset* and finding: "evidence that a label misleads a consumer about a product's origins, and the associated value of the product, establishes that the misrepresentation is material").

Here, Columbia "knows or has reason to know" that its consumers "regard… or [are] likely to regard" the reference pricing on Outlet SMU Builds "as important in determining [their]

choice of action" shopping at Columbia Outlets. *See Hinojos*, 718 F.3d at 1107. Mr. Bui testified that Columbia has not studied the effect of its outlet pricing on its consumers. *See* Bui Dep. at 102:22–104:13. Nevertheless, the importance of offering consumers discounts is evident ███████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████ That is so because, as Columbia's representative Ms. Olson testified, "you're either an outlet consumer or you're not. … If you're an outlet customer, you probably are looking for a sale price, in my opinion. … Generally you can find those at outlet stores." Olson Dep. at 93:5–94:11. Plaintiffs here are that type of consumer, and have purchased Columbia products at Columbia Outlet stores only because they perceive the available discounts to be greatest at the outlet. *See, e.g.*, See J. Stathakos Dep. at 19:2–20:10; N. Stathakos Dep. at 30:24–31:6. The merits here favor a finding that Columbia's representation is objectively material, and any questions of reliance and causation can therefore be resolved as to the Class as a whole.

Finally, Dr. Compeau's opinions coincide with the evidence and legal presumptions discussed above. He opines that over decades of research "external Reference Prices have been consistently shown to have significant impact on consumers' purchasing processes and decisions," by increasing consumers' perceived value of items. Report of Dr. Compeau at 3. Here, he concludes that because Columbia's reference prices on its Outlet SMU Builds do not truly reflect former prices, consumers misunderstand them and "are deceived into making purchases that they might not have otherwise made." *Id.* at 8. In sum, the fact finder can determine on a Class basis whether Columbia's misrepresentations were material, and therefore whether Class members relied on them.

3.  Typicality: Plaintiffs are Typical Class Members.

Next, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020 . "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of

conduct.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Here, Plaintiffs' claims and injuries are typical of the Class's claims and injuries. Plaintiffs purchased seven Outlet SMU Build products at Columbia Outlet stores. *See* J. Stathkos Dep. at 14:13–15. All seven of those Outlet SMU Builds were sold with price tags showing a higher reference price and a lower outlet price without explaining what either price meant. Quiñones Decl. at ¶10 & Ex. H. The price tags affixed to the seven Outlet SMU Build products Plaintiffs purchased were identical in all relevant ways to the price tags used for every other Outlet SMU Build product that Columbia has offered for sale at its outlet stores since July 1, 2014. *See* Bui Dep. at 123:8–19. When Plaintiffs purchased the seven Outlet SMU Builds, they did so believing they were previously sold at the highest price printed on each product's price tag and that they were receiving a significant discount, when in fact none of those garments ever sold for the higher reference price. *See* N. Stathakos Dep. at 89:13–90:8 ("the price tag … means it was sold … at a regular Columbia store or REI store for the full price and ... I'm getting a deal"); J. Stathakos Dep. at 42:2–12. Thus, their claims and circumstances are typical of the claims and circumstances of the Class.

4. Adequacy of Representation: Plaintiffs and Their Counsel are Adequate.

The final element of Rule 23(a) is adequacy of representation. Rule 23(a)(4) asks "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Here, both factors favor certification. Plaintiffs testified that their interests coincide with those of the Class: to require Columbia to clearly and accurately represent the prices for Outlet SMU Build products; and to recover appropriate damages on the Class's behalf. *See, e.g.*, N. Stathakos Dep. at 102:10–103:3; J. Stathkos Dep. at 124:17–21. Plaintiffs have already vigorously represented the Class's interests, both in their testimony and in their conduct. *See id.*, N. Stathakos Dep. at 102:10–103:3; *see also* J. Stathkos Dep. at 124:17–21. Plaintiffs have responded to all discovery requests, testified at depositions, and otherwise fully participated in the action. *See* Exs. C & D, Declarations of J. Stathakos and N. Stathakos (summarizing tasks performed in furtherance of this litigation).

