Kristen Law Sagafi (Cal. Bar No. 222249)
Martin D. Quiñones (Cal. Bar No. 293318)
**TYCKO & ZAVAREEI LLP**
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
E-mail: ksagafi@tzlegal.com
E-mail: mquinones@tzlegal.com

Jeffrey Ostrow, Florida Bar No. 121452
Scott A. Edelsberg, Florida Bar No. 0100537
**KOPELOWITZ OSTROW**
**FERGUSON WEISLBERG GILBERT**
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
Email: ostrow@kolawyers.com
Email: edelsberg@kolawyers.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JEANNE and NICOLAS STATHAKOS, on behalf of themselves and others similarly situated,<br><br>  Plaintiffs,<br><br>         v.<br><br>COLUMBIA SPORTSWEAR COMPANY; COLUMBIA SPORTSWEAR USA CORPORATION;<br><br>Defendants. | Case No. 15-cv-04543-YGR<br><br>**[PROPOSED] ORDER GRANTING CLASS CERTIFICATION**<br><br>Hon. Yvonne Gonzalez Rogers Hearing<br><br>Date:         March 28, 2017; 2:00 PM<br>Courtroom:   1, 4th Floor, Oakland Courthouse |

Plaintiffs Jeanne and Nicolas Stathakos ("Plaintiffs") bring this Motion for Class Certification of a proposed class of purchasers of Columbia apparel that was designed and manufactured for exclusive sale at Columbia Outlet Stores, but still advertised a higher price and a lower price, with no explanatory language or annotations. Defendants Columbia Sportswear Company and Columbia Sportswear USA Corporation ("Columbia" or "Defendants") opposed the motion. Having carefully considered the papers submitted, the pleadings in this action, the admissible evidence, and the arguments of the parties, and for the reasons set forth below, the Court **GRANTS** the Motion for Class Certification.

## I.   BACKGROUND

Plaintiffs seek to certify a class defined as: "All consumers who have purchased an Outlet SMU Build at a Columbia Outlet store in the State of California since July 1, 2014, through the conclusion of this action." Plaintiffs allege that the class was deceived by deceptively labeled and priced Columbia apparel that was designed and manufactured for exclusive sale at Columbia Outlet Stores. Plaintiffs allege that the conduct violates California's Unfair Competition law, Cal. Bus & Prof. Code section 17200, Consumers Legal Remedies, Cal. Bus & Prof. Code section 1750, False Advertising, Cal. Bus & Prof. Code section 17500, and the FTC Act, 15 U.S.C. § 45(a)(1), 52(a). Plaintiffs also argue that they are entitled to damages, restitution and injunctive relief.

## II.   APPLICABLE STANDARD

A class action lawsuit is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700–01 (1979). To depart from this general rule, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (internal quotations and citation omitted). The proponent of class treatment, usually plaintiff, bears the burden of demonstrating that class certification is appropriate. *See In re N. Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.,* 693 F.2d 847, 854 (9th Cir. 1982), *abrogated on other grounds in Valentino v. Carter–Wallace, Inc.,* 97 F.3d 1227 (9th Cir. 1996).

Federal Rule of Civil Procedure 23, which governs class certification, has two distinct sets of requirements that plaintiffs must meet before the Court may certify a class. Plaintiffs must meet

all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b), depending upon the nature of the class they seek to certify. *See also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 394 (2010) (setting forth requirements of Rule 23). Here, Plaintiffs seek certification under Rule 23(b)(3).[4] Within the framework of Rule 23, the Court ultimately has broad discretion over whether to certify a class. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.) *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001).

> Under Rule 23(a), the Court may certify a class only where:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Courts refer to these four requirements, which must be satisfied to maintain a class action, as "numerosity, commonality, typicality[,] and adequacy of representation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). Although some inquiry into the substance of a case may be necessary to determine whether these requirements are satisfied, the court must not advance a decision on the merits to the class certification stage. As the United States Supreme Court has stated:

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent —that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).

### III. Rule 23(a) Threshold Requirements

#### a. Numerosity

Rule 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." That requirement is clearly satisfied here. Columbia's detailed sales transaction data for the seven Outlet SMU Builds purchased by Plaintiffs reveals that tens of thousands of transactions involving those seven products occurred in California between July 1, 2014 (the beginning of the Fall 2014 season, when Outlet SMU Builds were first offered for sale) and

September 16, 2016. Columbia has offered 580 Outlet SMU Build products at its Outlet stores in California during that time period. As such, the proposed Class of consumers who purchased those products in California therefore likely numbers in at least the tens of thousands. Joinder of all these parties is facially impracticable, and Rule 23(a)(1) is satisfied.

