1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2     Including Professional Corporations
   P. CRAIG CARDON, Cal. Bar No. 168646
3  JAY T. RAMSEY, Cal. Bar No. 273160
   1901 Avenue of the Stars, Suite 1600
4  Los Angeles, California 90067-6055
   Telephone:    310.228.3700
5  Facsimile:    310.228.3701
   ccardon@sheppardmullin.com
6  jramsey@sheppardmullin.com

7  Attorneys for Defendants
   COLUMBIA SPORTSWEAR COMPANY and
8  COLUMBIA BRANDS USA, LLC (f.k.a.
   COLUMBIA SPORTSWEAR USA
9  CORPORATION)

10

                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12

13  JEANNE and NICOLAS STATHAKOS,        Case No. 4:15-cv-04543-YGR
    individually and on behalf of all others
    similarly situated,                  *Hon. Yvonne Gonzalez Rogers*
14
                                         **COLUMBIA'S NOTICE OF MOTION
15             Plaintiffs,               AND MOTION FOR SUMMARY
                                         JUDGMENT AND OPPOSITION TO
16        v.                             PLAINTIFFS' MOTION FOR CLASS
                                         CERTIFICATION**
17  COLUMBIA SPORTSWEAR COMPANY;
    COLUMBIA SPORTSWEAR USA
    CORPORATION;

18             Defendants.

19                                       Date:        April 25, 2017
                                         Time:         2:00 p.m.
20                                       Courtroom:    1 (4th Floor, Oakland)

21

22

23

24

25

26

27

28

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on April 25, 2017 at 2:00 p.m. or as soon thereafter as the matter may be heard in Courtroom 1 on the 4th Floor of the United States District Court for the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, Oakland, CA 94612, Defendants Columbia Sportswear Company and Columbia Brands USA, LLC (f.k.a Columbia Sportswear USA Corporation) (collectively, "Columbia") will and hereby do move the Court for an order summarily adjudicating the Third Amended Complaint filed by Plaintiffs Jeanne and Nicolas Stathakos ("Plaintiffs") or, in the alternative, summarily adjudicating Plaintiffs' prayers for monetary relief. This Motion is made on the grounds that the undisputed facts establish that Plaintiffs are not entitled to any relief whatsoever in this action and particularly are not entitled to monetary relief.

This motion is based on this Notice of Motion and Motion, the attached Joint Memorandum of Points and Authorities in Support of the Motion and in Opposition to Class Certification, and all documents filed herewith, all pleadings, papers and records in the Court's file in this action, any oral argument permitted at hearings on the motion, any additional evidence the Court may deem appropriate, and upon such other things as the Court may consider, including such other matters of which the Court shall or may take judicial notice.

Dated: January 31, 2017                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____ /s/ Jay T. Ramsey _____
                                                    P. CRAIG CARDON
                                                    JAY T. RAMSEY

                                            Attorneys for Defendants
                                    COLUMBIA SPORTSWEAR COMPANY and
                                COLUMBIA BRANDS USA, LLC (f.k.a. COLUMBIA
                                    SPORTSWEAR USA CORPORATION)

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................ 2

   A. Columbia's Outlet SMU Builds ................................................................ 2

   B. Columbia's Pricing Of Its Outlet SMU Builds ........................................ 4

   C. Plaintiffs' Claims And The Proposed Class .............................................. 4

   D. Plaintiffs' Purchases Of Outlet SMU Builds ............................................ 5

   E. Survey Of Columbia Outlet Customers .................................................... 7

   F. Plaintiffs' Counsel In This Case ............................................................... 8

III. PLAINTIFFS FAILED TO SUBMIT EVIDENCE ON EVERY ASPECT OF
    THEIR CLAIMS ............................................................................................... 10

   A. Plaintiffs Did Not Submit Any Evidence That Columbia's Reference Prices
      Are Invalid ............................................................................................... 10

   B. Plaintiffs Did Not Submit Any Evidence Of Deception, Reliance,
      Materiality, Or Concrete Injury In Fact .................................................. 13

      1. The evidence confirms that there is no uniform understanding of
         what the reference prices represented ............................................. 14

      2. There is no evidence that the putative class was deceived by the
         reference prices, relied on them, or that they would have changed
         their behavior had they known the reference prices were purportedly
         false .................................................................................................. 15

   C. Plaintiffs Present No Evidence Supporting A Legally Viable Measure Of A
      Monetary Award ....................................................................................... 18

      1. Plaintiffs three proffered damage models are legally invalid .......... 18

      2. Plaintiffs present no evidence of the value of the product they
         purchased or that value determinations can be made with common
         evidence ............................................................................................ 22

IV. SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFFS' CLAIMS ........ 24

   A. It Is Uncontroverted That The Reference Prices On Plaintiffs' Seven
      Products Were Valid ................................................................................. 24

   B. It Is Uncontroverted That Plaintiffs Did Not Rely On The Reference Prices ......... 24

      1. Plaintiffs purchased five of seven items after filing the Complaint ............ 24

2.     Plaintiffs admit that they would have purchased their items anyway, even if they had known about the alleged misrepresentations ................... 25

C.     At A Minimum, Plaintiffs' Prayers For a Monetary Award Should Be Summarily Adjudicated ........................................................................... 25

V.     PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED ........ 26

A.     Prerequisites For Certifying A Class Pursuant To Rule 23 ................... 26

B.     Plaintiffs Have Not Met Their Burden Of Proof ................................. 26

C.     Plaintiff Cannot Meet The Requirements Of 23(a) ............................. 27

    1.     The Proposed Class Is Not Ascertainable ................................. 27

    2.     Plaintiffs Have Not Established Numerosity ............................. 28

    3.     Plaintiffs Have Not Established Commonality .......................... 28

        a.     Plaintiffs have presented no evidence that the reference prices were invalid, let alone evidence that such invalidity for each product is subject to common proof ............................ 28

        b.     There is also no evidence that deception, reliance and materiality are subject to common proof ....................... 29

        c.     There is also no evidence that restitution or damages is subject to common proof ............................................. 33

    4.     Plaintiffs Are Not Typical ....................................................... 33

    5.     Plaintiffs Are Not Adequate Class Representatives ................... 34

D.     Plaintiffs Cannot Meet The Requirements Of 23(b)(3) ....................... 35

    1.     Common Issues Of Law And Fact Do Not Predominate ............ 35

    2.     A Class Action Is Not Superior ................................................ 35

E.     Plaintiffs Have Not Met The Requirements Of 23(b)(2) ...................... 36

VI.     CONCLUSION ................................................................................. 39

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Access Now Inc. v. Walt Disney World Co.*
211 F.R.D. 452 (M.D. Fla. 2001)...................................................................................... 38

*In re Activision Sec. Litig.*
621 F. Supp. 415 (N.D. Cal. 1985) .................................................................................... 34

*Algarin v. Maybelline, LLC*
300 F.R.D. 444 (S.D. Cal. 2014) ..............................................................................30, 32, 37

*Arnold v. UA Theatre Circuit, Inc.*
158 F.R.D. 439 (N.D. Cal. 1994)....................................................................................... 34

*Brown v. Hain Celestial Grp., Inc.*
2015 WL 3398415 (N.D. Cal. May 26, 2015).................................................................... 32

*Caldera v. J.M. Smucker Co.*
2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) .................................................................... 20

*Camasta v. Jos. A. Bank Clothiers, Inc.*
761 F.3d 732 (7th Cir. 2014) ............................................................................................. 18

*Campion v. Old Republic Home Prot. Co.*
272 F.R.D. 517 (S.D.Cal. 2011) ....................................................................................... 37

*Cattie v. Wal-Mart Stores, Inc.*
504 F. Supp. 2d 939 (S.D. Cal. 2007)...................................................................13, 25, 29

*Chow v. Neutrogena*
2013 WL 5629777 (N.D. Cal. August 30, 2016)................................................................ 30

*Comcast Corp. v. Behrend*
133 S. Ct. 1426 (2013) ...............................................................................................26, 33

*Davis v. HSBC Bank Nevada N.A.*
691 F.3d 1152 (9th Cir. 2012) .......................................................................................... 10

*Ellis v. Costco Wholesale Corp.*
657 F.3d 970 (9th Cir. 2011) ............................................................................................ 33

*Forrand v. Federal Ex. Corp*
No. CV 08-1360, 2013 WL 1793951 (C.D. Cal. April 25, 2013) ........................................ 33

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
903 F.2d 176 (2d. Cir. 1990) ............................................................................................ 34

*Goldemberg v. Johnson & Johnson Consumer Cos.*
    317 F.R.D. 374 (S.D.N.Y. Oct. 4, 2016)................................................................ 32

*Guido v. L'Oreal, USA, Inc.*
    No. CV 11–1067, 2013 WL 3353857 (C.D. Cal. July 1, 2013) ............................... 33

*Haley v. Medtronic, Inc.*
    169 F.R.D. 643 (C.D. Cal. 1996) ........................................................................... 36

*Halliburton Co. v. Erica P. John Fund, Inc.*
    134 S. Ct. 2398 (2014) ........................................................................................... 26

*Hangarter v. Provident Life & Acc. Ins. Co.*
    373 F.3d 998 (9th Cir. 2004) ................................................................................. 11

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................34, 35

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992) .............................................................................33, 34

*Hinojos v. Kohl's Corp.*
    718 F.3d 1098 (9th Cir. 2013) ............................................................................... 25

*In Re Hotel Tel. Charges*
    500 F.2d 86 (9th Cir. 1974) ................................................................................... 36

*Ice v. Hobby Lobby Stores, Inc.*
    No. 14-744, 2015 WL 5731290 (N.D. Ohio Sept. 29, 2015) ................................. 18

*Johnson v. Harley-Davidson Motor Co. Group, LLC*
    285 F.R.D. 573 (E.D. Cal. 2012) .......................................................................... 30

*Johnson v. Jos. A. Bank Clothiers*
    No. 13-756, 2014 WL 4129576 (S.D. Ohio Aug. 19, 2014)................................... 18

*Jones v. ConAgra Foods, Inc.*
    2014 WL 2702726 (N.D. Cal. Jun. 13, 2014) .......................................... 13, 22, 25, 29, 31, 32

*Katz v. Comdisco, Inc.*
    117 F.R.D. 403 (N.D. Ill. 1987)............................................................................ 34

*Kirkpatrick v. J.C. Bradford & Co.*
    827 F.2d 718 (11th Cir. 1987) (superceded by statute on other grounds, *In re*
    *Vesta Ins. Group, Inc. Secs. Litig.*, 1999 U.S. Dist. LEXIS 23541) ...................... 35

*Kumar v. Salov N. Am. Corp.*
    No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016) ................... 32

*Mahfood v. QVC, Inc.*
    No. SACV 06-0659, 2008 WL 2381088 (C.D. Cal. Sept. 22, 2008)..................................29, 37

*Makaeff v. Trump Univ., LLC*
    309 F.R.D. 631 (S.D. Cal. 2015) ...................................................................... 19

*Mazza v. Am. Honda Motor Co.*
    666 F.3d 581 (9th Cir. 2012) ........................................................................... 30

*McVicar v. Goodman Glob., Inc.*
    No. SACV131223DOCRNBX, 2015 WL 4945730 (C.D. Cal. Aug. 20, 2015) ..................... 30

*Moore v. Apple Inc.*
    309 F.R.D. 532 (N.D. Cal. 2015)..................................................................... 30

*Mulder v. Kohl's Dep't Stores, Inc.*
    No. 15-11377-FDS, 2016 WL 393215 (D. Mass. Feb. 1, 2016) .............................. 18

*Nilon v. Natural Immunogenics Corp.*
    Case No. 3:12cv00930, 2013 WL 5462288 (N.D. Cal. Sept. 30, 2013) .................. 38

*Ogden v. Bumble Bee Foods, LLC*
    2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ..................................................18, 20, 22

*Pablo v. Servicemaster Global Holdings, Inc.*
    No. 08-03894, 2011 U.S. Dist. LEXIS 87918 (N.D. Cal. Aug. 9, 2011)...........................35, 36

*In re POM Wonderful LLC*
    2014 WL 1225184 (C.D. Cal. Mar. 25, 2014).......................................................... 20

*Pulaski & Middleman, LLC v. Google, Inc.*
    802 F.3d 979 (9th Cir. 2015) ........................................................................... 18

*Rahman v. Mott's LLP*
    2014 WL 6815779 (N.D. Cal. Dec. 3, 2014)........................................................... 32

*Red v. Kraft Foods, Inc.*
    2012 WL 8019257 (C.D. Cal. Apr. 12, 2012).....................................................20, 33

*Reid v. Johnson & Johnson*
    780 F.3d 952 (9th Cir. 2015) ........................................................................... 10

