# Exhibit 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEANNE and NICHOLAS STATHAKOS, )
individually and on behalf of all )
others similarly situated, )
)
Plaintiffs, )
)
vs. )  Case No.
)  4:15-cv-04543-YGR
COLUMBIA SPORTSWEAR COMPANY; )
COLUMBIA SPORTSWEAR USA )
CORPORATION, )
)
Defendants. )
_____ )

VIDEOTAPED DEPOSITION OF JEANNE STATHAKOS,

taken at Four Embarcadero Center, 17th Floor, San

Francisco, California on November 2, 2016, at 9:42

a.m., before Jay W. Harbidge, Certified Shorthand

Reporter in and for the State of California.

```
 1        Q.      Okay.   So can you just briefly describe again

 2   what you think Columbia is doing wrong?

 3                MS. SAGAFI:   Objection, asked and answered.

 4                THE WITNESS:   I believe their price tags are

 5   misrepresenting their product and their pricing

 6   structure.

 7   BY MR. RAMSEY:

 8        Q.      Okay.   Can you tell me when you first came to

 9   believe that?

10        A.      I guess when I was contacted by the law firm.

11        Q.      Who contacted you?

12        A.      Well, my husband was contacted by a legal

13   assistant with Kristen's office.   I'm sorry.   I forget

14   the whole name of the law firm, but he had answered a

15   questionnaire and they contacted him.   And she in turn

16   called me.

17                MS. SAGAFI:   Jeanne, I just want to remind

18   you not to divulge the substance of any of those

19   conversations.   Everything you've said so far is

20   perfectly all right.

21                THE WITNESS:   Okay.

22   BY MR. RAMSEY:

23        Q.      Well, do you remember when that was, like

24   even a month?

25        A.      I don't remember the month, but it was in
```

```
 1    2015.
 2        Q.      Do you remember about how long before this
 3    lawsuit was filed that happened?
 4        A.      I couldn't tell you.
 5        Q.      A month, two months?
 6                MS. SAGAFI:  Objection, calls for
 7    speculation, asked and answered.
 8                THE WITNESS:  Yes, honestly, I couldn't tell
 9    you.
10    BY MR. RAMSEY:
11        Q.      Was it a day?
12        A.      No, it was not a day.
13        Q.      All right.  I'm sorry.  So you said a form
14    was filled out.  Was that by you or your husband?
15        A.      My husband.
16        Q.      So were you involved at all in filling out
17    the form?
18        A.      No.
19        Q.      Did you see the form?
20        A.      No.
21        Q.      Have you seen it since?
22        A.      No.
23        Q.      I'll ask him tomorrow.
24                So you mentioned that the last time you
25    shopped at the Columbia outlet was February of this
```

1  year, correct?

2      A.      Right.

3      Q.      So you would agree, then, that that was after

4  you came to believe that Columbia's pricing was

5  deceptive?

6      A.      Yes, I guess so, yes.

7      Q.      So focusing only on that day, February 2016

8  when you were shopping at the outlet, did you see price

9  tags with the two prices like you've described?

10     A.      Yes.

11     Q.      And when you were there that day, what did

12  you understand the higher price to represent?

13     A.      At that time I still felt it meant something

14  coming -- even though there was no markings on it, that

15  this item could have come from a retail store and that

16  represented a retail price.

17     Q.      By that time, though, hadn't you been told

18  that the higher price was not in fact a price -- the

19  retail price like you describe it?

20     A.      I was told it could possibly be.

21     Q.      So that day you didn't know one way or the

22  other what that higher price represented?

23     A.      I wasn't a hundred percent clear, no.

24     Q.      Do you believe that you've been damaged as a

25  result of Columbia's pricing?

```
 1              MS. SAGAFI:  Objection, calls for an expert
 2    opinion.
 3              THE WITNESS:  Explain or describe to me what
 4    damaged would be.
 5    BY MR. RAMSEY:
 6       Q.    Sure.  So do you think by buying at a
 7    Columbia outlet where the higher price on the tag was
 8    not the price at which that item had been selling for at
 9    a retail location -- say REI -- that as a result of you
10    buying that item, you should get money from Columbia?
11              MS. SAGAFI:  Same objections.
12              THE WITNESS:  I felt -- I feel actually I was
13    fooled.  I'm not sure I would quite use the term
14    "damaged."
15    BY MR. RAMSEY:
16       Q.    Do you think you were harmed?
17              MS. SAGAFI:  Same objection.
18              THE WITNESS:  Physical harm, no.
19    BY MR. RAMSEY:
20       Q.    Any other type of harm?
21       A.    I guess it goes back to damage.  I don't
22    believe damage, but absolutely fooled.
23       Q.    Do you think you were injured in any way?
24              MS. SAGAFI:  Same objections.  It calls for a
25    legal conclusion and an expert opinion.
```

```
 1              THE WITNESS:  Injured, I don't believe so
 2   either.
 3   BY MR. RAMSEY:
 4       Q.      Do you think that you lost money as a result
 5   of Columbia's pricing at its outlets?
 6       A.      I don't know about that.
 7       Q.      I'm sorry.  Is that a no or you don't know
 8   or --
 9       A.      I absolutely don't know whether I've lost
10   money or not.
11       Q.      What would you need to know in order to
12   figure that out?
13              MS. SAGAFI:  Objection, calls for
14   speculation, legal conclusion and expert opinion.
15              THE WITNESS:  Yes, at this time I don't know.
16   I mean, a lot of factors.
17   BY MR. RAMSEY:
18       Q.      What would those factors be?
19       A.      I don't -- I don't know in particular, but --
20   and I don't know at this time what would be my feelings
21   about loss.
22       Q.      So you said you don't know in particular, and
23   because I'm a lawyer I have to keep following up.
24              So do you know in general how you've lost
25   money, if at all?
```

1    speculation.

2             THE WITNESS:  Usually there's a couple of

3    prices if they're on sale, and that's where I usually

4    look.  I'll look in the clearance, and then they have a

5    section called The Bargain Barn.

6    BY MR. RAMSEY:

7        Q.     Let's go back to Columbia outlets for a bit.

8        A.     Okay.

9        Q.     When you are shopping at a Columbia outlet,

10   would you say that you are, you know, looking for a

11   particular item or browsing and grabbing something that

12   you may like that day?

