**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

PLAINTIFFS JEANNE and NICOLAS
STATHAKOS, individually and on behalf
of all others similarly situated,

                              Plaintiffs,

      v.

COLUMBIA SPORTSWEAR COMPANY;
COLUMBIA SPORTSWEAR USA CORP,

                    Defendants.

**Case No. 4:15-cv-04543-YGR**

**SUPPLEMENTAL REPORT OF
ARTHUR OLSEN**

_____

      1.     Based on my extensive experience in the information technology ("IT") field and

my prior work as a data management expert in other cases, I have been retained by Plaintiffs to

review and analyze detailed sales transaction data produced by Defendants Columbia Sportswear

Company and Columbia Sportswear USA Corporation ("Defendants" or "Columbia") in

connection with the above-captioned action, and to testify at deposition and trial if necessary.  I

have personal knowledge of the following except where so stated, and could and would

competently testify thereto.

**Initial Assignment**

      2.     My initial assignment in this case was to provide my opinions regarding whether

Columbia has gathered and retained sufficient historical sales data in order to allow me to perform

certain calculations under a variety of assumptions, for all potential class members, under the

theories of restitution and damages being advanced by Plaintiffs.  In connection with that work, I

submitted an expert report on November 16, 2016 ("Original Report") detailing my conclusion

that Columbia has maintained, and can provide access to, the data necessary to perform the requested calculations on a classwide basis.

3.      Furthermore, having determined that sufficient data existed as to a subset of seven of the products at issue in this case, I performed the calculations necessary to arrive at values pursuant to three models of restitution and/or damages.  The results of these calculations were also detailed in my Original Report.

4.      On March 2, 2017 I was informed that Columbia had produced new sales data that was intended to replace a portion of the data that had been previously produced.  Specifically, when compiling the original sales data, Columbia had intended to produce data for seven specific products.  However, the data produced for one of those products, (product code XM6093), was actually the data for a different product.  On March 2, 2017, Columbia produced the actual sales data for product code XM6093 (Bates number Columbia 01286).

**Current Assignment**

5.      I have now been asked by counsel for Plaintiffs to update the calculations detailed in my Original Report.  Specifically, I have been asked to perform the same calculations necessary to arrive at values pursuant to three models of restitution and/or damages utilizing the replacement data for product code XM6093.  I have also been asked to exclude all items sold to employees of Columbia.

6.      As detailed below, I calculated actual values for the following measures of restitution and/or damages based on detailed sales data available for the seven outlet-exclusive products Plaintiffs purchased.  The three measures can be described as follows:

  a.  Full refund;

  b.  Promised percentage discount; and

2

   c. Disgorgement of profit.

7. My updated calculations, which were limited to the outlet-exclusive products the Plaintiffs purchased, are as follows:

   a. Full refund:  $1,404,449.50

   b. Promised percentage discount:  $486,873.31

   c. Disgorgement of profit:  $637,478.88

**Summary of My Qualifications**

8. My qualifications were detailed in my Original Report.

**Evaluation of Data Available in this Case**

9. In addition to all of the documents detailed in my Original Report, I have reviewed the replacement sales data for product code XM6093 (Bates number Columbia 01286).

**Updated Analysis of Sample Data in this Case**

10. For the purposes of performing calculations on the sample data produced in this case, I was asked to utilize the following three models of monetary relief: (1) full purchase price; (2) promised percentage discount; and (3) disgorgement of profit, where profit is calculated as full purchase price less full landed cost.

11. The details of the analysis were described in my Original Report and remain the same, with two exceptions:

   a. After the sample sales data from the spreadsheet Bates numbered Columbia 01054 was loaded into a Microsoft SQL Server database, all records for product code XM6093 were deleted.  The sample sales data for product code XM6093 was then loaded from the spreadsheet Bates numbered Columbia 01286.  Based on the originally produced sales data, I had determined the outlet price for product code

3

XM6093 to be $54.90.  However, based on the replacement data, I determined the outlet price to be $69.90.

b.  In order to exclude the purchases made by Columbia employees, I excluded the sales records having a transaction code starting with an "E".  Based on the testimony of Mr. Bui, transactions with a transaction code starting with an "E" represented sales made to Columbia employees, whereas transactions with a transaction code starting with an "S" represented all other sales.  Bui Depo, at 30:13-34:16.

**<u>Conclusions</u>**

12.  Everything contained in my Original Report, including my conclusions, remains accurate.  Namely, that based on my experience and the information and data that I have reviewed, I believe that Columbia has maintained, and could provide me access to, the historical sales data necessary to perform classwide damage/restitution calculations in this case.

13.  My opinions in this Rebuttal Report are based upon my extensive experience in the information technology field and my prior work as a data management expert in other cases.  I reserve the right to supplement or modify my opinions detailed in this report to the extent that new information is made available through discovery or other means.

Dated:    March 7, 2017                          _____

                                                                      Arthur Olsen