**TYCKO & ZAVAREEI LLP**
KRISTEN LAW SAGAFI, California Bar No. 222249
ksagafi@tzlegal.com
ANNICK M. PERSINGER, California Bar No. 272996
apersinger@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone (510) 254-6808
Facsimile (510) 210-0571

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEANNE and NICOLAS STATHAKOS, on behalf of themselves and all others similarly situated,<br><br>PLAINTIFFS,<br><br>vs.<br><br>COLUMBIA SPORTSWEAR COMPANY, COLUMBIA SPORTSWEAR USA CORPORATION,<br><br>DEFENDANTS. | Case No. 4:15-cv-04543-YGR<br><br>**[PROPOSED] ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Yvonne Gonzalez Rogers<br><br>Hearing Date:  April 25, 2017<br>Time:                2:00 P.M.<br>Courtroom:      1, 4th Floor, Oakland Courthouse |

Before the Court is Defendant Columbia's Motion for Summary Judgment. Defendant's Motion is based on the following issues:

1. Columbia is entitled to summary judgment on the TAC because Plaintiffs have not and cannot present any evidence that the reference prices they claim are deceptive are invalid.[1]

2. Columbia is entitled to summary judgment on the TAC because Plaintiffs have not and cannot present any evidence that they relied on the reference prices or therefore that they suffered an injury sufficient to confer either statutory or Article III standing.

3. Columbia is entitled to summary adjudication of Plaintiffs' prayers for monetary relief, whether through damages or restitution, because Plaintiffs have not and cannot present any evidence that they received something worth less than the price they paid.

After consideration of the moving papers, the parties' respective oppositions, supporting documents, and the arguments of counsel at the hearing on this matter, the Court finds that genuine disputes of material fact exist with regard to each of these three issues. Therefore, the Court ORDERS that Defendant's Motion for Summary Judgment is DENIED in its entirety.

**I. The Factual Record**

Starting in the Fall 2014 season, Columbia began to design and manufacture outlet exclusive products to be sold exclusively at Columbia Outlet stores that were intentionally different from products it sold in its non-outlet stores and through other sales channels. These outlet-exclusive items are referred to herein as Outlet SMU Builds.

It is undisputed that Columbia offered for sale approximately 580 Outlet SMU Builds through the Fall 2016 season, each of which had a higher reference price and a lower "outlet price" on the price tag. It is further undisputed that Columbia's SMU Outlet Builds are never sold anywhere but Columbia outlet stores and never sold at the higher reference price printed on their tags. The highest price that any consumer actually paid for any SMU Outlet Build is the lower of the

---

[1] Contrary to Columbia's argument, Plaintiffs are not required to prove "invalidity" or actual falsity of the reference prices (although they can and do). Plaintiffs must demonstrate only that Columbia's reference prices were "likely to deceive." *See* Plaintiffs' Opposition to Columbia's Motion for Summary Judgment, filed concurrently, at § III.A.1. The evidence demonstrates that Plaintiffs were deceived by, and relied on, Columbia's false reference prices in making their purchase decisions.

1 two prices printed on the tag.

2 At its outlet stores, Columbia sells both Outlet SMU Builds and out-of-season Inline products
3 (also called "closeouts"). Price tags for the Inline product sold at the outlet look identical to the price
4 tags for the Outlet SMU Builds; the tags for both kinds of products have a higher price printed on
5 them and a lower price appearing on a sticker. The critical difference, however, is that Inline
6 products that end up for sale at a Columbia outlet store were, in fact, previously sold elsewhere at the
7 higher price on the price tag. Outlet SMU Builds, by contrast, are never sold anywhere at the higher
8 price. Columbia concedes that it is impossible for Columbia Outlet Store customers to distinguish
9 between Outlet SMU Builds and Inline products that are offered for sale at the outlet. The net effect
10 is that the real discounts (on Inline items) are mixed in with the false discounts (on Outlet SMU
11 Builds), and there is no way for consumers to tell which is which – even after they know that *some*
12 of the items were never sold at the higher price. It is undisputed that the price tags for Outlet SMU
13 Builds have no explanatory language, just the higher and lower price.

