1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2  Including Professional Corporations
   P. CRAIG CARDON, Cal. Bar No. 168646
3  JAY T. RAMSEY, Cal. Bar No. 273160
   1901 Avenue of the Stars, Suite 1600
4  Los Angeles, California 90067-6055
   Telephone:  310.228.3700
5  Facsimile:  310.228.3701
   ccardon@sheppardmullin.com
6  jramsey@sheppardmullin.com

7  Attorneys for Defendants
   COLUMBIA SPORTSWEAR COMPANY and
8  COLUMBIA BRANDS USA, LLC (f.k.a.
   COLUMBIA SPORTSWEAR USA
9  CORPORATION)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| JEANNE and NICOLAS STATHAKOS, individually and on behalf of all others similarly situated, | Case No. 4:15-cv-04543-YGR |
|---|---|
| Plaintiffs, | *Hon. Yvonne Gonzalez Rogers* |
| v. | **COLUMBIA'S RESPONSE RE MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO CLASS CERTIFICATION** |
| COLUMBIA SPORTSWEAR COMPANY; COLUMBIA SPORTSWEAR USA CORPORATION; | |
| Defendants. | Date: April 25, 2017<br>Time: 2:00 p.m.<br>Courtroom: 1 (4th Floor, Oakland) |

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................1
II. ARGUMENT .................................................................................................................1
    A. Columbia's Reference Prices Are Valid And Non-Deceptive ..................................1
    B. Plaintiffs Cannot Establish Reliance, Materiality, Or Injury ....................................3
    C. Plaintiffs Are Not Entitled To A Monetary Award...................................................9
III. CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aguayo v. U.S. Bank*
  200 F. Supp. 3d 1075 (S.D. Cal. 2016) ................................................................................14

*Algarin v. Maybelline, LLC*
  300 F.R.D. 444 (S.D. Cal. 2014) ............................................................................................7

*Astiana v. Ben & Jerry's Homemade, Inc.*
  2014 WL 60097 (N.D. Cal. Jan. 7, 2014) .............................................................................15

*Astiana v. Kashi Co.*
  291 F.R.D. 493 (S.D. Cal. 2013) ...............................................................................13, 14, 15

*Brazil v. Dell Inc.*
  2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) .....................................................................5, 8

*Caldera v. J.M. Smucker Co.*
  2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) ........................................................................12

*Cattie v. Wal-Mart Stores, Inc.*
  504 F. Supp. 2d 939 (S.D. Cal. 2007) .....................................................................................3

*Chowning v. Kohl's Dep't Stores, Inc.*
  2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) ..................................................4, 5, 11, 12, 13

*Hinojos v. Kohl's Corp.*
  718 F.3d 1098 (9th Cir. 2013) .............................................................................................5, 7

*Ivie v. Kraft Foods Glob., Inc.*
  2015 WL 183910 (N.D. Cal. Jan. 14, 2015) .........................................................................14

*Johnson v. Harley-Davidson Motor Co. Group, LLC*
  285 F.R.D. 573 (E.D. Cal. 2012) ............................................................................................7

*Jones v. ConAgra Foods, Inc.*
  2014 WL 2702726 (N.D. Cal. Jun. 13, 2014) .................................................................3, 7, 8

*Le v. Kohls Dep't Stores, Inc.*
  160 F. Supp. 3d 1096 (E.D. Wis. 2016) ..........................................................................11, 12

*Makaeff v. Trump Univ., LLC*
  309 F.R.D. 631 (S.D. Cal. 2015) ...........................................................................................12

*McVicar v. Goodman Glob., Inc.*
  2015 WL 4945730 (C.D. Cal. Aug. 20, 2015) ........................................................................7

*Ogden v. Bumble Bee Foods, LLC*
　　2014 WL 27527 (N.D. Cal. Jan. 2, 2014) ...............................................................10, 12

*Pickles v. Kate Spade & Co.*
　　2016 WL 3999531 (N.D. Cal. July 26, 2016) ................................................................2

*In re POM Wonderful LLC*
　　2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ..............................................................12

*Prohias v. Pfizer, Inc.*
　　485 F. Supp. 2d 1329 (S.D. Fla. 2007)............................................................................4

*Pulaski & Middleman, LLC v. Google, Inc.*
　　802 F.3d 979 (9th Cir. 2015) ..............................................................................7, 8, 11

*Red v. Kraft Foods, Inc.*
　　2012 WL 8019257 (C.D. Cal. Apr. 12, 2012)...............................................................12

*Spann v. J.C. Penny Corp.*
　　2015 WL 1526559 (C.D. Cal. Mar. 23, 2015) .........................................................11, 13

*Taylor v. Nike, Inc.*
　　2017 WL 663056 (D. Or. Feb. 17, 2017) ........................................................................4

*Thurston v. Bear Naked, Inc.*
　　2013 WL 5664985 (S.D. Cal. July 30, 2013)............................................................13, 14

*Trazo v. Nestle USA, Inc.*
　　113 F. Supp. 3d 1047 (N.D. Cal. 2015) ........................................................................14

