1  **TYCKO & ZAVAREEI LLP**
ANNICK M. PERSINGER, California Bar No. 272996
2  apersinger@tzlegal.com
483 Ninth Street, Suite 200
3  Oakland, CA 94607
Telephone (510) 254-6808
4  Facsimile (510) 210-0571

5  **TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, Cal. Bar No. 181547
6  hzavareei@tzlegal.com
ANDREA R. GOLD, D.C. Bar. No. 502607,
7  admitted *pro hac vice*
agold@tzlegal.com
8  JEFFREY D. KALIEL, Cal. Bar No. 238293
jkaliel@tzlegal.com
9  1828 L Street, NW, Suite 1000
Washington, DC 20036
10  Telephone (202) 973-0900
Facsimile (202) 973-0950

11

12  *Attorneys for Plaintiffs*
*Additional Counsel Listed on Signature Page*

13

14

15              **UNITED STATES DISTRICT COURT**

16              **NORTHERN DISTRICT OF CALIFORNIA**

17

18  JEANNE and NICOLAS STATHAKOS, on        Case No. 4:15-cv-04543-YGR
behalf of themselves and all others similarly
19  situated,

20              PLAINTIFFS,        **PLAINTIFFS' MEMORANDUM OF**
**POINTS AND AUTHORITIES IN**
**SUPPORT OF PLAINTIFFS' UNOPPOSED**
21  vs.        **MOTION FOR SETTLEMENT**
**APPROVAL**
22
Hon. Yvonne Gonzalez Rogers
23  COLUMBIA SPORTSWEAR COMPANY,
COLUMBIA SPORTSWEAR USA        Hearing Date:    November 14, 2017
24  CORPORATION,        Courtroom:       1, 4th Floor, Oakland
Courthouse
25

26              DEFENDANTS.

27

28

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ...................................................................................................... 1

II.     PROCEDURAL BACKGROUND ............................................................................ 3

III.    THE TERMS OF THE PROPOSED SETTLEMENT .............................................. 6

    A.    The Benefit to Class Members – Stipulated Injunction ............................... 6

    B.    The Release and Discharge of Claims ......................................................... 7

    C.    The Settlement Class Definition .................................................................. 7

IV.     NOTICE AND PRELIMINARY APPROVAL ARE NOT REQUIRED ................ 8

    A.    Notice Is Not Required ................................................................................ 8

    B.    Since Notice Is Not Required, Preliminary Approval Is Not Required ................ 10

V.      THE FINAL APPROVAL STANDARD .................................................................. 12

    A.    The Injunctive Relief Provided to Class Members Shows That the
           Settlement Is Fair Adequate and Reasonable ........................................... 12

    B.    The Strength of Plaintiffs' Case and the Specific Risks of This
           Litigation .................................................................................................... 14

    C.    The Extent of Discovery and the Status of the Proceedings ..................... 15

    D.    The Experience and Views of Class Counsel ............................................ 15

    E.    Government Participant and Reaction of the Class .................................... 16

VI.     THE PROCEDURE FOR DETERMINING ATTORNEY'S FEES AND
       CLASS REPRESENTATIVE SERVICE AWARDS .......................................... 16

VII.    CONCLUSION ....................................................................................................... 17

# TABLE OF AUTHORITIES

PAGE(S)

## I.   INTRODUCTION

Plaintiffs Jeanne and Nicolas Stathakos respectfully move for approval of a proposed class action settlement with Defendants, Columbia Sportswear Company and Columbia Sportswear USA Corporation (collectively "Defendants" or "Columbia"), the terms and conditions of which are set forth in the Settlement Agreement. *See*, Declaration of Hassan Zavareei in Support of Settlement Approval ("Zavareei Decl."), Settlement Agreement, attached as Exhibit A.[1]

After years of hard-fought litigation, including extensive discovery and motion practice, Columbia agreed to provide injunctive relief to the Settlement Class that remedies the deception alleged in this action. Specifically, Plaintiffs alleged that Columbia's use of reference prices on merchandise tags for items sold exclusively at their outlet stores is deceptive because it leads consumers to believe that such merchandise was formerly sold at the reference price when the truth was to the contrary. *See e.g.*, 5/11/17 Order at 2. As this Court observed, "Plaintiffs' proffered evidence demonstrates that consumers could not distinguish based on the price tags between garments which were Outlet SMU Builds that were never sold for the advertised reference price and Inline styles sold at the outlets which were at some point sold for the advertised reference price." *Id.* at 13. Accordingly, Plaintiffs sought a change in Columbia's use of reference prices on outlet exclusive products. The parties' settlement does exactly that.

