**TYCKO & ZAVAREEI LLP**
ANNICK M. PERSINGER, Cal. Bar No. 272996
apersinger@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone (510) 254-6808
Facsimile (510) 210-0571

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, Cal. Bar No. 181547
hzavareei@tzlegal.com
ANDREA R. GOLD, D.C. Bar No. 502607,
admitted *pro hac vice*
agold@tzlegal.com
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

*Attorneys for Plaintiffs*
*Additional Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNE and NICOLAS STATHAKOS, on behalf of themselves and all others similarly situated,<br><br>PLAINTIFFS,<br><br>vs.<br><br>COLUMBIA SPORTSWEAR COMPANY, COLUMBIA SPORTSWEAR USA CORPORATION,<br><br>DEFENDANTS. | Case No. 4:15-cv-04543-YGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES AND SERVICE AWARDS**<br><br>Hon. Yvonne Gonzalez Rogers<br><br>Hearing Date:   January 30, 2018<br>Time:   2:00 p.m.<br>Courtroom:   1, 4th Floor, Oakland Courthouse |

# TABLE OF CONTENTS

PAGE(S)

I.     INTRODUCTION ................................................................................................1

II.    HISTORY OF CLASS COUNSEL'S WORK IN THIS LITIGATION ....................................2

III.   PLAINTIFFS ARE PREVAILING PARTIES AND ARE, THEREFORE,
       ENTITLED TO AN AWARD OF ATTORNEY'S FEES AND EXPENSES ......................11

IV.    THE REQUESTED FEE IS REASONABLE UNDER LODESTAR
       PRINCIPLES ...................................................................................................12

       A.     Counsel Spent a Reasonable Number of Hours on This Litigation ..............13

              1.     Class Counsel Has Excluded a Substantial Amount of Time
                     Based on Billing Judgment ...............................................................14

       B.     Class Counsel Worked at a Reasonable Hourly Rate ...............................17

       C.     The Requested Fee Is Particularly Reasonable in Light of the Relevant
              Factors ..........................................................................................20

              1.     Novelty and Complexity of this Litigation ...........................................20

              2.     Class Counsel Provided Exceptional Representation .............................21

              3.     Class Counsel Faced a Substantial Risk of Nonpayment .......................22

       D.     Class Counsel is Entitled to Fees Incurred After January 2017 ..................22

V.     COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY
       INCURRED ....................................................................................................23

VI.    THE REQUESTED SERVICE AWARDS FOR CLASS
       REPRESENTATIVES ARE REASONABLE AND STANDARD ..........................................24

VII.   CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Berkla v. Corel Corp.,*
   302 F.3d 909 (9th Cir. 2002) ........................................................................................ 23

*Blum v. Stenson,*
   465 U.S. 886 (1984) .................................................................................................... 20

*Cabrales v. Cty. of Los Angeles,*
   935 F.2d 1050 (9th Cir. 1991) ................................................................................... 14

*Californians for Disability Rights v. Calif. Dep't of Transp.,*
   No. C 06–05125 SBA (MEJ), 2010 WL 8746910 (N.D. Cal. Dec. 13, 2010) ........... 19

*Camacho v. Bridgeport Fin., Inc.,*
   523 F.3d 973 (9th Cir. 2008) ..................................................................................... 18

*Campbell v. Facebook, Inc.,*
   No. 13-cv-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) ................. 17, 24

*Cataphora Inc. v. Parker,*
   No. C09–5749 BZ, 2012 WL 13657 (N.D. Cal. Jan. 4, 2012) .................................. 16

*Chaudhry v. City of Los Angeles,*
   751 F.3d 1096 (9th Cir. 2014) ................................................................................... 18

*Chavez v. City of Los Angeles,*
   47 Cal. 4th 970 (2010) .......................................................................................... 14, 15

*Civil Rights Educ. and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.,*
   No. 15–cv–00216–DMR, 2016 WL 1177950 (N.D. Cal. Mar. 22, 2016) .................. 19

*Clark v. Sims,*
   28 F.3d 420 (4th Cir. 1994) ....................................................................................... 23

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy,*
   305 F.3d 943 (9th Cir. 2002) ..................................................................................... 14

*Cooper v. Utah,*
   894 F.2d 1169 (10th Cir. 1990) ................................................................................. 23

*Fischel v. Equitable Life Assur. Soc'y,*
   307 F.3d 997 (9th Cir. 2002) ..................................................................................... 12

*G.F. v. Contra Costa Cty.,*
   No. 13-cv-03667-MEJ, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) ................... 19

*Glass v. UBS Fin. Servs., Inc.,*
   No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ........................ 24

*Graciano v. Robinson Ford Sales,*
   144 Cal. App. 4th 140 (2006) .................................................................................... 12

*Grant v. Capital Mgmt. Servs., L.P.,*
   No. 10–cv–2471–WQH (BGS), 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ........... 1

*Guttman v. Ole Mexican Foods, Inc.*,
    No. 14-04845-HSG, 2016 WL 9107426 (N.D. Cal. Aug. 1, 2016) .................................... 17

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 12

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) .................................................................................................. 23

*Harris v. Vector Mktg. Corp.*,
    No. C–08–5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .................................. 25

*Hartles v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ........................................................................................ 18

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................................................ 20

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .............................................................................................. 12

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. 2007) .............................................. 17

*In re Yahoo Email Litig.*,
    2016 WL 4474612 (N.D. Cal. Aug. 25, 2016)............................................... 17, 20, 22, 24

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
    MDL No.1917, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) .............................................. 16

*Keith v. Volpe*,
    644 F. Supp. 1312 (C.D. Cal. 1986).................................................................................... 15

*Kelly v. Wengler*,
     822 F.3d 1085 (9th Cir. 2016) ..................................................................................... 18, 21

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) .......................................................................................... 12, 20

*Kim v. Euromotors West/The Auto Gallery*,
    149 Cal. App. 4th 170 (2007) ............................................................................................. 12

*Kim v. Space Pencil, Inc.*,
    No. C 11–03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ................................ 21

*Kumar v. Salov North America Corp.*,
    No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017) ..........................19, 20

*Lilly v. Jamba Juice Co.*,
    No. 13–cv–02998–JST, 2015 WL 2062858 (N.D. Cal. May 4, 2015)……………………….. 12

*Lopez v. CIT Bank, N.A.*,
    No. 15-cv-00759-BLF, 2016 WL 3163175 (N.D. Cal. June 7, 2016)................................. 17

*Lota v. Home Depot U.S.A., Inc*,
    No.: 11-cv-05777-YGR, 2013 WL 6870006 (N.D. Cal. Dec. 31, 2013) ......................15, 16

*Morales v. City of San Rafael*,
    96 F.3d 359 (9th Cir. 1996) .........................................................................................13, 20

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
  No. C 09-3329 CW, 2016 WL 1255454 (N.D. Cal. Mar. 31, 2016) ...................................... 14

*Ortiz v. Regan*,
  980 F.2d 138 (2d Cir. 1992) ........................................................................................................ 22

*Prison Legal News*,
  608 F.3d 446 (9th Cir. 2012) ...................................................................................................... 19

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................................................... 24

*Roy v. Cty. of Los Angeles*,
  Nos. CV-12-090122016, CV 13-03316, 2016 WL 5219468 (C.D. Cal. Sept. 9, 2016) .................... 7, 8

*Schiller v. David's Bridal, Inc.*,
  No. 1:10–cv–00616–AWI–SKO, 2012 WL 2117001 (E.D. Cal. June 11, 2012) ................................ 17

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...................................................................................................... 23

*Thorne v. City of El Segundo*,
  802 F.2d 1131 (9th Cir. 1986) .................................................................................................... 14

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ............................................................................................ 24

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ......................................................................................... 13, 20, 22

*Yeagley v. Wells Fargo & Co.*,
  365 F. App'x 886 (9th Cir. 2010) ............................................................................................... 12

**Statutes**

California Consumers Legal Remedies Act, Civil Code §§ 1750, et seq. ....................................... 11

**Rules**

Civ. L.R. 16-8(a) ......................................................................................................................... 23

Fed. R. Civ. P. 23(b)(2) ......................................................................................................... passim

**Treatises**

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:03 (3d ed. 1992) .......................... 20

## I.       INTRODUCTION

Plaintiffs Jeanne and Nicolas Stathakos ("Plaintiffs" or "Class Representatives"), through their Court-appointed counsel Tycko & Zavareei LLP ("TZ"), and Kopelowitz Ostrow Ferguson Weiselberg Gilbert ("KOFWG," collectively, "Class Counsel"), respectfully request that this Court approve an award of attorney's fees, reimbursement of litigation costs and expenses, and payment of service awards in connection with the class action settlement in this action and order defendants Columbia Sportswear Company and Columbia Sportswear USA Corporation (collectively referred to herein as "Columbia") to pay that award.

