**TYCKO & ZAVAREEI LLP**
ANNICK M. PERSINGER, Cal. Bar No. 272996
apersinger@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone (510) 254-6808
Facsimile (510) 210-0571

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, Cal. Bar No. 181547
hzavareei@tzlegal.com
ANDREA R. GOLD, D.C. Bar. No. 502607,
admitted *pro hac vice*
agold@tzlegal.com
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950


*Attorneys for Plaintiffs*
*Additional Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNE and NICOLAS STATHAKOS, on behalf of themselves and all others similarly situated,<br><br>PLAINTIFFS,<br><br>vs.<br><br>COLUMBIA SPORTSWEAR COMPANY, COLUMBIA SPORTSWEAR USA CORPORATION,<br><br>DEFENDANTS. | Case No. 4:15-cv-04543-YGR<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES AND SERVICE AWARDS**<br><br>Hon. Yvonne Gonzalez Rogers<br><br>Hearing Date: February 6, 2018<br>Time: 2:00 p.m.<br>Courtroom: One, Fourth Floor, Oakland Courthouse<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

**TABLE OF CONTENTS**

**PAGE(S)**

I.      INTRODUCTION ...................................................................................................1

II.     COLUMBIA'S ARGUMENTS FOR UNSUBSTANTIATED AND
        DRAMATIC CUTS TO PLAINTIFFS' LODESTAR HAVE NO LEGAL
        BASIS.....................................................................................................................2

III.    THE PARTIES' JANUARY 2017 SETTLEMENT DISCUSSIONS ARE
        IRRELEVANT AND SHOULD NOT BE CONSIDERED ...................................7

        A.      Plaintiffs Conferred in Good Faith Regarding Settlement and Fees ...........9

IV.     COLUMBIA'S OUTSIDE COUNSEL'S HOURS SHOULD NOT BE
        CONSIDERED .....................................................................................................10

V.      COLUMBIA AND SO-CALLED EXPERT ANDRE JARDINI FAIL TO
        SHOW THAT CLASS COUNSEL'S HOURS ARE UNREASONABLE .........14

        A.      Jardini's Subjective, Unsupported Opinions Should Be Rejected.............14

        B.      Jardini's Legal Opinions Must Be Stricken ..............................................19

        C.      The Court Must Defer to Class Counsel's Staffing Judgments .................20

        D.      Time Spent by Out of State Attorneys Is Recoverable .............................22

        E.      Class Counsel Has Made Further Reductions to Their Fee Request ..........23

VI.     COLUMBIA FAILS TO MEET ITS BURDEN TO REBUT THE
        REASONABLENESS OF CLASS COUNSEL'S RATES ...................................24

VII.    COSTS ..................................................................................................................25

VIII.   CONCLUSION .....................................................................................................25

Cases

*A.D. v. Cal. Highway Patrol,*
   712. F.3d 446 (9th Cir. 2013) ............................................................................................... 8

*A.D. v. Cal. Highway Patrol,*
   2013 WL 6199577 (N.D. Cal. Nov. 27, 2013) ..................................................................... 8

*Anchor Pacifica Mgmt. Co. v. Green,*
   2014 WL 3841227 (Cal. Ct. App. 2014) .............................................................. 16, 19, 25

*Berberena v. Coler,*
   753 F.2d 629 (7th Cir. 1985) ............................................................................................. 21

*Cakebread v. Berkeley Millwork & Furniture Co.,*
   2017 WL 1163855 (N.D. Cal. Mar. 29, 2017) .................................................................. 13

*Castillo v. Nationstar Mortgage LLC,*
   2017 WL 6513653 (N.D. Cal. Dec. 20, 2017) .................................................................. 13

*Corns v. Laborers Int'l Union of N. Am.,*
   62 F. Supp. 3d 1105 (N.D. Cal. 2014) ................................................................................ 5

*Covington v. District of Columbia,*
   57 F.3d 1101 (D.C. Circuit 1995) ..................................................................................... 25

*Daniel F. v. Blue Shield of Cal.,*
   305 F.R.D. 115 (N.D. Cal. 2014) ...................................................................................... 12

*Daubert v. Merill Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993) .......................................................................................................... 15

*Daubert v. Merill Dow Pharmaceuticals, Inc.,*
   43 F.3d 1311 (9th Cir. 1995) ............................................................................................. 15

*Davtian v. Jaguar Land Rover North America LLC,*
   2017 WL 870730 (C.D. Cal. Mar. 3, 2017) ....................................................................... 8

*De Amaral v. Goldsmith & Hull,*
   2014 WL 1309954 (N.D. Cal. April 1, 2014) ..................................................................... 8

*Democratic Party of Wash. State v. Reed,*
   388 F.3d 1281 (9th Cir. 2004) ..................................................................................... 12, 13

*Deocampo v. Potts,*
   2014 WL 788429 (E.D. Cal. Feb. 25, 2014) .................................................................... 13

*Doan v. Astrue,*
   2010 WL 234935 (S.D. Cal. Jan. 12, 2010) ..................................................................... 12

*Doppes v Bentley Motors, Inc.,*
   174 Cal. App. 4th 967 (2000) .............................................................................................. 5

*Dropbox, Inc. v. Thru Inc.,*
   2017 WL 914273 (N.D. Cal. Mar. 8, 2017) ..................................................................... 13

*Ferland v. Conrad Credit Corp.*,
    244 F.3d 1145 (9th Cir. 2001) ............................................................... 13

*Friend v. Kolodzieczak*,
    72 F.3d 1386 (9th Cir. 1995) ................................................................... 4

*Giovannoni v. Bidna & Keys, a Prof'l Law Corp.*,
    2006 WL 709016 (N.D. Cal. Mar. 20, 2006) ........................................... 8

*Gonzalez v. City of Maywood*,
    729 F.3d 1196 (9th Cir. 2013) ............................................................... 13

*Gutierrez v. Wells Fargo Bank, N.A.*,
    2015 WL 2438274 (N.D. Cal. May 21, 2015) ....................................... 24

*Henderson v. J.M. Smucker Co.*,
    2014 WL 2723876 (C.D. Cal. Feb. 28, 2014) ......................................... 6

*Hendricks v. Starkist Co.*,
    2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) ..................................... 24

*Hensley v. Eckerhart*,
    461 U.S. 42 (1983) .................................................................... 2, 3, 4, 5

*Hydros Bottle LLC v. Stephen Gould Corp.*,
    2017 WL 3453350 (N.D. Cal. Aug. 10, 2017) ....................................... 8

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................. 5, 6

*In re Imperial Credit Indus., Inc. Securities Litig.*,
    252 F. Supp. 2d 1005 (C.D. Cal. 2003) .............................................. 12

*In re Lewis*,
    97 F.3d 1182 (9th Cir. 1996) ............................................................... 12

*In re Olson*,
    884 F.2d 1415 (1989) ........................................................................... 20

*Klein v. City of Laguna Beach*,
    2016 WL 9774705 (C.D. Cal. Aug. 25, 2016) ..................................... 13

*Kumar v. Salov North America Corp.*,
    2017 WL 2902898 (N.D. Cal. July 7, 2017) ......................................... 24

*Langer v. 1600 E. Downtown Prop., LLC*,
    2015 WL 3649085 (C.D. Cal. June 9, 2015) ........................................... 8

*Lauderdale v. City of Long Beach*,
    2010 WL 11570514 (C.D. Cal. Jan. 11, 2010) ............................. *passim*

*Lilly v. Jamba Juice Co.*,
    2015 WL 2062858 (N.D. Cal. May 4, 2015) ...................................... 3, 5

*Lira v. Cate*,
    2010 WL 727979 (N.D. Cal. Feb. 26, 2010) ................................ *passim*

*Loop AI Labs, Inc. v. Gatti*,
    2016 WL 2640472 (N.D. Cal. May 9, 2016) ....................................... 22

*Lund v. Gifford*,
   2016 WL 7031517 (Cal. Ct. App. Dec. 2, 2016).................................................. 25

*Mahach-Watkins v. Depee*,
   2006 WL 3041099 (N.D. Cal. Oct. 24, 2006) ...................................................... 10

*McCutcheon v. Am.'s Servicing Co.*,
   560 F.3d 143 (3d Cir. 2009)................................................................................. 4

*McKenzie v. Kennickell*,
   645 F. Supp. 437 (D.D.C. 1986) ........................................................................ 21

*Mendez v. Radec Corp.*,
   818 F. Supp. 2d 667 (W.D.N.Y. 2011) .............................................................. 11

*Miller v. Vicorp Restaurants, Inc.*,
   2006 WL 212021 (N.D. Cal. Jan. 11, 2006) ...................................................... 13

*Montano v. Bonnie Brae Convalescent Hosp., Inc.*,
   686 F. App'x 479 (9th Cir. 2017)....................................................................... 13

*Moreno v. City of Sacremento*,
   534 F.3d 1106 (9th Cir. 2008) ...................................................................... *passim*

*Morgan v. District of Columbia*,
   824 F.2d 1049 (D.C. Cir. 1987).......................................................................... 4

*Murray v. Stuckey's Inc.*,
   153 F.R.D. 151 (N.D. Iowa 1993)...................................................................... 11

*NEI Contracting & Engineering v. Hanson Aggregates, Inc.*,
   2017 WL 2363163 (S.D. Cal. May 31, 2017) ..................................................... 6

*Phillips 66 Co. v. Grainer*,
   2015 WL 3797396 (E.D. Cal. June 18, 2015)..................................................... 22

*PQ Labs, Inc. v. Qi*,
   2015 WL 224970 (N.D. Cal. Jan. 16, 2015) ....................................................... 7