Likewise, Plaintiffs' counsel are fully prepared and adequate to prosecute this action. Tycko & Zavareei, LLP and Kopelowitz Ostrow Ferguson Weiselberg Gilbert are national, plaintiff side, consumer protection firms based in Washington, D.C., and South Florida, respectively, and have each been appointed class counsel in numerous consumer protection class actions across the country, including in the Northern District of California. *See generally* Exs. E & F, Law Firm Resumes of Tycko & Zavareei, LLP, and Kopelowitz Ostrow Ferguson Weiselberg Gilbert, P.A. The firms' attorneys have extensive experience and knowledge of California consumer protection law, and practical experience bringing class action cases to trial in federal court. *See* Exs. E & F. Accordingly, Plaintiffs' counsel has the requisite resources and experience to litigate a federal consumer protection class action through trial, and are adequate to serve the needs of the Class.

## C.     Plaintiffs Have Satisfied All Elements of Fed. R. Civ. P. 23(b)(2) & (b)(3).

Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3). "To justify certification under that provision, a plaintiff must prove that the class meets all prerequisites under Rule 23(a) and that the class meets two requirements under Rule 23(b)(3)," namely "predominance" and "superiority." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1153 (9th Cir. 2016).

### 1.     Common Issues Predominate Over Any Individualized Legal or Factual Dispute.

#### i.     *Legal Standard*

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997). "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case," and "'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than … individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49–4:50, pp. 195–197 (5th ed. 2012)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane,

Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)).

The Supreme Court and Ninth Circuit have provided several guidelines to direct the district court's predominance inquiry. First, as an extension of the commonality analysis, "it is clear that '[c]onsidering whether questions of law or fact common to class members predominate' begins… with the elements of the underlying cause of action." *Stearns*, 655 F.3d at 1020 (quoting *Erica P. John Fund, Inc., v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011)). Second, "a model purporting to serve as evidence of damages … must measure only those damages attributable to that theory," and "any model supporting a plaintiff's damages case must be consistent with its liability case." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (annotations omitted). But while "the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability," nevertheless "the presence of individualized damages cannot, by itself, defeat certification under Rule 23(b)(3)." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *see also Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975): " '[t]he amount of damages is invariably an individual question and does not defeat class action treatment.'"). Holding otherwise is an abuse of discretion. *Id.*

Here, every major issue in the case can be resolved on a class basis. The primary liability questions as to all of Plaintiffs' causes of action, as noted above, are common to the Class. Plaintiffs' expert Arthur Olsen will testify that class-wide restitution and damages amounts can be calculated from the available evidence, under at least three possible models that have been approved at class certification in substantially similar circumstances in this Circuit. In sum, class issues predominate over any individual issue as to be liability and remedies questions.

ii.    *The Common Legal and Factual Liability Issues Predominate Over Any Individual Questions.*

As noted above, all major factual and legal issues relevant to Plaintiffs' claims are common to the Class. *See* Argument, Part V.B., *supra*. The key elements of the underlying causes of action, namely whether Outlet SMU Build price tags are likely to mislead consumers, and whether the misrepresentation is material, are objective questions that can be answered in a single

determination. Likewise, the evidence relevant to answering those questions is common to the Class, because the misrepresentations themselves are identical: the price tags on every Outlet SMU Build that Columbia has ever sold have presented a false reference price, and a sale price, and are affixed at the factory. The only difference between price tags are the specific price for that product for that season. Because "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)." *See Tyson Foods*, 136 S. Ct. at 1045. Many courts throughout this Circuit have found predominance satisfied under similar circumstances. *See, e.g.*, *Spann*, 307 F.R.D. 508, 522 (C.D. Cal. 2015), *modified*, 314 F.R.D. 312 (C.D. Cal. 2016); *Kumar*, 2016 WL 3844334 at *9 ("[W]hether consumers were likely to notice the challenged phrase on the front of the bottle given the small font size and lack of contrast with the rest of the bottle go to the merits of the claim, not to whether a class should be certified."); etc., *cf. Goldemberg v. Johnson & Johnson Consumer Cos.*, Case No. 130-cv-3072 (S.D.N.Y. Oct. 4, 2016) (granting class certification in consumer case alleging UCL, FAL, and CLRA violations for allegedly falsely labeling personal care products as "All Natural").