### b. Adequacy

To determine adequacy of representation under Rule 23(a)(4), the Court must consider: "(1) [whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Defendants fail to establish that Plaintiffs are not adequate class representatives or that class counsel are not adequate.

Here, Plaintiffs testified that their interests coincide with those of the Class, namely to increase the transparency and veracity of Columbia's Outlet SMU Build price tags, stop the deceptive practice, and recover whatever damages are deemed appropriate on behalf of the Class. In doing so, Plaintiffs have timely and completely responded to all discovery requests made of them, have testified at deposition, and have otherwise fully participated in the action to date. Likewise, Plaintiffs' counsel are fully prepared and adequate to prosecute this action. Tycko & Zavareei, LLP and Kopelowitz Ostrow Ferguson Weiselberg Gilbert (KO) are national, plaintiff side, consumer protection firms based in Washington, D.C., and South Florida, respectively, and have each been appointed class counsel in numerous consumer protection class actions across the country, including in the Northern District of California. The firms' attorneys have extensive experience and knowledge of California consumer protection law, and practical experience bringing class action cases to trial in federal court. Accordingly, Plaintiffs' counsel has the requisite resources and experience to litigate this federal consumer protection class action through trial, and are adequate to serve the needs of the Class.

### c. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). That is, the named plaintiffs must "suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

338, 348 (2011). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (*quoting Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted).

Plaintiffs meet the typicality requirements. Here, Plaintiffs claims and injuries are clearly typical of the claims and injuries of the Class. Plaintiffs purchased seven Outlet SMU Build products at Columbia Outlet stores through February, 2016. All seven of those Outlet SMU Builds were sold with price tags showing a higher reference price and a lower outlet price without any explanation of what either price meant. The price tags affixed to the seven Outlet SMU Build products Plaintiffs purchased are identical in all ways relevant to the price tags used for every other Outlet SMU Build product that Columbia has offered for sale at its outlet stores Since July 1, 2014. When Plaintiffs purchased the seven Outlet SMU Builds, they did so believing that the goods they purchased were previously sold at the highest price printed on each garment's price tag and that they were receiving a significant discount, when in fact none of those garments ever sold for the higher reference price. In sum, their claims and circumstances are typical of the claims and circumstances of the Class.

### d.   Common Questions of Law and Fact

Rule 23(a)(2) requires the party seeking certification to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, the common question "must be of such a nature that it is capable of classwide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Dukes*, 564 U.S. at 350. "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 359.

The central question here is whether Defendants' price tags were likely to deceive a reasonable consumer. The UCL, CLRA, and FAL, prohibit "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a

capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951, 45 P.3d 243 (2002), *as modified* (May 22, 2002). To state a claim based on false labeling, "it is necessary only to show that 'members of the public are likely to be deceived.'" *Id.* Thus, the answer to the reasonable consumer question is based on common facts; namely, the form and content of the price tags on the products at issue. In cases alleging a deceptive advertising scheme under the UCL, CLRA, and FAL, it is well-settled that where "numerous consumers are exposed to the same dubious practice by the same seller...proof of the prevalence of the practice as to one consumer would provide proof for all." *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971) (concluding that if material misrepresentations were made to members of the class, an inference of reliance would arise as to the whole class); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (inference of reliance arises wherever there is a showing that a misrepresentation was material, and plaintiff need not demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement); *Williams v. Gerber Products,* 552 F.3d 934, 938 (9th Cir. 2008) (same for CLRA).

Plaintiffs' claims present numerous common legal and factual issues that are central to the litigation. First, it is undisputed that Columbia's price representation scheme is common to all products encompassed by the class definition, both as to the presence of a misleading reference price, and how the higher and lower prices are displayed. The key factual questions in the case therefore turn on common evidence. Second, the central legal questions in the action turn on objective questions that generate common answers. The key legal determinations at issue are whether Columbia's price tags are likely to mislead a reasonable consumer, and whether those misrepresentations are material. Both are objective inquiries that do not require the trier of fact to evaluate the facts and circumstances of individual class members, and therefore lend themselves to class-wide determination.