*Rodriguez v. Gates*
    No. CV 99-13190, 2002 WL 1162675 (C.D. Cal. May 30, 2002) ........................... 27

*Saavedra v. Eli Lilly & Co.*
    2014 7338930 (C.D. Cal. Dec. 18, 2014)............................................................ 22

*Schwartz v. Upper Deck Co.*
    183 F.R.D. 672 (S.D. Cal 1999) ...................................................................... 27

*Shaulis v. Nordstrom*
    120 F. Supp. 3d 40, 2015 WL 4886080 ............................................................................. 18

*Siles v. ILGWU Nat'l Ret. Fund*
    783 F.2d 923 (9th Cir. 1986) ......................................................................................... 28

*Spann v. J.C. Penny Corp.*
    2015 WL 1526559 (C.D. Cal. Mar. 23, 2015) ......................................................19, 20, 21

*Spann v. J.C. Penny Corp.*
    307 F.R.D. 508 (C.D. Cal. 2015) .................................................................................. 32

*Spencer v. Beavex, Inc.*
    No. 5-CV-1501, 2006 WL 6500597 (S.D. Cal. Dec. 15, 2006) ....................................27, 28

*Spokeo, Inc. v. Robins*
    No. 13-1339, 136 S.Ct. 1540 (May 16, 2016) ......................................................14, 25

*Stearns v. Ticketmaster Corp.*
    655 F.3d 1013 (9th Cir. 2011) ...................................................................................... 32

*Stuart v. Radioshack Corp.*
    No. C-07-4499 EMC, 2009 WL 281941 (N.D. Cal. Feb. 5, 2009) ........................................ 38

*In re TFT-LCD Antitrust Litig.*
    267 F.R.D. 583 (N.D. Cal. 2010) .................................................................................. 38

*Tokoshima v. Pep Boys*
    No. 12-cv-04810-CRB, 2014 WL 1677979 (N.D. Cal. Apr. 28, 2014) ................................. 26

*Tovar v. U.S. Postal Service*
    3 F.3d 1271 (9th Cir. 1993) .......................................................................................... 27

*Vaccarino v. Midland Nat. Life Ins. Co.*
    No. CV 11-5858, 2013 WL 3200500 (C.D. Cal. June 17, 2013) ........................................ 33

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ...................................................................................26, 36

*Vasquez-Torres v. StubHub, Inc.*
    No. 07-1328, 2008 U.S. Dist. LEXIS 22503 (C.D. Cal. March 8, 2008) ............................... 36

*Vega v. T-Mobile USA, Inc.*
    564 F.3d 1256 (11th Cir. 2009) .................................................................................... 28

*Wal-Mart Stores, Inc. v. Dukes*
    131 S.Ct. 2541 (2011) ..........................................................................................26, 28, 37

*Waters v. Advent Prod. Dev., Inc.*
    No. 07cv2089, 2011 WL 7216619 (S.D. Cal. Feb. 22, 2011) ............................................ 37

*Williams v. Gerber Prods. Co.*
   552 F.3d 934 (9th Cir. 2008) ............................................................... 10

**<u>State Cases</u>**

*Bagdasarian v. Gragnon*
   31 Cal. 2d 744 (1948) ....................................................................... 22

*Buckland v. Threshold Enterprises, Ltd.*
   155 Cal. App. 4th 798 (2007) ............................................................. 24

*Caro v. Procter & Gamble Co.*
   18 Cal. App. 4th 644 (1993) ............................................... 13, 24, 29, 30

*Chapman v. Skype Inc.*
   220 Cal. App. 4th 217 (2013) ............................................................. 10

*Colgan v. Leatherman Tool Group, Inc.*
   135 Cal. App. 4th 663 (2006) ...........................................................18, 33

*Cortez v. Purolator Air Filtration Prods. Co.*
   23 Cal. 4th 163 (2000) ....................................................................... 18

*Day v. AT&T Corp.*
   63 Cal. App. 4th 325 (1998) ...........................................................18, 19

*Durell v. Sharp Healthcare*
   183 Cal. App. 4th 1350 (2010) .........................................10, 13, 16, 18, 25, 37, 38

*Hall v. Time Inc.*
   158 Cal. App. 4th 847 (2008) ...........................................................14, 25

*Howard Gunty Profit Sharing Plan v. Superior Court*
   88 Cal. App. 4th 572 (2001) ............................................................. 35

*Knapp v. AT & T Wireless Servs., Inc.*
   195 Cal. App. 4th 932 (2011) ............................................................. 30

*Kwikset Corp. v. Superior Court*
   51 Cal. 4th 310 (2011) ...................................................................14, 20, 24

*Lavie v. Procter & Gamble Co.*
   105 Cal. App. 4th 496 (2003) ............................................................. 10

*Nelson v. Pearson Ford Co.*
   186 Cal. App. 4th 983 (2010) ............................................................. 19

*Pfizer Inc. v. Superior Court*
   182 Cal. App. 4th 622 (2010) ............................................................. 13

*Richardson v. Roberts*
  210 Cal. App. 2d 603 (1962) ............................................................. 19

*Sacramento S.R. Co. v. Heilbron*
  156 Cal. 408 (1909) ........................................................................ 22

*Sevidal v. Target Corp.*
  189 Cal. App. 4th 905 (2010) ......................................................... 13

*Small v. Lorillard Tobacco Co.*
  94 N.Y.2d 43 (1999) ....................................................................... 18

*In re Tobacco II*
  240 Cal. App. 4th 779 (2015) .......................................... 18, 19, 20, 21

*In re Tobacco II Cases*
  46 Cal. 4th 298 (2009).................................................... 13, 19, 20, 21

*In re Vioxx Class Cases*
  180 Cal. App. 4th 116 (2009) ....................................................22, 33

*In re Yasmin and Yaz Marketing*
  No. 3:09-md-2100, 2012 WL 865041 (S.D. Ill Mar. 13, 2012) ............. 33

**Statutes, Rules, Regulations, Constitutional Provisions**

Cal. Business and Professions Code § 17200................................................. 4

Cal. Business and Professions Code § 17500.............................................. 4, 10

Cal. Business and Professions Code § 17501................................................ 11

Cal. Civil Code § 1770(a)(13) ......................................................................... 10

Cal. Civil Code § 1850.................................................................................... 4

Fed. R. Civ. P. 23.......................................................................... *passim*

**Other Authorities**

30 Op. Atty. Gen. 127 (1957) (attached as Exhibit 15) .............................. 11

# I. __INTRODUCTION__

Consumer class actions alleging false advertising should be about obtaining relief from a bad actor who has ripped off a class of aggrieved customers. This is not such a case. Defendants Columbia Sportswear Company and Columbia Brands USA, LLC (f.k.a. Columbia Sportswear USA Corporation) ("Columbia") are respected in the industry and have been known for creating innovative apparel, footwear, accessories and equipment for outdoor enthusiasts since 1938. Columbia has become a leading global brand by channeling the company's passion for the outdoors and innovative spirit into technologies and performance products that keep people warm, dry, cool and protected year-round. At its outlets, Columbia sells not only products that customers can find at mainline retail establishments (like REI), but also a wider-range of products made for the outlet. These outlet items are of equal quality to the inline styles – in fact, there is no evidence or suggestion in this case that Columbia makes inferior or substandard product for its outlets. Of course, at its outlets, Columbia sells these high quality products for substantially lower prices, and consumers can often combine the lower prices with other discounts and coupons to purchase top-rate outerwear for pennies on the dollar. Put simply, Columbia provides great product for low prices, and there is no suggestion that any customer has been anything but delighted by their outlet purchases. Even Plaintiffs Jeanne and Nicolas Stathakos ("Plaintiffs"), who shop regularly at Columbia outlet stores, continue to adore the brand and stand by its high-quality. Even they are happy with the prices they paid for the products they received.

Yet, Columbia faces a consumer class action alleging that its pricing is false and deceptive. Nearly every retailer has been hit with a similar suit; Plaintiffs' counsel here have filed many of them. Some of these cases involve inferior outlet product, but not this one. Some involve misrepresentations about the value of the items sold, but not this one. And some involve a class of customers who have been harmed by false pricing practices, but not this one. Not surprisingly, then, as explained below, Plaintiffs' Motion for Class Certification should be denied. Plaintiffs have not and cannot establish that Columbia engaged in false advertising at all, let alone that its claims can be proved classwide. Moreover, Plaintiffs individual claims should be adjudicated as a matter of law.

## II. FACTUAL BACKGROUND

### A. Columbia's Outlet SMU Builds

Columbia creates and sells a wide-range of products for outdoor enthusiasts, including men's, women's and youth clothing. The products are sold through a variety of different channels, including (1) by Columbia, both online and in Columbia's non-outlet stores; (2) through Columbia's wholesale partners (like REI) and international distributors, both in-store and, in some cases, online; and (3) by Columbia in Columbia's outlet stores. (Declaration of Melissa Olson ("M. Olson Decl.") ¶ 2.)

At the outlet stores, Columbia offers for sale both products that were previously sold elsewhere ("Inline Styles") and products offered for sale only at the outlets ("Outlet SMU Builds"). The Outlet SMU Builds are not inferior to the Inline Styles – as a rule, across all channels, Columbia creates quality products using the same or similar quality fabrics, materials, and performance "technologies" (*e.g.*, waterproof, wind-resistant, heat-resistant, etc.). (M. Olson Decl. ¶¶ 3, 5.)

This case is about *only* Columbia's Outlet SMU Builds. Outlet SMU Builds are, except in rare circumstances, modeled after Inline Styles. Columbia starts with the Inline Style, and then makes small aesthetic changes to give the Outlet SMU Build a slightly different look. The angle of a pocket might go from straight up and down to slightly angled; a zipper might change color; a hemline might get added; the waste-line might get pinched or expanded; the Columbia logo might get moved from the breast pocket to the sleeve; and so on. There is no set formula or policy detailing what changes will be made to each garment. Even products within the same category may receive different alterations – the changes to one winter coat may be different to the changes made to a different winter coat. Moreover, because certain garments are inherently simpler (*e.g.*, a t-shirt v. a jacket), some garments undergo fewer changes than others. (M. Olson Decl. ¶ 6.)

Importantly, except in rare circumstances, none of the changes affect the quality or value of the products. The same or equal quality fabrics are used; the same technologies are used; and so on. A cold and wind-resistant Outlet SMU Build ski jacket is designed to be as cold and wind-resistant as its Inline Style counterpart. (M. Olson Decl. ¶ 7.) Even Plaintiffs' expert, Gabrielle

Goldaper, agreed that, though different, both Inline Styles and Outlet SMU Builds are "beautifully done" and done "very nicely." (Ex. 3[1], Goldaper Depo at 113:4-9; 118:4-8.) That said, Goldaper consistently confirmed that she was not, and could not, render an opinion on the value of the different products, the proper price for the products, or what consumers would pay for the products, and therefore could not dispute that an Inline Style and an Outlet SMU Build have equal value to the consumer. (Goldpaper Depo at 29:13-30:3, 73:3-11, 84:25-15; 131:12-22.) Indeed, there is no suggestion in this case that Columbia is making inferior or subpar products for its outlets.

That the products are nearly identical and of equal value is evident from two key facts. **First**, the cost to manufacture and ship the Inline Styles and Outlet SMU counterparts to the United States (referred to as "Landed Cost") is nearly identical. In some cases, the Outlet SMU Build is slightly more expensive; in others, the Inline Style is slightly more expensive. But, in either case, the difference in cost is minimal. (M. Olson Decl. ¶¶ 8, 11.) Notably, at Plaintiffs' request, Columbia produced costing information for over 30 pairs of inline and outlet items, but Plaintiffs do not rely on this evidence at all – that is because it confirms that Columbia is making equal quality garments across the board.

**Second**, it is impossible to identify which is the inline product and which is the outlet product. In fact, a consumer survey confirmed that customers view Inline Style and Outlet SMU Build equally, do not distinguish any value difference between them, and cannot tell which is which. (*See* Ramsey Decl. Ex. 20, Report of Carol A. Scott, PH.D. ("Scott Report") at ¶¶ 7.c., 26, 28.) Nor could Plaintiffs. (Ex. 1, Jeanne Stathakos Deposition ("JS Depo") at 113:21-120:6; 121:19-124:8; Ex. 2, Nicolas Stathakos Deposition ("NS Depo") at 62:4-16; 64:14-25; 66:23-67:24; 73:23-77:25; 82:2-85:10.) So that the Court can see for itself, Columbia will bring product samples to the hearing.

---

[1]    All Exhibit references are to the Declaration of Jay T. Ramsey.

From the time that Columbia started making Outlet SMU Builds (Fall 2014) to the season that just ended (Fall 2016), Columbia has produced and sold at its outlets 580 unique Outlet SMU Builds.  (M. Olson Decl. ¶ 4.)