13       A.     Most parts it's just browsing.

14       Q.     Have you ever been to a Columbia outlet and

15   not bought something?

16       A.     Yes.

17       Q.     Would you say that you more often buy

18   something at a Columbia outlet or more often not buy

19   something?

20       A.     I would have to say more often not buy

21   something.

22       Q.     Okay.  Can you remember a time where you were

23   going to a Columbia outlet for a particular item, so you

24   weren't browsing that day; you were going for a jacket

25   or something like that?

JEANNE STATHAKOS

| | | |
|---|---|---|
| 1 | A. | I guess I would have to say February 2016. |
| 2 | Q. | Okay.  So let's just use that as an example, |
| 3 | then.  So when you were at the Columbia store, say, in |
| 4 | February and you were looking for a specific item, what |
| 5 | would cause you to buy, you know, one jacket over |
| 6 | another jacket? |
| 7 | A. | In that store? |
| 8 | Q. | Yes, yes. |
| 9 | A. | First of all, the price, and if I feel like I |
| 10 | was getting a bargain, and the need that it fills. |
| 11 | Q. | What about how it fits; is that important to |
| 12 | you? |
| 13 | A. | It is important, yes. |
| 14 | Q. | How about the color; is that important to |
| 15 | you? |
| 16 | A. | I would say yes. |
| 17 | Q. | If the jacket maybe wasn't a color that you |
| 18 | particularly liked, would you buy the jacket? |
| 19 | A. | No. |
| 20 | Q. | What if the jacket didn't fit quite right; |
| 21 | would you buy the jacket? |
| 22 | A. | Absolutely not. |
| 23 | Q. | Okay.  What about the quality of the product; |
| 24 | is that something that's important to you? |
| 25 | | MS. SAGAFI:  Objection, vague, calls for |

```
 1   speculation, calls for legal opinion.
 2              THE WITNESS:  I mean, I believe in Columbia
 3   to be a quality product.
 4   BY MR. RAMSEY:
 5       Q.    Would you -- or have you ever been browsing,
 6   say, at a Columbia, you grab a jacket and you touch it
 7   and look at it and do whatever you do with it and
 8   decide, "No, I'm not going to buy that because I don't
 9   think it's a good enough quality"?
10       A.    Not for those particular reasons.
11       Q.    What are the reasons or maybe the top three
12   reasons why you would not buy something when you're
13   browsing?
14       A.    Doesn't fit my style, it's not within what I
15   want to pay, and -- and I don't need it.
16       Q.    Say the hooded shirt sweater that you
17   described earlier that you bought in February, do you
18   remember if that's something you were looking for
19   specifically or found while browsing?
20              MS. SAGAFI:  Just to clarify, that was a
21   sweater dress.
22              MR. RAMSEY:  Sweater dress, sorry.
23              THE WITNESS:  No, just found while I was
24   browsing.
25   BY MR. RAMSEY:
```

```
 1    BY MR. RAMSEY:
 2         Q.      So how do you, when you're browsing for
 3    Columbia products at an outlet, come up with a price
 4    sort of, yeah, that's a good price for me versus no,
 5    that's a bit too expensive for me?  How do you come up
 6    with that price?
 7              MS. SAGAFI:  Objection, calls for
 8    speculation, incomplete hypothetical.
 9              THE WITNESS:  I would look at the price tag
10    and see what I assume is the retail price that it's
11    going for, what the sale price is and see if I feel
12    that's a bargain.
13    BY MR. RAMSEY:
14         Q.     Okay.  So let's say -- let's stick with that
15    hooded sweater dress.  I think you said that you would
16    not have been willing to pay $50 for it.  Let's say the
17    price tag had two prices on it and the higher price was
18    a hundred dollars and the lower price was $50, so you
19    would have paid $50 for the dress had you decided to buy
20    it.  Would you have bought the dress?
21              MS. SAGAFI:  Objection, calls for
22    speculation.
23              THE WITNESS:  Even if the retail price -- or
24    the higher price at a hundred and it was at $50, no, I
25    don't feel that dress was worth it.
```

JEANNE STATHAKOS

November 02, 2016

```
 1    BY MR. RAMSEY:
 2         Q.    Was worth 50?
 3         A.    Fifty, right.
 4         Q.    So what would you say that dress is worth?
 5              MS. SAGAFI:  Objection, calls for
 6    speculation, calls for expert opinion, calls for a legal
 7    conclusion.
 8              THE WITNESS:  I mean, I don't know exactly
 9    what that dress would be worth, but it's not worth $50
10    to me.
11    BY MR. RAMSEY:
12         Q.    What was it worth to you?
13              MS. SAGAFI:  Objection, asked and answered.
14              THE WITNESS:  I don't know.
15    BY MR. RAMSEY:
16         Q.    Would you have bought it if the price you
17    were paying -- so just the lower price on the tag -- was
18    higher than what you thought it was worth that day?
19              MS. SAGAFI:  Objection, vague and ambiguous,
20    calls for speculation.
21              THE WITNESS:  And I'm sorry, can you repeat
22    that one more time?
23    BY MR. RAMSEY:
24         Q.    Sure.  So there's two prices on the tag.
25    Let's say the hooded sweater dress.  Let's focus on the
```

 1    lower price.  I know you don't remember what it is --
 2    that's fine -- but would you have bought the dress that
 3    day if that lower price, which was the price you were
 4    actually going to pay for it, was higher than what you
 5    thought the dress was worth to you?
 6              MS. SAGAFI:  Same objections.
 7              THE WITNESS:  No, I would not have.
 8    BY MR. RAMSEY:
 9        Q.    Okay.  So now I want to focus on what factors
10    you consider when coming up with the amount you would be
11    willing to pay for a particular item.  We can continue
12    with the hooded sweater dress if that's easier for you.
13              So can you tell me what factors you consider
14    when you're coming up with a price at which you would
15    pay for an item?
16              MS. SAGAFI:  Objection, asked and answered.
17              THE WITNESS:  We would be looking at the
18    price that's marked on there; if it's -- I felt it was a
19    good discount; it would have to kind of tug at me that I
20    want it; and if I really need it.
21              MS. SAGAFI:  Jay, when you're at a good
22    stopping point, let's take a break.  We've been going
23    about an hour.
24              MR. RAMSEY:  Sure, I'm happy to stop now.  I
25    have like maybe four more questions on this sort of

```
 1                THE WITNESS:  No, I wouldn't have bought it
 2    at Columbia.
 3    BY MR. RAMSEY:
 4        Q.    When you're browsing, how often would you say
 5    you think about other items that are similar to the item
 6    you're looking at, how much you've paid for those other
 7    items?
 8                MS. SAGAFI:  Objection, calls for
 9    speculation.
10                THE WITNESS:  I couldn't tell.
11    BY MR. RAMSEY:
12        Q.    Would you say that's common or not common?
13                MS. SAGAFI:  Objection, asked and answered.
14                THE WITNESS:  I guess common.
15                MR. RAMSEY:  Okay.  Let's break for a moment.
16                THE VIDEOGRAPHER:  Going off the record, the
17    time is 10:39 a.m.
18                (Brief recess)
19                THE VIDEOGRAPHER:  Back on the record, the
20    time is 10:52 a.m.
21    BY MR. RAMSEY:
22        Q.    Would you consider yourself a bargain hunter?
23        A.    Yes.
24        Q.    Do you ever buy something that is not on
25    sale?
```