14 Plaintiffs have testified that they are "bargain hunters" whose purchase decisions are driven
15 largely by the presence of a discount. Both Plaintiffs testified that the prospect of finding "a sale" or
16 "a deal" was "the whole purpose of going" to a Columbia outlet store. Both Plaintiffs further
17 testified that they measured the depth of the discount on Outlet SMU Builds by comparing "the price
18 on top, which [they] thought at that point may have still been a retail price versus whatever the sale
19 price was on the bottom." Plaintiffs jointly purchased eight Outlet SMU Build products from
20 Columbia outlet stores. Plaintiffs were motivated to make all of their Outlet SMU Build purchases
21 based primarily on the advertised discount off the highest price on tag, which they believed to be an
22 actual retail price that other consumers had paid for the item.

23 **II. Applicable Standard**

24 Summary judgment is only appropriate if, viewing the evidence and drawing all reasonable
25 inferences in the light most favorable to the nonmoving party, "the movant shows that there is no
26 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."
27 Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears
28 the initial burden of demonstrating the absence of a genuine issue of material fact. *See id.* A genuine

issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-56 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See id.* at 255. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, a court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n Eyeglasses,* 809 F.2d 626, 630-31 (9th Cir.1999). In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

**III.   Issue No. 1: Whether Columbia's Pricing Scheme is Deceptive**

Columbia first argues that it is entitled to summary judgment because its pricing scheme is not deceptive as a matter of law. The Court is unpersuaded. To succeed on claims arising from allegedly deceptive advertising, Plaintiffs must only demonstrate that Columbia's reference prices are likely to deceive a reasonable consumer. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Here, the evidentiary records supports Plaintiffs' view that consumers reasonably understand Columbia's reference prices to reflect actual former prices at which the ticketed item was sold. Because it is undisputed that Columbia's SMU Outlet Builds are never sold anywhere but Columbia outlet stores and never sold at the higher reference price printed on their tags, it follows that consumers are deceived in their perceptions of the represented discount. The Ninth Circuit has recognized that such practices violate California law:

> Retailers, well aware of consumers' susceptibility to a bargain, [] have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price. Because such practices are misleading—and effective—the California legislature has prohibited them.

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013); *see also Kwikset*, 51 Cal. 4th at 328 ("The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source.").

1    Columbia argues that consumers cannot be misled by its pricing scheme because the higher
2  prices on the price tags for Outlet SMU Builds refer to similar products sold elsewhere. The Court
3  disagrees. Rather, this Court shares the views recently expressed in *Evans v. DSW*, CV 16-3791-
4  JGB, at *13 (C.D. Cal. Feb. 2, 2017) ("[R]easonable consumers would believe that the 'Compare At'
5  price refers to either a price for which the same item was formerly sold or a price for which the item
6  is sold by other retailers."). Here, where the price tag offers no explanatory language, it is
7  reasonable for consumers to believe the reference price refers to a price at which the same item was
8  formerly sold.
9    Columbia's only authority for the argument that the reference prices are not deceptive as a
10 matter of law because those prices purportedly refer to similar goods is a 1957 California Attorney
11 General (AG) opinion. This Court holds, as Judge Chhabria did in *Pickles v. Kate Spade & Co.*, Case
12 No. 15-cv-05329-VC, 357-01, 2016 WL 3999531, at *2, n.1 (N.D. Cal. July 26, 2016), "even if that
13 stale opinion reflected the Attorney General's current view of the law, which is doubtful, a state
14 attorney general opinion is . . . not binding on this Court."

15    **Issue No. 2:   Whether Plaintiffs' Relied on Columbia's Reference Prices to Their Detriment**
16