*Zeisel v. Diamond Foods, Inc.*
　　2011 WL 2221113 (N.D. Cal. June 7, 2011) ............................................................5, 15

**State Cases**

*Caro v. Procter & Gamble Co.*
　　18 Cal. App. 4th 644 (1993)............................................................................................3

*Kwikset Corp. v. Sup. Ct.*
　　51 Cal. 4th 310 (2011)...................................................................................................12

*Massachusetts Mut. Life Ins. Co. v. Superior Court*
　　97 Cal. App. 4th 1282 (2002)..........................................................................................8

*Pfizer Inc. v. Superior Court*
　　182 Cal. App. 4th 622 (2010)..........................................................................................3

*Sevidal v. Target Corp.*
　　189 Cal. App. 4th 905 (2010)..........................................................................................3

*In re Tobacco II*
    240 Cal. App. 4th 779 (2015)..................................................................9, 10, 11, 12, 13, 14

*In re Vioxx Class Cases*
    180 Cal. App. 4th 116 (2009).................................................................................9, 10

**Other Authorities**

30 Op. Atty. Gen. 127 (1957) (Ex. 15) ........................................................................................1

# I. INTRODUCTION

Plaintiffs' responsive brief fails to demonstrate that this case should survive summary judgment, let alone as a class action. Those reasons are explained in detail below. At the outset, Columbia reiterates that this is not a typical false advertising class action. Plaintiffs are not alleging a false statement about the inherent qualities of a product (*e.g.*, whether it is organic, wind-proof, or Made in America), are not alleging that they received a good they did not enjoy or find perfectly acceptable for the prices they paid, and are not alleging that Columbia was able to garner a "price premium" or that Plaintiffs were overcharged as a result of purportedly deceptive advertising. At the end of the day, it is undisputed that Columbia makes high quality products, offers them at great prices, and there is no evidence that Columbia's practices did anything but benefit its customers. Columbia respectfully requests that the Court grant Columbia's Motion for Summary Judgment and deny Plaintiffs' Motion for Class Certification.

# II. ARGUMENT

### A. Columbia's Reference Prices Are Valid And Non-Deceptive

Plaintiffs argue that a reference price is invalid and deceptive if it is not the price at which the identical product previously sold. Plaintiffs are wrong for two reasons.

First, as Columbia noted in its brief, even in "former" price cases, where the price is explicitly advertised as a "former" price – meaning the word "former" or "last" or some similar notation (maybe a strikethrough) is on the price tag – the price at which a comparable items sold is a valid "former" price. Cal. Bus. & Prof. Code § 17501; 30 Op. Atty. Gen. 127 (1957) (Ex. 15); ECF Dkt. No. 41, n.6. Plaintiffs attempt to distinguish the Attorney General Opinion by asking the Court to ignore the opinion's definition of "prevailing market price," which is defined as "the predominating price that may be obtained for merchandise *similar to* the article in question on the open market and within the community where the article is sold." Plaintiffs argue that the opinion analyzes two scenarios (one tag saying "worth $100"; another saying "formerly $100") and concludes that comparisons to similar goods is permissible only in the "worth $100" scenario. Not so. The opinions holds that the phrase "prevailing market price" has the same meaning in each case: "Contrasting the first type of advertisement with the second type, we see that though

the first type makes a representation as to value or worth and the second type makes a representation as to former price, they both must coincide with the same standard, the 'prevailing market price,' which means the actual selling price of the article on the open market." (Ex. 15.) The opinion then sets for the definition of a prevailing market price, as quoted above. The only difference between the two scenarios is in the timing – in the first case (worth $100), the reference price must be the "prevailing market price" at present; in the second case (formerly $100), the reference price must be the "prevailing market price" in the past. Here, there is no dispute that similar goods sold for the reference prices and that the reference prices represent the price at which the item would sell in inline channels. Plaintiffs do not challenge this, arguing only that Inline and Outlet SMU products are not identical.[1]

Second, Plaintiffs argue that "the only reasonable interpretation" of Columbia's reference prices (which are unadorned with any "former" price descriptor) "is that it refers to a price at which the same item was formerly sold." (PB at 11:18-20.) This is unsupported by the evidence. In fact, Plaintiffs rely primarily on court decisions on motions to dismiss. *See* PB at 11-12, *citing Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013), *Pickles v. Kate Spade & Co.*, 2016 WL 3999531 (N.D. Cal. July 26, 2016), and *Evans v. DSW*, CV 16-3791 (C.D. Feb. 2, 2017). On a motion to dismiss, the court must decide only that the plaintiffs' theory is not objectively unreasonable. That finding, however, does not mean that at summary judgment or class certification the ***actual evidence*** will confirm the allegations. Here, Columbia's survey reflects that 83.8% of respondents expect to find products at Columbia outlet stores that were ***made specifically for the outlet*** and were sold ***only at*** the outlet. At the very least, a significant number of consumers believe that some portion of the products sold at the Columbia outlet were never sold anywhere else, and therefore those people cannot understand the reference prices to refer only to the price at which that item previously sold at a non-outlet store. (Ex. 20, Scott Report at ¶ 32.)