If the Settlement is approved, consumers will be able to distinguish between the Outlet SMU Builds that were sold exclusively at outlets, and never for the higher price, and the Inline styles that were formerly sold elsewhere at a higher price. The terms of the Agreement provide that the Outlet SMU tags will qualify the reference price with one of the following: "Comparable Value, Comp. Value, Comparable Item, Comp. Item, Comparable Style, or Comp. Style." Agreement, Zavareei Decl. Ex. A, at § III.B.1(a).[2] Each of those terms will communicate to consumers that the higher price on the tag refers to the price of a comparable item, and not to a former price of the same item.

---

[1] The capitalized terms used herein are defined in and have the same meaning as used in the Settlement Agreement unless otherwise stated.

[2] If Columbia does not use one of the terms identified in Section III.B.1(a), Columbia can include a label on its price tags describing the comparison prices with a different word or phrase, except that, in addition, Columbia must also post in-store signage explaining what Columbia means by term it opts to use. *See* Settlement Agreement, Zavareei Decl. Ex. A, at § III.B.1(b).

Because Plaintiffs sought a change in Columbia's labeling of reference prices on Outlet SMU Builds on behalf of the Rule 23(b)(2) class that this Court certified, Columbia's agreement to change those labels is an exceptional result for the class. Consequently, the resolution proposed in the parties' Settlement Agreement is fair, adequate, and reasonable.

Given that the Settlement that Plaintiffs negotiated provides for immediate and tangible benefits to the Settlement Class, and forestalls trial and appeals, Plaintiffs request that the Court grant Final Approval. As discussed below, the Court need not order that notice of this injunctive relief settlement be provided to the Rule 23(b)(2) Settlement Class members in this case. Since a class has been certified, no conditional certification of a class for settlement purposes is required either. As a result, there is no need for preliminary approval because it is not necessary to evaluate whether the settlement is in the range of possible approval to warrant the sending of notice, or to determine whether the class should be conditionally certified for settlement purposes. Instead, all of the factors relevant to the Final Approval of this injunctive relief Settlement may be fully evaluated now. As such, to preserve the resources of the parties and the Court, and to ensure that the injunctive relief is provided to the Settlement Class without further delay, the terms of the parties' Agreement specifically state that Plaintiffs should seek preliminary and Final Approval simultaneously. *See* Agreement, Zavareei Decl. Ex. A, at § IV.A.

As set forth below, each of the applicable approval factors weighs in favor of finally approving the Settlement. The Settlement was negotiated at arms-length, with the assistance of former Chief Magistrate Judge Edward Infante (Ret.), after substantial discovery and motion practice. The fact that the parties only reached agreement on the benefit offered to the class, and did not reach agreement on the amount of attorney's fees, highlights the non-collusive nature of this agreement. *See e.g.*, *Dei Rossi v. Whirlpool Corp.*, 2016 WL 3519306 (E.D. Cal. June 28, 2016) ("Further, the Parties reached the Settlement Agreement without reaching any agreement regarding the reasonable amount of attorneys' fees and costs to be awarded to Class Counsel, which helps to confirm that the Settlement is the product of an arms-length negotiation process."). Since the Settlement is the product of an arms-length negotiation, the Settlement is entitled to a presumption of

fairness. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). The benefits offered by this Settlement are also substantial. Indeed, the injunction ensures that the Settlement Class and other customers will be able to understand that the higher price on Columbia Outlet SMU Build tags does not represent a former price of the same item—addressing the very problems at the heart of Plaintiffs' Complaint. In contrast to the time and risks associated with litigating through trial however, the Settlement allows the implementation process for these benefits to take effect *post haste*. Therefore, all of the relevant factors strongly favor approval. Accordingly, Plaintiffs request that the Court approve the Settlement, enter the stipulated injunction, and schedule a hearing to determine an appropriate award of attorney's fees and costs and the Class Representatives' Service Awards.

## II.    PROCEDURAL BACKGROUND

On October 2, 2015, Plaintiffs Jeanne and Nicolas Stathakos filed a class action complaint against Defendants. Dkt. 1. Plaintiffs asserted claims on behalf of themselves and a proposed California Class of purchasers who had purchased a Columbia Outlet Product with a price tag bearing a "Former Price." Plaintiffs alleged that Columbia deceptively advertised a "Former Price" on Columbia Products that were sold exclusively at Columbia Outlet stores ("Outlet SMU Builds").

On November 2, 2015, counsel for Defendant Columbia Sportswear Company informed Plaintiffs that Defendant Columbia Sportswear USA Corporation should also be named as a defendant. Accordingly, on November 15, 2016, Plaintiffs filed a First Amended Complaint naming as Defendants Columbia Sportswear Company and Columbia Sportswear USA Corporation (collectively "Defendants" or "Columbia"), and sent an updated certified CLRA letter addressed to both Defendants. Dkt. 9.