As set forth in more detail in Plaintiffs' Unopposed Motion for Settlement Approval, the parties reached a Settlement Agreement that provides comprehensive injunctive relief to the Rule 23(b)(2) class certified in this action. Plaintiffs alleged that Columbia deceptively advertised illusory "former prices" on its Outlet SMU Builds. Plaintiffs further alleged that it is impossible for consumers to identify the Outlet SMU Products, and, therefore, impossible to determine if and when Columbia is truthfully advertising former prices at its Columbia Outlet stores.  The parties' injunctive relief settlement "stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking [monetary] legal recourse." *Grant v. Capital Management Servs., L.P.*, No. 10–cv–2471–WQH (BGS), 2014 WL 888665, at *4 (S.D. Cal. Mar. 5, 2014).  Specifically, the terms of the parties' agreement require that Columbia modify its sales practices to change the manner and method of how it presents pricing on the price tags of Outlet SMU Builds. Agreement, Declaration of Hassan A. Zavareei in Support of Motion for Attorney's Fees, Costs and Service Awards ("Zavareei Fee Decl."), Ex. D, at § III.  Since the litigation and resulting settlement caused Columbia to cease the practice that Plaintiffs alleged deceived consumers, Class Counsel seeks an award of fees, and costs, as well as an award for the Class Representatives.

As explained below, the lodestar technique confirms that Class Counsel's request for fees and costs is fair, reasonable, and supported by the law of this Circuit. Class Counsel collectively worked 3,155.56 hours on this case for a total lodestar, at current billing rates, of $1,860,789.66. *See e.g.,* Zavareei Fee Decl. ¶¶ 54-55; Declaration of Jeff M. Ostrow in Support of Motion for Attorney's Fees, Costs and Service Awards ("Ostrow Fee Decl.") ¶¶ 36-37. Furthermore, Class Counsel incurred $244,607.35 in

expenses and costs that were necessary to the prosecution of this case, and that were carefully and reasonably expended. Zavareei Fee Decl. ¶¶ 52-54, Ex. C; Ostrow Fee Decl. ¶¶ 42-44, Ex. B.

Notably, Class Counsel does not seek their full lodestar plus expenses. Instead Class Counsel made significant reductions to their estimated fees and expenses. Zavareei Fee Decl. ¶¶ 43-56, Exs. A-C; Ostrow Fee Decl. ¶¶ 34-44, Exs. A-B. This reduced request only includes hours tethered to the benefit provided to the class. Among other things, the request excludes time entries related to monetary relief, travel time, as well as time spent by lawyers at hearings, depositions and mediations where other lawyers took the lead. Zavareei Fee Decl. ¶¶ 43-47, Ex. B-C; Ostrow Fee Decl. ¶¶ 34-37, Ex. A. As an additional precautionary measure, after time had already been removed based on Class Counsel's review of the time records and billing judgment, Class Counsel applied an additional 10% reduction to each time keeper's time. *Id.* These cuts amounted to an approximate 29% reduction of Class Counsel's total lodestar. Zavareei Fee Decl. ¶ 55. Stated otherwise, Class Counsel voluntarily cut a total of $538,806.39 from their total lodestar for a negative lodestar multiplier of 0.71. *Id.*

Given Class Counsel's application of an inverse multiplier, Class Counsel's fee petition is extraordinarily conservative, and Class Counsel's request for $1,321,983.27 in fees is reasonable and fair. Similarly, Class Counsel's request for $149,319.10 in costs and expenses represents only 61% of the costs and expenses actually incurred by Class Counsel. Finally, incentive awards of $5,000 each to the two class representatives are reasonable and consistent with similar awards in this district.

Class Counsel respectfully asks the Court to grant this request for fees, expenses, and service awards.

## II.   HISTORY OF CLASS COUNSEL'S WORK IN THIS LITIGATION

Prior to and during this litigation, Class Counsel conducted an investigation relating to the use of illusory reference prices and the effects of those prices on consumers. Zavareei Fee Decl. ¶ 4; Ostrow Fee Decl. ¶ 4. Class Counsel made trips to Columbia outlet stores to review and evaluate pricing representations and regularly reviewed prices online. *Id.* Class Counsel purchased a sample of Columbia products to evaluate (i) the pricing representations used to sell them, (ii) their quality, and (iii) the dissimilarity between Columbia Inline and Outlet SMU Build products. *Id.* Class Counsel interviewed

the Class Representatives in this action at length regarding their purchases and their perception of Columbia prices. *Id.* Additionally, as part of their effort to investigate the use of deceptive reference pricing by Columbia as well as by other companies like Michael Kors, Levi's, Nordstrom, Guess, and DSW, Class Counsel analyzed Federal Trade Commission regulations, academic articles, studies, press releases, and consumer complaints to understand the impact of reference pricing on consumers. *Id.* Throughout this litigation, Class Counsel has continued to monitor, research, and review such materials. *Id.* Class Counsel also investigated Columbia's corporate structure, corporate representatives, and tax filings. *Id.*

This action began over two years ago when, on October 2, 2015, Plaintiffs Jeanne and Nicolas Stathakos filed a class action complaint against Columbia. Dkt. 1; Ostrow Fee Decl. ¶ 5. Plaintiffs asserted claims on behalf of themselves and a proposed California Class of purchasers who had purchased a Columbia Outlet Product with a price tag bearing a "Former Price." Plaintiffs alleged that Columbia deceptively advertised a "Former Price" on Columbia Products that were sold exclusively at Columbia Outlet stores ("Outlet SMU Builds").

By early 2016, Class Counsel was significantly involved in litigating this action. Zavareei Fee Decl. ¶ 5-6; Ostrow Fee Decl. ¶¶ 6-9. In February 2016, Class Counsel worked on drafting and filing a Joint Case Management Conference Statement. *Id.* Class Counsel also drafted and served initial disclosures. *Id.* TZ's California partner, Kristen L. Sagafi, then prepared for and appeared at the Initial Case Management Conference held on March 7, 2016.[1] *Id.*

On March 29, 2016, Columbia filed a motion to dismiss. Dkt. 38. Class Counsel reviewed and researched Columbia's arguments related to issues like the pleading requirements for pre-suit investigations, and the applicability of an Attorney General Opinion from 1957. *See* Zavareei Fee Decl. ¶ 7; Ostrow Fee Decl. ¶ 7. Then, on April 12, 2016, Plaintiffs opposed Columbia's motion. Dkt. 39. While the Court denied Columbia's motion in its entirety without oral argument (Dkt. 41), during the week

---

[1] Since Ms. Sagafi took the lead at the CMC, Plaintiffs' fee request does not include the time that associate Martin Quinones spent preparing for and attending the CMC.

prior to the hearing Ms. Sagafi also prepared for the hearing on Columbia's motion to dismiss. Zavareei Fee Decl. ¶ 7. On May 16, 2016, Columbia answered Plaintiffs' TAC, denying liability.