*Press v. Lucky Stores, Inc.*,
   34 Cal. 3d 311 (1983)...................................................................................... 4, 5

*Red v. Kraft Foods, Inc.*,
   2015 WL 12670201 (C.D. Cal. Apr. 29, 2015 ................................................... 6

*Redbean House Corp. v. Colonnade Wilshire Corp.*,
   2017 WL 3498918 (Cal. Ct. App. Aug. 16, 2017)............................................. 20

*Roe v. Saenz*,
   2000 WL 33128689 (E.D. Cal. Nov. 20, 2000) ................................................. 19

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ........................................................................... 4

*Ross v. Trex Co.*,
   2013 WL 12174133 (N.D. Cal. Dec. 16, 2013).................................................. 24

*Santiago v. Equable Ascent Fin.*,
   2013 WL 3498079 (N.D. Cal. July 12, 2013) .................................................... 22

*Schutza v. 2815 CDRS LLC,*
     2015 WL 1396629 (S.D. Cal. Mar. 25, 2015) ............................................................. 8

*U.S. ex rel. Longhi v. United States,*
     575 F.3d 458 (5th Cir. 2009) ................................................................................... 4

*Waite v. Clark Cty. Collection Serv.,*
     LLC, 606 F. App'x 864 (9th Cir. 2015) ................................................................... 23

*White v. Coblentz, Patch & Bass LLP Long Term Disability Ins. Plan,*
     2011 WL 5183854 (N.D. Cal. Oct. 31, 2011) .......................................................... 7

*Winterrowd v. Am. Gen. Annuity Ins. Co.,*
     556 F.3d 815 (9th Cir. 2009) ................................................................................. 22

**Rules**

Fed. R. Evid. 802 ............................................................................................................. 12

# I.    INTRODUCTION

Plaintiffs prevailed in almost all aspects of the case—including on a motion for summary judgment and a motion for class certification. On the eve of trial, Plaintiffs reached a settlement that forced Columbia to implement a practice change that Columbia refused to effect on its own. Thus, Plaintiffs achieved one of their primary goals in this litigation: a change in Columbia's false and misleading advertising practices. Although Plaintiffs did not prevail in their quest for monetary compensation to the class, Class Counsel carefully excised all time and expenses related to their unsuccessful claim for damages. Thus, the request is only for fees and costs associated with the work necessary to successfully obtain the "substantial benefits to the public [and] the class[.]" Columbia's Opposition to Plaintiffs' Request for Attorneys' Fees and Service Awards (hereafter "Def.") at 3.

Nowhere in its opposition does Columbia acknowledge or address these massive voluntary cuts to Class Counsel's request, which together with other cuts amount to a total reduction of approximately *37%*. Nor does Columbia identify any specific time entries relating to the damages claim that should be excluded. Instead, Columbia spills a lot of ink arguing that overhead expenses are not recoverable, that duplicative work should be reduced, that vague entries should be reduced, and that fees for time expended on motions that lost are not recoverable. None of these points are in dispute. Accordingly, Class Counsel exercised billing judgment to account for each of these foregoing factors. Rather than acknowledging these massive cuts that are consistent with cases from this Court and this Circuit, Columbia trotted out a repeatedly discredited "expert" who arbitrarily made massive cuts aimed at getting Columbia as close as possible to its predetermined nominal fee and cost number of $250,000—which appears to have been plucked out of thin air. This number amounts to only 11% of Plaintiffs' actual lodestar and is not based on a systematic analysis and rebuttal of Plaintiffs' careful fee petition. Columbia's results-driven approach fails to meet its burden of showing that Plaintiffs' already substantially reduced lodestar request is unreasonable.

Columbia's *post hac* attempts to justify its random massive cuts miss the mark in other respects as well. **First**, Columbia's effort to lop off 41% of the lodestar based on settlement discussions is based on the false factual premise that Plaintiffs had a settlement in hand over a year ago. The facts show that Columbia rejected Plaintiffs' last offer and that the ultimate relief Plaintiffs obtained was better than

what was being negotiated at that time. **Second**, Columbia's inappropriate comparison to its outside counsel's supposed billing history is improper because it lacks evidentiary foundation and because courts have repeatedly rejected such apples to oranges comparisons. **Third**, Columbia relies heavily on the inadmissible opinions of Andre Jardini, who was described by one court as having a "startling lack of understanding" of the subject matter he was opining on. Here, Jardini's opinions amount to nothing more than wild-eyed speculation that lack evidentiary basis. Like most of the other courts that have considered similar opinions by Jardini, the Court should strike or reject his baseless conclusions, which are either incomprehensible or unverifiable—and sometimes both. These inadmissible opinions include, but are not limited to, Jardini's (1) pontification about prevailing market rates, (2) improper legal opinions regarding, *inter alia*, the propriety of billing conference time and for out of state attorneys not admitted *pro hac vice*, (3) guestimates as to how much time should have been billed for certain tasks, and (4) the impact of settlement negotiations on the fees.

Rather than carefully examining the detailed billing records and contesting specific items to arrive at a reasonable number, Columbia hired an "auditor" to hack as much off the bills as possible. And when that number wasn't low enough, Columbia made even further arbitrary and unidentified cuts to arrive at a total fees and expense number of $250,000. In this regard Columbia abdicated its obligation to identify reasonable issues for the Court to allow the Court to arrive at a fair fee award. In a further effort to simplify this process, Class Counsel has identified several fees and expenses herein that it will no longer seek. In total, this reduced the fee request to $1,261,627.85. **This is approximately 63% of its total lodestar in this case.** And they have reduced their expense request by to $135,517.61—which is 65% of the amount they actually spent. Those amounts are more than reasonable in light of the results in this case and Class Counsel's meticulous efforts to exercise billing judgment.[1]

## II. COLUMBIA'S ARGUMENTS FOR UNSUBSTANTIATED AND DRAMATIC CUTS TO PLAINTIFFS' LODESTAR HAVE NO LEGAL BASIS

Columbia cites *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) for the proposition that "where the plaintiff achieve[s] only limited success, the district court should award only that amount of fees that is

---

[1] Columbia does not oppose Plaintiffs' request for service awards in the amount of $5,000 each (for a total of $10,000). Accordingly, the Court should not hesitate to award Plaintiffs for their efforts in this litigation.

reasonable in relation to the results obtained." Def. at 3. From this general statement, Columbia concludes that Plaintiffs should not be awarded a reasonable fee because they *only* achieved injunctive relief for the class. However, Columbia conspicuously omits the *Hensley* Court's clarification that, "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised," and that "[g]iven the interrelated nature of the facts and legal theories in this case, the District Court did not err in refusing to apportion the fee award mechanically on the basis of respondents' success or failure on particular issues." 461 U.S. at 438. Nor does Columbia acknowledge that the Supreme Court cited favorably to and quoted from two cases from district courts in California that awarded attorneys' fees in cases where only injunctive or declaratory relief was obtained.[2] Here, Plaintiffs have clearly achieved substantial relief on behalf of the class in the form of a wholesale change in Columbia's labeling practices in its California stores. Columbia's claims that Plaintiffs achieved only limited success are belied by its own admission that "Changing Columbia's price tags across ten stores in California on hundreds of items is no small task." *See* Def. at 11-12. Furthermore, state and federal courts in California have repeatedly found that the achievement of injunctive relief alone merits an award of substantial attorney fees. *See, e.g.*, *Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015) (granting 100% of the requested relief after denial of Rule 23(b)(3) certification and the parties entered into an injunction-only settlement); *Lilly v. ConAgra*, (C.D. Cal.) Case No. 12-cv-0225, Dkt No. 135 (reducing requested award by only approximately 2%, from $550,000.00 to $540,348.48 where plaintiff had agreed to the certification of an injunction-only class);

---

[2] First, the Supreme Court pointed to *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (ND Cal.1974), *aff'd,* 550 F.2d 464 (9th Cir. 1977), *rev'd on other grounds*, 436 U.S. 547 (1978), a case in which, despite the fact that the plaintiffs obtained only a declaratory judgment, and their motion for preliminary injunction was denied, the District Court awarded attorney's fees for time spent pursuing this motion because the plaintiffs "substantially advanced their clients' interests" by obtaining "a significant concession from defendants as a result of their motion." *Hensley*, 461 U.S. at 431 (quoting *Stanford Daily*, 64 F.R.D., at 684). The *Hensley* Court also cited *Davis v. Cty. of Los Angeles*, 1974 WL 180, at *3 (C.D. Cal. June 5, 1974) to illustrate that a judgment that resulted in an affirmative change in policy on the part of Defendants was a significant victory meriting an award of attorney's fees. The Supreme Court quoted the following language from the *Davis* case: "It also is not legally relevant that plaintiffs' counsel expended a certain limited amount of time pursuing certain issues of fact and law that ultimately did not become litigated issues in the case or upon which plaintiffs ultimately did not prevail. Since plaintiffs prevailed on the merits and achieved excellent results for the represented class, plaintiffs' counsel are entitled to an award of fees for all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley*, 461 U.S. at 431 (quoting *Davis*, 1974 WL 180, at *3).

*Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 323-24 (1983) (finding that obtaining injunctive relief to enforce the rights of free expression constituted a "significant" benefit supporting award of attorney fees). *See also Friend v. Kolodzieczak*, 72 F.3d 1386, 1390 (9th Cir. 1995) (finding that attorney's fees were warranted because the injunction achieved by Plaintiff "was more than merely 'technical'; it 'materially alter[ed] the legal relationship between the parties' in a manner that was meaningful and substantial").