Columbia's primary defense to date has been to assert that Outlet SMU Builds are sufficiently similar to their Inline counterparts that using the Inline product's actual retail price as the higher reference price on Outlet SMU Build price tags, even without explanation, is not misleading. Plaintiffs contend that all Columbia's Outlet SMU Build price tags are misleading, notwithstanding any similarities between those garments and their inline models, and in any event the merits of the defense are not appropriate for resolution at class certification. *See Amgen*, 133 S. Ct. at 1194–95 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 625 (N.D. Cal. 2015) (Conti, J.) (granting certification despite disputed expert evidence regarding antitrust impact and damages, noting "the Court cannot undertake a full merits analysis at this point, and should avoid engaging in a battle of the experts"). Regardless, Columbia admits that its Outlet SMU Builds are not identical to its inline products, and Plaintiffs' expert witness Gabriele Goldaper confirms that of the sample of 19 Outlet SMU Build garments she reviewed, none of them were identical to an inline

counterpart garment. *See generally* Ex. D, Report of Gabriele Goldaper.

iii.     *Damages and Restitution Can Be Calculated in a Systematic Manner*
*Consistent with Plaintiffs' Theory of Liability.*

Finally, Plaintiffs are prepared to prove class-wide damages and restitution using at least one of several proposed models. Plaintiffs' expert witness Arthur Olsen is prepared to calculate and testify regarding three viable methods for calculating restitution and damages: (1) a full refund model, under which class members who return the products they purchased are granted a full refund of the price they paid ("Full Refund"); (2) a promised price discount model, under which class members recover the amount equivalent to the discount implied by the Outlet SMU Build's inline price ("Promised Discount"); and (3) a partial profit model, under which class members recover the full purchase price of the Outlet SMU Builds they purchased, less the "landed cost" of the product, meaning the cost to Columbia to manufacture the garment and ship it to the United States ("Restitutionary Disgorgement"). Each of these models is consistent with Plaintiffs' theory of liability, is calculable based on data within Columbia's possession and control, and has been approved in similar cases within this Circuit.

Mr. Olsen is a principal of Cassis Technology, LLC, an IT consulting firm, with nearly 20 years' experience specializing in the areas of data analysis, database development, database administration, and database support. *See* Ex. G, Declaration of Arthur Olsen at 2. Mr. Olsen analyzed complete sales information produced by Columbia for a sample of seven Outlet SMU Build products, along with detailed costing data produced for each of those products for every season it was manufactured. *Id.* at 5–6. Using this data, Mr. Olsen calculated three separate totals. ***First***, for the Full Refund methodology, Mr. Olsen measured the "full refund value" of all Outlet SMU Build transactions represented in the data excluding voided transactions and voided items. For the seven Outlet SMU Build products he examined, Mr. Olsen arrived at a Full Refund damages number of $649,357.37. *Id.* at 7. ***Second***, for the Promised Discount methodology, Mr. Olsen calculated recovery based on the promised percentage discount in each transaction. To do so, Mr. Olsen compared the higher stickered price for each Outlet SMU Build to the outlet price to

determine the amount of "discount" represented by the price tag. *Id.* For example, if an Outlet SMU Build's price tag bore a higher price of $100 and an outlet price of $80, the promised percentage discount is 20%. Mr. Olsen then applied the promised percentage discount to the amount *actually paid* by the consumer in each transaction to calculate the amount attributable to the misrepresented discount in each transaction. *Id.* Applying the analysis to the above example, if a consumer purchased the item for $80, she should recover an amount equal to 20% of the price she actually paid, $16. *Id.* If a different customer purchased the same item after it was further reduced to $60, she would recover 20% off her purchase price of $60, or $12. *Id.* Applying this Promised Discount analysis to each individual transaction, Mr. Olsen calculated class-wide monetary recovery of $197,470.63 for the seven-item sample he examined. **Third**, Mr. Olsen applied the Restitutionary Disgorgement model by subtracting the landed cost of each garment in each season from the total refund amount, yielding total damages of $366,180.72 for the limited sample he examined. *Id.* For each of these three separate methodologies, Mr. Olsen is prepared to perform the same analysis for all Outlet SMU Builds covered by the class definition, using the same categories of data that were provided to him, and which Columbia has confirmed it possesses. *See* Bui Dep. at 21:14–23:19.