### e. Ascertainability

Over and above the four requirements set forth in Rule 23(a), courts have implied an additional threshold requirement: that the members of the class be readily ascertainable. *See Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) ("the party seeking certification must demonstrate that an identifiable and ascertainable class exists");

*Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672 (N.D. Cal. 2011) ("[w]hile Rule 23(a) is silent as to whether the class must be ascertainable, courts have held that the rule implies this requirement"); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (although not expressly required by Rule 23, courts have held that the class must be well defined and ascertainable in order to proceed on a classwide basis); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299 (N.D. Cal. 2010) *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F. 3d 741 (9th Cir. 2012). "While Rule 23(a) does not expressly require a class to be ascertainable, courts have read the rule to imply th[e] requirement... [that] its members can be ascertained by reference to objective criteria... [and] the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Id.* at 299 (internal citations omitted). Whether viewed through the lens of manageability, superiority, or predominance, "the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Wolph*, 272 F.R.D. at 482.

The Court finds the class here sufficiently ascertainable. Here, Columbia has already produced lists of the 580 Outlet SMU Builds that were sold from Columbia's Fall 2014 season through its Fall 2016 season. The record indicates that the list of relevant products could be updated to include any Outlet SMU Builds sold after Fall 2016. Any California resident who purchased one of those products at any time after July 1, 2014 is a member of the Class. No detailed analysis is required. Putative class members can identify themselves, *inter alia*, by reference to a purchase receipt, which includes each item's style number, or by locating the style number printed on a garment's care tag, to determine whether it is one of the included style numbers. Columbia can identify some class members, moreover, whose purchase are tracked because they are members of the "Columbia greater rewards" incentive program. *Id.* The implied ascertainability requirement is satisfied. *See Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *7 (N.D. Cal. July 15, 2016) (finding class of olive oil purchasers ascertainable where class members could present "receipts or store/club card data to verify a purchase" or "evidence of purchase by affidavit on a claim form").

**IV.     Rule 23(b)(3) Class Requirements**

12613-008/SE0738_1

1  Once the threshold requirements for certification are met, a plaintiff must establish that
2  the class is appropriate for certification under one of the provisions in Rule 23(b). Here,
3  Plaintiffs move to certify the class pursuant to Rule 23(b)(3) which requires a plaintiff to
4  establish "that the questions of law or fact common to class members predominate over any
5  questions affecting only individual members, and that a class action is superior to other available
6  methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here,
7  Plaintiffs sufficiently show that that common questions of fact or law predominate, including: the
8  materiality of the price advertisements to class members' purchasing decisions; class members'
9  actual exposure to the statement; their understanding of the meaning of the statement; and
10 individualized entitlement to relief. The Court examines each in turn.

### a. Materiality and Reliance

Questions of materiality and reliance are determined based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs. *See Benson v. Kwikset Corporation*, 152 Cal.App.4th 1254, 1274 (2007) (in UCL, CLRA, and FAL claims, courts apply the reasonable consumer standard and "must view the labeling from the perspective of those consumers for whom the [challenged] designation is important"). A "representation is 'material'…if a reasonable consumer would attach importance to it or if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (*quoting Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 333 (2011) and Restatement 2d Torts, section 538 (2)(b)). Further, if the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class.'" *Id.* (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (Cal. App. 2009)).

Here, Plaintiffs demonstrated that Columbia "knows or has reason to know" that its consumers "regard[ ] or [are] likely to regard" the reference pricing on Outlet SMU Builds "as important in determining [their] choice of action" shopping at Columbia Outlets. *See Hinojos*, 718 F.3d at 1107. The merits here favor a finding that Columbia's representation is objectively material, and any questions of reliance and causation can therefore be resolved as to the Class as a

whole. Further, expert opinions put forth by Plaintiffs coincide precisely with a finding of materiality. Plaintiffs expert opines that decades of research show that "external Reference Prices have been consistently shown to have significant impact on consumers' purchasing processes and decisions," by increasing their perceived value of items with reference prices affixed. Plaintiffs' expert concludes that because the reference prices Columbia's uses on its Outlet SMU Builds do not truly reflect former prices, consumers misunderstand them and "are deceived into making purchases that they might not have otherwise made." In sum, the finder of fact can determine on a class basis whether Columbia's misrepresentations were material, and therefore whether members of the Class relied on them. Thus, materiality, and any questions of reliance can be determined on a classwide basis.