**B.  Columbia's Pricing Of Its Outlet SMU Builds**

Products offered for sale at Columbia's outlet stores (whether Inline Styles or Outlet SMU Builds) generally have a tag that lists two prices:  a higher price, which Plaintiffs refer to as a reference price, and a lower price, at which the consumer can buy the product.  (Declaration of Bobby Bui ("Bui Decl.") ¶ 3.)  For Inline Styles, the reference price is the price at which that product was offered for sale through other channels. For Outlet SMU Builds, except in rare circumstances, the reference price is the price at which its inline counterpart was offered for sale through other channels.  (M. Olson Decl. ¶ 9.)  The reference price for the Outlet SMU Builds is thus the price at which Columbia would have sold the item in its inline channels.  (M. Olson Decl. ¶ 9.)

At Columbia's outlets, products sell for the majority of the time at the selling price on the price tag.  That said, customers often pay even less.  If the item is not selling well, it might get marked down, or, at the end of the season, it might be placed on clearance.  The store also runs all-store discounts ("All Store 40% Off"), generally on holidays, and may, at different times, run "Buy Three, Get One Free" or "All Fleeces $10 off" type discounts.  Columbia also sends out coupons to its rewards members, which might result in further discounts.  (Bui Decl. ¶ 4.)  And still other discounts might apply:  Plaintiffs, for example, received an additional 10% off certain of their purchases for being AAA members.  (Ex. 1, JS Depo at 55:8-20.)

**C.  Plaintiffs' Claims And The Proposed Class**

The Third Amended Complaint ("TAC") asserts claims for violation of: (1) California's Unfair Competition Law, Business and Professions Code § 17200 ("UCL"); (2) California's False Advertising Law, Business and Professions Code § 17500 ("FAL"); and (3) California's Consumer Legal Remedies Act, Civil Code §§ 1850, et seq. ("CLRA").  These claims are based on the same theory: Columbia's use of reference prices is deceptive because, according to Plaintiffs, those exact same items were not previously sold for the reference price.  (TAC ¶¶ 2-5.)

Plaintiffs assert their claims on behalf of a California class. With their Motion, Plaintiffs seek to certify a class of "all consumers who purchased an Outlet SMU Build garment at a Columbia Outlet store in the State of California since July 1, 2014, through the conclusion of this action." (*See* Dkt. No. 61.)

**D.**     **Plaintiffs' Purchases Of Outlet SMU Builds**

Plaintiffs have shopped at many different Columbia outlet stores numerous times. Plaintiffs confirmed that they choose to purchase items for a variety of reasons, including actual out-the-door price (after application of all discounts and coupons), fit, color, style, their particular needs, and so on. (*See* Ex 1, JS Depo at 37:7-40:15; 42:2-44:7; 61:4-16; 70:3-71:12; Ex. 2, NS Depo at 30:24-31:6; 33:21-34:16; 78:11-23.) Out-the-door price (after application of all discounts) was also an important factor to these particular Plaintiffs – most of the items they purchased were on sale, marked down, or on the clearance rack, or Plaintiffs used coupons or other discounts to obtain an even lower price. (*Id.* *See also* Ex. 1, JS Depo at 46:22-47:24; 54:6-55:20; 61:4-16; Ex. 2, NS Depo at 38:10-39:1.)[2]

Although Plaintiffs have purchased numerous items, only seven were Outlet SMU Builds. (M. Olson Decl. ¶ 10.) Key information about each Outlet SMU Build is summarized on Appendix A to this brief. As to the seven items:

(1) Each of the seven items has an Inline Style counterpart. (M. Olson Decl. ¶ 10.)[3] The total Landed Cost to Columbia of creating each Outlet SMU Build was nearly identical to the total Landed Cost of each comparable Inline Style – sometimes the cost of the Outlet SMU Build was slightly more, sometimes slightly less. (M. Olson Decl. ¶ 10; Ex. H to Plaintiffs' Motion; Ramsey Decl. ¶ 11.)

---

[2]     This contrasts somewhat with the survey respondents (discussed below), who stated that style, fit, quality and other attributes of the garment were most important to their purchasing decisions.

[3]     In Goldaper's Report (¶ 41), Goldaper suggests that the seventh Outlet SMU Build on Appendix A (XL6923) did not have an Inline Style counterpart. Goldaper is simply wrong and she cites no evidence suggesting why she made this assumption.

(2)  For each of the seven items, the reference price on the price tag was the price at which the item would have sold in inline channels.  For six of the items, the reference price was at or below the price at which the Inline Style counterpart sold.  For one, Columbia made improvements to the Inline Style, and so the reference price was increased accordingly.  The reference price was still the price at which the item would have sold in inline channels.  (M. Olson Decl. ¶¶ 12-14.)

(3)  Five of the seven items were purchased *after* the filing of this lawsuit.  (*See* Ramsey Decl. ¶¶ 7-10; Exs. 6-8.)  Plaintiffs also admitted at their depositions that by at least the filing of the Complaint in this action in October 2015, they knew that the reference prices were purportedly false.  (Ex. 1, JS Depo at 23:1-24:12; 24:24-25:6; Ex. 2, NS Depo at 26:6-12.)

(4)  Of the seven items, when asked whether Plaintiffs, knowing now that the exact same items never sold for the reference prices listed on the tags, would have purchased the items nevertheless for the prices they paid the day they purchased them, for four of the items, Plaintiffs confirmed that they *would still have made the purchases*, and for the remaining three items, they could not state one way or the other.  (*See* Appendix A, citing Ex. 1, JS Depo at 63:12-19, 66:12-21, 70:3-71:22, 73:4-74:3, 74:7-75:10, 75:12-76:12, 76:14-78:21, 78:25-80:3, 80:5-81:8; Ex. 2, NS Depo at 87:7-89:21, 98:4-100:2, 101:4-8, 91:19-94:21.)[4]  For example, for a white jacket, Jeanne Stathakos answered as follows:

> Q:  Do you know whether this white jacket was ever sold at a Columbia retail store, REI or anyplace [other than] the Columbia outlet?
>
> A:  I do not know.
>
> Q:  If I told you that it had never been sold at a Columbia retail store [or] REI, and had only been sold at the outlet, and I also told you it had never been sold anywhere for $140, which is the higher price on the price tag, would you have still brought the jacket that day for the $39.98 that you paid?
>
> . . .

---

[4]  With respect to Outlet SMU Build No. 5 on Appendix A (XO5035), Jeanne Stathakos initially stated she was uncertain whether she would still have made the purchased, then changed her answer to no, but then ultimately stated that it was her husband's purchase.  (Ex. 1, JS Depo at 76:14-78:21.)  Nicolas Stathakos stated he was unsure whether he would still have purchased the item.  (Ex. 1, NS Depo at 91:19-94:21.)

1    A:  I probably would have, yes.

2  (Ex. 1, JS Depo at 79:16-80:3)

3     **E.     Survey Of Columbia Outlet Customers**

4        Columbia's expert conducted a survey of Columbia outlet customers to investigate what

5  actual putative class members believe and how they actually behave.  The key conclusions from

6  the survey, summarized below, do not support Plaintiffs' assumptions about consumer behavior:

7        (1)     83.8% of respondents expect to find products at Columbia outlet stores that were

8  *made specifically for the outlet*, and were sold *only at* the outlet.  At the very least, then, a

9  significant number of consumers believe that at least some portion of the products sold at the

10  Columbia outlet were never sold anywhere else.  (Ex. 20, Scott Report at ¶ 32.)  As a result, there

11  is no basis for Plaintiffs' assumption that consumers believe the reference price to represent the

12  price at which the exact same product sold elsewhere.

13        (2)     Consumers' beliefs about what Columbia's reference prices represent vary, and

14  there is no uniform understanding as to what the reference prices represent.  Some consumers

15  stated that the reference prices relate to original or regular retail prices, but others have different

16  views, and no one view was by a majority of respondents.  (Ex. 20, Scott Report at ¶¶ 7.b, 24, 27.)

17        (3)     Purchases are driven by the actual attributes of a garment, including style, look,

18  design, quality, durability, comfort, fit, size and so on.  Also relevant is actual, out-the-door price

19  for the product (what they paid), though this factor was mentioned by fewer respondents as a

20  reason for their purchases than the attributes of the garment.  Least important, and mentioned by

21  fewer than 6% of respondents as a reason for their purchase, was the discount or sale they believed

22  they were obtaining.  (Ex. 20, Scott Report at ¶ 7.a., 22-26.)  In fact, most consumers do not even

23  remember there being a reference price.  While nearly 75% of consumers remember the price they

24  paid, only 20.7% could remember a higher price on the tag.  (Ex. 20, Scott Report at ¶ 24.)

25  Similarly, when asked how consumers judged whether they believed they received a good deal,

26  over 80% of respondents listed a factor other than a reference price – stating that they knew they

27  were getting a good deal based on the actual price paid, the quality of the garment, and their own

28  understandings of what garments or equal quality typically cost.  Only 18.4% of respondents

mentioned something about the product being marked down. (Ex. 20, Scott Report at ¶ 25.) There is thus no basis for Plaintiffs' assumption that the putative class uniformly relied on the reference prices and the perceived discount to make their purchases.

(4)     Consumers perceive the Inline Styles and Outlet SMU Builds to have equal quality and that they are equally likely to purchase one over the other. Moreover, their interest in purchasing the Outlet SMU Build is ***not affected*** by the knowledge that the reference price does not refer to the price at which the exact same item previously sold, but instead refers to the price of a similar, but not identical, product sold in regular retail stores. (Ex. 20, Scott Report at ¶¶ 7.a., 7.b, 26-31.) Put simply, even when consumers are told that the reference price is not the price at which the exact item sold, but instead is the price at which a similar item sold, they are equally as interested in the product. (*Id.*) There is thus no basis for Plaintiffs' assumption that consumers would change their purchasing decision if they knew about the alleged invalidity of Columbia's reference prices.

### F.     Plaintiffs' Counsel In This Case

The group of law firms representing Plaintiffs in this case have filed numerous class actions against retailers, challenging their pricing practices. Counsel's tactics have not been entirely above-board. Indeed, it appears many are set-up class actions, driven by counsel and not for the benefit of either the named plaintiffs or the putative class.

For example, in a recent case – *Barber v. DSW Inc.*, Central District Cal. Case No. 8:15-cv-02024 – the defendant moved to dismiss on the grounds that surveillance evidence showed that the plaintiff intentionally purchased items so that she could serve as a class representative. The surveillance video even showed the individual taking photographs of the store and her purchases. Nine days after the surveillance evidence came to light, plaintiffs voluntarily dismissed the action. Class counsel there was Tycko & Zavareei LLP. (Ramsey Decl. ¶ 12, Exs. 9-10.)

In another case, against Levi Strauss & Co., the same counsel group filed a complaint on behalf of Donovan Farwell. After counsel stated that they needed to substitute in a different plaintiff because Farwell had to check into a rehabilitation facility, the case proceeded with a different plaintiff. However, counsel for Levi Strauss (who is counsel for Columbia here), hired

an investigator to contact Mr. Farwell. He told the investigator that "[h]e met Wayne Kreger, formerly counsel for plaintiffs in that action, through Mr. Kreger's girlfriend. He then said that Mr. Kreger's girlfriend asked him to go to the Levi's store and make purchases so he could serve as the lead plaintiff." Mr. Farwell further confirmed that he had not been to rehab, but simply told counsel that he no longer wished to serve as a class representative; his agreeing to do so in the first place was a "momentary lapse in judgment." (Ramsey Decl. ¶ 13, Ex. 11 [Declaration of Investigator].)

In yet another case, filed against Joseph A. Bank in the Southern District of California, the court ultimately sanctioned the plaintiff in that case $40,000 when it came to light that he had not made purchases from Joseph A. Bank as alleged. (*See Luca v. Jos. A. Bank Clothiers, Inc.*, Case No. 3:14-cv-01631-LAB-JLB (Dkt. No. 159) (S.D. Cal.).) In its order, the court held that although counsel did not act recklessly (and therefore avoided a sanction), it did act carelessly. (Ramsey Decl. ¶ 14, Ex. 12.)

Finally, in this action, Plaintiffs Jeanne and Nicolas Stathakos were recruited as class representatives through an online survey. That survey asked what stores the customer had shopped at, and specifically informed the customer that "[a]t the center of the class action lawsuit investigation is the allegation that some California outlet stores and discount retail stores are misleading consumers into purchasing merchandise based on false representations that the items have been marked down from a fictitious 'original,' 'retail,' or 'MSRP' price. These so-called 'original' prices are often fake prices at which items were never actually offered for sale." (*See* Ramsey Decl. Ex. 13.) Plaintiff Nicolas Stathakos completed the survey on August 18, 2015, and was thereafter contacted by a paralegal working with counsel. (Ramsey Decl. ¶ 15, Ex. 14.) The Stathakoses only point of contact between the initial contact and the filing of the Complaint in this action was the paralegal. (*Id.*) At their depositions, the Stathakoses confirmed that they did not speak to an attorney until February 2016, several months *after* this case was filed in October 2015. (Ex. 1, JS Depo at 125:20-126:21; Ex. 2, NS Depo at 10:17-12:12; 13:3-16:2; 17:4-18:6; 19:1-20:3.)