JEANNE STATHAKOS

```
 1      A.      Could you be a little bit more --
 2      Q.      Sure.  So a piece of clothing that you wear
 3  on a day-to-day basis, would you ever buy something like
 4  that if it were not on sale?
 5      A.      I have, but not typically.
 6      Q.      How often would you say you buy something
 7  that's not on sale?
 8              MS. SAGAFI:  Objection, calls for
 9  speculation.
10              THE WITNESS:  Probably once every couple of
11  years actually.
12  BY MR. RAMSEY:
13      Q.      When you're at a Columbia outlet, have you
14  ever noted that there's an area of the store like a
15  clearance rack?
16      A.      Yes.
17      Q.      Would you say that you buy most of the items
18  from the clearance rack?
19      A.      No.
20      Q.      Half of the items that you've purchased from
21  Columbia from the clearance rack?
22              MS. SAGAFI:  Objection, calls for
23  speculation.
24              THE WITNESS:  I don't know half.
25  BY MR. RAMSEY:
```

```
1      A.    No.

2      Q.    Okay.  So on the first page, that's your name

3   and address, correct?

4      A.    That's correct.

5      Q.    Let's actually back up for a second.

6            Are you a member of Columbia's like loyalty

7   or rewards program?

8      A.    I am.

9      Q.    Do you remember when you signed up for that?

10     A.    I do not remember.

11     Q.    Okay.  Do you remember why you signed up for

12  it?

13     A.    I was asked if I wanted to; that I could earn

14  reward certificates and get notifications for sales and

15  things like that.  So as long as it didn't cost me

16  anything to sign up, I said okay.

17     Q.    Do you receive emails from Columbia?

18     A.    Usually only when I have a reward pending.

19     Q.    What reward -- what does Columbia give you as

20  far as these rewards?

21     A.    They'll give me a certificate for $5 or $10

22  off because I've spent X amount of dollars.  I guess for

23  every dollar there's a point associated with it.

24     Q.    Do you use those -- is it a coupon or what

25  would you call it?
```