17    **Standing**

18    Binding precedent form the Ninth Circuit and the California Supreme Court state that a
19 consumer who is a victim of false reference pricing has statutory standing to seek redress "so long as
20 false advertisements induced him to buy a product he would not have purchased or to spend more
21 than he otherwise would have spent." *Hinojos*, 718 F.3d at 1102; *Kwikset*, 51 Cal. 4th at 320-30;
22 *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 918-19 (2016). The pertinent authority,
23 moreover, makes clear that a plaintiff's uncertainty about whether she would have purchased the
24 products if she had known the reference prices were false is sufficient to confer standing, particularly
25 when the plaintiff testifies that "price-comparison advertising influenced [her] purchasing
26 decision[s]." *Chowning v. Kohl's Dep't Stores, Inc.*, No. CV1508673RGKSPX, 2016 WL 1072129,
27 at *4 (C.D. Cal. Mar. 15, 2016); *see also Zeisel v. Diamond Foods, Inc.*, 2011 WL 221113, at *4
28 (N.D. Cal. June 7, 2011) (finding the plaintiff had satisfied standing when he testified that label

misrepresentations influenced his purchasing decision even though he "might have" still purchased the product absent the misrepresentations); *Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010 WL 5387831, at *3 (N.D. Cal. Dec. 21, 2010) (holding that plaintiffs presented evidence that they relied on false price references when one plaintiff testified he "probably would not have bought the computer when he bought it if not for the false promotion" and other plaintiff testified that "sale price was important"). As the Ninth Circuit observed in *Hinojos*, a "deceived bargain hunters suffer a more obvious economic injury" than results from other types of false advertising, such as the type of attribute misrepresentation at issue in *Kwikset*, because the "bargain hunter's expectations about the product he just purchased is *precisely* that it has a higher perceived value and therefore a higher resale value." *Hinojos,* 718 F. 3d. at 1105-06.

Here, Plaintiffs' are "bargain hunters" who thought they were receiving deep discounts off actual retail prices. Ms. Stathakos testified that she probably would not have purchased Item No. 3(a), a pair of beige women's shorts that Plaintiffs purchased July 18, 2015 (before filing their initial complaint in this case), had she known the reference price was false. She also testified unequivocally that she and her husband would not have purchased Item. No. 5, a men's jacket purchased February 14, 2016, had they known the truth about the reference price. As a general matter, Ms. Stathakos testified that she felt like she was "fooled" by Columbia's false reference prices and that if she had "had all the facts about Columbia's products, Columbia's pricing, [she] may have made other decisions about whether to buy the items at the time . . .I mean, I spent money that I may not have spent." She further testified that price and the bargain she thought she was receiving (by reference to the higher retail price) was important in her purchasing decision, and that if she isn't able to determine that a garment is a bargain by reference to a retail price, she does not "even contemplate purchasing it." In other words, price comparisons are critical to her, and often the determining factor, in her purchasing decisions.

Similarly, Mr. Stathakos testified that he does not know whether he would have purchased any of the Outlet SMU Builds that he and his wife bought if they had known that the products never sold anywhere at the reference price on the price tags. During his deposition, Mr. Stathakos expressed uncertainty about whether he would have purchased Outlet SMU Builds had he known

1  that the products were never sold anywhere at the reference price. His testimony makes it clear why
2  uncertainty is enough under the law—because it is difficult for a shopper to know what decisions he
3  would have made if he had not been lied to about a critical factor in the decision analysis:

> Q: …if I also told you that it was never sold at $120, which is the higher price listed on the price tag, would you have still purchased the jacket back in February for the $47.94 that you paid?
>
> A: I don't know because now you are putting in the question everything I believed that helped me make a decision. I based it on this item being sold at a retail store for $120. So you're telling me that that's not correct. I don't know what my decision would be. I don't know how much I would need that jacket. I don't know how much of a deal this is. I don't know what -- it's throwing into question a lot of factors for me.

N. Stathakos Dep., at 94:3-17.

Since his deposition, Mr. Stathakos has confirmed that he has the same uncertainty about all of the Outlet SMU Builds that he and his wife purchased. For all eight of the products that he and his wife purchased, he believed the "highest price on the tag to reflect the actual retail price at which the item was sold." And he used the higher reference price to calculate the amount of the discount he was receiving, which was "very important" to him. Had he known that the reference price was false, his "understanding of both the retail value of the product and the depth of the advertised discount would have changed," such that he may have decided not to purchase some or all of the items.

Here, Plaintiffs' testimony as a whole demonstrates that the promised discount, which they calculated in reliance on the higher reference price, was critically important to them. In addition, their testimony reveals that they were deceived by Columbia's deceptive pricing practices, even after they filed their Complaint.