---

[1] Plaintiffs' continued reliance on the purported expert opinions of Goldaper are misplaced. As Columbia established in its Motion to Exclude Goldaper, her opinions that the products are either modestly or materially different are not only irrelevant, but inadmissible. At best, Goldaper's "opinions" highlight that individual issues about the similarity or difference between different products precludes Plaintiffs' from proving their claims with common evidence.

Similarly, consumers' beliefs about what Columbia's reference prices represent vary, and there is no uniform understanding as to what the reference prices represent. (Ex. 20, Scott Report at ¶¶ 7.b, 24, 27.) Because Plaintiffs offer no evidence in support of their argument about how reasonable consumers interpret Columbia's reference prices, summary judgment should be entered.

At the very least, class certification cannot be granted because of the variability in how people understand Columbia's reference prices. In response to Columbia's survey, Plaintiffs argue, citing Poret's rebuttal report, that the survey actually reflects that a majority (75%) of consumers understood the reference prices to be the former price of the identical item. Poret's analysis should be disregarded (*see* Columbia's Motion to Strike), and, in any event, is incorrect. Even if Poret's anslysi is accepted, there is still no single, uniform understanding of the reference prices (according to Poret, still 25% of consumers do not understand the reference prices consistent with Plaintiffs' theory of liability), and therefore a class cannot be certified. *See Jones v. ConAgra Foods, Inc.,* 2014 WL 2702726, at *14 (N.D. Cal. Jun. 13, 2014) (denying certification where the evidence showed that putative class members understood defendant's "All Natural" claims differently). Plaintiffs have no response to this argument. Plaintiffs' entire case hinges on the putative class having a uniform understanding that the reference prices refer to the price at which ***identical*** items previously sold. That way they avoid having to prove at trial, on an item by item basis, that no similar items sold elsewhere for the reference price. Plaintiffs' lament that this type of trial procedure would be impossible, but that is precisely the point and one of the reasons a class cannot be certified.

### B. Plaintiffs Cannot Establish Reliance, Materiality, Or Injury

As Columbia explained in its Motion, Plaintiffs have not been injured for purposes of either Article III or statutory standing, and cannot prove reliance, deception, or materiality if they cannot prove that, had they known the "truth," they would not have made their purchases. *See, e.g.*, *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 910 (2010); *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 625 (2010); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993); *Jones v. ConAgra Foods, Inc.,* 2014 WL 2702726, at *15-16 (N.D. Cal. Jun. 13, 2014); *Cattie v.*

*Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946–47 (S.D. Cal. 2007). This comports with the law and common sense – even if I have been "fooled" by a representation about a product, if I would have bought the product anyway, I have not been injured, my purchase was not made in reliance on the representation, and the representation was immaterial.

In its Motion, Columbia demonstrated that Plaintiffs could not prove, for any item, that they would not have made their purchase had they known the "truth." Plaintiffs accuse Columbia of mischaracterizing their testimony. Columbia believes it presented the testimony accurately and will not respond in kind. In any event, even accepting Plaintiffs' characterization of their testimony and Plaintiffs' subsequent declarations (even where those declarations are inconsistent with their deposition testimony), summary judgment is warranted. As Plaintiffs' concede (*see* Plaintiffs' Appendix), five of the items (Nos. 2, 4-7) were purchased after the filing of the Complaint and therefore are not actionable. (*See* Mot. at 24, *citing Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 807–09 (2007). *See also Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007) (purchases of product after learning of alleged deception not actionable).)[2] Plaintiffs do not respond to this argument at all or maintain that a post-Complaint purchase could resort in injury, deception, reliance, or materiality. As to the remaining two items (Nos. 1 and 3), Plaintiffs concede that they cannot testify that they would not have purchased the item had they known the "truth." (*See* Plaintiffs' Appendix.)[3]

In response, Plaintiffs argue that that it is enough for them to say that they are "unsure" whether they would still have made the purchases, or that they "probably would not" have made the purchases. As an initial matter, to establish standing at the time of trial, they would have to prove that they would not have made the purchases. *See Chowning v. Kohl's Dep't Stores, Inc.*, 2016 WL 1072129, *3 (C.D. Cal. Mar. 15, 2016) ("[I]f the testimony 'affirmatively demonstrate[s] that Plaintiff would still have purchased the items,' then there is no standing.");

---

[2] For a similar reason, Plaintiffs lack Article III standing to pursue injunctive relief. By virtue of Plaintiffs' learning about the purportedly false reference prices, Plaintiffs can no longer "demonstrate the imminent prospect of future injury' because [they] can no longer be deceived." *Taylor v. Nike, Inc.*, 2017 WL 663056, at *8 (D. Or. Feb. 17, 2017) (collecting cases).

[3] The only item they affirmatively state they would not have purchased (No. 5) was a post-Complaint purchase, and therefore is not actionable.