On January 12, 2016, after the expiration of the CLRA notice period, Plaintiffs, with leave of Court, filed and served their Second Amended Complaint ("SAC"). Dkt. 13. Defendants waived service of the SAC. On March 7, 2016, again with leave of Court, Plaintiffs filed a Third Amended Complaint adding a claim for damages ("TAC"). The TAC alleges violations of California's Unfair

Competition Law, California's False Advertising Law, California's Consumer Legal Remedies Act. Dkt. 35.

On March 29, 2016, Columbia filed a motion to dismiss. Dkt. 38. On April 12, 2016, Plaintiffs opposed the motion. Dkt. 39. On May 2, 2016, the Court denied Columbia's motion in its entirety. Dkt. 41. On May 16, 2016, Columbia answered Plaintiffs' TAC, denying liability.

Following denial of Columbia's motion to dismiss, Plaintiffs worked closely with Defendants to obtain and review documents that were proportionate to the needs of Plaintiffs' motion for class certification. Documents included, for example, spreadsheets identifying 580 unique Outlet SMU Builds. At first, Columbia refused to produce any design schematics, or "Tech Sketch[es]" other than those that specifically related to the products that Plaintiffs purchased. Thus, on September 9, 2016, the parties submitted a Joint Discovery Dispute Letter in which Plaintiffs sought design schematics, Tech Sketches and cost information for a randomly selected sample of all of Outlet SMU Builds. Dkt. 53. On October 4, 2016, the Court granted Plaintiffs' request. Dkt. 56. Following Plaintiffs' review of the documents, Plaintiffs deposed Columbia's former Director of Retail Merchandising for North America, James Robert "Bobby" Bui, and 30(b)(6) designee Melissa Olson. Defendants deposed Plaintiff Jeanne Stathakos and Plaintiff Nicolas Stathakos.

On November 18, 2016, Plaintiffs filed a motion for class certification. Dkt. 59. In support of that motion, Plaintiffs submitted expert reports from Professor Larry D. Compeau, an expert on the effects of reference pricing on consumer retail behavior, from Ms. Gabriele Goldaper, who is an expert in the fashion industry working in the industry, and from Arthur Olsen, an expert in data analysis, data development, and database support.

After deposing each of Plaintiffs' experts, on January 31, 2017, Columbia opposed Plaintiffs' motion, moved for summary judgment, and moved to exclude the opinions of Ms. Goldaper and Dr. Compeau. Dkts. 75-77. In support of their opposition to class certification, and their motion for summary judgment, Columbia submitted an expert report from Dr. Carol Scott in which she discussed a consumer survey that she had performed to evaluate the effect of reference prices.

Before filing their reply in support of certification, and opposition to the motion for summary judgment, Plaintiffs deposed Dr. Scott, and retained Hal Poret, a rebuttal expert to evaluate Dr. Scott's Survey. On March 13, 2017, Plaintiffs opposed summary judgment, opposed Columbia's motion to exclude experts, and submitted a reply in support of the motion for class certification. Dkts. 86-88.

On April 4, 2017, Columbia filed a reply in support of its motion for summary judgment, as well as an objection to and motion to strike Plaintiffs' rebuttal expert. On April 11, 2017, Plaintiffs opposed Columbia's motion to strike on the ground that Columbia filed it in violation of Local Rules and the Court's briefing schedule. Dkt. 91. On April 24, 2017, the Court struck Columbia's motion on the ground that Columbia failed to seek authorization to file it, as well as portions of a Statement of Recent Decision submitted by Plaintiffs. Dkt. 94.

After hearing argument from the parties on Plaintiffs' motion for class certification, and Columbia's motion for summary judgment, the Court certified the following Rule 23(b)(2) class for injunctive relief:

> All consumers who have purchased an Outlet SMU Build at a Columbia Outlet store in the State of California since July 1, 2014 through the conclusion of this action.

Dkts. 101, 104. The Court appointed the law firms of Tycko & Zavareei LLP, and Kopelowitz Ostrow Ferguson Weiselberg Gilbert as Class Counsel. The Court appointed Plaintiffs as Class Representatives. The Court, however, denied Plaintiffs' request to certify a Rule 23(b)(3) class for monetary relief. In the same order, the Court also largely denied Columbia's motion for summary judgment, but granted it with respect to Plaintiffs' claims for monetary relief, and the products the Plaintiffs purchased after they filed the initial complaint. Finally, the Court denied Columbia's motion to exclude Ms. Goldaper's expert declaration, and largely denied Columbia's motion to exclude Dr. Compeau's expert report.

Since a class had been certified, and Columbia's motion for summary judgment had been denied in part, the parties began preparation for trial. Plaintiffs submitted a trial plan, prepared trial

calendars, and submitted a partial motion for summary judgment to limit the issues at trial. Dkts. 107, 123.