Having defeated Columbia's motion to dismiss, Class Counsel began working on discovery in earnest. Zavareei Fee Decl. ¶ 8. Class Counsel prepared discovery requests including a first set of interrogatories, a first set of requests for admission, and a first set of requests for production. *Id.* Class Counsel carefully reviewed those discovery requests to ensure that they were narrowly tailored, detailed, and targeted to seek relevant information required to support Plaintiffs' case. *Id.* As part of the effort to draft appropriate discovery requests, an associate prepared a table with the elements required for Plaintiffs' claims, and the evidence that would be required to meet Plaintiffs' burden of proof in this false advertising case. *Id.* Class Counsel's work in preparing those discovery requests eased the burden on the parties, and reduced the number of documents that needed to be culled through by both Class Counsel and Columbia. *Id.* To give one example, rather than requiring needless document review, Class Counsel drafted an interrogatory that established the basics of Columbia's use of price tags presenting two prices, as well as Columbia's practice of developing Outlet SMU builds to sell at outlet stores. *Id.* In its May 11, 2017 order on summary judgment and class certification, the Court then relied on Columbia's response to that Interrogatory to discuss the background with which to evaluate issues related to class certification and summary judgment. Order Dkt. 101, at 2-3.

After Class Counsel had learned some background information from Plaintiffs' initial round of discovery, Class Counsel prepared additional discovery requests to answer specific questions developed based on Class Counsel's review of the discovery provided by Columbia and Class Counsel's regular and continuing consultation with consumer behavior and fashion experts. Zavareei Fee Decl. ¶ 9. Specifically, Class Counsel drafted a second set of requests for production, a second set of interrogatories, and a third set of requests for production. *Id.*

In addition to drafting Plaintiffs' discovery requests, Class Counsel drafted responses to Columbia's first set of interrogatories, responses to Columbia's first set of requests for production, responses to Columbia's requests for admission, supplemental responses to interrogatories, supplemental responses to requests for production, responses to Columbia's second set of requests for

production, and responses to Columbia's second set of interrogatories. Zavareei Fee Decl. ¶ 10; Ostrow Fee Decl. ¶ 11. Class Counsel ensured that documents were searched for and produced and ensured that preservation protocols were observed. Zavareei Fee Decl. ¶ 10.

During the course of discovery, Class Counsel met-and-conferred with Columbia's counsel in person and over the phone regarding the scope of discovery, the sufficiency of discovery responses and production, the retention of electronic documents, Columbia's search terms and searches for electronically stored information, the terms and scope of a stipulated protective order, and the timing of production. Zavareei Fee Decl. ¶ 12; Ostrow Fee Decl. ¶ 12. Class Counsel drafted meet and confer letters and memorialized meet and confer calls to advance discovery. *Id.*

Documents Class Counsel sought included, for example, spreadsheets identifying 580 unique Outlet SMU Builds. *Id.* at ¶ 13. At first, Columbia refused to produce any design schematics, or "Tech Sketch[es]" other than those that specifically related to the products that Plaintiffs purchased. *Id.* Thus, on September 9, 2016, the parties submitted a Joint Discovery Dispute Letter in which Plaintiffs sought design schematics, Tech Sketches and cost information for a randomly selected sample of all of Outlet SMU Builds. Dkt. 53. On October 4, 2016, the Court granted Plaintiffs' request. Dkt. 56. In addition to working on issues related to a sample of Columbia's Tech Sketches, Class Counsel reviewed the production that Columbia produced and summarized relevant findings in a document production log. Zavareei Fee Decl. ¶ 14.

Class Counsel also thoughtfully drafted a Rule 30(b)(6) deposition notice that was designed to reduce the number of witnesses that Class Counsel would need to depose to obtain specific information related to Columbia's pricing practices. Zavareei Fee Decl. ¶ 15; Ostrow Fee Decl. ¶ 10. Class Counsel's Rule 30(b)(6) notice was effective. Zavareei Fee Decl. ¶ 15. After conferring with Columbia's counsel regarding Class Counsel's noticed topics, TZ's Kristen L. Sagafi deposed two witnesses—James Robert "Bobby" Bui, and Melissa Olson. *Id.* Class Counsel prepared detailed deposition outlines that aimed to gather evidence to support Plaintiffs' prima facie case. *Id.* Like Class Counsel's discovery requests, Class Counsel's examination of Columbia's witnesses elicited important testimony, such as that Outlet SMU

Builds were never sold anywhere other than outlet stores, and never sold for the higher reference price. *See* Order Dkt. 101, at 3 (citing Bui Dep. Tr. 103:18-20, 123:8-124:12).

Class Counsel regularly communicated with the Plaintiffs in this action to keep them apprised about the case and to seek information from them. Zavareei Fee Decl. ¶ 16. Class Counsel obtained and inspected Plaintiffs' Columbia clothing and purchased available Columbia Inline counterparts for comparison. *Id.* Class Counsel also photographed the products Plaintiffs purchased and provided a detailed chart to Columbia that cataloged those products. *Id.* In addition to communicating with Plaintiffs regularly over the phone, Class Counsel met with Plaintiffs to prepare for their depositions, and then defended their depositions. *Id.* at ¶ 17.

To prepare for class certification and to prove Plaintiffs' prima facie case, Class Counsel retained and oversaw the work of multiple experts who submitted reports and were deposed in connection with Plaintiffs' motion for class certification and opposition to summary judgment. *Id.* at ¶ 18. For example, Class Counsel worked with Ms. Gabriele Goldaper, who is an expert in the fashion industry, and Larry D. Compeau, an expert on the effects of reference pricing on consumer retail behavior to submit reports in connection with Plaintiffs' motion for class certification.[2] *Id.*

After obtaining significant discovery from Columbia in this case, Class Counsel outlined, researched, and drafted Plaintiffs' motion for class certification, which was filed on November 18, 2016. Dkt. 59; Zavareei Fee Decl. ¶ 19; Ostrow Fee Decl. ¶13-14. Class Counsel conducted research to address issues related to the materiality of Columbia's pricing representations, and the applicability of Rule 23(b)(2). *See e.g.*, Zavareei Fee Decl. ¶ 19. Class Counsel also obtained and organized evidence to support Plaintiffs' motion, such as testimony from Plaintiffs and Columbia's Rule 30(b)(6) corporate representatives, to explain, for example, Columbia's practice of designing and implementing a uniform "Value Pricing" scheme at its outlet stores as its direct-to-consumer operations dramatically expanded. *Id.* In support of that motion, Class Counsel submitted expert reports from Professor Larry D. Compeau on the materiality of Columbia's reference prices. *Id.* Class Counsel submitted a report from

---

[2] Plaintiff also worked with a damages expert, Art Olsen, who specializes in data analysis, data development, and database support, and another consumer expert. As detailed below, Plaintiff does not seek fees or costs related to that work.

Ms. Gabriele Goldaper, an expert in the fashion industry, to address Columbia's anticipated argument that the Inline products from which the Outlet SMU Builds were derived were sufficiently similar to warrant their pricing representations.[3] *Id.*

Soon after Class Counsel filed Plaintiffs' motion for class certification, Class Counsel conducted research and then drafted a letter brief in response to Columbia's letter requesting a pre-filing conference. Zavareei Fee Decl. ¶ 20; Ostrow Fee Decl. ¶ 15. Subsequently, with the help of associate Martin Quinones, TZ's California partner, Kristen L. Sagafi, then prepared for and appeared at that pre-filing conference.[4] Zavareei Fee Decl. ¶ 20.

Following the submission of Plaintiffs' motion for class certification, Class Counsel worked with Columbia's counsel to schedule depositions of Plaintiffs' experts—Larry D. Compeau, Gabriele Goldaper, and Art Olsen. *Id.* at ¶ 21. Class Counsel met with each expert prior to his or her deposition to prepare, and then defended those depositions.[5] *Id.* Class Counsel conducted research for and drafted objections to a subpoena Columbia served on Dr. Compeau. *Id.*

In February 2017, Class Counsel reviewed Columbia's combined motion for summary judgment and opposition to class certification, delegated tasks, and outlined Plaintiffs' arguments in response. Zavareei Fee Decl. ¶ 22; Ostrow Fee Decl. ¶ 16. Class Counsel spent significant time researching issues related to Rule 23(b)(2) classes to rebut Columbia's arguments. *Id.* For example, Columbia argued that, where the complaint seeks on behalf of the putative class both injunctive relief and monetary relief, certification under Rule 23(b)(2) is inappropriate. Zavareei Fee Decl. ¶ 22. In response, Class Counsel researched the issues related to injunctive relief. *Id.* Based on their research, in Plaintiffs' reply in support of class certification, Class Counsel cited the court's decision in *Roy v. Cty. of Los Angeles*, Nos. CV-12-090122016, CV 13-03316, 2016 WL 5219468, at *16-17 (C.D. Cal. Sept. 9, 2016), which concluded that

---

[3] Class Counsel also submitted a report by Mr. Olsen, the damages expert, but does not seek fees or costs related that work.