*Hensley* further makes clear that where a plaintiff's claims involve a common core of facts or are based on related legal theories, "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." 461 U.S. at 435. Several Circuits have echoed this sentiment in evaluating requests for attorney's fees. *See, e.g.*, *Morgan v. District of Columbia*, 824 F.2d 1049, 1066 (D.C. Cir. 1987) ("[f]ees for time spent on claims that ultimately were unsuccessful should be excluded only when the claims are 'distinctly different' in all respects, both legal and factual, from plaintiff's successful claims."); *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 465-476 (5th Cir. 2009) (finding that the full fee award was merited where claims arose from the same actors, and illegal intent to defraud the government as the claims the plaintiff did not prevail on); *McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143, 151 (3d Cir. 2009); *Rosario v. Livaditis*, 963 F.2d 1013, 1020 (7th Cir. 1992).

Here, Plaintiffs' claims for monetary damages and injunctive relief both clearly stem from the same conduct on the part of Columbia, namely its deceptive and misleading pricing. Therefore, as in the line of cases discussed above, most of Class Counsel's time was devoted generally to the litigation as a whole, rather than to any individual claim for relief. To the extent that any of counsel's time was spent developing only its damages claim, Class Counsel has painstakingly identified and excised these hours from its request, despite the fact that courts have awarded the full amount of requested fees in similar circumstances. Not only did Class Counsel carefully review their time records to remove "[a]ny time entry referring to seeking monetary relief for the class, or referring to damages experts" Class Counsel also made an *additional* 10% reduction as "an additional precaution to account for time that may have been spent litigating issues related solely to monetary relief that were not specifically identified in Counsel's records." 11/22/17 Zavareei Decl. ¶¶ 43-45. Cognizant that counsel should only be rewarded

for benefits achieved for the class, Class Counsel also removed, for example, "[t]ime spent investigating and proposing forms and methods of notice because notice was never provided to the class," and "time spent drafting and filing Plaintiffs' partial motion for summary judgment."[3] *Id.*

Based on these, and other efforts to eliminate time that did not directly inure to the benefit of the class, Class Counsel seeks a lodestar with an approximate 37% reduction. Thus, although Columbia cites this Court's decision in *Corns v. Laborers Int'l Union of N. Am.*, 62 F. Supp. 3d 1105, 1113 (N.D. Cal. 2014) to support the proposition that Plaintiffs' lodestar must be reduced by 89%, that case actually supports Plaintiffs' request for a reduced lodestar. In *Corns*, the court denied the plaintiff's motion for summary judgment finding that certain union dues were lawfully implemented. *Id.* at 1107. On appeal, the Ninth Circuit reversed in part, but not because of any argument made by the plaintiff. Rather, "[t]he Ninth Circuit's reversal of summary judgment was on grounds never argued by Plaintiff." *Id.* at 1114. Taking that into account, the Court determined that a 25% reduction in lodestar was appropriate, and explained, "a 25 percent reduction—significant while still recognizing Plaintiff prevailed, in part—seems to the Court to be the fairest way of calculating the fee award." *Id.* (emphasis added). Here, Plaintiffs' success was the result of their own effort, and Plaintiffs' proposed 37% reduction goes well-beyond 25%. *See id.*; *see also*, *Doppes v Bentley Motors, Inc.*, 174 Cal. App. 4th 967, 971-2, 998-9 (2000) (applying only a 20% reduction where plaintiff lost at trial but defendant's discovery abuse warranted default as sanction); *Lilly*, 2015 WL 2062858, at *6 (awarding non-contested fee with 35% reduction for injunctive relief settlement).

Even if the Court were to find that Plaintiffs achieved "only limited success," as Columbia claims, the proper analysis would focus on awarding "that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. No case cited by Columbia supports the conclusion that an 89% reduction of Plaintiffs' lodestar to a randomly selected $200,000 is reasonable just because Plaintiffs achieved injunctive relief. *See Press*, 34 Cal. 3d at 322 ("The starting point of every fee award …

---

[3] For this reason, Columbia's citations to *Envtl. Prot. Info. Ctr. v. California Dep't of Forestry & Fire Prot.*, 190 Cal. App. 4th 217 (2010), *Conservatorship of Whitley*, 50 Cal. 4th 1206 (2010), *Colgan v. Leatherman Tool Group*, Inc., 135 Cal. App. 4th 663 (2006), and *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) are unavailing because those cases stand for the unremarkable proposition that fee awards should be restricted to efforts that benefited the public, or the class. Moreover, the court's concerns about collusion and a sweetheart deal in *In re Bluetooth* are clearly inapplicable here.

must be a calculation of the attorney's services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts.") (quotation omitted). This is because "while a trial court has discretion to determine the proper amount of an award, the resulting fee must still bear some reasonable relationship to the lodestar figure."[4] *Id.* at 324.

Columbia also claims that "courts regularly reduce fees **substantially**" when a party fails to obtain monetary relief but does attain injunctive relief. Def. at 3 (emphasis in original). But the cases that Columbia cites to do not establish such a rule—or even a pattern. Instead, those cases are entirely different from the case at bar because the defendants voluntarily changed their practices despite significant losses by plaintiffs. *See Red v. Kraft Foods, Inc.*, 2015 WL 12670201 (C.D. Cal. Apr. 29, 2015), *aff'd* 680 F. App'x 597 (9th Cir. 2017) (reducing fee where plaintiffs failed three times to certify a class, and where the defendant changed its practices "before the case was filed"); *Henderson v. J.M. Smucker Co.,* No. 2:10-cv-04524, 2014 WL 2723876 (C.D. Cal. Feb. 28, 2014) (reducing lodestar sought under catalyst theory following dismissal and defendant's voluntary change of one of several allegedly misleading practices where other litigation was pending relating to the other allegedly misleading practices—with no discussion of supposed failure to obtain damages); *NEI Contracting & Engineering v. Hanson Aggregates, Inc.*, 2017 WL 2363163 (S.D. Cal. May 31, 2017) (finding change in practice was not primary relief sought and denying fees for numerous other reasons, including that the plaintiff continued to litigate the case through trial after the practice change). The only other case Columbia cites for this supposed rule "regularly" applied by courts is *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011). But, again, this decision says nothing about the failure to attain damages as opposed to injunctive relief. The fee award was reversed because, *inter alia*, the district court failed to determine what the lodestar was in the case or the relationship between the fee and the results obtained. *Id.*

---

[4] Columbia's reference to five other "similar" comparative pricing cases is not a relevant barometer by which to judge the attorneys' fees and cost request. The number of hours spent litigating those cases has no bearing on the time required for Plaintiffs to win a contested class certification motion, to defeat summary judgment, and to prepare for trial in this case. *See* Zavareei Reply Decl. Ex. 24 (chart regarding stages of pricing cases). In any event, those cases support this fee petition because, in those cases, plaintiffs sought between $927,500 and $2.125 million in attorney's fees even though those cases were settled within three to nine months. Def. at 7. In *Chester v. The TJX Companies, Inc.*, the one case that superficially mirrors the litigation path here, the plaintiff is seeking $2,125,000 in fees.

For these reasons, Columbia's broadside attacks on the fee request and demands for unsubstantiated and dramatic cuts must fail. There is no rule that permits such wholesale reductions. Instead, Columbia was required to make specific objections to the detailed records. *See, e.g., PQ Labs, Inc. v. Qi*, 2015 WL 224970, at *2 (N.D. Cal. Jan. 16, 2015) (stating that that "Defendants bear a burden to point to the specific items challenged, with sufficient argument and citations to the evidence" and declining to reduce fee where defendant did not "object to specific portions of" time entries but instead asked the court to "exercise its general discretion and reduce the award by a percentage of its choosing"); *White v. Coblentz, Patch & Bass LLP Long Term Disability Ins. Plan*, 2011 WL 5183854, at *4 (N.D. Cal. Oct. 31, 2011) ("[T]he burden is on Defendant to identify the specific time entries to which it objects."). As discussed below, Columbia has failed to meet this burden. To the extent it has even tried, it did so based on an unreliable audit by a lawyer who has no greater expertise than any of the litigants or the Court—and whose work cannot be verified, deciphered, or replicated.

## III. THE PARTIES' JANUARY 2017 SETTLEMENT DISCUSSIONS ARE IRRELEVANT AND SHOULD NOT BE CONSIDERED

The parties' January 2017 settlement discussions are irrelevant and should not be considered. Columbia falsely claims that Plaintiffs ended the parties' brief, informal settlement discussions—which by Columbia's own admission did not result in a formal contractual offer—by "abruptly" withdrawing from negotiations. In fact, as the complete email thread between the parties make clear, *Columbia*, not Plaintiffs, ended the discussion by summarily rejecting Plaintiffs' counter-offer and stating that it intended to move forward with motion practice. *See* Sagafi Decl. ¶ 6, Ex. A. In January 2017, counsel for Columbia made an informal settlement proposal. Plaintiffs made a counter-proposal. Sagafi Decl. ¶ 6, Ex. A.  In response, counsel for Columbia bluntly informed Plaintiffs that the proposed terms would likely be "***unacceptable***" to Columbia and that, if a settlement could not be reached that day, a later deal would not be attractive to Columbia. Sagafi Decl. ¶ 6, Ex. A (emphasis added). Plaintiffs replied that they were looking forward to Columbia's response on the substantive terms and were "prepared to advance the conversation quickly." Sagafi Decl. ¶ 6, Ex. A.