Each model is tied to the theory of Columbia's bad conduct, namely that Columbia represents a discount that is not real, which induces consumers to purchased products they otherwise would not buy. Under the full refund model, class members would return the purchased garment, and recover as restitution their full purchase price; full refund restitution has been approved of by California courts and the Ninth Circuit in false advertising cases where class members returned the product at issue. *See F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993) (approving full-refund restitution under FTC Act where defendant advertised heat detectors by falsely inflating the degree of fire protection provided); *Spann*, 307 F.R.D. at 530 (certifying false reference pricing class action, finding full refund model consistent with plaintiff's theory of liability); *cf. Makaeff v. Trump Univ., LLC,* 309 F.R.D. 631, 637–38 (S.D. Cal. 2015) (finding full refund model consistent with plaintiff's theory of liability where the injury from the alleged fraud was "not in the value of the thing sold," but in the fact that plaintiffs "did not receive what they thought they were buying"). Moreover, full refunds are available as a measure of damages under the

CLRA, which allows recovery of all moneys spent in reliance on the defendant's fraud. Cal. Civil Code 1780(a)(1); *Makaeff*, 309 F.R.D. at 638.

Under the Promised Discount model, Plaintiffs and members of the class recover the percentage discount they believed they were promised, measured against the amount they actually spent. Consumer plaintiffs may generally "seek some [damages or restitution] amount representing the disparity between their expected and received value," which in this case can be measured by the "expected" discount and the actual discount if any that each class member received. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013) (granting class certification where plaintiffs proposed partial refund model for restitution and damages based on allegedly false representations that food products were "All Natural"); *Thurston v. Bear Naked, Inc.*, No. 11-CV-2985-H BGS, 2013 WL 5664985, at *10 (S.D. Cal. July 30, 2013) (same). A restitution and damages measure that partially refunds Class members based on the discount Columbia promised is consistent with Plaintiffs' theory of liability, namely that members of the Class were induced to purchase Outlet SMU Builds based on Columbia's materially misrepresented discounts.

Finally, the Restitutionary Disgorgement model awards class members restitution for money spent in reliance on the fraud, minus the objective cost of manufacturing and shipping the garment, i.e., Columbia's profit from the sale. Disgorgement of profit is a well-accepted method for calculating restitution and damages under California's consumer protection laws where, as here, the recovery will "replace . . . money or property that defendants took directly from [the] plaintiff." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (Cal. 2003). Other courts in this district have granted class certification where plaintiffs have sought to recover "such amount[s] that Plaintiff and all Class members paid to purchase [defendant's] products, or the profits [the defendant] obtained from those transactions." *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *10 (N.D. Cal. June 7, 2011). That measure would restore the money class members spent in reliance on the unlawful fraud and is consistent with Plaintiffs' theory of liability, but would fairly account for whatever "value" class members' received from their purchase and only disgorge profits attributable to the fraudulent sale.

At least one court in this Circuit has found that class issues predominate in a similar false-

reference pricing case, adopting each of the three models Mr. Olsen is prepared to present here. *See Spann*, 307 F.R.D. at 530. None of the models would compensate class members for damages except those attributable to Columbia's precise misrepresentations on their price tags, and money spent based on those representations. Plaintiffs' proposed damages and restitution models are therefore consistent with the *Comcast* decision and Ninth Circuit authority interpreting it, and predominate over individual issues of monetary relief.