### b. Damages/Restitution

Class treatment here is appropriate because Plaintiffs demonstrated that damages (or restitution) can be determined on a classwide basis using at least one of several models. The Supreme Court in *Comcast* held that "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable" to the alleged misconduct and "be consistent with [the plaintiff's] liability case[.]" *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013). Under *Comcast*, it is "the court's duty to take a 'close look' at" the model and "conduct a 'rigorous analysis'" to determine whether the model is appropriate to capture damages under plaintiff's theory of liability. *Id.* at 1432-33; *Leyva v. Medline Indus., Inc.,* 716 F.3d 510, 514 (9th Cir.2013) (under *Comcast*, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.")

Plaintiffs' expert is prepared to calculate and testify regarding three methods for calculating restitution and damages: (1) a full refund model, under which class members who return the products they purchased are granted a full refund of the price they paid ("Full Refund"); (2) a promised price discount model, under which class members recover the an amount equivalent to the discount implied by the Outlet SMU Build's inline price ("Promised Discount"); and (3) disgorgement of profit model, under which class members recover the full purchase price of the Outlet SMU Builds they purchased, less the "landed cost" of the product,

meaning the cost to Columbia to manufacture the garment and ship it to the United States ("Disgorgement"). Each of these models is consistent with Plaintiffs' theory of liability, is calculable based on data within Columbia's possession and control, and has been approved in similar cases within this Circuit.

Under the Full Refund model, class members would return the purchased garment, and recover as restitution their full purchase price; full refund restitution has been approved of by California courts and the Ninth Circuit in false advertising cases where class members returned the product at issue. *See F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993) (approving full-refund restitution under FTC Act where defendant advertised heat detectors by falsely inflating the degree of fire protection provided); *Spann*, 307 F.R.D. at 530 (certifying false reference pricing class action, finding full refund model consistent with plaintiff's theory of liability); *cf. Makaeff v. Trump Univ., LLC,* 309 F.R.D. 631, 637–38 (S.D. Cal. 2015) (finding full refund model consistent with plaintiff's theory of liability where the injury from the alleged fraud was "not in the value of the thing sold," but in the fact that plaintiffs "did not receive what they thought they were buying," i.e. courses taught by instructors hand-picked by Donald Trump). Moreover, full refunds are available as a measure of damages under the CLRA, which allows recovery of damages for all moneys spent in reliance on the fraud. Cal. Civil Code 1780(a)(1); *Makaeff*, 309 F.R.D. at 638. Under the Promised Discount model, Plaintiffs and members of the class recover the percentage discount they believed they were promised, measured against the amount they actually spent. That measure is consistent with Plaintiffs' theory of liability, that members of the Class were induced to purchase Outlet SMU Builds based on Columbia's materially misrepresented discount. Finally, the Disgorgement model grants class members restitution for money spent in reliance on the fraud, minus the objective cost to Columbia of manufacturing and shipping the garment. The Disgorgement measure would restore the money class members spent in reliance on the unlawful fraud, and would fairly account for whatever "value" they may have received from their purchase. *See, e.g.*, *Spann*, 307 F.R.D. at 530. Courts in this circuit have found class issues predominate in very similar cases, applying the exact models Plaintiffs advance here. None of the models would compensate class members for

damages except those attributable to Columbia's precise misrepresentations on their price tags, and money spent based on those representations.

Plaintiffs' proposed damages and restitution models are therefore consistent with *Comcast* and Ninth Circuit authority interpreting it, and predominate over individual issues of monetary relief.

### V.     Rule 23(b)(2) Class Requirements

Here, an injunctive class is also appropriate under 23(b)(2). Certification under that rule is appropriate where the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole. . . . That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir.2010)).

Here, the conduct that has injured the Class is a single misleading scheme that has applied uniformly since approximately July 1, 2014: Columbia's price tags on Outlet SMU Builds sold at its Outlet stores appear to show a true former reference price above a reduced price, when in fact the item was never sold anywhere at the higher price. As such, a 23(b)(2) Class is also appropriate.

### VI.     Conclusion

For the foregoing reasons, the Motion for Class Certification is **GRANTED** for a class defined as: "All consumers who have purchased an Outlet SMU Build at a Columbia Outlet store in the State of California since July 1, 2014, through the conclusion of this action."

**IT IS SO ORDERED**

Dated: _____

_____
United Stated District Court Judge
Hon. Yvonne Gonzalez Rogers