## III. PLAINTIFFS FAILED TO SUBMIT EVIDENCE ON EVERY ASPECT OF THEIR CLAIMS

Throughout their Motion, Plaintiffs apply incorrect legal standards in hopes of hiding that they cannot present evidence, let alone common, classwide evidence, to establish the actual prerequisites of their claims. Plaintiffs' position is that a reference price is deceptive unless it is the price at which *the exact same item* previously sold. They further contend that the deception is automatically material, the consumer automatically relies on the deception to purchase the item, and the consumer is automatically entitled to a monetary award that does not take into account the value of the good received. As explained below, Plaintiffs' assumptions are legally and factually deficient.

### A. Plaintiffs Did Not Submit Any Evidence That Columbia's Reference Prices Are Invalid

Each of Plaintiffs' claims under the UCL, FAL, and CLRA requires a false or misleading statement that is likely to deceive a reasonable consumer. *See* Cal. Bus. & Prof. Code § 17500; Cal. Civ. Code § 1770(a)(13); *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *Davis v. HSBC Bank Nevada N.A.*, 691 F.3d 1152, 1161-62 (9th Cir. 2012); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003).

Plaintiffs steadfastly assert that a reference price is "bona fide" only if it is the price at which the exact same item previously sold. If it is not, then the reference price is purportedly invalid and automatically deceptive, without any further inquiry. (*See* Mot. at 11:5-12:9.) Plaintiffs' "expert," Dr. Larry Compeau, "concludes" that Columbia's reference prices are "deceptive" because "the outlet exclusive items were never sold anywhere at those Reference Prices." (*See* ECF Dkt. No. 61-1, Compeau Report, ¶ 6.) He further states: "In order for a Reference Price to be valid it should either reflect the actual price at which the item is regularly sold in the marketplace, or a price at which the seller has actually sold a majority of units, or a price at which the seller has offered the item for sale for a majority of the time. Since the outlet exclusive items are never sold anywhere but the Columbia outlet, and never sold anywhere at that

Reference Price, the net effect is that Columbia Reference Prices lack veracity." (*Id.* ¶ 41.)[5] In his deposition, Compeau even went so far as to state that the price at which the exact same item sold, but in a different color, would not be a "bona fide" reference price. (Ex. 4, Compeau Depo at 63:13-84:9.)

Plaintiffs and Compeau are wrong as a matter of law. Even where a price tag explicitly labels the reference price as a "former price" of the item (no such statement is made here), California law holds that it is not deceptive as long as it reflects the "predominating price" of *either* the exact same item or an item "similar to the article in question." Specifically, California Business & Professions Code § 17501 states that "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the ***prevailing market price*** as above defined . . . ." Section 17501 equates the "prevailing market price" with the "worth or value" of the product. *See id.* ("the worth or value of anything advertised is the prevailing market price"). In interpreting these statutes, the California Attorney General held that a "prevailing market price" is the price at which the same product *or a similar one* would sell: "The phrase 'prevailing market price' means the predominating price that may be obtained for merchandise *similar* to the article in question on the open market and within the community where the article is sold." 30 Op. Atty. Gen. 127 (1957) (emphasis added) (attached as Exhibit 15).[6] As a result, even a reference price explicitly labeled as a "former price" is valid if it reflects the price of the same item *or a similar item*. Indeed, this Court has already recognized that a reference price is non-deceptive so long as

---

[5]    Notably, Compeau provides no support for this conclusion (which is really a legal one, not proper for expert testimony). *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law"). Compeau's opinion, in sum and substance, is that reference prices have an "effect" on consumers (an "effect" that is not measurable and not uniformly material), and therefore if the reference prices are not "bona fide" according to his definition, they are deceptive. He does not, however, provide any basis for any opinion that a reference price is deceptive if it reflects or fails to reflect one or more things. He is simply stating his assumption that a reference price is not "bona fide" under the law if it does not represent the price at which the same item sold. But, as set forth in the main text, this is not the law in California.

[6]    This interpretation makes sense on a practical level – the "prevailing market price" is a benchmark for worth or value, which can be judged not only by the product's intrinsic qualities, but also the price at which similar products are sold or offered for sale.

it was the price of ***either*** the same item or an item that was "similar enough . . . to fall within the Attorney General's opinion." (*See* ECF Dkt. No. 41, n.6.)

Here, Plaintiffs' only evidence is that the reference prices on the Outlet SMU Builds were not the price at which the exact same item previously sold. Plaintiffs do not even attempt to present evidence showing that the reference prices are not the price at which a similar item sold. Moreover, Plaintiffs also do not present any evidence suggesting that such proof would be common classwide. It could not be: At issue are 580 separate items sold over the course of several years. Determining whether the reference price on each item was the price at which a comparable item sold would require ***not only*** comparing each Outlet SMU Build to its Inline Style counterpart and determining whether the items are sufficiently similar, ***but also*** comparing each Outlet SMU Build to other similar products, sold either by Columbia or its competitors (*e.g.*, The NorthFace, Patagonia, etc.). Such an inquiry would encompass numerous individual inquiries about each product and potentially a mini-trial as to whether items were sufficiently similar to be valid comparisons.

In response, Plaintiffs will no doubt point to the opinions of Gabrielle Goldaper, their "expert" on the aesthetic differences between the Outlet SMU Builds and their Inline Style counterparts. As set forth in Columbia's concurrently filed Daubert Motion as to Goldaper, however, at best, her testimony must be limited to identifying the aesthetic differences – she can testify, for example, that one garment uses a particular type of stitch or hemline, while its counterpart uses different stitches and hemlines. Beyond that, her opinions are either inadmissible or irrelevant. First, Goldaper confirmed that she was not rendering an opinion that the items were or were not "comparable" within the meaning of California law. (Ex. 3, Goldaper Depo at 95:20-96:11.) Second, Goldaper also confirmed that she was not, and could not, render an opinion on the value of the different products, the proper price for the product, or what consumers would pay for the products, and therefore could not dispute either that an Inline Style and an Outlet SMU Build have equal value to the consumer or that each would garner the same price in inline distribution channels. (Ex. 3, Goldpaper Depo at 29:13-30:3, 73:3-11, 84:25-15; 131:12-22.) Third, her testimony that the aesthetic differences were either "modest" or "major" is based on her

own, personal subjective opinions, created solely for this case, none of which are based on generally accepted and testable standards in the industry. (*See* Goldaper Daubert.) In short, Goldaper's opinion is that Outlet SMU Builds and their Inline Style counterparts may have some differences in construction, but that does not prove that they are not similar under the law.

### B. **Plaintiffs Did Not Submit Any Evidence Of Deception, Reliance, Materiality, Or Concrete Injury In Fact**

It is well-settled that, in a false advertising case, there can be no claim under the UCL, FAL, or CLRA unless the consumer relied on the allegedly false advertisement to make a purchase. *In re Tobacco II Cases*, 46 Cal. 4th 298, 324-26 (2009) (UCL/FAL); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010) (CLRA). A lack of reliance may manifest in several ways. For example, if a consumer is not exposed to the allegedly false statement, courts hold that there is no reliance, and therefore no claim under the UCL or FAL. *See, e.g.*, *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 910 (2010) (consumers who did not see the allegedly false advertisement did not have a claim); *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 625 (2010) (same). Similarly, if a consumer does not believe the representation – *i.e.*, suspects that it might be false – but purchases the product anyway, there is no reliance. *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993) (no reliance on a material misrepresentation where the consumer did not believe the allegedly misleading statement). And, if the consumer purchases the product for a reason other than the representation, and confirms that she would have made the purchase even had she known about the misrepresentation, there is no reliance. *See, e.g.*, *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *15-16 (N.D. Cal. Jun. 13, 2014) (plaintiff failed to show reliance on a product's "all natural" label where plaintiffs failed to present evidence to distinguish between consumers who purchased the item because of the representation, and those who purchased the item because of brand recognition, price, taste, texture, and retail positioning of the product). In the context of a CLRA claim, this is sometimes referred to as a lack of materiality – if the alleged misrepresentation was not material to the person's purchase, they do not have a claim and are not entitled to any relief. *Id. See also Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946–47 (S.D. Cal. 2007) ("California requires a plaintiff suing under the CLRA for

misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation.").

Consistent with this, where a consumer confirms that she would have purchased the product anyway, even knowing now that the representation was false (and therefore she did not rely on that representation), courts hold that the individual lacks standing to pursue her claims (and therefore is not entitled to any relief). *See, e.g.*, *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008) (plaintiff lacked standing where, despite a "meticulous" description of defendant's allegedly misleading advertisements, he did not allege that he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011) (holding that, to establish standing to sue, the consumer must prove that their purchase "would not have been made but for the misrepresentation"). This is also consistent with the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, No. 13-1339, 136 S.Ct. 1540, *1549 (May 16, 2016), which held that, in order to have Article III standing, the plaintiff must have suffered a concrete and particularized loss.

Here, even if Plaintiffs could prove that the reference prices were somehow invalid, Plaintiffs have not presented any evidence: (i) that consumers understood the reference prices uniformly; (ii) that consumers relied on the reference prices to make their purchases; or (iii) that any consumer would have changed their behavior had they known the reference prices were purportedly false.

### 1. *The evidence confirms that there is no uniform understanding of what the reference prices represented*

Plaintiffs present no evidence concerning what putative class members – actual Columbia outlet customers – believed the reference prices represented. Instead, they rely on the "expert" opinions of Compeau. He "concludes," without providing any facts or supporting statements from any Columbia customers, that "[c]onsumers will ***most likely*** view the Reference Price as a price that consumers paid in the past, most likely at a non-outlet store." (Compeau Report ¶ 46 [emphasis added].) He also states that "reasonable consumers will understand the Reference Price to be an actual former price from which a deal or discount is being offered." (*Id.* ¶ 36. *See also*

*id.* ¶ 29 ["[c]onsumers interpret the Reference Price as a price that the item has been sold for"].) At his deposition, however, Compeau conceded that he has never conducted any research, and cannot identify any research, about how consumers interpret reference prices where, as here, they are not labeled at all. (Ex. 4, Compeau Depo at 57:23-59:17; 197:17-198:20.) Nor has he done any research as to Columbia customers specifically, or even consumers who shop at outlets generally. (Ex. 4, Compeau Depo at 60:22-61:19; 65:12-67:7; 117:5-118:17; 153:12-156:11.) Moreover, in the research he completed, which analyzed the interpretations of consumers looking at a reference price labeled "Compare At," Compeau indicated that a full 30% of consumers believe those reference prices are entirely made up! (Ex. 4, Compeau Depo at 59:10-17.) Compeau's wholly unsupported opinions are insufficient. If anything, Compeau's research confirms that different consumers have different interpretations of reference prices, and therefore do not have uniform understandings of what they represent.[7]

By contrast, the survey conducted by Columbia's expert revealed that there is no uniform understanding of what the reference prices represent. (Ex. 20, Scott Report at ¶¶ 7.b, 24, 27.) In fact, contrary to Plaintiffs' assumptions, 83.8% of respondents expect to find products at Columbia outlet stores that were ***made specifically for the outlet***, and were sold ***only at*** the outlet. (Ex. 20, Scott Report at ¶ 32.) At the very least, then, a significant number of consumers must know that the reference prices on at least some portion of the products sold at the Columbia outlet cannot be the price at which the item sold elsewhere.

### 2. *There is no evidence that the putative class was deceived by the reference prices, relied on them, or that they would have changed their behavior had they known the reference prices were purportedly false*

Plaintiffs also present no actual evidence that putative class members relied on the reference prices to ***actually make a purchase***. Instead, they again cite only Compeau. His

---

[7] Compeau's opinions are replete with other insufficiencies. Compeau relies on research that is decades old rather than studies focused on the modern outlet mall experience and how shoppers perceive outlets today. Nor does the research take into account a consumer's ability to instantly comparison shop with their mobile phones, either by accessing the internet or using a price-comparison app. (*See* Compeau Daubert.)

Case No. 3:15-cv-04543-YGR
SMRH:480680901.5                    COLUMBIA'S MSJ AND OPPOSITION TO CLASS CERT

opinions, however, fall short; at best, they state that reference prices affect a consumer's understanding of the value of the item and make the consumer more likely to purchase the item. But that is not reliance, at least not the reliance required to have a claim under the UCL, FAL, or CLRA. A consumer has a claim only if he purchased the product because of the representation. If he purchased the product for another reason (actual out-the-door price, fit, need, color, design, brand loyalty, etc.), then there is no deception, reliance or claim.