JEANNE STATHAKOS

```
 1    A.      Yes, a coupon.
 2    Q.      Do you use those coupons?
 3    A.      I've tried in the past.
 4    Q.      Other than that coupon that maybe you've
 5   earned through the rewards program, do you ever use a
 6   different coupon at a Columbia outlet?
 7    A.      Not a coupon, no.
 8    Q.      Any other, you know, special discount card
 9   that may be similar to a coupon?  Do you ever use
10   something like that?
11    A.      They do offer like a AAA discount for AAA
12   members.
13    Q.      On every item?
14    A.      I don't know if it's every item.
15    Q.      What is the discount, if you know?
16    A.      It's either -- I think it's ten percent.
17    Q.      And do you use or try and use that every time
18   you shop at the Columbia outlet?
19    A.      Once I found out that they do give a discount
20   for AAA members, I do show them my card, yes.
21    Q.      When you buy something in a Columbia outlet,
22   do you -- how do they know that you're a rewards member?
23    A.      I usually tell them, and they'll look up my
24   number on the computer system.
25    Q.      Do you do that each time that you buy
```

```
 1    speculation.
 2              THE WITNESS:  Not by clearance or --
 3    BY MR. RAMSEY:
 4        Q.      Let me try again.  Let's say there's a jacket
 5    that you're looking at that just has the two prices on
 6    the tag.  There's no third price; there's no sticker; it
 7    is also not on a rack that says some percentage off.
 8    Would you buy that item?
 9              MS. SAGAFI:  Objection, calls for
10    speculation.
11              THE WITNESS:  I probably would not.
12    BY MR. RAMSEY:
13        Q.      Why is that?
14        A.      Only because it's not a necessity to me.  It
15    would need to be really a necessity for me to say, "I'll
16    get this."
17        Q.      So looking -- you don't have to; I can read
18    it to you -- but it says you shopped at the Gilroy
19    outlet, Vacaville outlet, Tejon, Las Vegas, Cabazon,
20    Prime Outlets in Grove City, Tanger Outlet Center in
21    Park City and the Historic Old Sellwood.
22              When you are traveling away from home, do you
23    go to outlet malls?
24        A.      We do.
25        Q.      And why is that?
```

```
 1              MS. SAGAFI:  If you know.  And take all the
 2    time you want.
 3              THE WITNESS:  I do believe they belong to us.
 4    BY MR. RAMSEY:
 5        Q.    Okay.  So you'll notice on sort of the lower
 6    right-hand corner there's a marker there that says
 7    "Stathakos" and then there's a number that follows it?
 8        A.    Yes.
 9        Q.    And then if you flip through the numbers, it
10    goes up by one each page?
11        A.    Okay.
12        Q.    So if you could flip to -- it's the
13    STATHAKOS5, that page.
14              So the page says "Columbia Outlet Item No. 1"
15    on top, correct?
16        A.    Yes.
17        Q.    And there's a photograph of a gray jacket of
18    some sort?
19        A.    Okay.
20        Q.    Do you recognize that item?
21        A.    I don't remember it.  It could be our son's.
22        Q.    Do you know, sitting here today, why or what
23    made you purchase it?
24        A.    I couldn't tell you why, no.
25        Q.    Do you remember how much you paid for it?
```

```
1              THE WITNESS:  I guess at 50 percent off it

2   would be considered a bargain.

3   BY MR. RAMSEY:

4     Q.    So you would in that instance pay the $25?

5              MS. SAGAFI:  Objection, calls for

6   speculation.

7              THE WITNESS:  I guess I would.

8   BY MR. RAMSEY:

9     Q.    Would you want to touch, feel the garment

10  before buying it?

11    A.    Absolutely, yes.

12    Q.    Do you know if this particular item was sold

13  at a Columbia retail store or REI so somewhere other

14  than an outlet?

15    A.    No, I do not know.

16    Q.    If I told you that it had not been, it only

17  ever sold at the outlet, would you still have purchased

18  it?

19             MS. SAGAFI:  Objection, calls for

20  speculation.

21             THE WITNESS:  I don't know if I would or not.

22  BY MR. RAMSEY:

23    Q.    What would you need to know in order to know?

24             MS. SAGAFI:  Calls for speculation.

25             THE WITNESS:  Now I would have to question
```

```
 1    about if that was the case, and I would believe it would
 2    be deceptive.
 3         Q.    Okay.  Let's move to item number 19 in this
 4    stack, which is on page STATHAKOS23.  I'm sorry, I'm on
 5    a -- is it STATHAKOS23 at the bottom?
 6         A.    Page 23.
 7         Q.    It looks like perhaps this is the sweater --
 8         A.    Dress.
 9         Q.    -- vest, right.
10         A.    Yes.
11               MS. SAGAFI:  Dress.
12               MR. RAMSEY:  Dress.  I don't know why I can't
13    seem to get that one right.
14               MS. SAGAFI:  You're a man.
15    BY MR. RAMSEY:
16         Q.    Okay.  Do you -- oh no, I'm sorry.
17               If you could maybe keep your hand on that
18    page so we could come back to it, but if you also flip
19    to page STATHAKOS73, do you see there's a picture of a
20    price tag on that page?
21         A.    Uh-huh.
22         Q.    Okay.  I'm going to represent to you that
23    this is the price tag that corresponds to this item.
24         A.    Okay.
25         Q.    Do you remember why or what about this item
```

```
 1   made you purchase it?
 2        A.      Well, first of all, I liked the color and
 3   also that it was a sweater dress that kind of fitted a
 4   need, I guess, for where we were traveling to because it
 5   was one of those easy-to-wear articles.
 6                And then the price, as I mentioned before,
 7   with AAA you get a slightly better discount too.  So
 8   based on that, it was --
 9        Q.      So I was just making sure you were on the
10   right page.
11        A.      So based on that, that's what drew me in and
12   made me purchase it.
13        Q.      Okay.  So looking at the price tag for this,
14   which is on page 73 --
15        A.      Uh-huh.
16        Q.      -- do you see the higher price, the $60?
17        A.      Yes.
18        Q.      And then there is a 39.90?
19        A.      Yes.
20        Q.      And then there's what appears to be a sticker
21   put on top that says 24.98.
22        A.      Yes.
23        Q.      So what did you understand the price of this
24   item to be that day when you purchased it?
25                MS. SAGAFI:  Objection, calls for
```

```
 1    fabric.  So in that respect, I don't feel a dress -- a
 2    sweatshirt type dress is worth $40 -- 39.90 -- and it
 3    wasn't like I needed to have the item.
 4        Q.    Okay.  Sorry, just one second.
 5              Okay.  Now, I'll just represent to you
 6    that -- it's on the first page there's a chart --
 7        A.    Okay.
 8        Q.    -- and it listed the amount that was actually
 9    paid for the item.
10        A.    Okay.
11        Q.    And if you go to 19 and you scroll all the
12    way across, you'll see that it was 11.98?
13        A.    Yes.
14        Q.    Okay.  So you got a further discount of some
15    variety?
16        A.    (No audible response.)
17        Q.    So you ended up paying 11.98 for this dress.
18    You're better than I am.
19        A.    Perfect.
20        Q.    Do you know whether this item was sold
21    anywhere other than the outlet previously?
22        A.    I do not know.
23        Q.    If I told you that it had not been, had only
24    ever sold at the outlet, would you still have purchased
25    it that day for the 11.98 that you paid for it?
```

```
 1                MS. SAGAFI:  Objection, calls for
 2     speculation.
 3                THE WITNESS:  Yes.
 4     BY MR. RAMSEY:
 5         Q.    Why is that?
 6         A.    At that price I think it was a good value.
 7         Q.    Okay.  Let's go to the next one, number --
 8     well, not the next one, the next one on my list, item
 9     23.  So this is page STATHAKOS27.  Let me know when
10     you're there.
11         A.    Okay.
12         Q.    So you should see a picture of what appears
13     to be a white pair of women's shorts with a little blue
14     hangtag on it.
15         A.    Yes.
16         Q.    Okay.  And you don't have to look, but on
17     page 1, item 23, you paid 8.98 for it.
18         A.    Yes.
19         Q.    Do you consider 8.98 to be a good price for
20     these shorts?
21         A.    Yes, I believe so.
22         Q.    And why is that?
23         A.    Based on the style; I liked it.  I don't
24     remember exactly what the original price -- price was.
25     I felt that it was a substantial bargain.  And so I
```

1   don't have white shorts; I could use them.

2        Q.    Okay.   Do you know whether these white shorts

3   were sold at a Columbia retail store or REI, anywhere

4   other than the outlet?

5        A.    No, I do not.

6        Q.    And if I asked you to assume that they had

7   not been sold anywhere else other than the outlet, would

8   you have still bought them for 8.98?

9            MS. SAGAFI:   Calls for speculation.

10            THE WITNESS:   Yes, I believe so.

11   BY MR. RAMSEY:

12        Q.    Okay.   If we could, flip to item 26.   This

13   should be STATHAKOS30.   You should be looking at a gray

14   blouse of sorts that's hanging on a hanger.

15        A.    Uh-huh.

16        Q.    And if you sort of hold your hand on that

17   page and then also flip to page STATHAKOS71, you should

18   see a price tag there with the higher price being 40 and

19   then a sticker of sorts with 9.97.   Do you see that?

20        A.    Yes.

21        Q.    And then you're welcome to look, but on page

22   2 of the chart at the very beginning it shows that you

23   paid $7.98.

24            Okay.   So maybe back to the photo, do you

25   consider $7.98 to be a good price for this shirt?