**Materiality**

To succeed on their UCL, FAL, and CLRA claims, Plaintiffs are required to prove their own reliance, but they need not establish causation, deception, or materiality for each individual class member. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985-86 (9th Cir. 2015) ("To state a claim under the UCL or the FAL 'based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived. This inquiry does not require 'individualized proof of deception, reliance and injury.'") (internal quotations omitted); *Brazil v. Dell Inc.*, No. C-07-01700 RMW, 2010 WL 5387831, at *3 (N.D. Cal. Dec. 21, 2010)

("[U]nder California law, plaintiffs need not establish that each and every class member based his or her decision on the represented discounts.").

The Ninth Circuit recognizes that "a representation is 'material' . . . if a reasonable consumer would attach importance to it *or* if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Hinojos*, 718 F.3d at 1107 (internal quotations omitted). But a misrepresentation need not be the dispositive factor in a consumer's purchasing decision to be material. *See id.*. The Ninth Circuit has held that misleading price representations, and particularly false markdowns, are *per se* material under California law, which gives rise to a class-wide inference of reliance. *Hinojos*, 718 F.3d at 1107 ("the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination"); *see also Brazil*, 2010 WL 5387831, at *5 ("There is evidence . . . that external reference prices and semantic clues impact customers' perceptions of value and purchase decisions."). "In effect, California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; restitution is the remedy." *Pulaski*, 802 F.3d at 986; *Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292, (2002), *as modified on denial of reh'g* (May 29, 2002)("plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all").

Plaintiffs have testified that they were "duped" and "fooled" because they mistakenly believed that the reference prices on Columbia's Outlet SMU Builds reflected actual prices at which the items they purchased were offered for sale previously or elsewhere. Plaintiffs further testified that they purchased the Outlet SMU Builds in reliance on Columbia's representation of a discount off the retail price. The promised discount was a key factor in their purchase decisions, and they may have decided against purchasing Columbia's Outlet SMU Builds had they known the promised discounts were illusory. Nothing further is required.

**IV. Issue No. 3: Whether Plaintiffs' Proffer a Viable Measure of Monetary Relief**

1    As an initial matter, the Court remains unpersuaded that price to value differential is the only
2    acceptable measure of monetary relief. As this Court held in denying Columbia's motion to dismiss,
3    Columbia's primary authority for the notion that price to value is the only viable measure of relief in
4    a false advertising case actually holds the opposite. *In re Tobacco II*, 240 Cal. App. 4th at 792,
5    *review denied* (Dec. 9, 2015) (explaining that "Vioxx ['s] [price-to-value method] does not purport
6    to set forth the exclusive measure of restitution potentially available" in a consumer fraud case); *see*
7    *also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 983 (9th Cir. 2015) (recognizing
8    alternate measures of restitution); *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO, 2015 WL
9    1526559, at *4 (C.D. Cal. Mar. 23, 2015) ("…defendant has not cited, nor has the court found, any
10   authority indicating that [price to value differential] is the only way restitution can be calculated.");
11   *Chowning*, 2016 WL 1072129, at *5 ("Of course, the price/value differential is not the exclusive
12   measure of restitution, as [*In re Tobacco II Cases*] and [*Pulaski*], have ruled."); *Le v. Kohls Dep't*
13   *Stores, Inc.*, 160 F. Supp. 3d 1096, 1105 (E.D. Wis. 2016) (holding that "California case law has not
14   cabined restitution under the UCL and/or CLRA to the price-to-value method").