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013) (requiring allegation at the **pleadings stage**, and thus necessarily requiring proof at trial, that the plaintiff "would not have purchased the goods in question absent this misrepresentation"). The only question is thus whether Plaintiffs' equivocal testimony is sufficient to withstand summary judgment. In that regard, Plaintiffs reliance on *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113 (N.D. Cal. June 7, 2011) and *Brazil v. Dell Inc.*, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010) is misplaced because those cases did not involve summary judgment motions and expressly noted that "unsure" and "probably would not have bought" type testimony might not withstand summary judgment. *See Zeisel*, 2011 WL 2221113, n.5, n.6 ("The Court expresses no opinion on whether this evidence would be sufficient to withstand a summary judgment motion."); *Brazil v. Dell Inc.*, 2010 WL 5387831, *3 (N.D. Cal. Dec. 21, 2010) (noting evidence "at least **preliminarily** demonstrates they relied on the alleged misrepresentations") (emphasis added). In *Chowning*, the Court permitted a claim past summary judgment where the plaintiff backtracked on and revised deposition testimony (like Plaintiffs have done here) and indicated that she probably would not have purchased the item. The court noted, however, that the revision to the deposition testimony merely clarified the testimony and was made shortly after the testimony (and not in response to a summary judgment motion), and so the Court accepted the correction. Here, only for Item No. 3 do Plaintiffs now claim they would "probably not" have purchased the item (*see* Plaintiffs' Appendix)[4], which contradicts their deposition testimony, "Yes, I believe so [*i.e.*, I would have still made the purchase]," JS Depo at 74:7-75:10, and the change comes only in response to a summary judgment motion. Columbia respectfully submits that Plaintiffs have not presented enough evidence to create a triable issue of fact.

More importantly, even if the Court denies summary judgment, Plaintiffs' own experiences with just the seven products they purchased demonstrate beyond doubt that this case cannot be tried on a classwide basis. Of the seven items purchased by Plaintiffs, Jeanne Stathakos **concedes** that she still would have purchased three of the items; as to the other four, she is "unsure" about

---

[4] For item No. 1, Plaintiffs claim only that they are "unsure," (Plaintiffs' Appendix), but, at a minimum, *Chowning* required "evidence that [the plaintiff] probably would not have purchased the items." *Chowning*, 2016 WL 1072129 at *3.

two, states she would "probably not" have purchased one, and says she would not have purchased the last. (Plaintiffs' Appendix.) Nick Stathakos is unsure as to every item. (*Id.*) This range of responses just among Plaintiffs (not to mention the credibility issues that a jury would need to address in light of their changes to their deposition testimony), demonstrates that each putative class member, shopping at various times for various reasons and for a wide-array of different products will not have uniformly relied on the alleged misrepresentations. In fact, as Jeanne Stathakos's testimony reflects, even individuals are inconsistent among their own purchases.

The survey evidence Columbia submitted also proves that this case cannot proceed as a class action. The survey reflects that putative class members purchase items for a variety of reasons, including style, look, design, quality, durability, comfort, fit, size, and so on. A consumer's interest in purchasing an Outlet SMU product is not affected by the knowledge that the reference price does not refer to the price at which the exact same item previously sold, but instead refers to the price at which a similar item sold. The survey proves that a putative class did not uniformly rely on the reference prices when purchasing items (they may have purchased items for a variety of reasons), did not uniformly believe the reference prices were material, and were not uniformly injured, if at all. This survey evidence is consistent with the Stathokoses' own testimony.

In response, Plaintiffs do not seek to exclude the survey or the opinions of Carol Scott. Instead, relying on Poret's analysis, Plaintiffs argue that the reference prices affect (however slight) how putative class members value a product. (*See* ECF Dkt. No. 86 at 20:24-21:5 ["Dr. Scott's survey revealed a statistically significant difference between respondent's perceptions of the value of the deal when the reference price was explained."].) Poret's analysis is incorrect and Columbia addresses those issues in its Motion to Strike.[5] Nevertheless, even if the Court accepts Mr. Poret's analysis, it is irrelevant to both the Stathakoses (whose claims must be evaluated based on their actual testimony) and the class. A slight change in how a putative class member values a products does not mean that she would not have purchased the item for the price offered

---

[5] If anything, as set forth in the Motion to Strike, Poret's analysis confirms that deception, reliance, materiality, and injury are not common issues.

-6- Case No. 3:15-cv-04543-YGR

nonetheless, and nowhere do Plaintiffs or their experts (Compeau or Poret) claim otherwise.[6] To the contrary, the survey demonstrates that despite any reduction in the valuation of a product, the reference prices *do not* affect purchasing decisions.

Faced with concrete evidence (both survey evidence and the testimony of Plaintiffs themselves) that deception, reliance, materiality, and injury are not common, Plaintiffs fall back on a "presumption" of reliance and materiality. Plaintiffs argue that they need only show that the reference prices are likely to deceive a reasonable consumer, and then a presumption of reliance and materiality arise. Plaintiffs miscite and misconstrue the law.