To avoid the risk, burden, and expense of trial, the parties agreed to private mediation with retired United States Magistrate Judge Edward Infante. The parties agreed during their all-day meeting with Judge Infante on August 14, 2017 to the injunctive relief, and then continued working with Judge Infante to reach agreement on attorney's fees. On September 22, 2017, the parties executed a term sheet and submitted a joint stipulation to stay the action. Dkt. 125. While the parties were able to reach agreement on the injunctive relief provided to the class, the parties were unable to reach agreement on the amount of Plaintiffs' attorney's fees, or Plaintiffs' service awards. *See* Zavareei Decl. ¶ 5; N. Stathakos Decl. in Support of Settlement ¶¶ 1-2, Exhibit B (approving settlement); J. Stathakos Decl. in Support of Settlement ¶¶ 1-2, Exhibit C (same).

## III. THE TERMS OF THE PROPOSED SETTLEMENT

### A.    The Benefit to Class Members – Stipulated Injunction

The negotiated injunctive relief is comprehensive and thorough.  The terms of the parties' Agreement require that Columbia modify its sales practices to change the manner and method of how it presents pricing on the price tags of Outlet SMU Builds. Agreement, Zavareei Decl. Ex. A, at § III.  The injunction is designed to ensure that consumers understand Columbia's reference prices by describing what Columbia means by those reference prices. Stated otherwise, the carefully selected qualifier terms that Columbia has agreed to use on its tags make clear that the higher reference price on Columbia Outlet SMU Build products does not refer to a former price of the same item. Specifically, Columbia agreed to stop using its current price tag format, and, to the extent it elects to utilize comparison price tactics in the future, to either (1) use seven[3] terms approved by Plaintiffs or (2) supplement any term it chooses with in-store signage explaining what Columbia means by whatever term it opts to use.  *Id.* at § III.B.1.  Further, as an additional layer of protection for consumers, while Columbia is in the process of complying with the stipulated injunction it will

---

[3] The seven agreed upon reference price terms are Comparable Value, Comp. Value, Comparable Item, Comp. Item, Comparable Style, or Comp. Style.  Agreement, Zavareei Decl. Ex. A, at § III.B.1(a).  These terms clearly inform customers that the advertised higher price is from a comparable item, not the identical item.

place legible notices at the point of sale, which state the following: "The higher price on our price tags refers to either the price the same Columbia product was offered at by Columbia in its own stores, its own online properties, or at third party retailers, or the price at which a similar but not identical product was offered in any of those channels." *Id.* at § III.C-D.

### B.    The Release and Discharge of Claims

The Agreement only releases claims for injunctive relief or other similar equitable relief on behalf of the class. Agreement, Zavareei Decl. Ex. A, at § V.  It does not release any claims on behalf of the Settlement Class for monetary damages. *Id.* at § V.B ("Releasing Parties specifically preserve and do not release their monetary claims."). Plaintiffs, on the other hand, are releasing both their claims for injunctive and any claim for individual damages.  *See id.* at § V.A.  The proposed recovery to the class is in all other requests identical to the recovery to the individual Plaintiffs.

### C.    The Settlement Class Definition

The terms of the parties Settlement Agreement specify that the Settlement Class is the one the Court certified in this Action ("Settlement Class," the members of which are referred to as the "class members"):

> All consumers who have purchased an Outlet SMU Build at a Columbia Outlet store in the State of California since July 1, 2014 through the conclusion of this action.

*See id.* at § II.A. Class Counsel is the counsel that the Court appointed to represent the Rule 23(b)(2) class: Tycko & Zavareei LLP and Kopelowitz Ostrow Ferguson Weiselberg Gilbert ("Class Counsel"). *See id.* at § II.B. The Class Representatives are the Plaintiffs, whom the Court appointed to represent the Rule 23(b)(2) class. *See id.* at § II.C.

Importantly, where, as here, the Court has previously certified a class under Fed. R. Civ. P. Rule 23, the Court need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate and reasonable. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 974 (E.D. Cal. 2012); *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the

---

requirements for certification have been met and may focus instead on whether the proposed

settlement is fair, adequate, and reasonable."); *In re Apollo Group Inc. Securities Litigation*, 2012

WL 1378677 at *4 (D.Ariz. Apr. 20, 2012) ("The Court has previously certified, pursuant to Rule 23

of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class."); *Dei*

*Rossi v. Whirlpool Corp.*, 2016 WL 3519306 (E.D. Cal. June 28, 2016).

## IV.    NOTICE AND PRELIMINARY APPROVAL ARE NOT REQUIRED

### A.    Notice Is Not Required

Unlike a Rule 23(b)(3) class where notice is mandatory, Rule 23(c)(2) states that, "[f]or any

class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class."

Fed. R. Civ. P. 23(c)(2) (emphasis added). Because of this, "[c]ourts typically require less notice in

Rule 23(b)(2) actions, as their outcomes do not truly bind class members" and there is no option for

class members to opt out.  *Lilly v. Jamba Juice Co.*, 2015 WL 1248027, *8-9 (N.D. Cal. Mar. 18,

2015) (Tigar, J.) (holding that because the settlement class would not have the right to opt out from

the injunctive settlement and the settlement does not release the monetary claims of class members,

class notice is not necessary); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558, 180 L.