[4] In December 2016, associate Martin Quinones took the laboring oar in preparing a hearing outline for the pre-filing conference on Columbia's motion for summary judgment to reduce the time required for partner Kristen L. Sagafi to prepare for that hearing. Thus, while Plaintiffs do not include in their fee request the time that Mr. Quinones spent appearing at the hearing where Ms. Sagafi took the lead, Plaintiff does include the time that Mr. Quinones spent preparing Ms. Sagafi for that appearance.

[5] Class Counsel does not seek to recover fees and expenses related to Mr. Olsen's deposition.

"whether the damages claims are incidental to the injunctive relief the [plaintiffs] seek is irrelevant, because the [plaintiffs] are not seeking to recover damages for the proposed Rule 23(b)(2) class[]." Finding the reasoning in *Roy* persuasive, this Court then concluded that Plaintiffs had satisfied the requirements for Rule 23(b)(2). Order, Dkt. 101, at 29 (quoting *Roy*).

At the same time that Columbia filed a combined opposition to class certification and affirmative motion for summary judgment, Columbia also filed *Daubert* motions directed at Plaintiffs' consumer behavior and fashion industry experts—Dr. Compeau, and Ms. Goldaper, respectively. Zavareei Fee Decl. ¶ 23; Ostrow Fee Decl. ¶ 17. To oppose those motions—while also preparing oppositions to Columbia's motion for summary judgment, and a reply in response to Columbia's opposition to class certification—Class Counsel needed all hands on deck. *Id.* Thus, in early 2017, both TZ and KOFWG devoted substantial firm resources to this litigation, at the expense of other tasks. *Id.* For example, two of TZ's D.C. partners provided needed assistance to TZ's California office team to draft portions of Plaintiffs' reply in support of class certification and opposition to summary judgment, to defend expert depositions, to prepare oppositions to Columbia's motions to strike, and to work with Dr. Compeau and Ms. Goldaper to prepare rebuttal reports. *Id.* Additionally, partners from TZ worked to respond to a consumer survey performed by Dr. Carol Scott, prepared for and took Dr. Scott's deposition, and retained a rebuttal expert—Hal Poret—to respond to Dr. Scott's report. *Id.* As a result of the work performed by Class Counsel, Columbia's motion for summary judgment and Columbia's motions to strike were largely denied.[6]

On April 4, 2017, Columbia filed a reply in support of its motion for summary judgment, as well as an objection to and motion to strike Plaintiffs' rebuttal expert—Hal Poret—who had prepared a rebuttal report regarding the survey submitted by Columbia's expert Dr. Scott. Zavareei Fee Decl. ¶ 24.

---

[6] On May 11, 2017, the Court certified the following Rule 23(b)(2) class for injunctive relief: All consumers who have purchased an Outlet SMU Build at a Columbia Outlet store in the State of California since July 1, 2014 through the conclusion of this action. The Court appointed the law firms of Tycko & Zavareei LLP, and Kopelowitz Ostrow Ferguson Weiselberg Gilbert as Class Counsel. The Court appointed Plaintiffs as Class Representatives. The Court, however, denied Plaintiffs' request to certify a Rule 23(b)(3) class for monetary relief. In the same order, the Court also largely denied Columbia's motion for summary judgment, but granted it with respect to Plaintiffs' claims for monetary relief, and the products the Plaintiffs purchased after they filed the initial complaint. Finally, the Court denied Columbia's motion to exclude Ms. Goldaper's expert declaration, and largely denied Columbia's motion to exclude Dr. Compeau's expert report.

Class Counsel divided up Columbia's arguments and worked over a weekend to file a response to Columbia's motion to strike, which was untimely and unauthorized. *Id.* On April 11, 2017, Plaintiffs opposed Columbia's motion to strike on the ground that Columbia filed it in violation of Local Rules and the Court's briefing schedule. Dkt. 91.  On April 24, 2017, the Court struck Columbia's motion on the grounds that Columbia had failed to seek authorization to file it. *Id.*

In advance of the hearings on Plaintiffs' motion for class certification, Columbia's motion for summary judgment, and Columbia's motions to strike, a partner from TZ's Oakland office, Kristen L. Sagafi, carefully studied the papers and read cited case law to prepare to argue in support of Plaintiffs' case. Zavareei Fee Decl. ¶ 25. At the same time, an associate from TZ's Oakland office, Annick M. Persinger, prepared to argue in opposition to Columbia's *Daubert* motion. *Id.* A paralegal from TZ worked on preparing visual aids for the hearing to emphasize the fact that Columbia used identical tags and reference prices on Inline and Outlet SMU Build products. *Id.* Ms. Sagafi and Ms. Persinger then attended the hearings on Plaintiffs' and Columbia's motions. *Id.*

After the Court certified a Rule 23(b)(2) class, the Court ordered that Plaintiffs should submit a trial plan, a proposed notice plan, and a joint case management conference statement. Dkt. 104-109. Thus, Class Counsel began planning for trial. Zavareei Fee Decl. ¶ 26; Ostrow Fee Decl. ¶ 19. As part of that effort, Class Counsel researched the Court's requirements for trial plans, as well as the requirements for other pre-trial filings like pre-trial conference statements. *Id.* Class Counsel also began researching the requirements for notice for Rule 23(b)(2) classes, and discussing possible notice plans with claims administrators.[7] *Id.* In a joint statement, Columbia attacked Plaintiffs' claim for injunctive relief by arguing that equitable remedies were unavailable when damages had been pled. *Id.* Accordingly, to protect the injunctive relief benefit Plaintiffs sought to provide to the Rule 23(b)(2) class, Class Counsel researched issues related to the availability of equitable remedies where damages had been pled to protect the injunctive relief benefit. *Id.* Class Counsel then drafted a response. *Id.* After filing a trial plan,

---

[7] Class Counsel does not include time spent exploring the possibility of providing Rule 23(b)(2) notice to class members because notice was not ultimately provided to the class. During this time period, Class Counsel also began preparing a pre-filing letter, and then a partial motion for summary judgment on the unlawful prong of Plaintiffs' UCL claim. Class Counsel also does not seek fees related to those efforts because the case settled prior to the Court ruling on Plaintiffs' motion.

notice, plan, and Joint Case Management Statement, Kristen L. Sagafi prepared for and appeared for Plaintiffs at the July 17, 2017 case management conference. *Id.*[8]

In the summer of 2017, Class Counsel continued working on discovery to prepare for trial. Zavareei Fee Decl. ¶ 27; Ostrow Fee Decl. ¶ 20. For example, Class Counsel sought supplemental information from Columbia, prepared additional discovery requests, prepared to take the deposition of CEO Tim Boyle, and responded to additional discovery propounded by Columbia. Zavareei Fee Decl. ¶ 27. Since Columbia indicated that it intended to object to the depositions of Tim and Gert Boyle, Class Counsel researched "Apex" depositions, *i.e.* the deposition of a high-ranking corporate officer, and prepared a joint discovery dispute letter in accordance with the Court's rules. *Id.* Class Counsel also continued to prepare for trial. *Id.*

During the course of the litigation, Class Counsel explored settlement with Columbia. *Id.* at ¶ 28-29; Ostrow Fee Decl. ¶ 21-22.  In particular, Class Counsel attempted to work with Columbia to settle the case while Class Counsel was working on Plaintiffs' motion or class certification. *Id.* In January 2017, Class Counsel made a settlement demand and proposed injunctive relief, but opposing counsel indicated that they would likely not accept that demand, and Class Counsel ultimately withdrew that demand. *Id.*

At the July 17, 2017 case management conference, the Court advised the parties to consider settlement before trial. *Id.* Accordingly, Class Counsel researched mediators and conferred with Columbia's counsel to schedule a mediation. *Id.* Class Counsel then prepared a detailed mediation statement that included a thorough factual background with citations to evidence, an analysis of relevant and recent case law, as well as an appendix of evidence that Plaintiffs intended to rely on at trial in the action. *Id.* To prepare for the mediation, Class Counsel researched injunctive relief settlements to inform their negotiation and settlement proposal to benefit the Rule 23(b)(2) class. *Id.*

On August 14, 2017, Class Counsel attended an all-day mediation with former Chief Magistrate Judge Edward A. Infante (Ret.). From TZ, Kristen L. Sagafi, Annick M. Persinger, and Hassan Zavareei attended, along with Jonathan Streisfeld, and Scott Edelsberg from KOFWG.[9] Zavareei Fee Decl. ¶ 30;

---

[8] Since Ms. Sagafi took the lead at the July 2017 CMC, Plaintiffs' fee request does not include the time that Annick Persinger and Hassan Zavareei spent traveling to and attending the CMC.