Approximately half an hour later, Columbia decided to ditch the negotiations and move forward with briefing on the motions. Counsel wrote: "I just spoke to Columbia and their reaction was

consistent with what I expected. **We'll move forward with the motions** and get back to you in due course with a response here." Sagafi Decl. ¶ 6, Ex. A (emphasis added). Shortly afterwards, Plaintiffs withdrew their offer that had already been rejected by Columbia. Sagafi Decl. ¶ 6, Ex. A. Columbia responded: "Don't worry, **we didn't consider it a contractual 'offer' that could be 'accepted' until withdrawn.** It's settlement—anyone can change their mind about anything until there are signatures on a Settlement Agreement." *See* Sagafi Decl. ¶ 6, Ex. A. Accordingly, Columbia's claim that the parties could have settled the case in January 2017 is factually incorrect.

      Moreover, Columbia's assertion that the Court should reduce Plaintiffs' fee request because of the settlement discussions, and that it would be "error" not to consider prior settlement discussions, misconstrues the applicable law. The Ninth Circuit has made it clear that a district court has no obligation to consider settlement negotiations in determining a fee award and may "give those amounts as much or as little weight as it sees fit." *A.D. v. Cal. Highway Patrol*, 712. F.3d 446, 460-61 (9th Cir. 2013). On remand, the district court in the *Cal. Highway Patrol* case "exercise[d] its discretion and conclude[d] that amounts discussed in the parties' settlement negotiations do not bear on an evaluation of plaintiffs' success in this case." *A.D. v. Cal. Highway Patrol*, 2013 WL 6199577, at *4 (N.D. Cal. Nov. 27, 2013).[5] Here, where Columbia itself decided to prioritize motion practice over settlement, the parties' truncated settlement discussions do not bear on an evaluation of plaintiffs' success.[6]

---

[5] *See also Hydros Bottle LLC v. Stephen Gould Corp.*, 2017 WL 3453350, at *5 (N.D. Cal. Aug. 10, 2017) (declining to reduce a fee award based on settlement negotiations and finding that defendant "should bear the cost of the delayed resolution of the case" where earlier settlement offer was not made pursuant to Rule 68); *De Amaral v. Goldsmith & Hull*, No. 12-cv-03580-WHO, 2014 WL 1309954, at *6 (N.D. Cal. April 1, 2014) (declining to reduce a fee award despite settlement negotiations because the defendants had chosen to "litigate this matter aggressively" and had made no Rule 68 offer).

[6] Columbia's reliance on the other cases analyzing prior settlement discussions is misplaced. In *Schutza v. 2815 CDRS LLC*, 2015 WL 1396629, at *1 (S.D. Cal. Mar. 25, 2015) and *Langer v. 1600 E. Downtown Prop., LLC*, 2015 WL 3649085, at *2 (C.D. Cal. June 9, 2015), the defendants made multiple settlement offers (including Rule 68 offers) that the plaintiffs either rejected or ignored outright. Here, Plaintiffs attempted to continue discussions, and Columbia declined to make any formal offer at all, much less a formal Rule 68 offer. In *Giovannoni v. Bidna & Keys, a Prof'l Law Corp.*, 2006 WL 709016, at *1 (N.D. Cal. Mar. 20, 2006), the plaintiff unnecessarily prolonged settlement negotiations. Plaintiffs here, in contrast, acted in good faith. And in *Davtian v. Jaguar Land Rover North America LLC*, 2017 WL 870730 (C.D. Cal. Mar. 3, 2017), although the court did reduce the fee award because the recovery was minimal, the court also noted that the defendant "bears some responsibility for protracting this matter," and therefore "an award significantly higher than that suggested by Defendants is appropriate." *Davtian*, 2017 WL 870730, at *3. Similarly, here, because Columbia chose to end the discussions and move forward with briefing the motions, Columbia also bears responsibility for protracting the matter.

To the extent the Court does consider the settlement discussions, however, Plaintiffs draw the Court's attention to the substance of the final settlement agreement, which includes terms far more favorable to Plaintiffs and the Class than then terms proposed by Columbia in January 2017. For example, in January 2017, Columbia proposed that it would agree to use the term "Comparable Item" on SMU price tags for two seasons. Sagafi Decl. ¶ 6, Ex. A. In the final settlement, Columbia agreed to change its price tags for a period of at least *three years*. Sagafi Decl. ¶ 8, Ex. B. As another example, in January 2017, one of Plaintiffs' apparently "unacceptable" proposals was a provision requiring Columbia to refrain from using terms like "Compare At," which unacceptably suggest a comparison to a former price. Sagafi Decl. ¶ 6, Ex. A. *See Evans v. DSW Inc.*, Case No. 16-cv-03791-JGB (C.D. Cal.), Order on Motion to Dismiss, Dkt. 38 (reasoning that "it is reasonable to infer that most customers would interpret the 'Compare At' price to mean the price charged for the same item—either formerly or at a different store—rather than an estimate price of what a retailer could charge for a hypothetical 'comparable' shoe."). The final settlement provides that Columbia may not use any term other than Comparable Value, Comp. Value, Comparable Item, Comp. Item, Comparable Style, or Comp. Style, which unlike "Compare At" do not suggest a former price, unless such term is accompanied by explanatory in-store signage, that specifies the price comparison may be to a similar, not identical style— an arrangement Columbia rejected in January 2017. Sagafi Decl. ¶ 8, Ex. B. Finally, in January 2017, Columbia was not willing to make any changes until at least two seasons after the settlement was approved. Sagafi Decl. ¶ 6, Ex. A. In the final settlement, Columbia agreed to place a legible sign under the plexiglass at each cashwrap in its California outlet stores "[u]ntil Columbia's compliance with the above terms is completed." Sagafi Decl. ¶ 8, Ex. B. Thus, the terms of the final settlement demonstrate that the litigation that occurred after January 2017 was beneficial to the Class.

In short, the Court has the discretion to disregard the settlement negotiations and should do so because (1) Columbia was not ready to settle and withdrew from the negotiations, and (2) the ultimate settlement reached was better than the offer that was on the table during the inchoate negotiations.

### A. Plaintiffs Conferred in Good Faith Regarding Settlement and Fees

Columbia's allegation that Plaintiffs failed to meet and confer about their motion for an award of

fees and costs is nonsensical. The Parties spent a full day mediating with retired Judge Infante, partook

in several follow up mediation calls with Judge Infante, and even exchanged emails and telephone calls

with opposing counsel regarding the issue of reasonable attorneys' fees and costs. Despite Plaintiffs'

best efforts, the parties clearly reached impasse, and, as a result, the parties affirmatively agreed to settle

their dispute in a litigated fee and costs motion.[7] *See* Settlement Agreement Section VII, Sagafi Decl. ¶ 8,

Ex. B; Zavareei Reply Decl. ¶ 38. Plaintiffs also made additional efforts to confer with Columbia

regarding fees and costs following the filing of their motion. Zavareei Reply Decl. ¶ 39. Those

negotiations have gone nowhere because Columbia does not want to pay Class Counsel a reasonable fee.

## IV. COLUMBIA'S OUTSIDE COUNSEL'S HOURS SHOULD NOT BE CONSIDERED

Plaintiffs object to the consideration of any arguments based on the hours supposedly billed by

Columbia's law firm, Sheppard Mullin, because Columbia failed to produce billing records that can

support those arguments. Columbia has not substantiated those claims with evidence, and therefore

those claims must be stricken or, at minimum, disregarded. Instead of producing Sheppard Mullin's

billing records in support of its arguments, Columbia instead relies entirely on (1) the representations set

forth in the Declaration of Craig P. Cardon,[8] a partner at Sheppard Mullin, and (2) the opinion of Andre

Jardini—which is based, not on Sheppard Mullin's actual billing records, but figures provided by Cardon

to Jardini. *See* Zavareei Reply Decl. ¶ 5, Ex. 1. Neither the Cardon Declaration nor the Jardini

declaration substantiate Columbia's claim that, because Sheppard Mullin billed fewer hours, Class

Counsel's billed hours are unreasonable. Columbia should not be permitted to rely on this inadequate

testimony as a basis for its arguments.

As a preliminary matter, paragraph 7 of the Cardon Declaration is hearsay, and for this reason

alone, it should be stricken. *See* Fed. R. Evid. 802. *See also Mahach-Watkins v. Depee*, No. C 05-1143 SI,

2006 WL 3041099, at *5 (N.D. Cal. Oct. 24, 2006) (striking a declaration that contained inadmissible

---

[7] Defendant's reference to a Rule 68 offer is inadmissible and irrelevant since Defendant's are not moving for costs. *See* Rule 68(b) ("Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs"). Further, Defendant's Rule 68 was moot because it was sent before the parties executed a settlement agreement dictating the method for resolving Plaintiffs' fee award.

[8] The Cardon Declaration states that, at Cardon's direction, the accounting department at Sheppard Mullin generated "a report listing all hours billed to this matter from inception through October 31, 2017." Declaration of P. Craig Cardon ¶ 7, Dkt. No. 130-1 ("Cardon Decl."). Based on his review of the resulting report, Cardon claims that Sheppard Mullin billed certain amounts of hours.

hearsay and described confidential records that were not provided). Without providing the underlying records to Plaintiffs and the Court, Columbia may not offer the substance of the accounting department's report, which Cardon admits was prepared for purposes of this litigation, as evidence of Sheppard Mullin's time billed in this case. Moreover, Cardon's deficient declaration, based on untestable assertions, proves nothing about the hours that Shepard Mullin worked, and does not support the argument that Sheppard Mullin's time can be used as a yardstick for the reasonableness of Class Counsel's hours. Instead, it merely serves to highlight the following questions, which, unanswered, render any "comparison" meaningless: When Cardon claims that "Sheppard Mullin billed" a certain number of hours, does that figure include hours that were worked but not billed?[9] How much time did in-house counsel spend on the case?[10] Who are the "non-attorneys," and how much work was performed by a team of paralegals that larger defense firms benefit from? How much time was spent by individual attorneys on individual tasks?[11] What is meant by the statement that "Columbia billed" a certain number of hours, and how does that statement differ from the claim that "Sheppard Mullin billed" a certain number of hours? How many hours were billed to specific tasks? What hourly rates did Sheppard Mullin charge? Did multiple attorneys attend mediations and depositions? How did Sheppard Mullin treat overhead? Did Sheppard Mullin engage in block billing? Did Sheppard Mullin bill in hourly increments? Half hour increments? Fifteen-minute increments? These are only some of the unanswered questions that infect the reliability of the Cardon Declaration and defeat its usefulness as evidence.