### 2. The Class Action Procedure is Superior to Individual Adjudication of Class Members' Claims.

Rule 23(b)(3) also requires plaintiffs to show that a class action would be "superior to other available methods of fairly and efficiently adjudicating the controversy," considering "the class members' interests in individually controlling the prosecution or defense of separate actions," "the extent and nature of any litigation concerning the controversy already begun by or against class members," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) Similarly, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Here, class adjudication is superior to individual litigation of class members' claims. The first two elements of the superiority inquiry are satisfied: Plaintiffs are aware of no present litigation concerning Columbia's pricing practices in any other jurisdictions, and there is no interest pulling the case to another forum. As to class members' interests in controlling separate actions, there is no danger of harming individual class members by aggregate litigation. Columbia sells most Outlet SMU Builds for less than $200, and although a small percentage of Columbia's customers are "bulk buyers" who purchase large numbers of items in person at Columbia's Outlet stores, *see* Bui Dep. at 66:25–67:21, Columbia's sales records produced to date show many thousands of transactions by individual consumers, whose recovery would necessarily be so low as to be "dwarfed by the cost of

litigating on an individual basis." *See Wolin*, 617 F.3d at 1175. Individual bulk buyers who may have large individual claims can opt out of the Class to pursue them.

Class litigation will also increase efficiency, and there are no significant manageability issues that would make individual adjudication preferable to a class action. First, Plaintiffs have already identified the contours of discovery they will seek post-certification, and there is no reason to believe the process will become unmanageable. Columbia has produced complete sales and design records for all seven of the Outlet SMU Builds Plaintiffs purchased, and have confirmed that the same information exists as to all 580 total Outlet SMU Builds. *See* Bui Dep. at 21:14–23:19. Plaintiffs have also identified the likely universe of witnesses they would seek to depose, and additional custodians from whom they may seek document discovery. Second, trial will be manageable because for the reasons stated above, virtually all liability and damages issues are common to the entire class, and can therefore be resolved in a single trial. Third, class notice will be manageable. Columbia maintains a contact list of members of the "Columbia Greater Rewards" incentive program, which can be used to contact many likely class members, *see* Bui Dep. at 76:12–77:10, and notice can further be disseminated through advertisements on websites and in publications likely to reach Columbia customers. In sum, the class device will be manageable here.

3. Certification is Appropriate Under Rule 23(b)(2), Because Columbia Has Acted Identically with Respect to All Class Members, Such That a Single Injunction is Appropriate as to Every Member of the Class.

Whether or not the Court certifies a damages class pursuant to Rule 23(b)(3), an injunctive class is appropriate under 23(b)(2). Certification under that rule is appropriate where the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole. . . . That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like

predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir.2010)).

Here, the conduct that has injured the Class is a single misleading scheme that has applied uniformly to Outlet SMU Builds since their introduction in 2014: Columbia's price tags on Outlet SMU Builds stores appear to show a true former reference price above a reduced "outlet price." *See* Parts I.A–B, *supra*. The Court could prevent Columbia from continuing its unlawful conduct by issuing an injunction barring Columbia from using the false reference prices on its outlet store price tags.

## V.    <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs request that the Court certify the following class of consumers under Fed. R. Civ. P. 23(b)(2) and (b)(3) for adjudication of claims alleged by the named Plaintiffs on behalf of the following Class: All consumers who purchased an Outlet SMU Build at a Columbia Outlet store in the State of California since July 1, 2014, through the conclusion of this action.

DATED: November 18, 2016             Respectfully submitted,


By:    */s/ Kristen Law Sagafi*
_____
Kristen Law Sagafi
Attorney for Plaintiffs

**TYCKO & ZAVAREEI LLP**
KRISTEN LAW SAGAFI, California Bar No. 222249
ksagafi@tzlegal.com
MARTIN D. QUIÑONES, California Bar No. 293318
mquinones@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone (510) 254-6808
Facsimile (510) 210-0571

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, California Bar No. 181547
hzavareei@tzlegal.com
JEFFREY D. KALIEL, California Bar No. 238293
jkaliel@tzlegal.com

1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

**KOPELOWITZ OSTROW P.A.**
JEFFREY M. OSTROW, Florida Bar No. 121452
ostrow@kolawyers.com
Scott A. Edelsberg, Florida Bar No. 0100537
edelsberg@kolawyers.com
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300