Compeau's incomplete opinions are littered throughout his report. In describing his research, he states that "[c]onsumers rely on Reference Prices to form judgments ***about a price offer***" (Compeau Report ¶ 5), but does not state that consumers rely on such prices to actually make purchases. He further states that "[t]he use of Reference Prices in price offers increases consumers' perceptions of value of the deal and willingness to purchase without further search" (Compeau Report ¶ 5), but again ***does not and cannot*** state that any consumer, let alone every consumer uniformly, actually purchased the item because of the reference price, as opposed to some other factor (actual out-the-door price, fit, need, color, design, brand loyalty, etc.). (*See also* Compeau Report ¶¶ 18; 25 [concluding only that a false reference price is deceptive, not that it automatically results in reliance or materiality, let alone uniformly across all consumers].) He also states in his report that even where the consumer does not believe the reference price is valid, his "meta-analyses" show that the consumer's perception of the value of the product is still affected. (*See* Compeau Report ¶ 20.) Even assuming Compeau's "meta-analysis" is admissible (*see* Compeau Daubert), this is again not enough to get Plaintiffs over the finish line: That a reference price (even if known to be false) may have some effect on a consumer's perception of the value of the item does not mean that the consumer actually purchased the item because of that reference price. Moreover, Compeau admits that the reference price's effect on each consumer's perceptions is not uniform – it depends not only on the person, but also the size of the discount. In fact, Compeau actually confirms that if the difference between the reference price and the sale price is too large, consumers may conclude that the product is worth less, not more, as a result of the reference price. (Compeau Report ¶ 21; Ex. 4, Compeau Depo at 57:2-21.)

In Paragraph 51 of his report, in summarizing his conclusions, Compeau comes close to saying that at least some consumers *might* rely on the representations to make purchases they *might* not otherwise have made. He states that "[c]onsumers rely on this Reference Price in their purchase decision processes and behaviors. Since these Reference Prices are false (the Columbia items were never sold at the References Prices), consumers are deceived into making purchases that they *might* not have otherwise made." This is again not enough: Did consumers *actually* make purchases they would not have otherwise made (the required reliance), or is that only a possibility? And what evidence is there that every consumer *actually* purchased items they would not otherwise have purchased because of the reference price? None. Indeed, at his deposition, Compeau repeatedly confirmed that he could not render an opinion stating that all consumers purchase items because of reference prices, and also could not render an opinion showing which consumers, if any, relied on the reference prices to make a purchase. (Ex. 4, Compeau Depo at 145:22-150:20; 256:10-22; 269:20-273:23.)[8]

In fact, the evidence shows that consumers do not all rely on the reference prices to purchase items. Plaintiffs themselves confirmed at their depositions that they would still have purchased their items even if they knew that the reference prices did not reflect the price at which the exact same item previously sold. (*See* Appendix A.) Moreover, survey evidence confirms that purchasing decisions are driven by the actual attributes of a garment (style, look, design, quality, etc.) and actual out-the-door price. Rarely is a perceived discount, based on a reference price, ever a factor in a purchasing decision. . (Ex. 20, Scott Report at ¶¶ 22-26.) Moreover, when survey respondents were specifically told that the reference prices referred to the price at which a similar item sold, not the price at which the same item sold, they confirmed – like Plaintiffs – that their

---

[8]    In his conclusion (Paragraph 53), Compeau states that "Columbia knows that its outlet consumers are motivated by the appearance of a discount and rely on these Reference Prices to make purchase decisions," and further states that the reference prices "induce[] consumers to purchase Columbia outlet exclusive products that, absent the decept[ion], they otherwise would not have bought." Compeau retracted this testimony at his deposition. He confirmed again that while he could state that some consumers *probably* purchased their items relying on the reference prices, he could not say that everyone did, and further could not render an opinion that would identify who did and who did not. (Ex. 4, Compeau Depo at 269:20-273:23.)

purchasing decisions **would not have changed.** (Ex. 20, Scott Report at ¶ 26-31.) Of course, it is impossible to identify, without individual inquiry, the few people that actually rely on the reference prices to actually change their purchasing decisions.

    **C.**    <u>Plaintiffs Present No Evidence Supporting A Legally Viable Measure Of A Monetary Award</u>

       *1.*    *Plaintiffs three proffered damage models are legally invalid*

Recent caselaw has firmly established that, where a consumer alleges false advertising about a product, the **only** viable measure of a monetary award (whether for restitution under the UCL and FAL or for damages under the CLRA) is the price paid less the value of the good received. Monetary awards are limited to "the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received" – in other words, the price/value differential. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 174 (2000); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) (adopting the *Cortez* definition); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 676 (2006) (same formula under the CLRA); *Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014). Indeed, in a recent, but seminal decision, from the California Court of Appeal, the court reviewed and rejected various formulas calculating a monetary award, holding that where the consumer received something of value, **the only** "proper measure" of a monetary award was price paid less value received. *In re Tobacco II*, 240 Cal. App. 4th 779, 794 (2015).[9],[10]

---

[9]     The use of the price/value differential measure of damages is not singular to California. Courts across the country have held that a plaintiff is not entitled to a monetary award unless the item he receives is worth less than what he paid. *See, e.g.*, *Shaulis v. Nordstrom*, 120 F. Supp. 3d 40, 2015 WL 4886080 at *8; *Mulder v. Kohl's Dep't Stores, Inc.*, No. 15-11377-FDS, 2016 WL 393215, at *6 (D. Mass. Feb. 1, 2016); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739-40 (7th Cir. 2014); *Johnson v. Jos. A. Bank Clothiers*, No. 13-756, 2014 WL 4129576, at *5 (S.D. Ohio Aug. 19, 2014); *Ice v. Hobby Lobby Stores, Inc.*, No. 14-744, 2015 WL 5731290, at *7 (N.D. Ohio Sept. 29, 2015); *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999).

[10]     Consistent with the fact that only one measure of a monetary award is available, "court[s] cannot, under the equitable powers of [the UCL], award whatever form of monetary relief it believes might deter unfair practices." *Korea Supply Co.*, 29 Cal.4th at 1148. In "the absence of a measurable loss, the [UCL] does not allow the imposition of a monetary sanction." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998) (plaintiff who receives a product equal in value to the

Plaintiffs ignore these decisions, relying instead on the "alternative measures" of restitution addressed in *Spann v. J.C. Penny Corp.*, 2015 WL 1526559, *5-8 (C.D. Cal. Mar. 23, 2015). But *Spann **was decided before the California Court of Appeal decided Tobacco II***, and is irreconcilable with that opinion and with the principles set forth therein (*Spann* was decided May 18, 2015; *Tobacco II* on September 28, 2015). Indeed, after *Tobacco II* was decided, in a pricing case like this one, a court analyzed the "alternative measures" from *Spann* and rejected them as legally invalid. *See Chowning*, 2016 WL 1072129, at *6-10.[11]

**Full Refund**. *Tobacco II* held that the UCL does not permit a full refund where, as here, plaintiff received value for the product. *Tobacco II*, 240 Cal. App. 4th at 794 ("plaintiffs' full refund theory does not provide an alternative basis for restitution"). Put simply, Plaintiffs and the putative class cannot receive a product with at least some value for free. Consistent with this, "[n]umerous district courts have held that consumers alleging mislabeling or deceptive advertising are not entitled to a full refund where the challenged product conferred some benefit notwithstanding the false advertising." *Chowning*, 2016 WL 1072129, at *7 (citing cases). Notably, it is no fix that Plaintiffs or the putative class might return the goods in exchange for a full refund. Such a remedy is recessionary in nature and there is "no authority supporting the remedy of rescission in a UCL action." *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983, 1018 (2010). Indeed, numerous courts have rejected classwide awards of full refunds for this very

---

amount he paid has "given nothing, regardless of whether he or she was improperly induced to purchase the [product] in the first place"); *see also Tobacco II*, 240 Cal. App. 4th at 801 ("[o]bviously, restitution without proof of any loss to any plaintiff cannot be characterized as restitutionary.") (emphasis in original). Nor can monetary relief under the UCL be punitive; it is strictly limited to amounts to make the victim "whole, equitably." *Day*, 63 Cal. App. 4th at 339. Said another way the monetary relief available under the UCL cannot put a plaintiff in a **better** position than he would have been in had the alleged misconduct never occurred. *Richardson v. Roberts*, 210 Cal. App. 2d 603, 608 (1962) ("A court of equity does not sit to confer a windfall.").

[11] Plaintiffs also cite other, even older cases, in support of certain of their damages models. None of those cases, however, were decided after *Tobacco II*, and therefore they are not relevant to this Court's analysis. The most recent case – *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631 (S.D. Cal. 2015) – was a district court case decided September 18, 2015, still before *Tobacco II* on September 28. Moreover, it involved allegations that the product received was entirely worthless. Here, there is no contention that the outlet items purchased were worthless.

reason – because it was not feasible that everyone could return their good or plausible that they would want to. *See Tobacco II*, 240 Cal. App. 4th at 795.[12]

**Promised Discount**. This proposed measure purports to award the "amount plaintiff thought she was saving" based on the defendant's allegedly misleading advertising. *Spann*, 20155 WL 1526559, at \*7. But, this measure again fails to take into account the value of the product received. For example, if the reference price was $100, and the selling price was $80, for a purported promise of a 20% discount, under this calculation, the consumer should have paid $64 (20% off $80), and would therefore be entitled to an award of $16 ($80 less $64). But, if the value of the product received was $100, $80, or anything greater than $64, she would have received more than permitted under the price paid less value received formula. In short, the Promised Discount "is not actually a measure of restitution;" instead, it "erroneously emphasizes the value of the transaction Plaintiff had anticipated" – *i.e.*, the claimed discount. *See Chowning*, 2016 WL 1072129, at \*10 (relying on *Tobacco II* and rejecting promised discount). It improperly "seeks to award Plaintiff the bargain she expected to receive without any focus on the amount of money she lost in the process." *Id.*

**Disgorgement Of Profit**. *Tobacco II* also expressly rejected the notion that an award of full profits is an appropriate restitutionary remedy where, as here, plaintiff has received value for the product received. *Tobacco II*, 240 Cal. App. 4th at 799-801. For example, if the price paid for a garment was $80, and it cost Columbia $40 to create, under this formula, the consumer would be entitled to $40. But, as before, if the value of the product was $100, $80, or anything greater than the $40 cost, she would have received more than permitted under the price paid less value received formula. For this reason, in *Tobacco II*, the court examined and rejected the rationale relied on in *Spann* to fashion this remedy. In *Spann*, the court authorized an award of profits as "restitutionary disgorgement" because it involved money the defendant obtained from the plaintiff. *Spann*, 2015

---

[12]    *See also Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, \*4 (C.D. Cal. Apr. 15, 2014); *In re POM Wonderful LLC*, 2014 WL 1225184, \*3 (C.D. Cal. Mar. 25, 2014); *Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at \*13 (N.D. Cal. Jan. 2, 2014); *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, \*11 (C.D. Cal. Apr. 12, 2012); *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 337 (2011).

WL 1526559, at *8. But, as explained in *Tobacco II*, simply returning money obtained by the defendant without taking into account the value the plaintiff received for her money would be "non-restitutionary disgorgement," which is not permitted under the UCL. 240 Cal. App. 4th at 801 ("[r]estitution without proof of any loss to any plaintiff cannot be characterized as *restitutionary* . . . . [W]hen consumers received some benefit from products, disgorgement of full profits would constitute nonrestitutionary disgorgement.") (emphasis in original). *See also Chowning*, 2016 WL 1072129, at 8 ("restitutionary disgorgement cannot simply be the profit that a defendant earns by defrauding a plaintiff, instead it must represent the amount the plaintiff lost as a result of the defendant's deceptive practices").

In sum, after *Tobacco II*, it is clear that Plaintiffs' three proffered damages models are legally invalid. The **only** proper calculation is price paid, less value received. As the Court in *Chowning* explained, after dismissing each of the *Spann* "alternative measures":

> Defendant appears to have stumbled across a gap in statutory coverage with its price comparison-advertising scheme. That is, a retailer can continue to advertise with false "original prices" and remain immune from paying restitution as long as the retail value of the items is higher than the price charged. For instance, a retailer can sell an item for $35 dollars between January and March, then advertise in April that the item has an "original price" of $80 but is now on sale for $30. Even though the item never sold for $80, the retailer can evade restitution under the price/value differential measure simply by arguing that, despite the misrepresentation, the value of the item ($35) exceeded the price consumers paid ($30). The risk of this behavior is particularly acute where, as here, a retailer maintains a private brand exclusively sold in its stores, meaning that there is no realistic measure of fair market value because no other retailers carry the item. If it appears that Defendant has exploited a shortcoming in California's consumer protection laws, the solution lies with the California legislature. This Court defers to the careful "balance struck in this state's unfair competition law between broad liability and limited relief." *Korea Supply Co.*, 63 P.3d at 949. The UCL and FAL authorize only restitution and injunctive relief. The fact that a defendant may have found a way to escape liability from monetary damages under the statutes as currently written is a matter best left to the legislature.