JEANNE STATHAKOS

```
 1        A.        Yes.
 2        Q.        Do you know whether that shirt has been or
 3   was ever sold at a Columbia retail or REI or somewhere
 4   other than the outlet?
 5        A.        No, I don't.
 6        Q.        If I had told you that it had never been sold
 7   anywhere other than the outlet and it had never been
 8   sold for the $40 listed on the price tag, would you have
 9   still bought it that day for 7.98?
10             MS. SAGAFI:  Objection, calls for
11   speculation.
12             THE WITNESS:  At 7.98, yes.
13   BY MR. RAMSEY:
14        Q.        If you would, flip next to item number 35,
15   which is on page STATHAKOS39.  Let me know when you're
16   there.  Are you there?
17        A.        Yes.
18        Q.        Okay, great.  It's a jacket of sorts with
19   sort of a orange line by the zipper.
20        A.        Uh-huh.
21        Q.        If you can keep your hand there and flip to
22   STATHAKOS77, you'll find another price tag.  And the
23   price tag -- the higher price says 120 and the lower one
24   says 79.90.  Do you see that?
25        A.        Yes.
```

JEANNE STATHAKOS

November 02, 2016

```
 1      Q.      So the front chart doesn't tell me what you
 2   paid, so let's just assume you paid 79.90.
 3      A.      It does.
 4      Q.      Oh, I'm sorry.  I was not looking correctly.
 5   You paid 47.94.  Do you consider 47.94 to be a good
 6   price for this jacket?
 7      A.      Yes.
 8      Q.      Do you know if this jacket was ever sold at
 9   the Columbia retail store, REI or anyplace other than
10   the outlet?
11      A.      I do not know.
12      Q.      If I told you that it had sold only ever at
13   the outlet and had never sold for $120, which is the
14   higher price listed on the price tag, would you have
15   still bought the item for the $47.94 that you paid?
16              MS. SAGAFI:  Calls for speculation.
17              THE WITNESS:  If you told me it was never
18   sold for $120 and was only ever available at the outlet,
19   I would have to think about what it was being offered
20   at.  I don't know whether or not that 47.94 is a
21   bargain.
22   BY MR. RAMSEY:
23      Q.      What would you need to know in order to
24   determine whether the 47.94 was a bargain?
25      A.      What price it would be sold at or offered at
```

JEANNE STATHAKOS

1    the outlet.

2        Q.    Okay.   If I told you that this particular

3    jacket was sold only ever at the outlet --

4        A.    Uh-huh.

5        Q.    -- it had been previously sold at 79.90 at

6    the outlet, which is the lower price on the tag, would

7    you have still bought the jacket that day for the $47.94

8    that you paid?

9            MS. SAGAFI:   Objection, calls for

10   speculation.

11           THE WITNESS:   Given that information, no.

12   BY MR. RAMSEY:

13       Q.    Okay.   And why is that?

14       A.    I wouldn't feel that that would be enough of

15   a discount.   Again, it's not a need item.

16       Q.    This particular item isn't?

17       A.    Right.

18       Q.    Was this item for you?

19       A.    No.

20       Q.    Well, who was it for?

21       A.    For my husband.

22       Q.    Okay.   Do you remember purchasing this item?

23       A.    I do.

24       Q.    Oh, okay, good memory.

25           Let's flip one page to item number 36, which

JEANNE STATHAKOS

1    is on STATHAKOS40.   This is a white jacket also on a

2    hanger.   Do you recognize this?

3         A.      I do.

4         Q.      Okay.   And if you're able to hold your hand

5    and also flip to STATHAKOS75, you'll see a price tag

6    where the high price is 140.   There appears to be a

7    sticker over the top of the lower price and the

8    stickered price is 49.97.

9         A.      Okay.

10        Q.      Do you see that?

11        A.      Yes.

12        Q.      And you're welcome to look, but item 36 on

13   the chart you paid 39.98.   Do you consider 39.98 to be a

14   good price for this white jacket?

15        A.      I do.

16        Q.      Do you know whether this white jacket was

17   ever sold at a Columbia retail store, REI or anyplace

18   where the Columbia outlet?

19        A.      I do not know.

20        Q.      If I told you that it had never been sold at

21   a Columbia retail store, REI, and had only been sold at

22   the outlet, and I also told you it had never been sold

23   anywhere for $140, which is the higher price on the

24   price tag, would you have still bought the jacket that

25   day for the $39.98 that you paid?

JEANNE STATHAKOS

```
 1              MS. SAGAFI:  Objection, calls for

 2    speculation.

 3              THE WITNESS:  I probably would have, yes.

 4    BY MR. RAMSEY:

 5        Q.    One more item, 41, which is on STATHAKOS45.

 6    I don't have a price tag for you.  I also don't have the

 7    price that you paid that day, but that's fine.

 8              Do you remember this purple shirt?  Oh, I'm

 9    sorry, STATHAKOS45, Columbia item 41.

10        A.    41, sorry.

11        Q.    No problem.  Do you recognize this purple

12    shirt?

13        A.    I do.

14        Q.    Is it your shirt or your husband's shirt?

15        A.    Mine.

16        Q.    Okay.  Do you remember what you paid for it?

17        A.    I do not remember what I paid for it.

18        Q.    That's fine.  Do you remember if you got a

19    good bargain for it?

20              MS. SAGAFI:  Objection, calls for

21    speculation.

22              THE WITNESS:  I must have if I bought it.

23    BY MR. RAMSEY:

24        Q.    Do you know whether this shirt was sold at

25    the Columbia retail store, REI or any other place other
```

1    than the outlet?

2        A.      No, I do not know.

3        Q.      If I told you that it had not been, had only

4    ever sold at the outlet, would you have still bought the

5    shirt?

6               MS. SAGAFI:   Calls for speculation.

7               THE WITNESS:   Not knowing what I paid, I

8    don't know.

9    BY MR. RAMSEY:

10       Q.      So what would you want to know in order to

11   figure that out?

12       A.      I would need to see the price tag and if

13   there was additional discounts in the store.

14       Q.      I think I've covered everything I wanted to

15   on this one.  One moment.  I think I'm done with that

16   one.

17              So looking at -- I think you have a smaller

18   stack there?

19       A.      Uh-huh.

20       Q.      I'm not going to actually ask you anything

21   about this other than if you could just flip through it

22   and let me know whether you recognize these items as

23   items that you own.