15   With respect to damages, California law recognizes that "[d]amages under the CLRA . . . and
16   restitution under the False Advertising and Unfair Competition Laws . . . are different remedies."
17   *Colgan*, 135 Cal. App. at 695, *as modified on denial of reh'g* (Cal. Ct. App. Jan. 31, 2006). Under
18   Cal. Civil Code § 3343(a), which sets forth an appropriate measure of damages for CLRA claims, an
19   award of actual damages can permissibly exceed the delta between what the plaintiff paid and the
20   market value of what she received; the CLRA allows for recovery of "the difference between the
21   actual value of that with which the defrauded person parted and the actual value of that which he
22   received, *together with any additional damage arising from the particular transaction, including . . .*
23   *amounts actually and reasonably expended in reliance upon the fraud.*" See *Colgan* 135 Cal. App.
24   4th at 675 (emphasis added); *see also*, *Chamberlan v. Ford Motor Co.*, 369 F.Supp.2d 1138, 1146-
25   47 (N.D. Cal. 2005) (explaining that under the CLRA a consumer can recover "actual damages" to
26   "compensate someone for the harm which he or she has been proven to suffer" and that "[p]revailing
27   consumers under the CLRA *may also* obtain an injunction, restitution, [and] punitive damages")
28   (italics added; citations omitted).

1    Plaintiffs proffer three measures of monetary relief: (1) refund; (2) promised percentage
2 discount; and (3) disgorgement of profit. The Court finds that each of Plaintiffs' proposed models of
3 relief is directly tied to Plaintiffs' theory of liability and can be calculated with precision on a
4 classwide basis by reference to Columbia's sales data, a sample of which was produced and utilized
5 by Plaintiffs' expert to calculate a total value under each model for the seven Outlet SMU Build
6 products Plaintiffs purchased.

   Full Refund

   Plaintiffs' full refund model finds support in recent case law within this Circuit. In *Makaeff v. Trump University*, LLC, 309 F.R.D. 631, 637 (S.D. Cal. 2015), defendants argued, as Columbia argues here, that the only proper measure of restitution was the difference between what the plaintiff paid for Trump University and the value of what was received. The court concluded, however, that a full refund model was workable because consumers had been induced to pay for Trump University, *which could have some value*, based on defendants' fraudulent practices. *Id.* at 638-40. The court distinguished cases involving consumable products, like food, because "while the food products may have been missing a particular premium quality" like being "all natural," the plaintiffs contended that Trump University was missing its reason for existing—Donald Trump. Here too, the products at issue are not just missing a premium quality like being "Made in U.S.A." [2] Rather, the entire transaction would never have taken place if Plaintiffs had not been lured into the transaction by Columbia's fraudulent pricing scheme.

   Columbia distinguishes *Makaeff*, 309 F.R.D. at 638-40 by claiming that "it involved allegations that the product received was entirely worthless." Def. at 19. But Columbia's

---

[2] Notably, as one court explained, in *Mullins v. Premier Nutrition Corp.*, 178 F.Supp.3d 867, 898-99 (N.D. Cal. 2016), a full refund model is inapplicable in cases involving beverages and cigarettes because the plaintiffs in those cases "did not contend that consumers never would have purchased the product absent the claims on the label. How could they? The products at issue were expressly for consumption, flavor, and hydration." *Id.* at 899. The court, however, concluded that those cases were distinguishable because the plaintiff claimed "that she and other putative class members would not have purchased Joint Juice absent its claim to treat joint health problems or to keep joints healthy." *Id.* Likewise, here, Plaintiffs testified that they would not have purchased Outlet SMU Builds if they hadn't been marketed at a discount. As a result, they should be compensated for the amount they paid based on Defendant's dishonest and fraudulent practices.

characterization of the holding is misleading. While the plaintiffs argued that Trump University was worthless, the Court did not agree. The court explained that "[a] number of class members have testified to being satisfied with their TU investment and to having obtained some value from their education, despite the alleged absence of the promised Trump benefits." *Id.* at 640. Thus, the court concluded that the cases addressing worthless placebo pills advertised as medication "provided little support" for the plaintiffs' refund theory. Instead, the court found the fraudulent sales tactics of Trump University more akin to *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir.1993) where the "trial court awarded [] consumers a full-refund for redress even though the FTC had previously found that the heat detectors had some value." *Id.* at 638; *see also id.* ("Defendants argue that *Figgie* is distinguishable because the consumers were eligible for a full refund only if they returned their heat detectors. ….However, in approving full-refunds, the *Figgie* court did not condition it upon a return of the heat detectors. Instead, the court focused on the fraud in the selling, not the value of the product, in upholding full refunds.").