***First***, as Columbia explained in its brief, any "presumption" that might applies is inapplicable when objective survey evidence exists on the issue. *See, e.g.*, *Algarin v. Maybelline, LLC,* 300 F.R.D. 444 (S.D. Cal. 2014). *See also McVicar v. Goodman Glob., Inc.*, 2015 WL 4945730, at *12 (C.D. Cal. Aug. 20, 2015); *Johnson v. Harley-Davidson Motor Co. Group, LLC,* 285 F.R.D. 573, 580 (E.D. Cal. 2012). Plaintiffs do not address this argument at all and entirely ignore *Algarin*, which, as Columbia noted, compels denial of certification here. Indeed, in ***not one*** case that Plaintiffs cite was there survey evidence submitted rebutting a "presumption" of classwide reliance and materiality. That makes sense because to the extent a "presumption" applies, it will apply unless the actual evidence rebuts it, in which case the evidence controls. *Algarin*, 300 F.R.D. at 457; *Jones*, 2014 WL 2702726 at *14 (rejecting argument that class plaintiffs "need not establish the class's reliance at all" because of a presumption).

***Second***, their reliance on *Hinojos*, *Pulaski*[7] and other cases setting forth the standard on a motion to dismiss is irrelevant. To state a claim, a plaintiff must plead a theory that is likely to deceive a reasonable consumer, in which case reliance and materiality will be presumed for

---

[6] Perhaps Jeanne Stathakos or Nick Stathakos experienced this same change in value perception when they came to their pre-filing understanding of the price references. Regardless, they testified they either would have purchased the item again or did not know and then demonstrated that they likely would purchase the product again by repeatedly shopping at Columbia outlets post-filing of the Complaint.

[7] *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015) was a class certification decision, but the language cited by Plaintiffs discussed the pleadings standard ("To state a claim under the UCL or the FAL . . .").

purposes of pleading. That is just a safeguard against theories that are so absurd they could never deceive anyone. But navigating past a pleadings hurdle does not mean that a class can be certified, which requires plaintiffs to present *evidence* that their claims can be tried with class wide, common evidence. Moreover, even though a theory of deception might not be objectively unreasonable (and thus sufficient to get past a motion to dismiss), that does not mean that every class member had the same understanding or reaction to a representation. *See Jones*, 2014 WL 2702726 at *14 (permitting claim based on "All Natural" representation because being deceived by the phrase was not objectively unreasonable, but denying certification because there was evidence that class members did not understand (or misunderstand) the phrase commonly or uniformly).

***Third***, the cases Plaintiffs cite are also factually distinguishable. As noted above, none involved survey or other evidence that could have rebutted any presumption. More importantly, the cases did not involve "reliance" in the same way this case does. Here, the issue is whether Plaintiffs relied on the reference prices to make a purchase. In *Pulaski*, the defendant was charging everyone a monthly fee, and the case was about returning that fee. The case was not about whether a consumer, purchasing a good for potentially a variety of unrelated reasons, relied on a representation about the product. 802 F.3d 979. In *Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282 (2002), the defendant had promised to pay certain premiums, but did not. The case was again not about whether a consumer, in purchasing a product, relied on a certain representation. Finally, in *Brazil v. Dell Inc.*, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010), the defendant was selling a product, but the evidence demonstrated it charged $5 too much. Here, there is no evidence Columbia charged too much, let alone a uniform amount.

Comparing this case to a "Made in America," "All Natural," or other false labeling case proves that certification is improper. In those cases, plaintiffs seek to show that, by virtue of the false label, the defendant was able to garner a "price premium" in the marketplace. These showings generally require comparisons to what the same products sold for absent the label, what other similar products sold for, regression analyses, economic models, and so on. If the plaintiffs in false labeling cases can show that the defendant was able to garner a consistent "price

premium," then they can show that a class suffered the same uniform harm (paying a uniform amount too much), irrespective of whether they purchased the item based on the allegedly false label (and therefore reliance is not often an issue). In that case, a class might be properly certified. Here, by contrast, Plaintiffs have made no attempt to show that, by virtue of employing the reference prices, Columbia was able to garner a "price premium." Nor have they proposed any trial plan or process to accomplish this as to even the Stathokoses, much less to the class. Poret and Compeau simply argue that the reference prices affect the consumer's perception of the value of the product, but in a private action (as opposed to a government enforcement action) this is irrelevant absent some change in purchasing behavior establishing standing or entitlement to relief. Here there is no evidence that this purported change in the perception of value is uniform or is sufficiently large to reduce the perception of value to below what the putative class actually paid for the items. Nor is there any suggestion that this purported effect on value perception allows Columbia to garner a "price premium."[8] Plaintiffs thus cannot satisfy the prerequisites for certification.

C. **Plaintiffs Are Not Entitled To A Monetary Award**

Plaintiffs argue for 11 pages that their "alternative" measures of monetary relief are proper under the law, all while ignoring controlling authority rejecting their arguments. In a case involving allegedly false representations about a product, the *Vioxx* court set forth the applicable formula for calculating monetary relief: "The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). The California Court of Appeal reaffirmed *Vioxx* in *Tobacco*

---

[8] For example, if Columbia sold a product for $80, with a reference price of $100, there is no evidence of how a consumer values that product. Let's nonetheless assume they valued it at $100. There is also no evidence of how the same putative class member would value the product absent the reference price – Plaintiffs argue only that the valuation will be less. Let's assume without the reference price the consumer values the item at $90. In that case, while their "perception of the value" of the item has dropped (from $100 to $90), they have still purchased it for only $80 (or maybe even less given that Columbia may be offering a discount), and therefore have not relied on a representation to their detriment. Boiled down, Plaintiffs are arguing that the reference prices have some effect on the perception of value, but they have presented no evidence (and are therefore not arguing) that the change is consistent, results in a change of a particular numerical amount, or is in any way measurable.

*II* and went even further, holding that where plaintiffs obtained some value for the product, the *Vioxx* measure of relief is ***the*** correct measure: "Because plaintiffs obtained value from Marlboro Lights apart from the deceptive advertising, *Vioxx* . . . sets forth ***the*** proper measure of restitution." *In re Tobacco II*, 240 Cal. App. 4th 779, 794 (2015).

Plaintiffs concede that they have not presented any evidence of the value of the products they received; Plaintiffs' state that they "need not prove the value of the Outlet SMU Builds they purchased" and, therefore, "have not attempted to present evidence of market value." (PB at 32:3-13.)[9] As a result, Plaintiffs are not entitled to any monetary relief. This is ***precisely*** the ***holding*** in *Tobacco II*: "Plaintiffs do not dispute . . . that they obtained value from Marlboro Lights . . . . Indeed, it appears inherently implausible to show a class of smokers received *no* value from a particular type of cigarette. Under the circumstances, the *Vioxx* . . . measure of restitution was proper, and as plaintiffs did not establish any price/value differential the court lacked discretion to award restitution." *Tobacco II*, 240 Cal. App. 4th at 802. The ***holding*** in *Vioxx* compels the same result: "In order to recover under this measure, there ***must*** be evidence of the actual value of what the plaintiff received." *Vioxx*, 180 Cal. App. 4th at 131. *See also Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014) ("[A] claim for restitution requires that Ogden also present evidence of the difference in value between what she spent and what she received. Ogden concedes that she bought Bumble Bee's products for taste and convenience, as well as because of Bumble Bee's allegedly unlawful label statements, . . . which demonstrates that the products had *some* value to Ogden . . . . Accordingly, Ogden must present additional evidence of the value of Bumble Bee's products without the allegedly unlawful label statements in order to obtain restitution.").

Plaintiffs make several arguments in response, none of which has merit.

---

[9] The Court should rejected Plaintiffs' request for a 90-day extension for them to gather and present evidence of value. Plaintiffs' have had ample opportunity to develop this evidence for purposes of the motion for summary judgment and their own motion for class certification, including nearly a year's worth of discovery, and simply chose not to do so. Moreover, in violation of Rule 56(d), Plaintiffs have not demonstrated what evidence may exist that they have not obtained. To the contrary, all evidence suggests that Plaintiffs paid far less than the value of the products they received.

First, Plaintiffs cite dicta from several cases, including *Tobacco II*, stating that the price/value differential is not the exclusive measure of restitution under the UCL. True enough – the UCL is an all-encompassing consumer protection statute that applies to a wide range of potential misconduct, and different measures of monetary relief may be applicable in different circumstances. Plaintiffs, however, have not cited *a single case* where a court *actually awarded* monetary amounts under *anything other* than the price/value differential where the plaintiffs' alleged false representations about a product and the product had some value. *Tobacco II*, for example, recognizes that the UCL provides for many potential measures of restitution, but *held*, in the context of a case alleging false representations about a product, that *the* proper measure was price paid, less value received. *Tobacco II*, 240 Cal. App. 4th at 794, 802. Even the cases that Plaintiffs cite recognize that whatever the form of monetary relief, it still must account for the *value* of the product received. *See Chowning v. Kohl's Dep't Stores, Inc.*, 2016 WL 1072129, at *6 (C.D. Cal. Mar. 15, 2016) ("[E]ven though plaintiffs may pursue alternative forms of restitution, any proposed method must account for the benefits or value that a plaintiff received at the time of purchase."); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("Restitution is the return of the excess of what the plaintiff gave the defendant over *the value* of what the plaintiff received.") (quotation omitted, emphasis added). Again, because Plaintiffs have not presented any evidence of the value of the products they received, there is no form of monetary relief available to them.[10]

Second, Plaintiffs argue that the CLRA provides for different measures of monetary relief. Not so. As even a case Plaintiffs' rely on states: "the standard for recovering damages under the

---

[10] In *Spann v. J.C. Penny Corp.*, 2015 WL 1526559, *5-8 (C.D. Cal. Mar. 23, 2015), the court indicated that "alternative" measures of restitution may be available, and refused to summarily adjudicate plaintiff's prayer for monetary relief. *Spann*, however, was decided before *Tobacco II* and is irreconcilable with that opinion and the principles set forth therein. Subsequent to *Tobacco II*, the court in *Chowning* (in a false pricing case just like this one) explained in great detail why *Spann* was wrongly decided and contrary to *Tobacco II*. *See Chowning*, 2016 WL 1072129, at *6-10. Similarly, Plaintiffs' reliance on *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1103, 1106, n.7 (E.D. Wis. 2016) is unavailing. It notes on a motion to dismiss that the price/value differential is the correct measure of relief, but determines that dismissing a prayer for monetary relief *on the pleadings* was premature. On summary judgment and class certification, Plaintiffs are required to present evidence supporting their theories, which they have not done.

CLRA is the same as the standard for recovering restitution under the UCL." *Le*, 160 F. Supp. 3d at 1101 n.5. Indeed, as Plaintiffs' note, the CLRA permits recovery of "the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received" – *i.e.*, the price/value differential – "together with any additional damage arising from the particular transaction, including . . . amounts actually and reasonably expended in reliance on the fraud." (PB at 23:8-11.) Plaintiffs have not presented any evidence of any "additional damage arising from the particular transaction" – they have not, for example, presented evidence that they spent money driving to a Columbia Outlet store that they otherwise would not have. Simply put, to the extent the CLRA allows recovery of reliance damages in addition to the price/value differential, Plaintiffs have not presented evidence that they suffered any.

Third, Plaintiffs continue to argue that their full refund model is appropriate. This model was expressly rejected in *Tobacco II* ("plaintiffs' full refund theory does not provide an alternative basis for restitution," 240 Cal. App. 4th at 794) and "[n]umerous district courts" have similarly rejected a full refund where, as here, "the challenged product conferred some benefit notwithstanding the false advertising," *Chowning*, 2016 WL 1072129, at *7 (citing cases). Moreover, numerous courts have refused a full refund model on a classwide basis.[11] Plaintiffs' reliance on *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631 (S.D. Cal. 2015) is misplaced. *Makaeff* was decided before *Tobacco II*, and therefore is questionable authority, at best. Moreover, contrary to Plaintiffs' suggestion, Makaeff's full refund model was potentially appropriate ***only because*** she asserted that "the 'university' education was worthless." *Id.* at 637. The court recognized that if the "trier of fact . . . ultimately conclude[d]" that the university provided some value, the full refund model would not apply. *Id.* at 639. Unlike in *Makaeff*, here, the Plaintiffs purchased articles of clothing that had some "intrinsic" value – the products fit, kept them warm, gave them style, and so on. Put another way, Plaintiffs wore the items and unquestionably benefited from them; they would not be returning unused product with the tags still attached.

---

[11] See *Caldera v. J.M. Smucker Co.*, 2014 WL 1477400, *4 (C.D. Cal. Apr. 15, 2014); *In re POM Wonderful LLC*, 2014 WL 1225184, *3 (C.D. Cal. Mar. 25, 2014); *Ogden v. Bumble Bee Foods, LLC*, 2014 WL 27527, at *13 (N.D. Cal. Jan. 2, 2014); *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, *11 (C.D. Cal. Apr. 12, 2012); *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 337 (2011).

Moreover, they concede that, for at least some of their items, they would still have purchased them even without the allegedly deceptive reference price, reflecting that they received some value for the products. As a result, a full refund model is inappropriate. The law could not be clearer on this point. *See, e.g.*, *Tobacco II*, 240 Cal. App. 4th at 794.[12]

Fourth, Plaintiffs also present their "promised discount" model again. Other than *Spann*, no court has accepted this formula, and, for the reasons explained at length in *Chowning*, no court should. *Chowning*, 2016 WL 1072129, at *10. As Columbia's explained in its Motion, the "promised discount" model does not account for the value of the product received, and therefore overcompensates Plaintiffs.[13] That is particularly true here (as it also was in *Chowning*) because Plaintiffs here (as plaintiffs did in *Chowning*) purchased items for amounts lower than even the selling price (because of the application of discounts). *Id.* ("Plaintiff's purchase price was lower than the actual average selling price for all three items. For instance, she paid $21.00 for a Dress that, on average, sold for $35.81. Instead of focusing on returning Plaintiff's lost money, the [Promised Discount Model] seeks to award Plaintiff the full benefit of the transaction she thought she was entering into – a measure more akin to expectation damages than restitution. Simply put, the [Promised Discount Model] fails because its focus is misplaced. Rather than looking to what Plaintiff gave up and what she received [*i.e.*, price paid, less value received], this model erroneously emphasizes the value of the transaction Plaintiff had anticipated.") Plaintiffs ***do not address*** this argument at all. Instead, Plaintiffs cite *Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) and *Thurston v. Bear Naked, Inc.*, 2013 WL 5664985 (S.D. Cal. July 30, 2013), suggesting that they approved of the "promised discount" model. To the contrary, both *Astiana* and *Thurston*, which were decided by the same judge on the same day and are verbatim in many parts, permit recovery of the "disparity between their expected and received ***value.***" *Astiana*, 291

---

[12] Finally, although Plaintiffs now argue that they would not have purchased one of their items absent the purportedly false reference prices, they concede that they still would have purchased three of the items and are unsure about the other three. Yet, Plaintiffs are seeking a full refund of the purchase price for all seven. That cannot be – Plaintiffs cannot purchase a product, confirm that they still would have purchased a product, use and benefit from the product, only to later get all their money back. That would provide an inappropriate windfall.

[13] Plaintiffs present no expert testimony to explain why this would not be a windfall measure.

F.R.D. at 506; *Thurston*, 2013 WL 5664985 at *10. That is the price paid (their "expected . . . value"), less value received formula. Indeed, the *Astiana* and *Thurston* decisions cite cases applying a "price premium" calculation, which requires comparing the price paid (there, for a food product) to the price at which similar goods in the marketplace sell (there, comparable food products) absent the alleged misrepresentation. There was no attempt to establish a "price premium" in this case.

Fifth, Plaintiffs also present again their "disgorgement of profit" model. As Columbia explained in its Motion, this model would provide Plaintiffs a windfall and is inappropriate as a result. That is because the model seeks to disgorge all of Columbia's profits on the sale of items, and not just those profits Columbia obtained as a result of employing the allegedly false reference prices. In cases alleging misrepresentations about a product in the sale of the product, disgorgement of full profits (and not just the profits resulting from the false statement) is improper. *See, e.g.*, *Trazo v. Nestle USA, Inc.*, 113 F. Supp. 3d 1047, 1052 (N.D. Cal. 2015) ("The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received, not the full purchase price **or all profits**.") (emphasis added, internal quotations omitted); *Ivie v. Kraft Foods Glob., Inc.*, 2015 WL 183910, at *2 (N.D. Cal. Jan. 14, 2015) (rejecting a full profits measure and holding: "There is no reason to go beyond the price premium, and doing so would result in a windfall to plaintiff."). Plaintiffs do not respond to this windfall argument at all or explain how receiving a windfall is consistent with *Tobacco II*, *Korea Supply*, or any other California authority on the issue. Instead, Plaintiffs cite *Aguayo v. U.S. Bank*, 200 F. Supp. 3d 1075 (S.D. Cal. 2016), but that case is inapposite. *Aguayo* was not a false labeling case, did not involve the sale of a product, and did not involve a misrepresentation about a product. Rather, *Aguayo* involved a bank charging its customers a fee. The customers sought not only the fee, but any "profits" the bank was able to obtain from use of those fees during the period of time the bank held the fee. Here, by contrast, Plaintiffs are seeking full profits from a single sale, not subsequently earned profits on that portion of the sale proceeds that was allegedly obtained

wrongfully.[14]

At end, it is well-established that in cases alleging a false representation about a product, the proper measure of a monetary award is the price paid, less value received formula. This is often measured by calculating a "price premium" as a result of the representation. *See, e.g.*, *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *12 (N.D. Cal. Jan. 7, 2014). In essence, if a product that cost Columbia $40 to produce sold for $80 with the misrepresentation (here, a $100 reference price), but would have sold for only $75 absent the alleged misrepresentation, then the plaintiff is entitled to the $5 price premium. In that case, the plaintiff would receive the price paid ($80), less the value received ($75), for a total of $5. The plaintiff would not receive a full refund ($80), the "promised discount" ($16, which is $80 less 20%), or Columbia's full profits ($40, which is $80 less $40). Each of Plaintiffs' "alternative" measures provides a windfall ($80, $16 or $40) compared to the allegedly wrongful "price premium" Columbia was purportedly able to obtain by employing the reference price ($5). Plaintiffs have not presented any evidence of value or made any attempt to calculate a price premium, let alone an attempt to show that such calculations can be done class-wide. The Court should therefore reject Plaintiffs' prayer for monetary recovery and deny Plaintiffs' Motion for Class Certification.

### III. CONCLUSION

Columbia respectfully requests that its Motion for Summary Judgment be granted. In the alternative, Plaintiffs' Motion for Class Certification should be denied.

Dated: April 4, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Jay T. Ramsey*
P. CRAIG CARDON
JAY T. RAMSEY
Attorneys for Defendants
COLUMBIA SPORTSWEAR COMPANY and
COLUMBIA BRANDS USA, LLC (f.k.a. COLUMBIA SPORTSWEAR USA CORPORATION)

---

[14] Plaintiffs also cite *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113 (N.D. Cal. June 7, 2011) and *Astiana*, 291 F.R.D. at 506 in support of their disgorgement model. Neither case addressed a disgorgement of full profits, or even discussed the measure of damages sought in the case, and therefore both are irrelevant. A generic statement that restitution can be calculated based on the defendant's records is not a holding that disgorgement of full profits is proper.