Ed. 2d 374 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out,

and does not even oblige the District Court to afford them notice of the action.").

In fact, in injunctive relief only class actions certified under Rule 23(b)(2), federal courts

across the country have uniformly held that notice is not required.  *See, e.g., Jermyn v. Best Buy*

*Stores*, 2012 WL 2505644, *12 (S.D.N.Y. June 27, 2012) ("Because this injunctive settlement

specifically preserves and does not release the class members' monetary claims, notice to the class

members is not required"); *Foti, et al. v. NCO Financial Systems, Inc.,* Case No. 04 Civ. 00707,

2008 U.S. Dist. LEXIS 16511, at *13 (S.D.N.Y. Feb. 19, 2008) ("Because the Agreement explicitly

preserves the individual rights of class members to pursue statutory damages against the defendant,

and because the relief in this Rule 23(b)(2) class is injunctive in nature, notice was not required.");

*Green v. Am. Express Co.,* 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001) (no notice is required under

several circumstances, such as "when the settlement provides for only injunctive relief, and

therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class"); *Penland v. Warren Cnty. Jail*, 797 F.2d 332, 334 (6th Cir. 1986) ("this court has specifically held that notice to class members is not required in all F.R.C.P. 23(b)(2) class actions"); *DL v. District of Columbia*, Case No. 05-cv-1437, 2013 WL 6913117 at *11 (D.D.C. Nov. 8, 2013) ("the district courts within these circuits that have directly considered the issue have applied the requirement 'more flexibly in situations where individual notice to class members is not required, such as suits for equitable relief'"); *Linquist v. Bowen*, 633 F. Supp. 846, 862 (W.D. Mo. Jan 31, 1986) ("When a class is certified pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, notice to the class members is not required.") (internal citations omitted); *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 572 (S.D. Ohio Sep. 7, 1983) ("This Court has certified this action as a class action under Rule 23(b)(2), and, as such, notice to class members is not required under Rule 23(c)(2)").

Here, the terms of the Settlement Agreement provide for injunctive relief only and further expressly preserves the rights of the class to bring claims for monetary relief. Agreement, Zavareei Decl. Ex. A, at §§ III (Settlement of Injunctive Class), V (Release of Claims). Further, even if notice was sent, class members would not have the right to opt out. *See Lilly* 2015 2015 WL 1248027, at *9.

Additionally, in exercising its discretion with respect to notice, the Court should consider that "the cost of notice would risk eviscerating the settlement agreement." *Green,* 200 F.R.D. at 212 ("[C]ourts have recognized that when notice to class members would not serve the purpose of ensuring that the settlement is fair and would, in fact jeopardize the settlement, that the court may opt to forego notice."). Notably, here, the terms of the parties' Settlement Agreement provide that the parties agree that "no notice to the class is required." Agreement, Zavareei Decl. Ex. A, at § IV.A. In addition, the parties agreed that Defendant could vitiate the Settlement Agreement if the Court ordered notice that would cost more than $30,000:

> To the extent the Court requires that notice be provided to the Class for approval to be ordered, the Parties and their respective counsel will cooperate with each other and do all things reasonably necessary to effectuate that notice. Columbia will bear the costs of providing any court-required notice. However, to the extent that the Court-required notice is anticipated to cost more than $30,000, Columbia has the right to withdraw from and

terminate this Agreement. If Columbia withdraws from and terminates this Agreement, then the Agreement will be rescinded and will be without further legal effect.

*Id.* at § IV.B. Thus, notice costs in excess of $30,000 would seriously jeopardize the benefit to the class members. *See Green,* 200 F.R.D. at 212.

Finally, aside from the cost, notice in this case would not serve the class. Instead, it would substantially delay the implementation of the injunctive relief benefit to the class. The implementation of changes to product labeling and pricing takes time. Even assuming that the Court concludes that notice is not required, the Spring of 2019 product release is the soonest that the labeling changes can be guaranteed to be implemented. *See* Agreement, Zavareei Decl. Ex. A, at §§ III.B (Implementation Period).[4] Accordingly, Plaintiffs respectfully request that the Court find that notice is unnecessary and not required.[5]

## B. Since Notice Is Not Required, Preliminary Approval Is Not Required

The purpose of the preliminary approval procedure is to evaluate whether a settlement is within the range of reasonableness to determine whether a court should send notice to the class members. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2012) (quoting Manual for Complex Litigation, Second § 30.44 (1985): "If the proposed settlement … falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing"); *Lounibos v. Keypoint Government Solutions Inc.*, 2014 WL 558675, *5 (N.D. Cal. 2014) ("Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement … falls with the range of possible approval.") (citations omitted).

---

[4] The Settlement Agreement also contemplates in-store signage during the implementation period that states the following: "The higher price on our price tags refers to either the price the same Columbia product was offered at by Columbia in its own stores, its own online properties, or at third party retailers, or the price at which a similar but not identical product was offered in any of those channels." Agreement, Zavareei Decl. Ex. A, at § III.D.

[5] Although notice to class members is not required, the Class Action Fairness Act ("CAFA") requires that notice be given to state and federal authorities. 28 U.S.C. § 1715. The CAFA provides that "no later than ten days after a proposed settlement of a class is filed in court, each defendant shall serve upon the appropriate state official of each state in which a class member resides a notice of the proposed settlement and specified supporting documentation." *Id.* at § 1715(b). Columbia has indicated that it will send CAFA notice 10 days after October 6, 2017, Plaintiffs' deadline to file the instant motion for settlement approval.

Here, since notice is not required, no such preliminary determination is required. Stated otherwise, unlike cases involving the release of claims for monetary relief, all of the applicable settlement approval factors applicable to the parties Rule 23(b)(2) injunctive settlement can be evaluated now without a preliminary step to gauge the reaction of class members. *Compare Jermyn*, 2012 WL 2505644 at *6 (finally approving settlement without preliminary approval and noting that the reaction of the class members was inapplicable to injunctive relief-only settlement where no notice was required) *with Erickson v. Corinthian Colleges, Inc.*, 2015 WL 12001275, at *1 (C.D. Cal. Dec. 22, 2015) ("Because some of [the final approval] factors cannot be fully assessed at the preliminary approval stage, we look to the applicable factors to determine whether the proposed settlement is within the range of possible approval such that notice should be sent to Class Members who can further weigh in on the fairness of the proposed settlement."); *see also Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *4 (N.D. Cal. May 4, 2015) (Tigar, J.) (explaining that "the reaction of the class is not considered in weighing the fairness factors" where the court previously concluded that notice was not necessary); *Kim v. Space Pencil, Inc.*, 2012 WL 5948951, *6 (N.D. Cal. Nov. 28, 2012) ("the reaction of class members is not relevant here because notice [is] not required under Federal Rule of Civil Procedure 23(e) and there is no binding effect on the class nor is there a release being provided.").

Accordingly, to preserve the resources of the parties, to serve judicial economy, and to avoid delays with the implementation of the Settlement, the parties agreed that Plaintiffs should seek one final settlement approval. Agreement, Zavareei Decl. Ex. A, at § IV.A ("Because this Agreement settles an injunctive-only, Rule 23(b)(2) class as above defined, and class members are not entitled to opt-out of such a settlement, the parties agree that no notice to the class is required, and therefore the Court can preliminarily and finally approve the Agreement at the same time."). Thus, Plaintiffs request that the Court proceed to evaluating whether the settlement merits final approval. *See Jermyn*, 2012 WL 2505644, at *13 (explaining that since a non-collusive settlement provided only for injunctive relief to certified Rule 23(b)(2) class, and preserved class members' rights to pursue damages "the Court may provide final approval to this settlement without ordering notice to issue");

*Green,* 200 F.R.D. at 213 (finally approving settlement without a preliminary approval procedural-step based on finding that notice was not required); *Access Now, Inc. v. v. AMH CGH, Inc.,* 2001 WL 1005593 (S.D. Fla. May 11, 2001) (entering final judgment without notice where a consent decree provided injunctive relief only to Rule 23(b)(2) class that had been certified for settlement purposes); *Kim,* 2012 WL 5948951, at \*5 (proceeding to evaluate the final approval factors without a preliminary step where the court concluded that no notice was required).

## V.   THE FINAL APPROVAL STANDARD

In the class action context, district courts must evaluate whether a proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Hanlon v. Chrysler*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon,* 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted). Each of settlement approval factors applicable to this case show that the parties' proposed settlement should be given approval.

### A.   The Injunctive Relief Provided to Class Members Shows That the Settlement Is Fair Adequate and Reasonable

With only a Rule 23(b)(2) class certified and no claim for damages, the best result Plaintiffs could have achieved at trial would have been an injunction designed to remedy Columbia's allegedly deceptive use of reference prices on Columbia Outlet SMU Build tags. As such, the injunction Plaintiffs secured, the crux of the Settlement, is fair, adequate and reasonable. Plaintiffs allege that, prior to the litigation, Columbia deceptively advertised illusory "former prices" on the Outlet SMU Builds. Notably, it is impossible for consumers to identify the Outlet SMU Products, and therefore,

impossible to determine if and when Columbia is truthfully advertising former prices at its Columbia Outlet stores. The parties' injunctive relief settlement "stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking [monetary] legal recourse." *Grant v. Capital Management Servs., L.P.*, 2014 WL 888665, *4 (S.D. Cal. Mar. 5, 2014).

Specifically, Columbia will stop using its current price tag format, and, to the extent it elects to utilize comparison price tactics in the future, will either (1) use seven terms approved by Plaintiffs or (2) supplement any term it chooses with in-store signage explaining what Columbia means by whatever term it opts to use. *Id.* at § III.B.1. Regardless of which option it chooses, the Settlement Class will be informed regarding the meaning of the higher reference price on Columbia Outlet SMU Build tags. Zavareei Decl. ¶ 6. The seven terms identified in the Settlement Agreement are designed to clarify that the higher reference price on the tag refers to the price of a similar item or style, and not to a former price of the same item. *Id.* Further, if Columbia elects to use a term not previously approved by Plaintiffs, the in-store displays Columbia is required to display will educate consumers as to what exactly the reference price refers to. Obtaining this benefit for the Settlement Class is a huge victory for the Plaintiffs because these changes to Columbia's outlet store pricing practices will address and eliminate the consumer perception that the Outlet SMU Build item was marked down from the higher reference price on the tag—the basis for Plaintiffs' claims that the tags were misleading to consumers. *Id.*; *see also Gattinella v. Kors*, No. 14CV5731, 2016 WL 690877, at *1 (S.D.N.Y. Feb. 9, 2016) (in a similar false reference pricing, the court that the defendant's agreement to "change the manner and method in which it markets and labels various price tags," in a manner similar to what Columbia has agreed to was "fair reasonable and adequate[.]").

Additionally, to ensure that the class will receive benefits of the stipulated injunction quickly, while Columbia is in the process of complying with the stipulated injunction, it will place legible notices at the point of sale, which state the following: "The higher price on our price tags refers to either the price the same Columbia product was offered at by Columbia in its own stores, its own online properties, or at third party retailers, or the price at which a similar but not identical product

was offered in any of those channels."  Agreement, Zavareei Decl. Ex. A, at § III.D.  Accordingly, this factor weighs in favor of granting final approval.  *See Lilly*, 2015 WL 2062858 (approving of a settlement providing solely injunctive relief where only Rule 23(b)(2) class was certified); *Goldkorn v. Cnty of San Bernardino*, 2012 WL 476279, at *6-7 (C.D. Cal. Feb. 13, 2012) (approving settlement providing solely injunctive relief, attorneys' fees, costs, and damages to named plaintiffs); *In re Lifelock, Inc. Mktg and Sales Practices Litig.*, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010) (same); *Kim*, 2012 WL 5948951 at *10 (same).

> **B.**    **The Strength of Plaintiffs' Case and the Specific Risks of This Litigation**

Although Plaintiffs continue to believe that they could prove to a jury that Columbia's advertising of illusory former prices was false and misleading, Plaintiffs also understand that proceeding to trial poses serious risks. Indeed, Plaintiffs have already lost the monetary relief portion of their case at summary judgment, and are left only with a potential appeal as a result. A liability verdict could also not be guaranteed for the certified Rule 23(b)(2) class. There is no guarantee that a jury would have been more persuaded by Plaintiffs' experts than by Columbia's expert. There is no guarantee that Plaintiffs would have persuaded the jury that they relied on the pricing at issue. Further, Defendants' "liability in this case would hinge on a factual determination of whether reasonable consumers were likely to be deceived." *See Lilly*, 2015 WL 2062858, at *3 (citations omitted). Thus, Plaintiffs acknowledge the risks of a no-liability jury finding "as any time that liability hinges on reasonableness, a favorable verdict cannot be certain." *See id.* By settling, Plaintiffs avoid the risks of trial and guarantee a change in Columbia's pricing practices. Since the risks of proceeding to trial are substantial, this bird in the hand is worth two in the bush, and the settlement warrants approval.  *See e.g., Nat'l Rural Telecomms. Coop. v. DIREC-TV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'" (citations omitted)).

### C.       The Extent of Discovery and the Status of the Proceedings

Under this factor, courts evaluate whether Class Counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  The Settlement was reached on the eve of trial, after almost two years of litigation, during which time, Plaintiffs completed extensive discovery. Given the procedural history of this case, there can be no doubt that Class Counsel had sufficient information to make an informed decision about the merits of this case as compared to the benefit provided by the proposed settlement. *See supra* § II. Additionally, substantial settlement negotiations have taken place between the parties.  Notably, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The parties also worked closely with Judge Infante, an experienced mediator who ultimately led the parties to resolution.  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("[The] presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.").

### D.       The Experience and Views of Class Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re American Apparel, Inc. v. S'holder Litig.*, 2014 WL 10212865, at *14 (C.D. Cal. July 28, 2014) (citation omitted); *accord In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *Hanlon*, 150 F.3d at 1027. Deference to Class Counsel's evaluation of the settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d 645, 967 (9th Cir 2012).  Here, the settlement was negotiated by counsel with extensive experience in deceptive retail pricing cases and general consumer class action litigation. *See* Zavareei Decl. Exs. B, C (firm resumes); Zavareei Decl. ¶ 7.  Tycko & Zavareei, LLP and Kopelowitz Ostrow Ferguson Weiselberg Gilbert are national, plaintiff side, consumer protection firms based in Washington, D.C., and South Florida, respectively, and have each been appointed class counsel in numerous consumer protection class actions across the country, including in the Northern District of California. *See generally id.* The firms' attorneys have extensive experience and

knowledge of California consumer protection law, and practical experience bringing class action cases to trial in federal court. *Id.* Accordingly, Plaintiffs' counsel has the requisite resources and experience to litigate a federal consumer protection class action through trial, and are well informed of the risks of continued litigation in this case. *Id.* Additionally, Class Counsel have litigated cases involving reference pricing on products sold by Michael Kors, Levi's, Nordstrom, Guess, and DSW. *Id.* As a result, Class Counsel is uniquely qualified to understand the relative strengths and weaknesses of deceptive pricing cases in general, and to apply those learnings to the particular facts of this case. *Id.* Based on their experience and reasoned judgment, the information learned through extensive fact and expert discovery, and legal research for this and similar cases, Class Counsel concluded that the Settlement provides exceptional results for the Settlement Class while sparing the Settlement Class from the uncertainties of continued and protracted litigation. *Id.*

### E.     Government Participant and Reaction of the Class

Here, "no government participant is involved, so the court does not weigh this factor."  *See Lilly*, 2015 WL 2062858, at *3. Similarly, because notice is "not necessary, the reaction of the class is not considered in weighing the fairness factors." *See id.*; *Jermyn*, 2012 WL 2505644, at *6 ("[B]ecause class members' monetary claims are not being released and instead remain intact, no notice is required. Therefore, this factor is not relevant to the settlement approval analysis."); *Kim*, 2012 WL 5948951, at *6 ("the reaction of class members is not relevant here because notice [is] not required under Federal Rule of Civil Procedure 23(e) and there is no binding effect on the class nor is there a release being provided.").

## VI.    THE PROCEDURE FOR DETERMINING ATTORNEY'S FEES AND CLASS REPRESENTATIVE SERVICE AWARDS

Plaintiffs will file a petition for attorneys' fees and expenses and for service awards after final approval of the agreement. Agreement, Zavareei Decl. Ex. A, § VII A-B.  Columbia will not contest Plaintiffs' entitlement to attorneys' fees and expenses or Plaintiffs' entitlement to a service award, but may oppose the amount for both. *Id.*  The parties have agreed upon and jointly propose the following schedule for the briefing of Plaintiffs' petition for attorneys' fees and expenses and for service awards:

1.      Plaintiffs shall file their petition for fees and expenses no later than ten days after the Court rules on this Motion.

2.      Defendants shall file its response no later than 60 days after Plaintiffs file their petition for fees.

3.      Plaintiffs shall file their reply no later than 30 days after Defendant files its response.

The parties have reserved their rights to take discovery relating to the fee petition. In the event that there is any irreconcilable dispute regarding that discovery, the parties will follow the Court's rules governing discovery disputes.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval to the settlement set forth in the parties' Settlement Agreement, and approve the proposed plan for Plaintiffs to seek attorney's fees and service awards.

Dated: October 6, 2017                            Respectfully submitted,

                                                  By:___ */s/ Hassan A. Zavareei*_____
                                                          Hassan A. Zavareei

                                                  **TYCKO & ZAVAREEI LLP**
                                                  ANNICK M. PERSINGER, Cal. Bar No. 272996
                                                  apersinger@tzlegal.com
                                                  483 Ninth Street, Suite 200
                                                  Oakland, CA 94607
                                                  Telephone (510) 254-6808
                                                  Facsimile (510) 210-0571

                                                  **TYCKO & ZAVAREEI LLP**
                                                  HASSAN A. ZAVAREEI, Cal. Bar No. 181547
                                                  hzavareei@tzlegal.com
                                                  ANDREA R. GOLD, D.C. Bar. No. 502607, admitted *pro hac vice*
                                                  agold@tzlegal.com
                                                  JEFFREY D. KALIEL, Cal. Bar No. 238293
                                                  jkaliel@tzlegal.com
                                                  1828 L Street, NW, Suite 1000
                                                  Washington, DC 20036
                                                  Telephone (202) 973-0900
                                                  Facsimile (202) 973-0950

**KOPELOWITZ OSTROW P.A.**
JEFFREY M. OSTROW, Florida Bar No. 121452
ostrow@kolawyers.com
SCOTT A. EDELSBERG, Florida Bar No. 0100537
edelsberg@kolawyers.com
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
(pro hac vice)