[9] Plaintiffs' fee request does not include time spent by Annick M. Persinger or Scott Edelsberg at the

Ostrow Fee Decl. ¶ 23. The parties spent most of the day negotiating the injunctive relief to benefit the class. Zavareei Fee Decl. ¶ 30. Although the parties did not reach agreement on August 14, 2017, the parties had positioned negotiations such that the parties were able to reach agreement with the help of Judge Infante in the coming weeks. *Id.* On September 22, 2017, the parties executed a term sheet and submitted a joint stipulation to stay the action. Dkt. 125.

After the parties had reached agreement regarding the relief provided to the class, Class Counsel prepared a motion for settlement approval. Zavareei Fee Decl. ¶ 31; Ostrow Fee Decl. ¶ 24. To support that motion, they researched novel issues like the applicability of preliminary approval with injunctive relief settlements. *Id.* Mr. Zavareei and Ms. Persinger then attended the settlement approval hearing on November 14, 2017.[10] Zavareei Fee Decl. ¶ 31.

As a result of the foregoing work performed by Class Counsel, the parties reached a Settlement Agreement that provides injunctive relief to the Settlement Class that remedies the deception Plaintiffs alleged in this action. Since Class Counsel provided the foregoing legal services, and bore substantial risk in litigating this case, Class Counsel seeks $1,321,983.27 in lodestar for the services they performed in this case. To ensure that all of the time included in Class Counsel's lodestar was time spent that ultimately benefited the Class Members Class Counsel represents, as detailed below, Class Counsel made substantial reductions to the time that they have included in their lodestar.

## III.   PLAINTIFFS ARE PREVAILING PARTIES AND ARE, THEREFORE, ENTITLED TO AN AWARD OF ATTORNEY'S FEES AND EXPENSES

The Class Representatives brought claims against Columbia under various theories, including under California's Consumers Legal Remedies Act, Civil Code §§ 1750, et seq. (the "CLRA"). For CLRA claims, an award of fees to the prevailing party is mandatory under Civil Code § 1780(e), which provides: "The court shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this section." As the California Court of Appeal has explained, for a Court in construing this provision, "a mandatory construction of the word 'shall' in section 1780(d) is consistent with the

---

mediation because more senior lawyers attended the mediation along with them.

[10] Since Hassan Zavareei took the lead at the November 14, 2017 settlement approval hearing, Plaintiffs' fee request does not include the time spent by associate Annick M. Persinger preparing for and attending that hearing.

legislative purpose underlying the statute. *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178 (2007).

Here, Class Counsel negotiated a settlement that will provide Class Members with a change in pricing practices so that it will be clear to the Class that the higher reference price on the tag may refer to a similar, rather than the same, item. Plaintiffs have thus succeeded by realizing their litigation objectives in large part. As the Settlement Class is the "prevailing party," a fee award to Class Counsel is mandatory under the CLRA. *Graciano v. Robinson Ford Sales*, 144 Cal. App. 4th 140, 150-51 (2006). Although Columbia has reserved its rights to contest the amount of fees sought by Class Counsel, Columbia does not dispute that Class Counsel are entitled to some fees as a result of the settlement.

## IV. THE REQUESTED FEE IS REASONABLE UNDER LODESTAR PRINCIPLES

Under Ninth Circuit standards, a court may award attorney's fees based on the "lodestar" method where there is no formal common fund, taking into account the factors discussed below. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (affirming choice of lodestar method where calculation of value of common fund was uncertain). Thus, in cases where the primary benefit is injunctive relief, courts apply the lodestar method. *See, e.g., Hanlon*, 150 F.3d at 1029; *Yeagley v. Wells Fargo & Co.*, 365 F. App'x 886, 886 (9th Cir. 2010) (holding that the lodestar method ought to have been used to calculate attorney's fees where injunctive relief was sought and no common fund was created); *Lilly v. Jamba Juice Co.*, No. 13–cv–02998–JST, 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015).

The lodestar figure is calculated by multiplying the hours reasonably spent on the case by appropriate hourly rates based on the locale and attorney experience. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-942 (9th Cir. 2011); *Hanlon*, 150 F.3d at 1029. The resulting lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment. *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Courts typically apply a multiplier or enhancement to the lodestar to account for the substantial risk that plaintiffs' counsel undertook by

accepting a case where no payment would be received if the lawsuit did not succeed. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). Thus, a fee that approximates lodestar is considered presumptively reasonable. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64, n.8 (9th Cir. 1996) ("There is a strong presumption that the lodestar figure represents a reasonable fee.").

### A.   Counsel Spent a Reasonable Number of Hours on This Litigation

Class Counsel's declarations describe the extensive work performed in connection with this litigation over the past two years. TZ and KOFWG carefully coordinated their work throughout this litigation to avoid any duplication of effort. To support this request, Class Counsel are separately submitting their detailed daily billing records showing what work was done and by whom. *See* Zavareei Fee Decl. ¶¶ 2-36, Ex. B; Ostrow Fee Decl. ¶¶ 2-27, Ex. A. Because of Class Counsel's litigation efforts, the parties reached a Settlement that will enable consumers to distinguish between the Outlet SMU Builds that were sold exclusively at outlets, and never for the higher price, and the Inline styles that were formerly elsewhere at a higher price. The terms of the Agreement provide that the Outlet SMU tags will qualify the reference price with one of the following: "Comparable Value, Comp. Value, Comparable Item, Comp. Item, Comparable Style, or Comp. Style." Agreement, Zavareei Fee Decl. Ex. D, at III.B.1(a). Each of those terms will communicate to consumers that the higher price on the tag refers to the price of a comparable item, and not to a former price of the same item. Because Plaintiffs sought a change in Columbia's labeling of reference prices on Outlet SMU Builds on behalf of a rule 23(b)(2) class, Columbia's agreement to change those labels is an exceptional result for the class.

As detailed above, this was a novel case that involved a significant amount of original work and concerned complex factual and legal allegations. Given the technical nature of the litigation, the tenacious battles over the pleadings and class certification and the difficulty of the settlement negotiations, the number of hours Class Counsel spent was reasonable. Zavareei Fee Decl. ¶¶ 2-36, Exs. A-B; Ostrow Fee Decl. ¶¶ 2-27, Ex. A.  Moreover, Class Counsel has exercised billing judgment to significantly reduce the number of hours they include in their request for fee award. Zavareei Fee Decl. ¶¶ 40-56, Exs. A-B; Ostrow Fee Decl. 31-44.

1.     **Class Counsel Has Excluded a Substantial Amount of Time Based on Billing Judgment**

Plaintiffs prevailed in almost all aspects of this case. They did not, however, prevail in their request for monetary damages. Importantly, "fees are not reduced when a plaintiff prevails on only one of several factual related and closely intertwined claims." *Chavez v. City of Los Angeles*, 47 Cal.4th 970, 989 (2010). As such, the fact that Plaintiffs' pursuit of damages was ultimately unsuccessful should not warrant a further reduction in Class Counsel's fees.  Moreover, a court is not always required to reduce fees in any amount simply because of a lack of success on some claims.  "[E]ven if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims." *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002) (quoting *Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991)). Accordingly, where, as here, the unsuccessful claims are related to the successful ones and "the plaintiff obtained excellent results," full compensation may still be appropriate. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986).  In a case that is on point with the case at bar, Judge Wilken declined to reduce a fee award even though she had denied plaintiffs' request to certify a damages class, certifying only an injunctive relief class, and even though a portion of the injunctive relief ordered by the court was later reversed. *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, No. C 09-3329 CW, 2016 WL 1255454, at *3-4 (N.D. Cal. Mar. 31, 2016) (stating that "the finding of liability and the remaining injunctive relief are together an excellent result" warranting a full fee award).

In this case, Plaintiffs' damages claims were inextricably intertwined with their injunctive relief claims. For example, both forms of relief required that Plaintiff demonstrate that all Rule 23(a) factors were met, and that there was a triable issue on each element of their consumer protection claims. Thus, most of Class Counsel's time was reasonably spent pursuing the injunctive relief that will benefit the class. Recognizing, however, that "fees are not awarded for time spent litigating claims unrelated to the successful ones," Counsel voluntarily removed the following time from their request for fees:

a.    Any time entry relating to Plaintiffs' request for monetary relief for the class, or relating to work with Plaintiffs' damages experts; and

b.    Any entry related to any of Plaintiffs' experts other than Larry D. Compeau, Gabriele Goldaper, or Hal Poret.

*See Lota v. Home Depot U.S.A., Inc.*, No.: 11-cv-05777-YGR, 2013 WL 6870006, at *5 (N.D. Cal. Dec. 31, 2013) (quoting *Chavez*, 47 Cal. 4th at 989); Zavareei Fee Decl. ¶ 43; Ostrow Fee Decl. ¶ 34. As an additional measure, Class Counsel also removed the following time that did not ultimately contribute to the injunctive relief benefit to the class:

    c.   Time spent investigating and proposing forms and methods of notice because notice was never provided to the class;

    d.   Time spent drafting and filing Plaintiffs' partial motion for summary judgment; and

    e.   Time spent researching issues related to Columbia's Rule 68 offer.

Zavareei Fee Decl. ¶ 43; Ostrow Fee Decl. ¶ 34.

       Furthermore, although Class Counsel submits that all of the time spent vigorously litigating a complex class action case like this one was reasonable, Class Counsel has also exercised their billing judgment and removed the following categories of time from their fee request:

    f.   Entries related to administrative tasks that could be characterized as overhead;

    g.   Time spent reviewing court orders because each noticed attorney must do so;

    h.   Time spent by associates or partners attending hearings and depositions when a more experienced attorney or a different partner took the lead;

    i.   Time spent by associates and junior partners preparing for hearings and depositions unless the time spent by the associate or junior partner was directly related to preparing the senior attorney appearing at the hearing or taking a deposition;

    j.   Time spent traveling to hearings, depositions, and mediations;

    k.   Time spent by associate Annick M. Persinger and junior partner Scott Edelsberg at the full-day mediation with Judge Infante; and

    l.   Time spent by attorneys (Jeff Kaliel, Lauren Keller, and Jason Alperstein), a law clerk (Brandon Polsky), and staff members (Natasha Fletcher, Nathan Laporte, Sydney Teng, and Todd Becker) who provided litigation support but who did not spend substantial time working on the case.

*See Lota*, 2013 WL 6870006, at *9 (citing *Keith v. Volpe*, 644 F. Supp. 1312, 1316 (C.D. Cal. 1986) (discussing billing judgment and reducing the total time by subtracting travel, time spent in meetings with more than two attorneys, time spent organizing files and other clerical matters)); Zavareei Fee Decl. ¶ 43-45; Ostrow Fee Decl. ¶ 34.  As a result of these aggressive hours reductions, including the removal of hours relating to their damages claims and the exercise of billing judgment, Class Counsel has removed 643.95 hours from this fee petition. Zavareei Fee Decl. ¶¶ 54-55. This first reduction amounts to a reduction of $391,440.80. *Id.*

After removing the foregoing time, Class Counsel added an additional 10% reduction to each time keepers' reduced hours in an abundance of caution and to respond to a variety of concerns often implicated in fee petitions. For example, although time spent litigating intertwined successful and unsuccessful claims need not be reduced, this additional 10% reduction is an additional precaution to account for time that may have been spent litigating issues related solely to monetary relief that were not specifically identified in Counsel's records. In addition, Columbia may argue that entries that are in full and half hour increments are the result of rounding up. That is not factually accurate, as Class Counsel always bills in six-minute increments (for TZ) or fifteen-minute increments (for KOFWG) and rounds down. In any event, the 10% reduction also accounts for any argument that full and half hour increments are over represented in Class Counsel's time records. *See Lota*, 2013 WL 6870006, at *12 (accepting explanation that a lawyer rounds down time when billing in half or whole hour increments). Likewise, the 10% reduction also addresses any contention that Class Counsel engaged in block billing—although, in the few instances where lawyers entered a variety of tasks related to this action on a given day in a given time entry, the tasks were sufficiently detailed to evaluate their reasonableness. *Cataphora Inc. v. Parker*, No. C09–5749 BZ, 2012 WL 13657 (N.D. Cal. Jan. 4, 2012) (accepting block-billed entries where they were "specific and itemized in a fashion that permit a meaningful review of the entries for purposes of determining their reasonableness"); *see also In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No.1917, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016) (declining to reduce hours based on block billing); *Lota*, 2013 WL 6870006, at *12 (noting that deductions have been applied ranging from 10% or more, and applying a middle to lower end deduction based on the smaller number of identified entries and overall reasonableness of the amount of time spent).

Thus, in total, Class Counsel's fee petition is extraordinarily conservative. Among other things, the request excludes (1) all work related to the damages claim, (2) all work that could be considered clerical or administrative in nature, (3) all work by several time keepers, (4) all travel time, (5) all associate or partner time at hearings and depositions where a more experienced lawyer or a different partner was in the lead, and (5) time spent reviewing court orders. These cuts alone amounted to 21.04%. In addition, Class Counsel deducted another 10% from their request, amounting to another reduction of

$147,365.59. In total, this amounts to a reduction of 29% or $538,806.39 off the total fees incurred. Thus, Class Counsel is seeking a total negative multiplier of .71. The application of an inverse multiplier further supports an inference of reasonableness.  *See, e.g., In re Yahoo Email Litig.*, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) (finding that the lodestar multiplier of .97 "is within the range of reasonableness" and granting a request for $4 million in attorney's fees); *Guttman v. Ole Mexican Foods, Inc.*, No. 14-cv-04845-HSG, 2016 WL 9107426, at *6 (N.D. Cal. Aug. 1, 2016) (finding that a fee request was "especially" reasonable because counsel voluntarily applied a multiplier of .59) *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel."); *Schiller v. David's Bridal, Inc.*, No. 1:10–cv–00616–AWI–SKO, 2012 WL 2117001, at *23 (E.D. Cal. June 11, 2012) ("An implied negative multiplier supports the reasonableness of the percentage fee request").  *Cf. Lopez v. CIT Bank, N.A.*, No. 15-cv-00759-BLF, 2016 WL 3163175, at *8 (N.D. Cal. June 7, 2016) (finding a request for fees calculated based on lodestar reasonable because plaintiffs did not request a positive multiplier); *Campbell v. Facebook, Inc.*, No. 13-cv-05996-PJH, 2017 WL 3581179, at *7 (N.D. Cal. Aug. 18, 2017) (approving a $3.89 million fee award where plaintiffs applied a negative multiplier of .497).

Accordingly, Class Counsel's respectfully requests $1,321,983.27 in lodestar to compensate them for the time spent obtaining the pricing practice changes obtained for the benefit of the Settlement Class. Because Class Counsel is already voluntarily reducing the fees sought, Class Counsel respectfully submits that no further reduction is warranted.

### B.    Class Counsel Worked at Reasonable Hourly Rates

The hourly rates for each of the lawyers who staffed the case, which are set forth in the accompanying declarations and exhibits thereto, are reasonable and commensurate with rates approved in other class actions litigated in this district. Class Counsel is requesting the following hourly rates:

| Staff | Title | Years of Practice | Rate (Adjusted Laffey) |
|---|---|---|---|
| A. Abate | Paralegal | N/A | $196.00 |
| T. Becker | Paralegal | N/A | $196.00 |
| K. Taylor | Associate | 2 | $359.00 |
| S. Goren | Associate | 3 | $359.00 |
| M. Quinoñes[11] | Associate | 3 | $359.00 |
| K. Aizpuru | Associate | 4 | $440.00 |
| S. Edelsberg | Partner | 6 | $440.00 |
| A. Persinger | Associate | 8 | $636.00 |
| A. Kaufman | Partner | 8 | $636.00 |
| A. Haac | Partner | 12 | $717.00 |
| A. Gold | Partner | 14 | $717.00 |
| K. Sagafi | Partner | 16 | $717.00 |
| J. Streisfeld | Partner | 21 | $864.00 |
| J. Ostrow | Partner | 21 | $864.00 |
| H. Zavareei | Partner | 23 | $864.00 |

These rates are based on the Adjusted Laffey Matrix, which provides standard hourly rates for attorneys practicing in Washington, DC—where lead counsel Tycko & Zavareei LLP is based.[12] These rates are reasonable and fall well within the range that courts within this district have determined to be reasonable.  A "reasonable hourly rate is ordinarily the prevailing market rate in the relevant community."  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *see also Hartles v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011) (stating that rates are "reasonable where they [are] similar to those charged in the community and approved by other courts").  Here, the "relevant community" is the Northern District of California.  *See, e.g., Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) ("The relevant community is the forum in which the district court sits." (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008))).

While Class Counsel's hourly rates were calculated using the standard rates for the Washington-Baltimore area, these rates are actually at or below market for this district. And courts in this district

---

[11] M. Quiñones's hourly rate is calculated as of his last date of employment with Tycko & Zavareei LLP.
[12] "The Laffey matrix is the most commonly used fee matrix in determining fees for complex federal litigation in the D.C. Circuit."  *E.g., Texas v. U.S.*, No. CV-11-1303 (RMC), 2017 WL 1194159, at *4 (D.D.C. Mar. 30, 2017). The Adjusted Laffey Matrix is adjusted for inflation. *Id.* It can be found at http://www.laffeymatrix.com/see.html (last accessed November 21, 2017).

have repeatedly accepted higher rates. For example, in *Civil Rights Educ. and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, No. 15–cv–00216–DMR, 2016 WL 1177950 (N.D. Cal. Mar. 22, 2016), the court found that requested hourly rates of $900, $750, $550, $500, $430, and $360 for attorneys and $225 for paralegals were "in line with the market rates charged by attorneys and paralegals of similar experience, skill, and expertise practicing in the Northern District of California." *Id.* at *5. And in *G.F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015), the court found that hourly rates between $175 per hour and $975 per hour, which included "an hourly rate of $845-$975 for two of the most senior and experienced litigators," were "in line with the overall range of market rates for attorneys and for litigation support staff of similar abilities and experience" in the Northern District of California between 2013 and 2014. *Id.* at *14. There, the parties agreed to and the court approved a fee award of $2,505,000 as part of a settlement that included only injunctive and declaratory relief. *Id.* at *16. *See also Prison Legal News*, 608 F.3d 446, 455 (9th Cir. 2012) (finding that the district court did not abuse its discretion by awarding hourly rates between $425, $700, and $875); *Holloway et. al. v. Best Buy Co., Inc.*, Order Granting Plaintiffs' Application for an Award of Attorney's Fees and Costs, No. 05-5056 PJH (N.D. Cal. Filed Nov. 9, 2011), Dkt. No. 382 (approving lodestar-based rates up to $825 in a class action alleging discrimination against female, African American and Latino employees); *Californians for Disability Rights v. Calif. Dep't of Transp.*, No. C 06–05125 SBA (MEJ), 2010 WL 8746910, at *4-6, 13 (N.D. Cal. Dec. 13, 2010) (finding rates up to $835 reasonable), *report and recommendation adopted*, 2010 WL 8180376 (N.D. Cal. Feb. 2, 2011).

Perhaps more to the point, this very Court has already approved the hourly billing rates requested by Tycko & Zavareei LLP. In *Kumar v. Salov North America Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017), Tycko & Zavareei LLP requested Adjusted Laffey rates that were between $343 and $826 for attorneys and $187 for paralegals.[13] *See* Plaintiff's Motion for Final Approval of Class Action Settlement and Application for Attorney's Fees, Costs and Incentive Awards, *Kumar*, No. 14-CV-2411-YGR (N.D. Cal., filed April 11, 2017), Dkt. No. 154. The Court found that these rates were "reasonable and commensurate with those charged by attorneys with similar experience in the

---

[13] The attorneys whose rates were approved in *Kumar* and who also worked on this case are: Hassan Zavareei, Anna Haac, and Sophia Goren.

market." *Kumar*, 2017 WL 2902898, at *7. Because the Court has already approved Class Counsel's requested rates once before—and because these rates are at or below the actual market rates in this district—the Court should approve them in this case as well.  *See In re Yahoo Email Litig.*, 2016 WL 4474612, at *9 (finding hourly rates reasonable in part because "Courts within the Northern District of California, including this Court" had already approved those rates).

### C. The Requested Fee Is Particularly Reasonable in Light of the Relevant Factors

The lodestar analysis is not limited to the simple mathematical calculation of Class Counsel's base fee. *See Morales*, supra, 96 F.3d at 363-64. Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364. In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4. *See Vizcaino*, 290 F.3d at 1051, fn.6; *see also* Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded). In considering the reasonableness of attorney's fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, the novelty and complexity of the litigation, the skill and experience of counsel, the results obtained, and awards in similar cases. *Kerr*, 526 F.2d at 70; *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984). All of these factors further support the reasonableness of the requested fee award in this action. *Vizcaino*, 290 F.3d at 1051.

#### 1. Novelty and Complexity of this Litigation

The novelty and complexity of this case strongly supports the requested fee. This case was among the first cases filed in California by related to the UCL's prohibition of deceptive reference prices. Zavareei Fee Decl. ¶ 37. As detailed above, Class Counsel faced difficult and novel legal and factual issues, which required creativity and presented significant challenges. For example, Class Counsel had to establish that an illusory higher price on a price tag were deceptive and material to consumer purchasing decisions. To make that showing, Class Counsel retained the preeminent expert on consumer behavior and reference prices, worked with that expert to submit reports in support of class

certification and in opposition to summary judgment, analyzed Dr. Carol Scott's comprehensive consumer survey, and consulted a survey expert to provide a rebuttal to her report. In another example, Class Counsel analyzed legal issues unique to Rule 23(b)(2) class actions, and researched the availability of injunctive relief in consumer class actions where, for example, a Rule 23(b)(3) class was also sought, legal damages had been pled, and consumers had become aware of the deceptive conduct.

More importantly, Class Counsel subsequently reached a settlement that requires Columbia to change the pricing practices that Plaintiffs alleged were misleading. In light of the novelty and complexity of this case, and concomitant risks to counsel, a substantially higher fee request would be justified. *See, e.g.*, *Kim v. Space Pencil, Inc.*, No. C 11–03796 LB, 2012 WL 5948951, at *8 (N.D. Cal. Nov. 28, 2012) (applying a multiplier of 1.18 based on "the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment" in a case awarding injunctive relief for claims under federal and California consumer and privacy law); *cf. Kelly*, 822 F.3d at 1093-94 (affirming application of multipliers of 2.0 and 1.3 in a case awarding injunctive relief for violations of 42 U.S.C. § 1983).

### 2.     Class Counsel Provided Exceptional Representation

The Settlement provides significant relief for the Class. Because of Class Counsel's litigation efforts, the parties reached a Settlement that will enable consumers to distinguish between the Outlet SMU Builds that were sold exclusively at outlets, and never for the higher price, and the Inline styles that were formerly elsewhere at a higher price. The terms of the Agreement provide that the Outlet SMU tags will qualify the reference price with one of the following: "Comparable Value, Comp. Value, Comparable Item, Comp. Item, Comparable Style, or Comp. Style." Agreement, Zavareei Fee Decl. Ex. D, at III.B.1(a). Each of those terms will communicate to consumers that the higher price on the tag refers to the price of a comparable item, and not to a former price of the same item. Because Plaintiffs sought a change in Columbia's labeling of reference prices on Outlet SMU Builds on behalf of a rule 23(b)(2) class that this Court certified, Columbia's agreement to change those labels is an exceptional result for the class. Class Counsel avoided considerable burden and expense to the parties and the judicial system by conducting a thorough investigation and achieving a favorable Settlement. The results

achieved by Class Counsel here fully justify the requested fee.

### 3. Class Counsel Faced a Substantial Risk of Nonpayment

A critical factor bearing on fee petitions in the Ninth Circuit is the level of risk of nonpayment faced by Class Counsel at the inception of the litigation. *See, e.g.*, *Vizcaino*, 290 F.3d at 1048. In *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994), the Ninth Circuit recognized that: "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases . . . [I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Id.* at 1299-1300 (citations omitted) (internal quotations marks omitted). *See also In re Yahoo Email Litig.*, 2016 WL 4474612, at *11 (approving a $4 million fee award where it was "possible that, absent settlement, Class Counsel would not have been paid for their efforts in this litigation").

Throughout this case, Class Counsel expended substantial time and costs to prosecute a class action suit with no guarantee of compensation or reimbursement in the hope of prevailing against a sophisticated Defendant represented by high-caliber attorneys. *See* Zavareei Fee Decl. ¶¶ 37-39; Ostrow Fee Decl. ¶¶ 28-30. Class Counsel obtained a highly favorable result for the Class, knowing that if their efforts were ultimately unsuccessful, they would receive no compensation or reimbursement for their costs. Class Counsel prosecuted the case with the type of vigor and skill required to ensure justice for the Class. This fact alone supports a finding that Class Counsel's requested fee is fair and reasonable.

### D. Class Counsel is Entitled to Fees Incurred After January 2017.

Defendant may argue that Plaintiffs' fee award should be reduced further because of conversations regarding settlement that occurred earlier in the case. Because those conversations led nowhere and no settlement was possible at that time, this position is baseless. *See* Zavareei Fee Decl. ¶ 28. Between January 6 and January 10, 2017, counsel for both parties briefly discussed the possibility of resolving the case through settlement. Neither side accepted an offer from the other. It was not until months later, during a full-day settlement conference facilitated by an experienced mediator, that the

parties were eventually able to resolve the liability portion of the case. Even so, the issue of attorney's fees remains unresolved.

Because Columbia made no formal Rule 68 offer, any arguments they may make about the possibility of resolution prior to the parties' mediation should be rejected. The Ninth Circuit and numerous other courts have held that it is inappropriate to deny fees and costs where no formal offer of judgment was made pursuant to the requirement of Rule 68. *See Berkla v. Corel Corp.*, 302 F.3d 909, 922 (9th Cir. 2002) (reversing district court's decision to deny costs where plaintiff rejected a settlement offer because the defendant "refused to cast it as an offer of judgment); *Clark v. Sims*, 28 F.3d 420, 424 (4th Cir. 1994); *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992) (finding that plaintiff's rejection of a settlement offer could not be used to reduce an otherwise appropriate fee award where defendant chose not to make a formal offer of judgment under Rule 68); *Cooper v. Utah*, 894 F.2d 1169, 1172 (10th Cir. 1990)). Where, as here, the parties engaged only in brief, informal, and inconclusive settlement negotiations, the mere fact of those discussions may not be used as a basis to further reduce the fee award. Indeed, such a finding would have a chilling effect on early settlement negotiations—a result wholly inconsistent with the Northern District's stated policy to promote the early resolution of actions. *See* L.R. 16-8(a).

## V.  COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED

The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of a class action settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee paying client. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). The incurred costs include court fees, copying fees, courier charges, expert fees, legal research charges, telephone/facsimile fees, travel costs, postage fees, and other related costs. *See* Zavareei Fee Decl. Ex. C (listing expenses for which reimbursement is sought); Ostrow Fee Decl. Ex. B (same). Each of these costs was necessarily and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for the various categories of expenses incurred.

To date, Class Counsel incurred out-of-pocket costs and expenses in the aggregate amount of $244,607.35 in prosecuting this litigation on behalf of the class. Zavareei Fee Decl. ¶ 55. Although Class Counsel's costs were reasonably incurred, Class Counsel carefully reviewed each expense entry and made numerous deductions. Zavareei Fee Decl. ¶ 52. These reduced expenses are itemized in the declarations submitted to the Court herewith. *See* Zavareei Fee Decl. Ex. C; Ostrow Fee Decl. Ex. B. All costs related to any expert other than Larry D. Compeau, Gabriele Goldaper, and Hal Poret were removed. *Id.* The total deduction based on expert work and related costs, such as that done by Art Olsen Plaintiff's damages expert, amounted to $91,535.14. *Id.*; Ostrow Fee Decl. ¶ 42. TZ, which bore the bulk of the costs in this litigation, also made $3,753.11 in additional deductions from travel expenses that were incurred, including reductions on hotel accommodations and airfare, elimination of some travel meals and miscellaneous travel expenses. Zavareei Fee Decl. ¶ 52. In total, the cuts made totaled tens of thousands of dollars. Even though $244,607.35 was incurred in pursuit of the case, Class Counsel only seeks a reimbursement of $149,319.10 in costs. *Id.* at ¶ 55.

## VI. THE REQUESTED SERVICE AWARDS FOR CLASS REPRESENTATIVES ARE REASONABLE AND STANDARD

In recognition of their efforts on behalf of the Class, Plaintiffs seek a Service Award for each Class representative in the amount of $5,000 (for a total of $10,000). Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). The payment of service awards to successful class representatives is appropriate, and "[i]ncentive awards of $5,000 or less are usually considered presumptively reasonable in this district." *Campbell*, 2017 WL 3581179, at *4, 8 (approving an incentive award of $5,000 where the class settlement included only injunctive relief); *see also In re Yahoo Email Litig.*,

2016 WL 4474612, at *11 (approving an incentive award of $5,000 where the class settlement included declaratory and injunctive relief). The amount of $5,000 is undoubtedly reasonable when compared to other service awards. *See Van Vraken*, 901 F. Supp. at 299-300 (incentive award of $50,000); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16–17 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009) (N.D. Cal. Jan. 26, 2007) (awarding $100,000 divided among four plaintiffs in overtime wages class action); *Harris v. Vector Mktg. Corp.*, No. C–08–5198 EMC, 2012 WL 381202, at *8 (N.D. Cal. Feb. 6, 2012) (awarding $12,500 service award).

The requested amount of $5,000 for each Class Representative reflects the involvement and time each Class Representative dedicated to the case. Their involvement in this action was critical to the ultimate success of the case. Class Counsel consulted with the Class Representatives throughout the investigation, filing, prosecution and settlement of this litigation. J. Stathakos Service Award Decl. ¶¶ 1-8; N. Stathakos Service Award Decl. ¶¶ 1-8.

## VII.    CONCLUSION

Class Counsel obtained a settlement that represents an excellent result for the class. This Settlement is the culmination of the determined and skilled work of Class Counsel. As a result, the parties respectfully request that this Court award the following: $1,321,983.27 in attorney's fees; $149,319.10 in expenses; and $5,000 to each Plaintiff as a service (for a total of $10,000).

Dated:  November 22, 2017                       Respectfully submitted,

By:      */s/ Hassan A. Zavareei*
            Hassan A. Zavareei


**TYCKO & ZAVAREEI LLP**
ANNICK M. PERSINGER, Cal. Bar No. 272996
apersinger@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone (510) 254-6808
Facsimile (510) 210-0571

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, Cal. Bar No. 181547
hzavareei@tzlegal.com
ANDREA R. GOLD, D.C. Bar No. 502607,
admitted *pro hac vice*

agold@tzlegal.com
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

**KOPELOWITZ OSTROW P.A.**
JEFFREY M. OSTROW, Florida Bar No. 121452
ostrow@kolawyers.com
SCOTT A. EDELSBERG, Florida Bar No. 0100537
edelsberg@kolawyers.com
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
(pro hac vice)