Worse, not only have Class Counsel and the Court not had the opportunity to review Sheppard Mullin's records, *Columbia's own expert has not seen them. See* Zavareei Reply Decl. ¶ 6, Ex. 1. Thus, Jardini's

---

[9] Class Counsel, Hassan Zavareei, who worked for years at Gibson, Dunn & Crutcher LLP testified in his declaration that it is his experience (both at Gibson, Dunn and at his current law firm) that bills often exclude hours that are excluded from the bill (*i.e.*, "written off") by the billing partner. There is no way to tell if that occurred here. *See* Zavareei Reply Decl. ¶¶ 7-10.

[10] *See, e.g., Murray v. Stuckey's Inc.*, 153 F.R.D. 151, 153-54 (N.D. Iowa 1993) ("It is unrealistic to base any comparison of hours expended only on the hours of defendants' local counsel . . . when some significant share of the burden of investigating, researching, and prosecuting the matter has fallen on out-of-state or in house counsel."). In addition, Sheppard Mullin farmed out some of its work to experts such as Crossfield Associates, a firm that Sheppard Mullin paid $160,000 to perform a survey in support of Columbia's losing arguments on materiality and deception. *See* Zavareei Reply Decl. ¶¶ 11-12, Exs. 2-3.

[11] *See, e.g., Mendez v. Radec Corp.*, 818 F. Supp. 2d 667, 669 (W.D.N.Y. 2011) (noting that where defendants focused on "specific hours and entries in plaintiffs' counsel's billing records" but provided only their total hours and rates, it was "difficult to determine whether this is a fair comparison").

references to Sheppard Mullin's hours do not satisfy Federal Rule of Evidence 702(b) because they are not based on sufficient facts or data. For that reason alone, all references in the Jardini declaration to the total time Shepard Mullin spent on the litigation, and the opinions he purports to render based on Shepard Mullin's time, must be stricken. *See, e.g.*, *Doan v. Astrue*, 2010 WL 234935, at *4 (S.D. Cal. Jan. 12, 2010) (excluding expert testimony where the expert had not "viewed" the source of the figures or "verified the data"); *In re Imperial Credit Indus., Inc. Securities Litig.*, 252 F. Supp. 2d 1005, 1012-13 (C.D. Cal. 2003). What's more, Jardini's uninformed opinion does not, and cannot, take into account any of the factors identified above that could impact a comparison between Sheppard Mullin's hours and Class Counsel's—rendering his "comparison" meaningless. Because the inadequate Cardon Declaration does not provide necessary information about Sheppard Mullin's billing practices in connection with this case, and Jardini did not review the underlying records, paragraphs 42-43 and 78-79 of the Jardini declaration are unreliable and must be stricken.

Similarly, since Sheppard Mullin has refused to provide the underlying billing records and billing agreement, Columbia's arguments concerning Sheppard Mullin's hours are unsupported by the requisite admissible evidence and should be ignored. *See In re Lewis*, 97 F.3d 1182, 1187 (9th Cir. 1996) (rejecting "conclusory arguments unsupported by factual statements or evidence"); *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 122-23 (N.D. Cal. 2014) (same).

Apart from the fact that the comparison between Shepard Mullin's hours and Class Counsel's is based on evidence that Columbia refuses to share with Plaintiffs or the Court, the claim that Class Counsel's hours are unreasonable because Sheppard Mullin billed fewer hours fails for another reason: Plaintiffs and Columbia were not similarly situated with respect to the litigation and, consequently, Sheppard Mullin's hours do not provide a useful metric for assessing the reasonableness of Plaintiffs' hours. Thus, Plaintiffs request that, if the Court does consider Shepard Mullin's hours, it bear in mind that "numerous factors can cause the prevailing party to have spent more time than the losing party." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004). Indeed, the Ninth Circuit has recognized that a comparison of the hours spent by opposing parties may not be an appropriate metric for assessing the reasonableness of hours billed because they are not similarly situated:

> [I]n small cases as well as large ones, opposing parties do not always have the same responsibilities under the applicable rules, nor are they necessarily similarly situated with respect to their access to necessary facts, the need to do original legal research to make out their case, and so on. Comparison of the hours spent in particular tasks by the attorney seeking fees and by the attorney for the opposing party, therefore, does not necessarily indicate whether the hours expended by the party seeking fees were excessive.

*Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001). Thus, "[w]hile defendants frequently compare the number of hours that their attorneys spent on a task to the number of hours that plaintiffs' attorneys spent on a task, these comparisons do not support the conclusion that plaintiffs' counsel billed an excessive number of hours." *Deocampo v. Potts*, 2014 WL 788429, at *2-4 (E.D. Cal. Feb. 25, 2014). Thus, the Court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Cakebread v. Berkeley Millwork & Furniture Co.*, 2017 WL 1163855, at *6 (N.D. Cal. Mar. 29, 2017) (quoting *Moreno v. City of Sacremento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).[12]

In this case, Plaintiffs bore the burden of proving the substantive elements of their case and the existence of a class; Class Counsel was responsible for investigating and substantiating the factual allegations, including developing novel legal theories. And, most importantly, Plaintiffs prevailed, delivering exceptional, diligent representation that inured to the benefit of the Class. Performing high level litigation and delivering quality results takes time, and Class Counsel should not be penalized for spending more hours on this case than the losing party. Columbia was simply not similarly situated with respect to its responsibilities over the litigation. Thus, Plaintiffs respectfully request that the Court decline to consider Columbia's billing records in evaluating the reasonableness of Class Counsel's fee. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202-03 (9th Cir. 2013) (noting that the district court has "the discretion not to rely on" opposing counsel's billing records).[13]

---

[12] *See also Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 686 F. App'x 479 (9th Cir. 2017) (affirming a fee award "notwithstanding the fact that [defendant's] counsel billed fewer hours"); *Castillo v. Nationstar Mortgage LLC*, 2017 WL 6513653, at *10 (N.D. Cal. Dec. 20, 2017); *Dropbox, Inc. v. Thru Inc.*, 2017 WL 914273, at *5 (N.D. Cal. Mar. 8, 2017); *Miller v. Vicorp Restaurants, Inc.*, 2006 WL 212021, at *3 (N.D. Cal. Jan. 11, 2006) (declining to find excessive billing for a trial where "because [plaintiff] bore the burden of proving his case at trial, it was not unreasonable to prepare carefully").

[13] While, in certain cases, courts have utilized a comparison of billing records as a "guide in evaluating the appropriateness of the time claimed," *see Reed*, 388 F.3d at 1287, it is not possible in this case for the Court to make a "comparison of the time each parties' counsel devoted to a specific task" because Columbia has not produced its records. *See Klein v. City of Laguna Beach*, 2016 WL 9774705, at *4 (C.D. Cal. Aug. 25, 2016).

## V. COLUMBIA AND ITS SO-CALLED EXPERT ANDRE JARDINI FAIL TO SHOW THAT CLASS COUNSEL'S HOURS ARE UNREASONABLE

### A. Jardini's Subjective, Unsupported Opinions Should Be Rejected

To support its argument that Class Counsel is entitled to only a fraction of their lodestar, Columbia relies on the declaration of Andre E. Jardini. But Jardini's opinions should be stricken and disregarded because he provides no authority or factual support for them, and no explanation of his methods. Specifically, Plaintiffs object that paragraphs 41-44, and 52-57 of Jardini's declaration as well as his "Outline of Services Performed" appendix do not satisfy Federal Rule of Evidence 702(b), (c), and (d) because they are not the product of reliable principles and methods, are not based on sufficient facts or data, and are internally inconsistent. The Court should strike those paragraphs and his conclusions in paragraphs 78-80, which are based on the same objectionable methods.

Although Jardini opines that Class Counsel's hours should be dramatically and randomly cut because Counsel purportedly spent too much time accomplishing complex projects like moving for class certification and opposing summary judgment, Jardini does not provide a single citation, or any explanation for his selection of the number of hours he "believe(s)" it should have taken Plaintiffs to accomplish these projects that were complex and potentially dispositive. Jardini ¶¶ 52-57; *see also Lira v. Cate*, 2010 WL 727979, at *7 (N.D. Cal. Feb. 26, 2010) (agreeing with plaintiff that Jardini and defendants had not met their burden of showing that counsel's time should be reduced and rejecting Jardini's claim that counsel spent too much time on briefing projects that were "major in scope and potentially dispositive"). Jardini also purports to provide a total number of hours that Class Counsel spent preparing for certain motions, and hearings, but nowhere in his declaration does Jardini provide any accounting of which hours he included in his totaling of time spent on a given task. As a result, neither Class Counsel nor the Court can review his work to determine if it's accurate, to understand what time he includes, or to replicate his work. Jardini's failure to support his opinions with any explanation or appropriate validation renders his testimony unreliable and inadmissible. Thus, the Court should disregard paragraphs 41-44 and 52-57, and the Outline of Services Performed because they do not meet the standard of Rule 702 because they are anecdotal, subjective impressions rather than based

on sufficient facts or data or any discernable methodology.[14] *Daubert v. Merill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993) (establishing the rule that, to be admissible, an expert's "inference or assertion must be derived by the scientific method" and stating that "Proposed testimony must be supported by appropriate validation."); *Daubert v. Merill Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("Experts must explain precisely how they went about reaching their conclusions."). Instead, the Court should follow the Ninth Circuit's instruction in *Moreno* and defer to Class Counsel's professional judgment as to how much time was required to spend on the case. *See Moreno*, 534 F.3d at 1112.

Because Jardini routinely fails to provide support for his conclusions about the time that should have been spent on litigation tasks, and because he then also fails to identify the discrete billing entries used to reach his cumulative totals, courts regularly reject Jardini's recommendations to reduce the cumulative hours totals he generates. Judge Illston's decision in *Lira v. Cate* is instructive. In that case Jardini criticized the prevailing party's hours and proposed significant reductions:

> For each project, Mr. Jardini generally asserts that plaintiff's attorneys should have been more efficient, and he proposes a reduction. For example, regarding plaintiff's supplemental appellate brief, for which two attorneys and two paralegals billed 198.1 hours, Mr. Jardini states, "This 51-page brief was a request to remand to district court and vacate the judgment. I believe a reasonable amount of time to prepare this document would be 160 hours, which results in a recommended reduction of 38.1 hours." Jardini ¶ 49.

2010 WL 727979 at *7 (quoting from Jardini declaration). Plaintiffs in *Lira* responded that "Mr. Jardini [did] not explain how or why he came up with reduced hours for any of the briefing projects, or what factors or considerations went into his evaluation, and that he ha[d] engaged in subjective, impressionistic second-guessing." *Id.* Judge Illston agreed that defendant and Jardini had not met their burden to show that the challenged hours were unreasonable, especially given that "[a]ll of the challenged briefing projects were major in scope, and a number of them were potentially dispositive." *Id.* Here too, especially since Plaintiffs were successful, Jardini's impressionistic second-guessing should be disregarded.

Similarly, in *Lauderdale v. City of Long Beach*, 2010 WL 11570514 (C.D. Cal. Jan. 11, 2010), Chief

---

[14] Even where, as here, the gatekeeper and the factfinder are the same, and there is less need for an early admissibility ruling, the Court should still "'disregard [an opinion] if it turns out not to meet the standard of reliability established by Rule 702.'" *Lauderdale*, 2010 WL 11570514, at n. 2 (quoting *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006)). Following this rule, at least one other court has specifically noted that she did not consider Jardini's testimony that did not meet the standard of Rule 702. *Id.*

Judge Collins, in the Central District of California, rejected Jardini's conclusion that the cumulative hours counsel spent were unreasonable. *Id.* at n.5. In rejecting Jardini's opinion, Judge Collins emphasized that "'the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.'" *Lauderdale*, 2010 WL 11570514, at n.5 (quoting *Moreno*, 534 F.3d at 1112). Judge Collins further explained that "Jardini provide[d] no explanation of how he arrived at the 46.4 hours [cumulative total he claimed that counsel spent drafting the settlement agreement], so the Court cannot tell whether that number accurately reflects only hours spent drafting, or included hours spent on other tasks related to the settlement agreement, such as research, conferences, consultation with clients, etc." *Lauderdale*, 2010 WL 11570514, at *10. Judge Collins identified a problem that infects Jardini's report here. Namely, "he does not identify the discrete billing entries he adds together to reach his cumulative totals. Neither Plaintiffs nor the Court has any way to verify the accuracy of each cumulative entry without that information." *Id.* at n.5. Judge Collins also noted that Jardini's declaration included several inaccurate calculations. *Id.* at *7 ("[T]he Court has reviewed the actual billing records and they do not appear to correlate to Mr. Jardini's entries."); *id.* at n.7.

Like the California district courts, the California Court of Appeals has also rejected Jardini's opinions. In *Anchor Pacifica Mgmt. Co. v. Green*, 2014 WL 3841227, at *3 (Cal. Ct. App. 2014), the California Court of Appeals reversed a lower court's decision that followed the hour reductions that Jardini proposed. The Court of Appeals explained that, Jardini's substantial deductions from the hours reported for the preparation of appellate briefs suggested a "startling lack of understanding of the importance and difficulty of appellate litigation." *Id.* The Court of Appeals also rejected Jardini's and the lower court's reduction of the time counsel spent preparing for his oral argument. *Id.* at n.15. Because the lower court followed Jardini's recommendation to make random wholesale cuts to counsel's hours, in addition to reversing, the Court of Appeals concluded that "[i]n the interests of justice," all further proceedings should be heard before a *different* trial judge. *Id.* at 11.

Here, Jardini has failed to mend his ways. Instead, he still neglects to provide any explanation of how he arrived at the number of hours he believes should have been spent on various projects, still fails

to identify the billing entries he added together to reach cumulative totals, and still makes errors in his declaration as detailed below. This Court should reject Jardini's guesses about how much time Plaintiffs' tasks should have taken. Additionally, the Court should reject Jardini for the additional reason that his calculations of the time Class Counsel spent on various tasks are misleading, internally inconsistent, and impossible to replicate.

For example, Jardini contends that "plaintiffs billed 356 hours to jointly prepare their [48-page] opposition to the motion for summary judgment and the class certification reply brief," and that instead "the hours to prepare this brief should have been no more than 60 hours." Jardini ¶ 54. Since Jardini fails to provide an accounting of the hours he included from Class Counsel's time records to come up with the 356 hours, it cannot be determined whether that reflects only hours spent drafting, or whether it included hours spent on other tasks related to class certification and summary judgment. *See Lauderdale*, 2010 WL 11570514, at *7. To make matters worse, Jardini's declaration and "Outline of Services Performed" appendix, are inconsistent as to what is included in the 356 hours. His declaration states that 356 hours was spent on a single brief, the opposition to a motion for summary judgment, and a reply in support of class certification, which he refers to as a "48-page document." Jardini ¶ 54. But in his Outline of Services Performed he describes those same 356 hours as including "Opposition to MSJ and reply in support of class certification brief, opposition to exclude expert reports of Compeau and Goldaper," or a total of three briefs numbering around a total of 75—not 48—pages. Jardini pp. 47 of 114. Thus, Jardini's 356 hours includes one task in one place, and a variety of different tasks in another. This is particularly problematic because he concludes in his declaration that those 356 hours should be reduced by 266.2 because that 48-page "brief" should have taken only 60 hours, but then in his "Outline of Services Performed" appendix he appears to subtract all but 60 hours from the time spent preparing the 48-page brief *as well as all time spent preparing each opposition to Columbia's motions to exclude Plaintiffs' experts.* Jardini pp. 47 of 114; *see also Lauderdale*, 2010 WL 11570514, at fn. 9 (observing that portions of Jardini's expert declaration were "unintelligible"). Put another way, Jardini appears to have deleted all the time it took to draft oppositions to Columbia's motions to exclude Compeau and Goldaper, because of

a conclusion he drew about the length of time it should have taken to prepare a separate 48-page brief.[15]

Jardini's opinion about the time spent preparing the "Trial Plan" is similarly inconsistent with his "Outline of Services Performed" appendix. While in his declaration he states that Class Counsel billed 55.7 hours preparing one document—the "Trial Plan"—in his Outline of Services Performed he includes "Trial plan and letter brief requesting prefiling conference; joint CMC statement" and "legal research jury v. bench claims." *Compare* Jardini ¶ 55 *with* Jardini pp. 48 of 114. Thus, the 55.7 hours he assigns to the Trial Plan, which he describes as one "all procedural document" in his declaration, is actually three documents, and crucial research related to Plaintiffs' strategy for seeking a bench or jury trial in his appendix. Jardini then repeats the same mistake he made above. Based on his subjective conclusion that the Trial Plan "document" should have taken eight hours to prepare, in his appendix Jardini appears to have deleted all the time it took to *draft a prefiling letter, and the Joint CMC statement*. Again, Jardini's opinions are so unreliable, they should be stricken, or, at least, ignored.

In yet another example, Jardini asserts that Class Counsel should be "allow(ed) 56 hours to prepare the attorney fee motion and attendant declaration." Jardini ¶ 56. Again, Jardini's statement that 56 hours should be allotted to Class Counsel for the fee motion is unadorned by citation or reference. In fact, ███████████████████████████████████████████████████ ███████████ would support a finding that at least double Jardini's "allowe(d) 56 hours" would be reasonable. Zavareei Reply Decl. ¶¶ 13-14, Exs. 4-5. Class Counsel spent a significant amount of time reviewing their records for the same reasons Jardini did—to eliminate overhead, duplicative billing, and the like. Moreover, Jardini's so-called 21% reduction of the 70.6 hours of the cumulative time Jardini estimates Class Counsel spent on the fee petition, ignores that Plaintiffs only seek their lodestar for time

---

[15] Additionally, although it was impossible for Class Counsel to reconstruct or review Jardini's work in calculating the 356 hours, Class Counsel attempted to calculate the time spent preparing the "48-page document," and identified no more than 200 hours in Class Counsel's combined billing records researching and drafting that particular document. Zavareei Reply Decl. ¶¶ 14-15, Ex. 5 (spreadsheet accounting of entries for 48-page document); Ex. 6 (highlighting the time entries for same). In *Lira,* Judge Illston rejected Jardini's opinion and accepted a similar number of hours for two briefs of similar length and complexity. *See Lira*, 2010 WL 727979, at *7 (accepting 198.1 hours spent on a 51-page request to remand and vacate judgment, and 192.6 hours to prepare a brief filed in opposition to summary judgment). Notably, in *Lira*, Jardini recommended much more than 60 hours for briefs of similar length and complexity as those at issue here. *Id.* (stating that a he "believe(d)" that a 51-page brief requesting remand and to vacate judgment should have taken 160 hours); *id.* (stating that he "believe(d)" that an opposition to summary judgment should have taken 100 hours).

they spent until November 20, 2017—two days before they filed the Motion. Zavareei Reply Decl. ¶ 18. Class Counsel also does not seek any of the time spent preparing this reply, although Counsel could have. *See Lira*, 2010 WL 727979, at *10.

Jardini further claims that "plaintiffs billed an additional 120 hours to prepare for the hearing and oral argument" following the parties' briefing of class certification and summary judgment. Although Jardini failed to identify the billing entries he included in this category, Class Counsel scrutinized their time records to attempt to understand how Jardini had reached "120 hours," and determined that Jardini's estimate was extremely misleading. Based on Class Counsel's independent review and calculation, it appears Jardini must have included attorney time preparing for the hearing on *both* Plaintiffs' motion for class certification and Columbia's motion for summary judgment (72.8 hours, or 36.4 hours each), as well as time spent by a separate attorney preparing for hearings on Columbia's motion to exclude Compeau's report, Columbia's motion to exclude Goldaper's report, and Columbia's motion to strike Poret's rebuttal report (36.2 hours), and time spent (including time spent by staff) preparing demonstratives for the hearing (21.3 hours). Zavareei Reply Decl. ¶ 16; Ex. 7 (chart showing hours); Ex. 8 (highlighting time entries). As such, Jardini's statement that he "believe(s) a more reasonable amount of time to prepare for the hearing on these issues is six hours of attorney time," is over-simplified and ignores that *five* motions were briefed prior to the April 25, 2017 oral argument. *See Anchor Pacifica Mgmt. Co.*, 2014 WL 3841227, at *3 (finding that a reduction of counsel's hours spent preparing for an argument to eight per Jardini's suggestion was an abuse of discretion); *Roe v. Saenz*, 2000 WL 33128689, at *2 (E.D. Cal. Nov. 20, 2000) (same). Again, Jardini's groundless, and arbitrary reduction of Plaintiffs' hours is so lacking in methodology and principle that it should be stricken, or, at least, rejected. Instead, the Court should defer to Class Counsel's professional judgment as to how much time was required to spend on the case, as well as to Counsel's reasonable exercise of billing judgment in seeking a reduced fee. *See Moreno*, 534 F.3d at 1112.

### B.    Jardini's Legal Opinions Must Be Stricken

As he has done in other cases, Jardini includes improper legal opinion in his expert declaration to support most—if not all—of his opinions, including his beliefs about "the standard of

reasonableness," hourly rates, duplication of effort, conferencing time, time spent by out-of-state attorneys, overhead, settlement negotiations, and vague billing. *See* Jardini ¶¶ 17-20, 35, 37, 40, 45, 48-50, 62-64, 67-68, 71-74. The Court should strike Jardini's improper legal opinion and argument. *See e.g.*, *Lira*, 2010 WL 727979, at *4 (striking Jardini's legal opinions); *Redbean House Corp. v. Colonnade Wilshire Corp.*, 2017 WL 3498918, at *2, *6 (Cal. Ct. App. Aug. 16, 2017) (unpublished) (same).

## C. The Court Must Defer to Class Counsel's Staffing Judgments

Like Jardini usually does in his rote expert declarations, Jardini criticizes Class Counsel's staffing of this case, arguing that Class Counsel duplicated labor, and spent too much time conferencing with one another. These criticisms, however, have been routinely rejected. For example, in *Lira*, Judge Illston rejected opinions about conferencing among counsel because he had "not shown that any of the work performed was unnecessary," and because "considering the complexity of this case it seem[ed] reasonable that plaintiff's counsel would need to confer with each other, review and coordinate pleadings and discovery, and attend important meetings with Mr. Lira and hearings in this case." *Lira*, 2010 WL 727979, at *4. Similarly, in *Lauderdale*, Judge Collins rejected Jardini's opinions about the staffing of mediations and depositions because "having multiple attorneys attend depositions, meetings and settlement conferences allowed counsel to contribute creative solutions, reduced the need for inter-office communications after meetings, and ameliorated disagreements over what actually went on at meetings." *Lauderdale*, 2010 WL 11570514, at *7. In fact, even Jardini has opined in another case that conferences among co-counsel are not unreasonable but beneficial to a case. *Id.* at n. 10.[16] But whatever Columbia and Jardini believe "should have been the proper staffing of the case, 'the district court may not set the fee based on speculation as to how other firms would have staffed the case.'" *Id.* (quoting *Moreno*, 534 F. 2d 1106). Class Counsel's staffing of this case resulted in success on class certification, summary judgment, and ultimately to obtaining a settlement benefit for the class. Thus, the Court must decline to follow Jardini's staffing recommendations, and instead should defer to Class Counsel's

---

[16] As he does on many issues in his declaration, Jardini includes improper legal opinion in his declaration—citing *In re Olson*, 884 F.2d 1415 (1989)—as purported support for the proposition that "conferencing at the level of 5%" would be more than adequate. *Olson*, 884 F.2d 1415 (1989). That case, however, involved twenty-one attorneys in meetings, and a deduction to ten percent. It did not include a deduction for "conferencing at the level of 5%" like Jardini falsely implies.

professional judgment—after all, it resulted in a victory for the class. *Moreno*, 534 F. 2d 1106

In addition to inappropriately infringing on Class Counsel's ability to make their own judgments about staffing this case, Jardini's opinions about duplicative work are also unpersuasive. Jardini asserts that Class Counsel's time should be reduced because it was a "duplication of effort" for two attorneys to attend the deposition of Goldaper, and for three attorneys to attend the mediation. Jardini ¶ 47. But Jardini fails to acknowledge that Class Counsel already exercised billing judgment to exclude time spent by associates and partners at depositions, hearings, and the mediation. *See* 11/22/2017 Zavareei Decl., Dkt. 129-2. Class Counsel's decision to include Mr. Quinones' time at the Goldaper deposition, and to include Mr. Zavareei's, Ms. Sagafi's, and Mr. Striesfeld's time at the mediation was based on reasoned billing judgment. Zavareei Reply Decl. ¶¶ 24-25; *see also Lauderdale*, 2010 WL 11570514, at *7 (finding one junior and one senior attorney at a deposition acceptable despite Jardini's opinion). Importantly, the Court should "hesitate[] to second-guess" Class Counsel's choice to send senior partners, Mr. Zavareei and Ms. Sagafi from TZ, and Mr. Streisfeld from KOFWG, to the mediation because a mediation is at "the very crossroads of the resolution of this case." *Lauderdale*, 2010 WL 11570514, at *8. If those three lead lawyers had not attended, an agreement may not have been reached.

For similar reasons, contrary to Jardini's contention, the time spent conferring and strategizing among the members of co-counsel's firm was not unreasonable or duplicative. It was reasonable and beneficial to the case for Class Counsel to confer with each other, review and coordinate pleadings and discovery, and attend important meetings. *Lira*, 2010 WL 727979, at *4. Having multiple attorneys contribute in conferences allowed counsel to contribute creative solutions and avoid duplication of work in the preparation of pleadings and other filings. *See id*; *Lauderdale*, 2010 WL 11570514, at *7. Further, "[t]here is nothing inherently wrong with conferencing with co-counsel in a case; in fact, conferences between attorneys to discuss strategy and prepare for oral argument are an essential part of effective litigation." *Lauderdale*, 2010 WL 11570514, at *9; *McKenzie v. Kennickell,* 645 F. Supp. 437, 450 (D.D.C. 1986) ("Such supervision is necessary to avoid wasteful or disorganized efforts by inexperienced lawyers keeping fee claims within reasonable bounds."); *see also Berberena v. Coler*, 753 F.2d 629, 632–33 (7th Cir. 1985) (finding compensable the hours attorneys "spent mostly in consultation, negotiation, and on the

telephone"). Thus, like other courts that have considered Jardini's opinions about conferencing, this court should decline to apply Jardini's arbitrary percentage reduction to Plaintiffs' conferencing time. *Lauderdale*, 2010 WL 11570514, at *7; *Lira*, 2010 WL 727979, at *4.[17]

### D. Time Spent by Out of State Attorneys Is Recoverable

Jardini's assertion that the time spent by seven attorneys should be reduced because they were not admitted *pro hac vice*, or were not admitted in time, should be rejected. *See* Jardini ¶ 40. The Ninth Circuit is clear that a plaintiff may request fees for the time spent by an out-of-state attorney who is not generally or specially admitted to practice in either of two circumstances: (1) "if the attorney at issue would have certainly been permitted to appear *pro hac vice* as a matter of course had he or she applied"; or (2) if the Attorney's "conduct did not rise to the level of 'appearing' before the district court." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 822-23 (9th Cir. 2009); *Santiago v. Equable Ascent Fin.*, 2013 WL 3498079, at *4 (N.D. Cal. July 12, 2013) (same). Here, both factors are satisfied.

First, two were admitted—Mr. Edelsberg and Ms. Gold. *See Loop AI Labs, Inc. v. Gatti*, 2016 WL 2640472, at *2 (N.D. Cal. May 9, 2016) (approving all hours for attorney's that performed a portion of their work on the case *even before* approval of their *pro hac vice* motions). The remaining five attorneys would have been permitted to appear *pro hac vice* had they applied. In that regard, Mr. Streisfeld and Ms. Haac were recently admitted *pro hac* in the Northern District of California in other cases. Zavareei Reply Decl. ¶ 36, Ex. 22; *see generally* Streisfeld Decl. The remaining attorneys, Avi Kaufman, Katherine Aizpuru and Krya Taylor, are all attorneys in good standing with their respective state bars, are familiar with the Northern District of California Local Rules, have been approved *pro hac vice* across the nation, and have no history of disciplinary action. *See Phillips 66 Co. v. Grainer*, 2015 WL 3797396, at *4-*5 (E.D. Cal. June 18, 2015) (reviewing attorney declarations to confirm they would have been admitted *pro hac vice* and approving their regular billable rate); *see also generally* Kaufman Decl.; Aizpuru Decl.; Taylor Decl.

---

[17] Like his opinions about conferencing and the attendance of attorneys at certain events, Jardini's commentary about Class Counsel's purported "failure to utilize lower level billing personnel, such as competent paralegals" should be rejected. *Moreno*, 534 F. 2d 1106; *Lauderdale*, 2010 WL 11570514, at *6.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████ *See supra* § V.A.

Additionally, like the attorneys in *Wintterowd*, the five attorneys identified by Jardini provided only ancillary support to Class Counsel. Specifically, none of the five attorneys engaged with the Plaintiffs, signed pleadings, appeared at hearings, attended depositions, or otherwise performed work that would rise to the level of "appearing" before the court. *See Waite v. Clark Cty. Collection Serv., LLC*, 606 F. App'x 864, 866 (9th Cir. 2015). As such, Plaintiffs are entitled to recover fees for the work performed by Mr. Streisfeld, Mr. Kaufman, Ms. Haac, Ms. Aizpuru, and Ms. Taylor at their regular rates.

### E. Class Counsel Has Made Further Reductions to Their Fee Request

Although Jardini disparages Plaintiffs for including "overhead" entries, nowhere does Jardini, or Columbia, acknowledge that Class Counsel already used their billing judgment to remove countless overhead hours. *Compare* Jardini ¶¶ 65-69 *with* 11/22/17 Zavareei Decl. ¶¶ 43-44, Ex. B. While many of the entries that Jardini identified as "overhead" are not fairly characterized as such, in an effort to be conservative, **Class Counsel does not oppose Jardini's suggestion to reduce their fee request by an additional $30,949.72 for overhead**. *See* Zavareei Reply Decl. ¶ 22. Also as part of Class Counsel's effort to be cautious in applying billing judgment, **Class Counsel does not oppose Jardini's reduction of $25,960.90 for purported errors in billing**. *Id.* at ¶ 23. Class Counsel does note, however, that Columbia's and Jardini's emphasis on Ms. Sagafi's "mistake" in billing more than 24 hours in a day is much ado about nothing. *See* Sagafi Decl. ¶¶ 9-14.

Finally, although Class Counsel already removed entries they believed were vague, Class Counsel will withdraw some, but not all, of entries that Jardini identifies as vague. Zavareei Reply Decl. ¶ 21, Ex. 12 (highlighting contested entries). Class Counsel will not agree to the removal of all of Ms. Sagafi's entries identified by Jardini because "they sufficiently describe the tasks performed to enable the Court's review of the fee petition, particularly when reviewed in context of other contemporaneous time entries." *See Lira*, 2010 WL 727979, at *9 (rejecting Jardini's contentions). For example, it is sufficiently clear from the time records that the deposition preparation and research that Ms. Sagafi worked on in September 2016 related to the depositions of Bobby Bui and Melissa Olson that took place late in September. *Id.* It is also sufficiently clear that Ms. Sagafi read the transcripts from those depositions in early October, and began to prepare an index of documents to be filed in support of Plaintiffs' motion

for class certification afterward. Accordingly, Class Counsel **does not dispute a reduction of $3,444.80** of the total $12,263.90 reduction **for vagueness** recommended by Jardini. In sum, in a continued effort to reasonably apply billing judgment, **Class Counsel makes its own total $60,355.42 reduction**.

## VI.    COLUMBIA FAILS TO MEET ITS BURDEN TO REBUT THE REASONABLENESS OF CLASS COUNSEL'S RATES

Columbia argues that Class Counsel failed to present evidence to support the use of the Adjusted Laffey Matrix for Class Counsel's hourly rates. Contrary to Columbia's contention, as discussed in Plaintiffs' opening brief, Class Counsel cites multiple decisions within this district that have approved rates similar to, and even higher than, Class Counsel's rates.[18] *See* Zavareei Reply Decl. ¶¶ 26-34, Ex. 13 (chart reflecting similar rates approved in this district). *See also Kumar v. Salov North America Corp.*, 2017 WL 2902898 (N.D. Cal. July 7, 2017) (approving Class Counsel's proposed rates in a consumer class action); *Hendricks v. Starkist Co.*, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) (finding that rates up to $850 were reasonable in this district in a consumer class action); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding that rates up to $975 were reasonable in a consumer class action); *Ross v. Trex Co.*, 2013 WL 12174133, at *1 (N.D. Cal. Dec. 16, 2013) (finding that rates up to $800 were "reasonable" in a consumer class action). Since Plaintiffs, the prevailing party, provide evidence of the prevailing market rates, Columbia has the burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of Plaintiffs' rates. *See e.g.*, *Lauderdale*, 2010 WL 11570514, at *5. Columbia failed to meet its burden.

To support the proposition that Class Counsel's rates are unreasonable, Columbia turns to Jardini who suggests that the USAO's Attorney's Fee Matrix should apply "based on [his] familiarity with Oakland area rates." Jardini ¶¶ 37-38. His declaration fails to include *any* documentation supporting his "beliefs" pertaining to Oakland market rates. Again, Jardini's opinion does not satisfy Rule 702(b), (c) and (d), and should be stricken. *See Lauderdale*, 2010 WL 11570514 at *5 (rejecting Jardini's proposed

---

[18] Tellingly, Columbia does not share Sheppard Mullin's billing rates. This is likely because Sheppard Mullin's rates are higher than Class Counsel's. For example, in 2012—six years ago—Sheppard Mullin stated in a court filing that its hourly rates ranged from $510-$895 for partners, $285-655 for associates, and $110-345 for paraprofessionals. Zavareei Reply Decl. ¶ 35, Ex. 21. Sheppard Mullin's 2012 rates thus approximate the rates that Class Counsel is seeking in 2018.

blended rate because it lacked support).[19] Indeed, Jardini's supposed expertise on this subject has been rejected repeatedly. *See, e.g., Lund v. Gifford*, 2016 WL 7031517, at *15, *17 (Cal. Ct. App. Dec. 2, 2016) (affirming trial court's rejection of Jardini's opinion about hourly rates because they were too low when compared against the trial court's "own experience and its own informal surveys of Los Angeles firms."); *Anchor*, 2014 WL 3841227 at *10 (rejecting Jardini's opinion about rates). Jardini's opinions in this case warrant the same result. In short, neither Columbia nor Jardini meet Columbia's burden to refute the reasonableness of Plaintiffs' rates.

## VII.    COSTS

Columbia argues that Class Counsel should only be awarded $50,000 in expenses. This number does not even match the numbers its expert put forward, who argued that the expenses should be cut in half because they lacked documentary support and then cut again by an arbitrary 41% based on the settlement discussion argument. Jardini at pp. 17. In response to this argument, Class Counsel has submitted documentation for each of their requested expenses. Class Counsel then reduced its request to account for a few errors in its original submission. Zavareei Reply Decl. ¶ 42, Exs. 25-26; Edelsberg Decl. Exs. 1-2. The total fee request—with all but a handful of items supported by documentation[20]— now amounts to $135,517.61—which is only 65% of the expenses actually incurred by Class Counsel.

## VIII.    CONCLUSION

After Plaintiffs' additional reductions, Plaintiffs' respectfully request that this Court award the following: ***$1,261,627.85*** in attorney's fees; ***$135,517.61*** in expenses; and ***$5,000*** to each Plaintiff.

---

[19] Other than his vague "familiarity with Oakland rates," the only other support Jardini provides for his opinion about Class Counsel's hourly rates is a citation to *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Circuit 1995)—or an improper legal argument. And *Covington* is not helpful because it relates only to the District of Columbia. *See also* USAO Attorney's Fee Matrix, Explanatory Note 1.

[20] In order to avoid a tempest in a teapot, for the few items that Class Counsel could not find documentation for, Class Counsel does not contest the 50% reduction recommended by Jardini.

Dated: January 12, 2018

Respectfully submitted,

By: ___/s/ Hassan A. Zavareei___
        Hassan A. Zavareei

**TYCKO & ZAVAREEI LLP**
ANNICK M. PERSINGER, Cal. Bar No. 272996
apersinger@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone (510) 254-6808
Facsimile (510) 210-0571

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, Cal. Bar No. 181547
hzavareei@tzlegal.com
ANDREA R. GOLD, D.C. Bar. No. 502607,
admitted *pro hac vice*
agold@tzlegal.com
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

**KOPELOWITZ OSTROW P.A.**
JEFFREY M. OSTROW, Florida Bar No. 121452
ostrow@kolawyers.com
SCOTT A. EDELSBERG, Florida Bar No. 0100537
edelsberg@kolawyers.com
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
(pro hac vice)