*Id.* at 11.[13]

---

[13] This legislative "gap" does not mean misbehaving retailers will get off scot free. The UCL permits government enforcement actions by the Attorney General or local district attorneys. In fact, just recently, the district attorney for Los Angeles filed several government enforcement actions against certain department stores. (*See* Ramsey Decl. ¶ 16.) Consistent with this,

### 2. Plaintiffs present no evidence of the value of the product they purchased or that value determinations can be made with common evidence

Because Plaintiffs rely on legally invalid damage models, each of which ignores the value of the item received, Plaintiffs do not present any evidence that they or anyone else is entitled to a monetary award under the price paid, less value received formula. Nor do they present any evidence that common, classwide proof can be used to calculate that formula.[14]

"[V]alue" in the price/value differential means "market value" or "actual fair market value." *Saavedra v. Eli Lilly & Co.*, 2014 7338930, at *4-5 (C.D. Cal. Dec. 18, 2014). *See also Bagdasarian v. Gragnon*, 31 Cal. 2d 744, 753 (1948) ("'[V]alue,' in connection with legal problems, ordinarily means market value."); *Sacramento S.R. Co. v. Heilbron*, 156 Cal. 408, 415 (1909) ("the law universally has adopted market value as establishing actual value...."). "Fair market value," in turn, is defined in as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect." *Saavedra*, 2014 WL 7338930, at *4-5 (citing Black's Law Dictionary 18c (10th ed. 2014) (under "Value")). Courts hold that fair market value should be established by looking at not only the price at which the same product sold, but also at the prices of comparable products. *See, e.g.*, *Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131, 136 & n.22 (2009) (looking to the "market price of another, comparable product" to determine the actual value of the product at issue for restitution purposes under the UCL and FAL); *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *20-22 (N.D. Cal. June 13, 2014) (finding plaintiff's damages models problematic

---

Compeau testified that the governments decide which practices are sufficiently "material" to warrant suit. (Ex. 4, Compeau Depo at 145:11-25.) No government enforcement suit was filed against Columbia.

[14] Plaintiffs' "damages" expert – Arthur Olsen – is not a damages expert at all. He is not an expert on the value or proper price for garments and admits he is not qualified to render any opinions in that regard. (Ex. 5, Olsen Depo at 15:15-16:16.) He also did not and cannot render an opinion on a proper measure of damages or restitution; instead, he simply took the models provided by counsel and ran calculations. (Ex. 5, Olsen Depo at 19:10-21:9.) Finally, he did not and is not qualified to calculate a "price premium" measure of damages. (Ex. 5, Olsen Depo at 17:17-18:5.)

where plaintiff did not identify the prices of any comparable products).

Here, Plaintiffs present **absolutely no evidence** about the value of the products they purchased or the value of any of the other Outlet SMU Builds that Columbia sold – which number 580 different items. In fact, their expert, Goldaper, expressly stated, numerous times, that she was not and could not render an opinion either on the actual value of the various products or the price Columbia could obtain in the marketplace for the products. (Ex. 3, Goldpaper Depo at 29:13-30:3, 73:3-11, 84:25-15; 131:12-22.) Even when Goldaper compared an Inline Style and Outlet SMU Build pair, she did not and could not render an opinion that one had a value greater or less than the other. (*Id.*) Nor do Plaintiffs present any other evidence of value or that any such evidence is common and classwide.[15]

By contrast, because Columbia's alternations to create the Outlet SMU Builds are minimal and aesthetic only, and because Columbia sets the reference prices to correspond with the price at which the item would sell inline, there is no reason to believe that any item has a fair market value less than the reference price listed. At a minimum, Columbia sells a substantial number (at least a majority) of the outlet items for the selling price, thereby confirming that the product's value **is at least the selling price**. As a result, there is no evidence that anyone is entitled to any restitution under the only legally valid formula – price paid, less value received.

Indeed, the fact that Plaintiffs did not even attempt to calculate damages using the correct measure is effectively an admission that they received goods worth at least what they paid, if not more. In a typical false labeling case (*e.g.*, "organic," "all natural" or "made in America"), the plaintiffs will try to establish a price premium that the company was able to charge as a result of the misrepresentation, because that price premium can then possibly be applied classwide. No

---

[15]    Goldaper also did not consider the technical performance of the items. Columbia does not sell high-fashion garments, where look is more important than performance. How well a Columbia garment keeps a skier warm or a fisherman dry is crucial to the value of the garment, particularly to the consumer looking for performance wear. Inline Styles and Outlet SMU Builds have equal performance characteristics, and Goldaper does not offer any opinions to the contrary.

1   such effort was made here and no such calculation is possible. (*See* Ex. 5, Olsen Depo at 17:17-
2   18:5.)[16]

3   **IV.    SUMMARY JUDGMENT SHOULD BE ENTERED ON PLAINTIFFS' CLAIMS**

4           **A.      It Is Uncontroverted That The Reference Prices On Plaintiffs' Seven Products**
5                   **Were Valid**

6           As set forth above, a reference price is not deceptive if it reflects the price at which either
7   the same item or a similar item previously sold. For each of the seven Outlet SMU Build products
8   that Plaintiffs purchased, the reference price was the price at which the item would have sold in
9   inline channels. For six of the items, the reference price was at or below the price at which the
10  Inline Style counterpart sold. For one, Columbia made improvements to the Inline Style, and so
11  the reference price was increased accordingly. The reference price was still the price at which the
12  item would have sold in inline channels. (*See* Undisputed Fact ("UF") Nos. 1-3.) As a result,
13  Plaintiffs have not presented any evidence that the reference prices were invalid, and therefore
14  summary judgment should be entered on their claims.

15          **B.      It Is Uncontroverted That Plaintiffs Did Not Rely On The Reference Prices**

16                  *1.      Plaintiffs purchased five of seven items after filing the Complaint*

17          As set forth above, if a consumer suspects that the alleged misrepresentation might be
18  false, but purchases the product anyway, there is no reliance. *Caro*, 18 Cal. App. 4th at 668. As a
19  result, if a plaintiff files a lawsuit, alleging a misrepresentation, and then subsequently makes
20  another purchase, that person cannot reasonably rely on the alleged misrepresentation – having
21  asserted the misrepresentation was false, they cannot now rely on it. *See, e.g.*, *Buckland v.*
22  *Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 807–09 (2007) *disapproved on other grounds*
23  *by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ("Buckland concedes she suspected
24  respondents' packaging and marketing was false or misleading, and she bought respondents'
25  products solely to pursue litigation upon the vindication of her suspicions. She therefore lacked

26  _____

27  [16]    Plaintiffs also erroneously included in their damages calculations purchases by employees,
        all of whom receive an employee discount. These transactions should be eliminated. (*See* Ex. 5,
28      Olsen Depo at 37:20-39:11.)

the requisite confidence in the truth and material completeness of their representations, and cannot establish actual reliance for the purpose of her fraud claims.").

Here, it is incontrovertible that Plaintiffs purchased five of their seven items after filing the Complaint. (UF No. 4.) Plaintiffs also admitted at their depositions that by at least the filing of the Complaint in this action in October 2015, they knew that the reference prices were purportedly false. (UF at 5.) Plaintiffs therefore cannot establish reliance as to at least these five items as a matter of law.

### 2. *Plaintiffs admit that they would have purchased their items anyway, even if they had known about the alleged misrepresentations*

As set forth above, unless a consumer can establish that they would not have purchased an item had they known about the alleged misrepresentation, they cannot establish reliance or materiality (*Jones*, 2014 WL 2702726 at *14-16; *Cattie*, 504 F. Supp. 2d at 946-47) or statutory or Article III standing (*Hall*, 158 Cal. App. 4th at 855; *Spokeo*, 136 S.Ct. 1540, *1549; *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013).)

As to the two items purchased before the filing of the Complaint, Plaintiffs confirmed that they would still have purchased one of them, and could not state, one way or the other, as to the other. (UF Nos. 6-7.) As to the other five items, Plaintiffs confirmed that they would have still purchased three of the items, and could not state one way or the other for the remaining two items. For not one item did Plaintiffs affirmatively state that they would not have purchased the item had they known about the alleged misrepresentation. (UF Nos. 6-7.) Nor have Plaintiffs since provided declarations so stating. As a result, they are unable to prove their claims and summary judgment is warranted.

### C. At A Minimum, Plaintiffs' Prayers For a Monetary Award Should Be Summarily Adjudicated

For Plaintiffs to be entitled to a monetary award, whether for restitution under the UCL and FAL or damages under the CLRA, they must prove that they received an item worth less than what they paid. Plaintiffs have made no attempt to prove the value of any of the items they purchased, and therefore cannot establish any entitlement to a monetary award. (UF at 8.) Their

1 prayers for a monetary reward should therefore be summarily adjudicated.

2 **V.     PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE DENIED**

3       **A.     Prerequisites For Certifying A Class Pursuant To Rule 23**

4       "The class action is 'an exception to the usual rule that litigation is conducted by and on

5 behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541,

6 2250 (2011).  Before certifying a class, a court must conduct a "rigorous analysis" to determine

7 whether the party seeking certification has met the prerequisites of Federal Rule of Civil

8 Procedure 23.  *Id*.

9       Plaintiffs must first prove under Rule 23(a) – (1) numerosity, (2) commonality, (3)

10 typicality, and (4) adequacy – and that the putative class is ascertainable.  *Valentino v. Carter-*

11 *Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  If these prerequisites are met, then Plaintiff

12 must establish that he satisfies one of three subsections of Rule 23(b).

13       **B.     Plaintiffs Have Not Met Their Burden Of Proof**

14       A motion for class certification pursuant to Rule 23 is evidentiary.  That Rule "does not set

15 forth a mere pleading standard.  Rather, a party must not only be ***prepared to prove*** that there are

16 in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or

17 defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy

18 ***through evidentiary proof*** at least one of the provisions of Rule 23(b)."  *Comcast Corp. v.*

19 *Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotations and citations omitted) (emphasis

20 added).  *See also Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2423 (2014) ("To

21 prevail on a motion for class certification, a party must demonstrate through ***evidentiary proof***

22 that" Rule 23(b)(3) is satisfied) (emphasis added); *Dukes*, 131 S. Ct. at 2551.  The plaintiff must

23 prove the certification requirements by a preponderance of the evidence.  *Tokoshima v. Pep Boys*,

24 No. 12-cv-04810-CRB, 2014 WL 1677979, at *5 (N.D. Cal. Apr. 28, 2014).

25       Here, as set forth above and further below, Plaintiffs have ignored the correct legal

26 standards that apply to their claims and, as a result, have not presented evidence sufficient to meet

27 their burden of proof.  Plaintiffs have not presented any evidence that (i) the reference prices are

28 not the price at which a similar item sold; (ii) the class was deceived by and relied on the reference

prices; or (iii) the class is entitled to a monetary award. Moreover, Plaintiffs have also not presented any evidence that the above inquiries can be proved with common, classwide evidence. Plaintiffs have therefore not met their burden of proof.[17]

### C. Plaintiff Cannot Meet The Requirements Of 23(a)

#### 1. The Proposed Class Is Not Ascertainable

A "class must be adequately defined and clearly ascertainable before a class action may proceed." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999). A class is not ascertainable where membership cannot be determined without "a fact-specific, individualized determination for each plaintiff." *Spencer v. Beavex, Inc.*, No. 5-CV-1501, 2006 WL 6500597, at *9 (S.D. Cal. Dec. 15, 2006) ("The Court must be able to determine class members without having to answer numerous fact-intensive questions."). *See also Rodriguez v. Gates*, No. CV 99-13190, 2002 WL 1162675, at *8 (C.D. Cal. May 30, 2002) (finding that a class is not ascertainable where "there is no objective way to determine who is a member of the class . . . without first deciding the merits of each putative class member's claim"). Ascertainability is particularly important where, as here, Plaintiff seeks to certify a class under Rule 23(b)(3) because such a class requires that the Court provide class members mandatory notice and an opportunity to opt out of the class. *Id.*

Whether each individual has a claim depends on numerous individual inquiries that cannot be proved with common evidence, including: (i) whether the individual believed the reference price represented the former price of the exact item; (ii) whether the reference price on each item the consumer bought was the price at which a similar item sold; (iii) whether the individual relied on the reference price to make a purchase; (iv) whether the individual would have made the purchase even if she knew the reference price was deceptive; and (v) whether the individual received an item worth less than the price she paid. All of these require "fact-specific,

---

[17]    Moreover, Plaintiffs cannot remedy their failure to include evidence with the moving papers by including it on reply. *See, e.g., Tovar v. U.S. Postal Service*, 3 F.3d 1271, 1273, n.3 (9th Cir. 1993) (new evidence on reply stricken because presenting new information in a reply is improper and deprives the opposing party of an opportunity to respond); *Coleman v. Brown*, No. CIV. S–90–520 LKK/JFM, 2013 WL 1397335, at *24 n.35 (E.D. Cal. Apr. 5, 2013).

1  individualized determination[s] for each plaintiff," and therefore the class is not ascertainable.  *See*
2  *Spencer*, 2006 WL 6500597 at *9.

### 2.  *Plaintiffs Have Not Established Numerosity*

4  Class certification is not appropriate unless the class is so numerous that joinder would be
5  impracticable.  Fed. R. Civ. P. 23(a).  Plaintiffs bear the burden of proving numerosity.  *Dukes*,
6  131 S. Ct. at 2551. Plaintiffs must present evidence that other members of the class exist.  *See*
7  *Siles v. ILGWU Nat'l Ret. Fund*, 783 F.2d 923, 930 (9th Cir. 1986); *Vega v. T-Mobile USA, Inc.*,
8  564 F.3d 1256, 1267-68 (11th Cir. 2009) (improper to infer numerosity without evidence).

9  Here, there is no evidence that any of the reference prices were invalid, no evidence that
10  anyone relied on the reference prices, no evidence anyone would not have purchased the items
11  anyway even if the reference prices were false, and no evidence anyone received an item worth
12  less than what they paid.  As a result, there is no evidence that anyone is a member of the class.
13  Plaintiffs have failed to establish numerosity.

### 3.  *Plaintiffs Have Not Established Commonality*

15  **a.**  **Plaintiffs have presented no evidence that the reference prices**
16  **were invalid, let alone evidence that such invalidity for each**
17  **product is subject to common proof**

18  Plaintiffs' entire motion is premised on an incorrect legal standard – that a reference price
19  is deceptive if it is not the price at which the exact same item previously sold.  To the contrary, a
20  reference price is valid as long as it is the price at which *either* the same item *or* a similar item
21  previously sold.  Plaintiffs have not presented any evidence that any of the reference prices were
22  not the price at which a similar item previously sold.  More importantly, Plaintiffs also have not
23  presented any evidence that such an inquiry, into each item, is subject to common proof.  It could
24  not be:  At issue are 580 separate items sold over the course of several years.  Determining
25  whether the reference price on each item was the price at which a comparable item sold would
26  require *not only* comparing each Outlet SMU Build to its Inline Style counterpart and determining
27  whether the items are sufficiently similar, *but also* comparing each Outlet SMU Build to other
28  similar products, sold either by Columbia or its competitors (*e.g.*, The NorthFace, Patagonia, etc.).

Such an inquiry would encompass numerous individual inquiries about each product and potentially a mini-trial as to whether items were sufficiently similar to be valid comparisons.  *See, e.g.*, *Mahfood v. QVC, Inc.*, No. SACV 06-0659, 2008 WL 2381088, *3-4 (C.D. Cal. Sept. 22, 2008) (rejecting certification where proving deception required separate analyses for numerous products about what the product sold for during different time periods).

### b.     There is also no evidence that deception, reliance and materiality are subject to common proof

Plaintiffs cannot demonstrate commonality because they have not presented ***any evidence*** that Plaintiffs and the putative class all understood the reference prices uniformly, relied on the allegedly false reference prices, or that the reference prices were material to each consumer's decision to purchase each separate garment.  Nor have they presented any evidence that customers would not have made their purchases had they known about the alleged misrepresentations.  And, most importantly, Plaintiffs have not presented ***any evidence*** that any of the above can be established with common proof.  In this scenario, courts routinely deny class certification for lack of commonality, particularly where, as here, the evidence (including testimony from the Plaintiffs themselves and survey evidence) confirms that deception, reliance and materiality are not common to the class.

Deception, reliance and materiality cannot be established where either the consumer did not believe the representation was valid (*see Caro*, 18 Cal. App. 4th at 668) or the consumer purchased the item for some other reason and confirms that she would have still made the purchase, even if she knew the representation was false (*see Jones*, 2014 WL 2702726, at *15-16; *Cattie*, 504 F. Supp. 2d at 946-47).  In the context of class certification, where the defendant submits evidence – typically by way of consumer survey – showing that putative class members ***either*** do not understand the representation uniformly ***or*** did not uniformly rely on the alleged false representation, courts refuse to find commonality and reject certifying any type of class.  For example, in *Jones*, the court denied certification where the evidence established that putative class members understood defendant's "All Natural" claims differently.  2014 WL 2702726, at *14 (no certification where there are non-uniform understandings of the meaning of the misrepresentation).

See also *Knapp v. AT & T Wireless Servs., Inc.*, 195 Cal. App. 4th 932, 943 (2011) (no commonality where evidence suggested consumers were aware of the falsity of the purported misrepresentation). Similarly, in *Algarin v. Maybelline, LLC,* 300 F.R.D. 444 (S.D. Cal. 2014), deception and reliance issues precluded a finding of commonality (and therefore certification) where the defendant introduced survey evidence showing that consumers purchased the product for a variety of reasons and not always because of the alleged misrepresentation, and in many instances, the individuals were satisfied with their purchases despite the alleged misrepresentation and therefore there was evidence that they would have made the purchases anyway. *Id.* Indeed, where consumer survey evidence tends to show that at least a group of consumers would not have changed their behavior had they known the falsity of the representation, courts do not certify a class. *Id. See also McVicar v. Goodman Glob., Inc.*, No. SACV131223DOCRNBX, 2015 WL 4945730, at *12 (C.D. Cal. Aug. 20, 2015) (no certification where a consumer survey found that a large percentage of consumers would not have changed their behavior if disclosures had been made correcting the falsity of an alleged misrepresentation); *Johnson v. Harley-Davidson Motor Co. Group, LLC,* 285 F.R.D. 573, 580 (E.D. Cal. 2012) (no certification where expert testimony established that materiality of motorcycle's propensity to overheat would vary from consumer to consumer, and former named plaintiffs testified he would buy the defective motorcycle again, even knowing of the defect).[18]

Here, Plaintiffs' own testimony confirms that they would still have made their purchases for the prices they paid, even if they knew the reference prices were purportedly false. Plaintiffs

---

[18]    *See also Chow v. Neutrogena*, 2013 WL 5629777, at *2 (N.D. Cal. August 30, 2016) (no commonality where plaintiff failed to present evidence distinguishing between consumers who were merely brand loyal, and those who relied on the allegedly false advertisement in deciding to make their purchase); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993) (affirming denial of certification where consumers were not uniformly induced to purchase orange juice based on "fresh," "no additives," and "premium" advertising claims). Standing (and entitlement to relief) also cannot be established. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("[n]o class may be certified that contains members lacking Article III standing"); *Moore v. Apple Inc.*, 309 F.R.D. 532, 543 (N.D. Cal. 2015) ("[i]n sum, the Court finds that Plaintiff's proposed class is overbroad and cannot be certified under *Mazza* because it necessarily includes individuals who could not have been injured by Defendant's alleged wrongful conduct as a matter of law.").

further confirmed that they purchased Columbia items for a variety of reasons, including the out-the-door price, their needs, style, fit, color and so on. Their testimony is consistent with the objective survey evidence submitted by Columbia. Survey respondents confirmed that their Columbia outlet purchases were driven by the actual attributes of the garment (style, look, design, quality, durability, comfort, fit, size and so on) and actual, out-the-door price. (Ex. 20, Scott Report at ¶¶ 22-26.) Very few consumers, none of whom can be identified without individual inquiry, indicated that they made purchasing decisions based on a perceived discount or markdown (*i.e.*, that they relied on the reference price). In fact, only 20.7% of consumers could even remember a reference price at all. (Ex. 20, Scott Report at ¶ 24.) Moreover, when survey respondents were specifically told that the reference prices referred to the price at which a similar item sold, not the price at which the same item sold, they confirmed – like Plaintiffs – that their purchasing decisions **would not have changed.** (Ex. 20, Scott Report at ¶¶ 26-31.) Finally, the survey conducted by Columbia's expert revealed that there is no uniform understanding of what the reference prices represent. (Ex. 20, Scott Report at ¶¶ 24, 27.) Put simply, the survey evidence confirms that deception, reliance, and materiality, even if ever true, would be individual to each putative class member and not subject to common proof.

Against this evidence establishing that deception, reliance, and materiality are not common, Plaintiffs submit no evidence whatsoever. Instead, they rely on a purported "presumption" or "inference" of deception, reliance, and materiality that they submit should be applied classwide. As an initial matter, as the Northern District of California has held, any such "presumption" or "inference" is never absolute. Indeed, in *Jones*, 2014 WL 2702726 at *14, the court rejected the argument that Plaintiffs make, that "they need not establish the class's reliance at all." The Court stated:

> *In re Tobacco II Cases*, upon which Plaintiffs rely [here, the cases on which Plaintiffs' rely cite *In re Tobacco II*], held that, for the purposes of *standing,* so long as the representative plaintiff can establish causation and injury under the UCL, the class members will also have standing. That case "does not stand for the proposition that causation and injury should be inferred on a class-wide basis" in every case. *Campion v. Old Republic Home Prot. Co.,* 272 F.R.D. 517, 533 n.4 (S.D.Cal. 2011). Nor did it "eliminate the need to satisfy the requirements for class certification, including

the predominance requirement." *Id.; see also Hodes,* 2009 WL 2424214, at *4 (explaining that "[w]hile proof of individual reliance may not be necessary to assert claims under the FAL and UCL," citing *In re Tobacco II,* "[c]ourts in the Ninth Circuit and in California have regularly found that where such inquiries predominate over common questions . . . courts may refuse to certify a class action."); *Cohen v. DIRECTV, Inc.,* 178 Cal.App. 4th 966, 981 (2009) (limiting *Tobacco II* holding to standing and finding it "irrelevant" as to commonality).

2014 WL 2702726 at *14.

In any event, it is clear that any such "presumption" or "inference" does not apply where, as here, there is objective survey evidence establishing that the "presumption" or "inference" is invalid. In such a case, a class cannot be certified. *See Algarin,* 300 F.R.D. at 457. In the cases that Plaintiffs cite, there was no objective survey evidence at all. *See Stearns v. Ticketmaster Corp.,* 655 F.3d 1013 (9th Cir. 2011); *Spann v. J.C. Penny Corp.,* 307 F.R.D. 508 (C.D. Cal. 2015); *Kumar v. Salov N. Am. Corp.,* No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016); *Rahman v. Mott's LLP,* 2014 WL 6815779 (N.D. Cal. Dec. 3, 2014); *Brown v. Hain Celestial Grp., Inc.,* 2015 WL 3398415 (N.D. Cal. May 26, 2015); *Goldemberg v. Johnson & Johnson Consumer Cos.,* 317 F.R.D. 374 (S.D.N.Y. Oct. 4, 2016). As the Court in *Algarin,* 300 F.R.D. at 457, stated:

> In light of the objective [survey] evidence showing that there was a substantial number of class members who were not misled by the 24 hour claim, whether Maybelline's conduct was false or misleading or likely to deceive is not subject to common proof on a classwide basis. According to survey results, purchasers had a variety of duration expectations. Indeed, more purchasers expected the product to last less than 24 hours or had no specific duration expectations. Moreover, given the persuasive evidence presented on consumer expectations, the varying factors that influence purchasing decision, and consumer satisfaction, the Court finds that Plaintiffs have also failed to demonstrate that the elements of materiality and reliance are subject to common proof.

This case is indistinguishable from *Algarin.* Objective survey evidence shows that a substantial number of class members were not misled by the reference prices and made their purchases despite those reference prices. Plaintiffs have thus failed to establish commonality.

c.       There is also no evidence that restitution or damages is subject to common proof

As the Supreme Court reemphasized in *Comcast*, to certify a claim, "a plaintiff must bring forth a measurement method [for damages] that can be applied classwide *and* that ties the plaintiff's legal theory to the impact of the defendant's allegedly illegal conduct." *Forrand v. Federal Ex. Corp*, No. CV 08-1360, 2013 WL 1793951, at *3 (C.D. Cal. April 25, 2013) (denying class certification where proposed classwide measure of damages "fail[ed] to tie California law to liability and a reliable measure of damages"). *See also Guido v. L'Oreal, USA, Inc.*, No. CV 11–1067, 2013 WL 3353857, at *15-16 (C.D. Cal. July 1, 2013) (denying class certification because "plaintiffs [did] not submit[] expert testimony actually demonstrating a gap between the true market price of Serum and its historical market price"); *Vaccarino v. Midland Nat. Life Ins. Co.*, No. CV 11-5858, 2013 WL 3200500, at *14-15 (C.D. Cal. June 17, 2013) (denying certification as to claims for damages where "plaintiffs [did] not offer[] a method as to how damages could be calculated… once the liability questions [were] adjudicated").

Here, as set forth above, Plaintiffs' three proffered damages models are all legally invalid, and therefore do not "tie" to the legal theories they assert. As a result, Plaintiffs' motion for class certification must be rejected.[19]

### 4.       *Plaintiffs Are Not Typical*

A named plaintiff's claims are typical where they have suffered the same or similar legal injury as the purported class members by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). *See also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

---

[19]      If Plaintiffs had tried to establish damages under the proper legal measure – *i.e.*, price paid, less value received – they would not have been able to do so with common evidence. Court after court has held that such calculations – sometimes referred to as "price premium" calculations (that is, the additional amount the defendant was able to charge as a result of the misrepresentation) – are not subject to common proof where, as here, either the calculation was not (or could not) be done or class members made numerous purchases of multiple products, thereby necessitating numerous individualized calculations. *See, e.g., Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 8019257, at *11 (C.D. Cal. Apr. 12, 2012); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 698-700 (2006); *See In re Yasmin and Yaz Marketing*, No. 3:09-md-2100, 2012 WL 865041, at *23-24 (S.D. Ill Mar. 13, 2012); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 135-36 (2009).

984 (9th Cir. 2011). If the named-plaintiff is subject to a unique defense, or their experiences differ from the class, then they are not typical. That is because those unique defenses "threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508. "One such unique defense that precludes a plaintiff from representing a class is lack of standing. A plaintiff cannot bring suit on behalf of a class when he himself suffered no injury." *Katz v. Comdisco, Inc.*, 117 F.R.D. 403, 407 (N.D. Ill. 1987).

Here, even if the invalidity of the reference prices, deception, and reliance could be proved with common evidence, Plaintiffs' own purchases and testimony confirm that they do not have a claim. The undisputed evidence shows that Plaintiffs did not rely on the reference prices at all and also did not receive any items worth less than what they paid. Assuming Plaintiffs' theory of classwide injury is correct, these defenses make Plaintiffs atypical and prevent a class from being certified.

### 5. *Plaintiffs Are Not Adequate Class Representatives*

A class may be certified only if the named representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). An adequate class representative must satisfy both prongs of a two part test: (1) the representative's interest must not conflict with the interests of other class members; and (2) the representative must be positioned to prosecute the action vigorously on behalf of the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Arnold v. UA Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 & 450 (N.D. Cal. 1994) (plaintiff has burden of proof). Similar to the typicality analysis, a representative is inadequate if the representative is subject to a unique defense. *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d. Cir. 1990). This is especially true when that unique defense threatens to become the central focus of the litigation, distracting the named representative from vigorously litigating issues central to the class. *Id.*; *see also In re Activision Sec. Litig.*, 621 F. Supp. 415, 429 (N.D. Cal. 1985).

In addition, where an action is driven primarily by the desires of class counsel, the class representatives are inadequate. "A trial court acts properly when it refuses to certify class actions in which the named plaintiff is simply 'lending his name to a suit controlled entirely by the class

attorney.'" *Howard Gunty Profit Sharing Plan v. Superior Court*, 88 Cal. App. 4th 572, 579-80 (2001). *See also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) (superceded by statute on other grounds, *In re Vesta Ins. Group, Inc. Secs. Litig.*, 1999 U.S. Dist. LEXIS 23541) (courts must deny certification where class counsel is driving the litigation).

Here, not only are Plaintiffs subject to unique defenses, their counsel are running the show, driven by a desire for a pay out and not a desire to vindicate the rights of an aggrieved class.

### D.     Plaintiffs Cannot Meet The Requirements Of 23(b)(3)

To certify a "damages" class under Rule 23(b)(3), Plaintiffs must prove that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). They fail on both accounts.

#### 1.     *Common Issues Of Law And Fact Do Not Predominate*

For a class action to be certified under Rule 23(b)(3), common issues of law and fact must predominate. Fed. R. Civ. P. 23(b)(3). Common issues predominate when they constitute such "a significant aspect of the case" that "there is a clear justification for handling the dispute on a [class] . . . basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1997). Importantly, "[t]he presence of [common issues] alone is not sufficient" to certify a class under Rule 23(b)(3); those common issues must predominate. *Id.* Moreover, it is Plaintiffs' burden to demonstrate that common issues predominate, and without such proof, a class cannot be certified. *Haliburton*, 134 S. Ct. at 1432.

Here, Plaintiffs have failed to establish predominance for the same reasons that they have failed to establish commonality. Indeed, the predominance requirement is far more exacting than the commonality requirement, and, as reflected in the cases cited above, even where a court finds common issues, where, as here, deception, reliance, materiality, and damages are subject to individualized proof, there is no predominance.

#### 2.     *A Class Action Is Not Superior*

"Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority inquiry." *Pablo v. Servicemaster Global Holdings, Inc.*, No. 08-03894, 2011 U.S. Dist. LEXIS 87918 at *5

(N.D. Cal. Aug. 9, 2011). Those factors include (1) the class members' interest in individually controlling the lawsuit, (2) the extent and nature of any previous litigation concerning the controversy, (3) the desirability of concentrating the litigation in a particular forum, and (4) the likely difficulties of managing a class action. *Id.* These factors "are non-exclusive, and the court has discretion to consider other factors when making a superiority determination." *Vasquez-Torres v. StubHub, Inc.*, No. 07-1328, 2008 U.S. Dist. LEXIS 22503 at *17 (C.D. Cal. March 8, 2008) (internal quotations and citations omitted). The last factor – manageability – encompasses "'the whole range of practical problems that may render the class format inappropriate for a particular suit.'" *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653 (C.D. Cal. 1996) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974)). A court may decline to certify a class based on manageability concerns alone. *See, e.g.*, *In Re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974) ("Some actions have been dismissed on the basis of manageability problems alone. . . ." (internal citations omitted)). In this regard, it is Plaintiffs' burden at the certification stage to demonstrate that methods of common proof exist so that a class can be manageably tried. *Valentino*, 97 F.3d at 1234. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser*, 252 F.3d at 1192. This action is unmanageable for the same reasons that common issues do not predominate, *i.e.*, that deception, reliance, materiality, and damages raise individual issues.

### E.     Plaintiffs Have Not Met The Requirements Of 23(b)(2)

Rule 23(b)(2) is not a catchall mechanism that allows a class to be certified on an injunction only basis where, as here, the injury to be remedied is best remedied by a monetary award. Stated differently, a class representative, realizing that a Rule 23(b)(3) class is not workable because a monetary award cannot be proven classwide, cannot ditch his and the putative class's claims for damages in favor of an injunction only. That would be an abuse of the class action device and is not permitted.

Rule 23(b)(2) permits certification where the elements of Rule 23(a) are met and the defendant "has acted . . . on grounds that apply generally to the class," such that class-wide "injunctive relief . . . is appropriate." Fed. R. Civ. P. 23(b)(2). Where, as here, the complaint seeks

on behalf of the putative class both injunctive relief and monetary relief, Rule 23(b)(2) certification is not appropriate where the monetary relief sought is "superior [in] strength, influence, or authority to injunctive . . . relief." *Campion*, 2011 U.S. Dist. LEXIS 42759, at \*19 (quoting *Dukes*, 603 F.3d at 616). Where "monetary relief is 'predominant' over injunctive relief," Rule 23(b)(2) certification is inappropriate. *Dukes*, 600 F.3d at 617. To determine whether the requested monetary relief is predominant, courts consider "on a case-by-case basis, the objective effect of the relief sought on the litigation." *Id.*; *Waters v. Advent Prod. Dev., Inc.*, No. 07cv2089 BTM(NLS), 2011 WL 7216619, at \*4 (S.D. Cal. Feb. 22, 2011) (same).

In this regard, courts are consistent that in actions for false advertising in the purchasing of a product, where the class is seeking monetary restitution under the UCL or FAL or damages under the CLRA, the monetary relief sought predominates over the injunctive relief. As a result, in such actions, where a Rule 23(b)(3) class cannot be certified, the Rule 23(b)(2) class must also be denied. For example, in *Algarin v. Maybelline, LLC*, 300 F.R.D. 444 (S.D. Cal. 2014), in a false advertising action seeking restitution on behalf of a class for alleged misrepresentations about certain beauty products, the Court held that "the restitution and disgorgement sought [were] not 'incidental.'" *Id.* at 458. In denying Rule 23(b)(2) certification, the court stated:

> [I]n the instant case Plaintiffs seek individualized monetary relief that would require assessment of each class member's claim based on how many products she purchased, which products she purchased, where she purchased, if she used a coupon, and so forth. [Citation omitted.] In such a situation, the computation of the damages is not a mere "mechanical step" once rights are established. Certification is improper where, as here, the request for injunctive and/or declaratory relief is merely a foundational step towards a damages award which requires follow-on individual inquiries to determine each class member's entitlement to damages.

*Id.* at 459. Other courts have similarly rejected 23(b)(2) certification in false advertising cases where the class sought monetary relief. *See, e.g.*, *Mahfood v. QVC, Inc.*, No. SACV 06-0659, 2008 WL 2381088, \*3-4 (C.D. Cal. Sept. 22, 2008) ("Plaintiff argues that certification under Rule 23(b)(2) is appropriate because her 'primary intent' in the litigation is 'to seek a change in QVC's ongoing comparative pricing business practices, which is effectuated by declaratory or injunctive relief.' Defendant argues, among other things, that Plaintiff's claims for monetary damages

predominate over her claims for injunctive or declaratory relief and that QVC has not 'acted or refused to act on grounds generally applicable to a class.' The Court agrees with Defendant.").); *Nilon v. Natural Immunogenics Corp.*, Case No. 3:12cv00930, 2013 WL 5462288, *1, n.2 (N.D. Cal. Sept. 30, 2013) ("The spirit of this case, like most false advertising cases brought under the UCL and CLRA, is that plaintiffs paid for a product that, with more accurate information, they would have either paid less for or not bought at all. Admittedly, certification under Rule 23(b)(2) can be a close call in cases where both monetary and injunctive relief is sought, [citation omitted], but the Court would be strongly inclined to limit the analysis to Rule 23(b)(3) in this case.").

Here, Rule 23(b)(2) certification is inappropriate for two reasons. First, as explained above, Plaintiffs cannot meet the certification requirements of Rule 23(a), and thus they are not entitled to certification pursuant to Rule 23(b)(2). Second, the putative class is composed of individuals primarily seeking individualized monetary relief – namely, restitution under the UCL and FAL and damages under the CLRA – where each putative class member's entitlement to monetary relief will require numerous individualized analyses. The amount of monetary relief sought is great – for just the seven products purchased by Plaintiffs, Plaintiffs are seeking between $197,470.63 and $649,357.37 in restitution and damages for the class. Multiply those numbers across the entire spectrum of the 580 products at issue, and the monetary relief sought (well in excess of $15 million) clearly predominates.[20] Plaintiffs cannot ditch their prayers for monetary relief in favor of an injunction only class in this scenario. As a result, Rule 23(b)(2) certification is inappropriate.[21]

---

[20] Plaintiffs' request for restitution as well as damages is immaterial for purposes of the Court's Rule 23(b)(2) analysis. *See Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2009 WL 281941, at *13 (N.D. Cal. Feb. 5, 2009) ("fact that a monetary award is an equitable remedy does not mean that it is not monetary relief for purposes of Rule 23(b)(2)"); *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 583, 597 (N.D. Cal. 2010) (finding "plaintiffs' claims for disgorgement and restitution are properly considered claims for monetary relief").

[21] Moreover, if injunctive relief is the primary remedy sought by Plaintiffs, then class certification is not necessary. If Plaintiffs' prevail individually on their claim for an injunction, that injunction would benefit any other potential class members. As a result, the complexity and expense of a class action is not necessary. *Access Now Inc. v. Walt Disney World Co.*, 211 F.R.D. 452, 455 (M.D. Fla. 2001).

# VI. __CONCLUSION__

For the foregoing reasons, Columbia respectfully requests that its Motion for Summary Judgment be granted and judgment be entered against Plaintiffs. In the alternative, Plaintiffs' Motion for Class Certification should be denied.

Dated: January 31, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____*/s/ Jay T. Ramsey*_____
P. CRAIG CARDON
JAY T. RAMSEY

Attorneys for Defendants
COLUMBIA SPORTSWEAR COMPANY and
COLUMBIA BRANDS USA, LLC (f.k.a. COLUMBIA
SPORTSWEAR USA CORPORATION