24       A.      I believe they're either my husband and I or

25   our children.

```
 1    AFTERNOON SESSION                        12:51 P.M.

 2

 3              THE VIDEOGRAPHER:  Back on the record, the

 4    time is 12:51 p.m.

 5

 6                   EXAMINATION (RESUMED)

 7              MS. SAGAFI:  Jay, before you get started,

 8    there was one thing from this morning that Jeanne wanted

 9    to clarify, so --

10              THE WITNESS:  So Jay, right?

11    BY MR. RAMSEY:

12       Q.    Yes.

13       A.    I'm sorry.  This morning when you asked if I

14    was damaged or injured or harmed in any way and I asked

15    if it was physically.  But in terms of that, physically,

16    no.  But if I had all the facts about Columbia's

17    products, Columbia's pricing, I may have made other

18    decisions about whether to buy the items at the time,

19    and I guess in that way harm or injury would have been

20    caused if -- I mean, I spent money that I may not have

21    spent.

22       Q.    Okay.  What would you need to know in order

23    to figure that out?

24       A.    I would like to know whether these items

25    priced are from a retail store or somehow otherwise
```

1    labeled.

2        Q.      Anything else?

3        A.      I think that would be a step in helping me

4    make a decision.   The other ones are just whether or not

5    I needed it and, of course, you know, if I liked it.

6        Q.      Those are reasons why you may have purchased

7    something, right?

8        A.      Right, right.

9        Q.      Okay.   Is there anything else you would need

10   to know to figure out whether you have been damaged?

11       A.      As I said earlier too, I mean, I feel like

12   I've been fooled by these pricing tags.   They don't

13   specify whether it's for outlet-only, retail or anything

14   like that to allow me to make a decision as to whether I

15   can say it's a value or it's discounted or any of that.

16       Q.      Had the price tags said "Outlet-Only," would

17   you have purchased the items that we looked at earlier

18   today?

19            MS. SAGAFI:   Objection, calls for

20   speculation.

21            THE WITNESS:   I would have probably thought

22   differently or my mindset or thought process might have

23   been a little bit different than what it was.

24   BY MR. RAMSEY:

25       Q.      But would you have purchased the items

1    nonetheless?

2              MS. SAGAFI:   Objection, calls for

3    speculation.

4              THE WITNESS:   I wouldn't -- I don't know.   I

5    would have to evaluate it a little bit more.

6    BY MR. RAMSEY:

7         Q.    And what would you be evaluating?   What would

8    you be looking at to make this evaluation?

9         A.    I would look at thinking this item is an

10   outlet item; it's not a retail, so it's not something

11   made for a retail store, perhaps it's not as good

12   quality.   So other factors like that.

13        Q.    Well, so there's the potential for difference

14   of quality.   Any other factors?

15        A.    That's really the one that sticks out.

16        Q.    If it turned out that the outlet item that

17   was outlet-only was of equal quality to an item that was

18   sold at the retail store, would you have still purchased

19   the item at the outlet?

20             MS. SAGAFI:   Objection, calls for

21   speculation, incomplete hypothetical.

22             THE WITNESS:   I guess if that item was not

23   identical to something that was sold in a retail store,

24   I would still have to look at it as it's not something I

25   could go to a retail store and find.

JEANNE STATHAKOS

```
 1    have been damaged by the use of that price tag --
 2              MS. SAGAFI:  Objection, misstates the
 3    testimony --
 4       Q.    -- at the outlet?
 5              MS. SAGAFI:  -- assumes facts not in
 6    evidence, asked and answered, calls for speculation,
 7    calls for a legal conclusion.
 8              THE WITNESS:  I don't know if I would
 9    consider myself damaged if I really wanted them.
10    BY MR. RAMSEY:
11       Q.    Okay.  You can put these aside.  We're going
12    to take a quick break.
13              THE VIDEOGRAPHER:  Going off the record, the
14    time is 1:39 p.m.
15              (Brief recess)
16              (Exhibit 57, Exhibit 58, Exhibit 59 and
17               Exhibit 60 marked)
18              THE VIDEOGRAPHER:  Back on the record, the
19    time is 2:03 p.m.
20    BY MR. RAMSEY:
21       Q.    Okay.  So you have before you what's been
22    marked as Exhibits 57, 58, 59 and 60.  We're not going
23    to talk about these.  I'll just represent to you that
24    these are photographs that I took of various clothing
25    items we're about to look at.
```

JEANNE STATHAKOS

November 02, 2016

1      A.      Okay.

2      Q.      You can keep them near you if you want.  We

3  won't actually be looking at them.

4          I'm going to have marked as -- Exhibit 61, I

5  believe, correct?

6          THE VIDEOGRAPHER:  Yes.

7          MR. RAMSEY:  -- a copy of clothing -- an

8  article of clothing, a photograph of which is depicted

9  in Exhibit 53.

10          MS. SAGAFI:  Should we just mark the number

11  61 on the tag for now?

12          THE VIDEOGRAPHER:  I'm going to put this on

13  the pocket.

14          MR. RAMSEY:  Let me do that.

15          MS. SAGAFI:  61, right.

16          MR. RAMSEY:  Yes, 61 is photograph 53, and I

17  will mark as 62 what is photographed in 54.

18          (Exhibit 61 and Exhibit 62 marked)

19  BY MR. RAMSEY:

20      Q.      Go ahead and look at the various items

21  however you please, and let me know when you're ready.

22          MS. SAGAFI:  Is there a question?

23  BY MR. RAMSEY:

24      Q.      No.  When you're ready.  Go ahead and look at

25  both of them.  I'm going to ask you, obviously, about

JEANNE STATHAKOS

1    them.

2        A.      Okay.

3        Q.      In looking at these two items, in your

4    opinion, are they of equal quality?

5                MS. SAGAFI:   Objection, calls for an expert

6    opinion.

7                THE WITNESS:   I don't know.   I'm not a

8    clothing expert or construction expert.

9    BY MR. RAMSEY:

10       Q.      In your opinion, though, would you think --

11   do you think they're of equal quality?

12               MS. SAGAFI:   Same objection.

13               THE WITNESS:   Honestly, I don't know.

14   BY MR. RAMSEY:

15       Q.      Okay.   In your opinion, does each jacket have

16   the same value?

17               MS. SAGAFI:   Objection, calls for an expert

18   opinion, a legal conclusion, speculation.

19               THE WITNESS:   That, I don't know either.   And

20   an interesting thing is on Exhibit 62, I didn't find

21   what type of fabrics the jackets are, so I don't know if

22   it's comparable or if it's equal quality.

23   BY MR. RAMSEY:

24       Q.      Would you pay more for one than the other?

25               MS. SAGAFI:   Objection, calls for

```
 1    speculation.
 2              THE WITNESS:  No, at this point.
 3    BY MR. RAMSEY:
 4       Q.     Do you consider them similar?
 5              MS. SAGAFI:  Objection, calls for
 6    speculation, calls for an expert opinion.
 7              THE WITNESS:  I would consider them similar,
 8    yes.
 9    BY MR. RAMSEY:
10       Q.     Would you consider them comparable?
11              MS. SAGAFI:  Objection, calls for a legal
12    conclusion and speculation.
13              THE WITNESS:  Comparable, yes.
14              MR. RAMSEY:  That's it.  I will mark as
15    Exhibit 63 another article of clothing which I'll
16    represent is photographed in Exhibit 55.  And I will
17    mark as Exhibit 64 yet another article of clothing which
18    I will represent is photographed in Exhibit 56.
19              (Exhibit 63 and Exhibit 64 marked)
20    BY MR. RAMSEY:
21       Q.     Once you've had time to look at them, let me
22    know.
23              MS. SAGAFI:  I can take the Post-Its off if
24    they're in your way.
25              THE WITNESS:  That's okay.
```

```
 1              Okay.
 2   BY MR. RAMSEY:
 3       Q.      Having looked at these, would you say that
 4   they are of equal quality?
 5              MS. SAGAFI:  Objection, calls for
 6   speculation, calls for an expert opinion.
 7              THE WITNESS:  I don't know that.
 8   BY MR. RAMSEY:
 9       Q.    Okay.  Would you say they have -- that
10   they're worth the same amount?
11              MS. SAGAFI:  Objection, calls for
12   speculation, an expert opinion and a legal conclusion.
13              THE WITNESS:  That, I don't know either.
14   BY MR. RAMSEY:
15       Q.    Would you pay more for one over the other?
16              MS. SAGAFI:  Objection, calls for
17   speculation.
18              THE WITNESS:  No.
19   BY MR. RAMSEY:
20       Q.    So you would pay the same amount?
21       A.    Well, I wouldn't pay more for one over the
22   other.
23       Q.    Would you consider them similar?
24              MS. SAGAFI:  Objection, calls for a legal
25   conclusion, calls for speculation.
```

JEANNE STATHAKOS

```
 1              THE WITNESS:  Similar, yes.
 2    BY MR. RAMSEY:
 3       Q.       Would you consider them comparable?
 4              MS. SAGAFI:  Same objections.
 5              THE WITNESS:  Comparable, yes.
 6    BY MR. RAMSEY:
 7       Q.       If I told you one of them is an outlet item
 8    and one of them is a retail item, would you be able to
 9    tell me which one is which?
10       A.       No, I would not.
11       Q.       That's it.  Actually, to go back, I'll put
12    these in front of you, but would you be able to tell me
13    between items 61 and 62 which is the outlet version?
14       A.       No, I couldn't tell.
15              MR. RAMSEY:  I'm going to mark as Exhibit 65
16    an article of clothing which I'll represent is depicted
17    in Exhibit 57; and I will mark as Exhibit 66 another
18    item of clothing that I will represent is depicted on
19    Exhibit 58.
20              (Exhibit 65 and Exhibit 66 marked)
21              THE WITNESS:  Okay.
22    BY MR. RAMSEY:
23       Q.       In looking at these items, would you consider
24    them to have equal quality?
25              MS. SAGAFI:  Objection, calls for speculation
```

JEANNE STATHAKOS

```
 1   and expert opinion and a legal conclusion.
 2              THE WITNESS:  I wouldn't know about quality,
 3   no.
 4   BY MR. RAMSEY:
 5       Q.      In looking at these, would you consider them
 6   to have the same value?
 7              MS. SAGAFI:  Objection, calls for speculation
 8   and expert opinion and a legal conclusion.
 9              THE WITNESS:  No.
10   BY MR. RAMSEY:
11       Q.      Which one could you consider to be valued
12   more?
13       A.      I don't know, but texturally they feel
14   different, and there's minor details that are different.
15       Q.      Would you -- I'm sorry.  So there's
16   differences, but do you have an opinion on which one has
17   more value?
18              MS. SAGAFI:  Objection, asked and answered.
19              THE WITNESS:  No, I don't know which would
20   have more -- a higher value.
21   BY MR. RAMSEY:
22       Q.      Is there one that you would pay more for?
23              MS. SAGAFI:  Objection, calls for
24   speculation.
25              THE WITNESS:  I don't know if there is one
```

1   over the other that I would pay more for.  So no, I
2   don't.
3   BY MR. RAMSEY:
4       Q.      You wouldn't or you don't know?
5       A.      I don't know if I would pay more for one over
6   the other.
7       Q.      If they were each on sale -- or excuse me.
8   If they could be purchased for $100 each, would you buy
9   either one of them?
10              MS. SAGAFI:  Objection, calls for
11  speculation.
12              THE WITNESS:  At $100, no.
13  BY MR. RAMSEY:
14      Q.      Would you buy these items anyway?  Are these
15  items you would buy?
16      A.      Perhaps if the discount was sufficient -- or
17  significant, I should say.
18      Q.      What if they were each priced at $50; would
19  you buy them?
20              MS. SAGAFI:  Objection, calls for
21  speculation.
22              THE WITNESS:  Even at $50 it's not a need
23  item for me, and probably not.
24  BY MR. RAMSEY:
25      Q.      At what price would you consider buying

```
 1    either one?
 2               MS. SAGAFI:  Objection, calls for
 3    speculation.
 4               THE WITNESS:  If they were perhaps $30 or
 5    lower.
 6    BY MR. RAMSEY:
 7        Q.    So you'd buy the black one if it was $30?
 8               MS. SAGAFI:  Objection, misstates the
 9    testimony, calls for speculation.
10               THE WITNESS:  If it was at $30 and I felt it
11    seeing as it is, yes, perhaps.
12    BY MR. RAMSEY:
13        Q.    And would you also buy the blue-gray one if
14    it were priced at $30?
15               MS. SAGAFI:  Objection, misstates the
16    testimony, calls for speculation.
17               THE WITNESS:  Same thing, so perhaps, yes.
18    BY MR. RAMSEY:
19        Q.    Do you consider the items similar?
20               MS. SAGAFI:  Objection, calls for
21    speculation, an expert opinion and a legal conclusion.
22               THE WITNESS:  Similar, yes.
23    BY MR. RAMSEY:
24        Q.    Would you consider them comparable?
25               MS. SAGAFI:  Same objections.
```

JEANNE STATHAKOS

November 02, 2016

1                    THE WITNESS:  No.

2    BY MR. RAMSEY:

3        Q.      And why is that?

4        A.      Like I said, texturally they feel different

5    and I don't feel like they could be in the same group of

6    jackets just because of the texture of each of these.

7        Q.      I'm sorry.  You feel that they could be in

8    the same group?

9        A.      Could not.

10       Q.      Could not.

11       A.      Yes.

12       Q.      Well, is there a particular part of the

13   jacket that feels different to you?

14       A.      The sleeve itself and even -- even the body

15   of the jackets are a different weight, different

16   texture.

17       Q.      That's it for those.

18               MR. RAMSEY:  I will mark as Exhibit 67 an

19   article of clothing that is -- I'll represent is

20   depicted in Exhibit 59; and I will mark as Exhibit 68 an

21   article of clothing that I will represent is depicted in

22   Exhibit 60.

23               (Exhibit 67 and Exhibit 68 marked)

24               THE WITNESS:  Okay.

25   BY MR. RAMSEY:

JEANNE STATHAKOS

```
 1      Q.      In looking at these, would you consider them
 2   to have equal quality?
 3              MS. SAGAFI:  Objection, calls for
 4   speculation, an expert opinion and a legal conclusion.
 5              THE WITNESS:  I'm sorry, equal quality?  I
 6   couldn't tell.  They are similar.
 7   BY MR. RAMSEY:
 8      Q.      Would you consider them to have the same
 9   value?
10              MS. SAGAFI:  Same objections.
11              THE WITNESS:  I don't know.
12   BY MR. RAMSEY:
13      Q.      Would you pay more for one over the other?
14              MS. SAGAFI:  Calls for speculation.
15              THE WITNESS:  No.
16   BY MR. RAMSEY:
17      Q.      Do you consider them similar?
18      A.      Similar, yes.
19      Q.      Do you consider them comparable?
20      A.      Yes, I would even go so far as to say
21   comparable.
22      Q.      If I told you that one of them was an outlet
23   item and one of them was a retail item, would you be
24   able to tell me in looking at them which is the outlet
25   item?
```

1      A.      Not offhand, no.

2      Q.      Okay.  And you know what?  I forgot to ask

3   that about the last set, so I'm happy to give these to

4   you again.  These were Exhibits 65 and 66, the two

5   jackets we looked at previously.  If I told you that one

6   was an outlet item and one was a retail item, would you

7   be able to tell me which is the retail version?

8      A.      No.

9      Q.      Okay.  We're done with show and tell.

10             Other than yourself, your husband and your

11   children, do you know anyone else that shops at Columbia

12   outlets?

13     A.      No.

14     Q.      Do you understand that you're representing a

15   class of people in this case, are seeking to?

16     A.      Yes.

17     Q.      And what is your understanding of your role

18   as a class representative?

19     A.      That I represent possibly a whole bunch of

20   other people that felt the pricing structure from

21   Columbia outlet was misrepresented.

22     Q.      And do you know any other people other than

23   your husband who would be a member of that class?

24     A.      No, I don't.

25     Q.      Going back to something vastly different for

```
 1    one moment, do you know if you've signed an engagement
 2    letter with your legal counsel in this case?
 3         A.    I'm sorry, an engagement letter?
 4         Q.    Do you know if you've signed an agreement of
 5    any sort with your legal counsel for them to represent
 6    you in this case?
 7         A.    Yes.
 8         Q.    Do you know the date of that letter?
 9         A.    I don't recall exactly.
10         Q.    Do you remember the month?
11         A.    No.
12         Q.    Do you know if the engagement letter is
13    specific to this case or is it general to other matters?
14         A.    I'm pretty sure it's specific to this case.
15         Q.    Have you paid any money to your counsel?
16         A.    No.
17         Q.    Have you paid any costs associated with this
18    lawsuit?
19         A.    No.
20         Q.    How long have you known any of your counsel
21    in this case?
22         A.    Just since February of this year.
23         Q.    So that's Kristen and Marty?
24         A.    That's correct.
25         Q.    Do you know Hassan Zavareei?
```

JEANNE STATHAKOS

1                    MS. SAGAFI:   Zavareei.

2     BY MR. RAMSEY:

3          Q.    Have you ever met him or her?

4          A.    No, I have not.

5          Q.    How about Jeffrey Kaliel?

6          A.    No.

7          Q.    How about Jeffrey Ostrow?

8          A.    No.

9          Q.    Never met him?

10         A.    No.

11         Q.    Not certain you've met him?   Okay, I just

12    want to make sure.

13                And how about Wayne Kreger; have you ever met

14    him?

15         A.    No.

16         Q.    Have you spoken to any of those individuals

17    on the phone?

18         A.    No.

19         Q.    Have you spoken to any counsel other than

20    Kristen and Marty?

21         A.    No.

22                MR. RAMSEY:   I'm done.   I don't know if you

23    have any questions.

24                Oh, I wanted to add one thing I was meaning

25    to tell you at the beginning.   You will be given an

```
 1           C E R T I F I C A T I O N

 2

 3           I, JAY W. HARBIDGE, a Shorthand Reporter

 4   within and for the State of California, do hereby

 5   certify:

 6           That, JEANNE STATHAKOS, the witness whose

 7   examination is hereinbefore set forth, was first duly

 8   sworn by me and that this transcript of said testimony

 9   is a true record of the testimony given by said witness.

10           I further certify that I am not related to

11   any of the parties to this action by blood or marriage,

12   and that I am in no way interested in the outcome of

13   this matter.

14

15           IN WITNESS WHEREOF, I have hereunto set my

16   hand November 7, 2016.

17

18

19

20

21   _____

22           JAY W. HARBIDGE, CSR.

23

24

25
```