Here, as in *Spann*, illusory discounts were the key driver in Plaintiffs' purchase making decisions. As such, the Court is persuaded that Plaintiffs should be permitted to present the Full Refund measure to the finder of fact.

Promised Percentage Discount:

Plaintiffs' theory is that they were fraudulently induced to purchase Columbia's outlet-exclusive products by Columbia's use of illusory discounts. In support of that theory, Plaintiffs testify that the promised discount, which they calculated using the reference price as a starting point, drove their purchase decisions. California courts have held that plaintiffs may "seek some [damages or restitution] amount representing the disparity between their expected and received value," which in this case can be measured by the "expected" discount as reflected as the percentage difference between the reference price and the lower "outlet price" appearing on the price tag. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013) (granting class certification where plaintiffs proposed partial refund model for restitution and damages based on allegedly false representations that food products were "All Natural"); *Thurston v. Bear Naked, Inc.*, No. 11-CV-2985-H BGS, 2013 WL 5664985, at *10 (S.D. Cal. July 30, 2013) (same).

1    Under the Promised Percentage Discount model, Plaintiffs and members of the class recover
2 the percentage discount they were promised, measured against the amount they actually spent. Here,
3 Plaintiffs propose to determine the classwide total under this measure by reference to Columbia's
4 sales and product data. Plaintiffs' expert compared the higher reference price for each Outlet SMU
5 Build to the lower outlet price to determine the amount of "discount" represented by the price tag.
6 For example, if an Outlet SMU Build's price tag bore a higher price of $100 and an outlet price of
7 $80, the promised percentage discount is 20%. Plaintiffs' expert then applied the promised
8 percentage discount to the amount *actually paid* by the consumer in each transaction to calculate the
9 amount attributable to the misrepresented discount in each transaction. The Court agrees that
10 "Plaintiff[s] [are] entitled to argue that payment of the [promised percentage discount], if measurable
11 and supported by evidence, would restore sums acquired through defendant's allegedly unfair
12 pricing practices." *Spann*, 2015 WL 1526559, at *7

13    Disgorgement of Profit

14    Restitutionary disgorgement of profit is a well-accepted method for calculating restitution
15 and damages under California's consumer protection laws where, as here, the recovery will "replace
16 . . . money or property that defendants took directly from [the] plaintiff." *Korea Supply Co. v.*
17 *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (Cal. 2003); *see also Zeisel v. Diamond Foods, Inc.*,
18 No. C 10-01192 JSW, 2011 WL 2221113, at *10 (N.D. Cal. June 7, 2011) (finding that plaintiff had
19 presented a likely method for determining class damages where plaintiff proposed proving
20 restitutionary disgorgement by relying on documents produced by Diamond relating to net sales,
21 profits, and costs, as well as retail prices of its Shelled Walnut Products."); *Astiana*, 291 F.R.D. at
22 506 (determining that restitution based upon "sales, profits and prices" was a "viable theory of how
23 to calculate [restitution]."); *Aguayo v. U.S. Bank*, 200 F.Supp.3d 1075 (S.D. Cal. 2016) (finding that
24 a class of borrowers were entitled to recover a bank's profits as restitution).

25    The Court finds this case to be analogous to *Aguayo*. Where, as here, the disgorgement
26 measure will return profits on money *spent by Plaintiffs*, it is focused on the losses of the Plaintiffs,
27 not the gains of the defendant. As such, it is restitutionary in nature. Plaintiffs offer proof of their
28 losses through testimony indicating that they would not have purchased Columbia's mislabeled

1  Outlet SMU Builds but for Columbia's illusory discounts. As with the other proffered measures of
2  relief, the delta between Columbia's landed cost and what Class members actually paid for
3  Columbia's Outlet SMU Builds can be calculated with precision by reference to Columbia's detailed
4  sales data. On these facts, the Court finds that Plaintiffs are entitled to argue that disgorgement is a
5  proper measure of recovery

7  For the foregoing reasons, the Court finds t that genuine disputes of material fact exist with
8  regard to each of the three issues upon which Columbia rests its Motion. Summary judgment is
9  DENIED.
10  IT IS SO ORDERED.

12  DATED: _____, 2017

_____
HON. YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE