**TYCKO & ZAVAREEI LLP**
ANNICK M. PERSINGER, California Bar No. 272996
apersinger@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone (510) 254-6808
Facsimile (510) 210-0571

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, Cal. Bar No. 181547
hzavareei@tzlegal.com
ANDREA R. GOLD, D.C. Bar. No. 502607,
admitted *pro hac vice*
agold@tzlegal.com
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950


*Attorneys for Plaintiffs*
*Additional Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNE and NICOLAS STATHAKOS, on behalf of themselves and all others similarly situated, | Case No. 4:15-cv-04543-YGR |
| PLAINTIFFS, | **[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR SETTLEMENT APPROVAL** |
| vs. | `*as modified by the Court*` |
| COLUMBIA SPORTSWEAR COMPANY, COLUMBIA SPORTSWEAR USA CORPORATION, | Hon. Yvonne Gonzalez Rogers |
| DEFENDANTS. | Hearing Date: November 14, 2017 <br> Time: 2:00 p.m. <br> Courtroom: 1, 4th Floor, Oakland Courthouse |

# I.  INTRODUCTION

Plaintiffs Jeanne Stathakos and Nicolas Stathakos bring this Federal Rule of Civil Procedure 23(b)(2) class action against defendants Columbia Sportswear Company and Columbia Sportswear USA Corporation (collectively, "Columbia") for alleged use of deceptive and misleading labeling and marketing of merchandise in its company-owned Columbia outlet stores. Plaintiffs bring five causes of action: three under each prong of the Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL") for (i) unlawful, (ii) unfair, and (iii) fraudulent business practices; the fourth for violation of the False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*, (the "FAL"); and the fifth for violation of the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

Currently before the Court is Plaintiffs' Unopposed Motion for Approval of a Class Action Settlement.  (Dkt. No. 127.)  Having carefully reviewed the Settlement Agreement ("Agreement"),[1] and all papers, pleadings, records, and prior proceedings to date in this action, the Court will grant Plaintiffs' Unopposed Motion for Settlement Approval.  The Settlement set forth in the Parties' Agreement appears fair, reasonable, and adequate.  The Parties' Agreement was reached as a result of extensive arm's length negotiations between the Parties with the assistance of a neutral mediator.  Additionally, before entering into the Agreement, this action was on the eve of trial.  Thus, Plaintiffs and their counsel had sufficient information to evaluate the strengths and weaknesses of the case and to conduct informed settlement discussions.

# II.  BACKGROUND

On October 2, 2015, Plaintiffs Jeanne and Nicolas Stathakos commenced a proposed class action against Defendants.  (Dkt. No. 1.)  Plaintiffs asserted claims on behalf of themselves and a proposed California Class of purchasers who had purchased a Columbia Outlet Product with a price tag bearing a "Former Price."  Plaintiffs alleged that Columbia deceptively advertised a "Former Price" on Columbia Products that were sold exclusively at Columbia Outlet stores ("Outlet SMU Builds").

---

[1] The Agreement is attached hereto as Exhibit 1.  The capitalized terms used herein are defined in and have the same meaning as used in the Agreement unless otherwise stated.

On March 29, 2016, Columbia filed a motion to dismiss the operative Third Amended Complaint. (Dkt. No. 38.) On April 12, 2016, Plaintiffs opposed. (Dkt. No. 39.) On May 2, 2016, the Court denied Columbia's motion in its entirety. (Dkt. No. 41.) On May 16, 2016, Columbia answered Plaintiffs' TAC, denying liability. (Dkt. No. 43.)

On November 18, 2016, Plaintiffs filed a motion for class certification. (Dkt. Nos. 59, 61.) In support of that motion, Plaintiffs submitted expert reports from Professor Larry D. Compeau, an expert on the effects of reference pricing on consumer retail behavior, from Ms. Gabriele Goldaper, who had developed expertise in the fashion industry over a period of forty-five years, and from Arthur Olsen, an expert in data analysis, data development, and database support.

After deposing each of Plaintiffs' experts, on January 31, 2017, Columbia opposed Plaintiffs' motion, moved for summary judgment, and moved to exclude the opinions of Ms. Goldaper and Dr. Compeau. (Dkt. Nos. 75-77.) In support of their opposition to class certification, and their motion for summary judgment, Columbia submitted an expert report from Dr. Carol Scott in which she discussed a consumer survey that she had performed to evaluate the effect of reference prices.

Before filing their reply in support of certification, and opposition to summary judgment, Plaintiffs deposed Dr. Scott, and retained Hal Poret, a rebuttal expert to evaluate Dr. Scott's survey. On March 13, 2017, Plaintiffs opposed summary judgment, opposed Columbia's motion to exclude their experts, and submitted a reply in support of class certification. (Dkt. Nos. 86-88.)

After hearing argument from the Parties on Plaintiffs' motion for class certification, and Columbia's motion for summary judgment, the Court certified the following Rule 23(b)(2) class for injunctive relief:

> All consumers who have purchased an Outlet SMU Build at a Columbia Outlet store in the State of California since July 1, 2014 through the conclusion of this action.

(Dkt. Nos. 101, 104.) The Court appointed the law firms of Tycko & Zavareei LLP, and Kopelowitz Ostrow Ferguson Weiselberg Gilbert as Class Counsel. The Court appointed Plaintiffs as Class Representatives. The Court, however, denied Plaintiffs' request to certify a Rule 23(b)(3) class for monetary relief. In the same order, the Court also denied in part Columbia's motion for summary

judgment, but granted it with respect to Plaintiffs' claims for damages, and the products Plaintiffs purchased after they filed the initial complaint. Finally, the Court denied Columbia's motion to exclude Ms. Goldaper's expert declaration, and granted in part and denied in part Columbia's motion to exclude Dr. Compeau's expert report.

While the parties began preparation for trial, they also agreed to private mediation with United States Magistrate Judge Edward Infante. Finally, on September 22, 2017, the Parties executed a term sheet and submitted a joint stipulation to stay the action. (Dkt. No. 125.)

### III.    SETTLEMENT AGREEMENT

The injunctive relief element of the Settlement is comprehensive. The terms of the Parties' Agreement require that Columbia modify its sales practices to change the manner and method of how it presents pricing on the price tags of Outlet SMU Builds. (Agreement at § III.) The injunction is designed to ensure that consumers understand Columbia's reference prices by describing what Columbia means by those reference prices. Specifically, Columbia agreed to stop using its current price tag format, and, to the extent it elects to utilize comparison price tactics in the future, to either (1) use six terms approved by Plaintiffs or (2) supplement any term it chooses with in-store signage explaining what Columbia means by whatever term it opts to use. (*Id.* at § III.B.1.)[2] Further, as an additional layer of protection for consumers, while Columbia is in the process of complying with the stipulated injunction it will place legible notices at the point of sale, which state the following: "The higher price on our price tags refers to either the price the same Columbia product was offered at by Columbia in its own stores, its own online properties, or at third party retailers, or the price at which a similar but not identical product was offered in any of those channels." (*Id.* at § III.C-D.)

The terms of the Agreement only release claims for injunctive relief or other similar equitable relief on behalf of the class. (Agreement at § V.) It does not release any claims on behalf of the class members for monetary damages. (*Id.* at § V.B ("Releasing Parties specifically preserve

---

[2] The six agreed upon reference price terms are Comparable Value, Comp. Value, Comparable Item, Comp. Item, Comparable Style, or Comp. Style. (Agreement at § III.B.1(a)). These terms clearly inform customers that the advertised higher price is from a comparable item, not the identical item.

and do not release their monetary claims.")). Plaintiffs, on the other hand, are releasing both their claims for injunctive relief and any claim for individual damages. (*See id.* § V.A.) The proposed recovery to the class is in all other respects identical to the recovery to the individual Plaintiffs.

## IV. THE CLASS

This Court takes note of its prior orders in which this Court certified a class of all consumers who have purchased an Outlet SMU Build at a Columbia Outlet store in the State of California since July 1, 2014 through the conclusion of this action. (Dkt. Nos. 101, 104.) In doing so, this Court considered the allegations, information, arguments, and authorities provided by the Parties and found as follows: that the requirements of numerosity, commonality, typicality, and adequacy had been established for a California Rule 23(b)(2) class; that the California class was ascertainable; and that questions of law and fact common to all Class Members predominated over questions affecting only individual members. The Court also appointed the law firms of Tycko & Zavareei LLP, and Kopelowitz Ostrow Ferguson Weiselberg Gilbert as Class Counsel. The Court appointed Plaintiffs as Class Representatives.

## V. NOTICE IS NOT REQUIRED

Unlike a Rule 23(b)(3) class where notice is mandatory, Rule 23(c)(2) states that, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2). Because of this, "[c]ourts typically require less notice in Rule 23(b)(2) actions, as their outcomes do not truly bind class members" and there is no option for class members to opt out. *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 1248027, *8-9 (N.D. Cal. Mar. 18, 2015) (holding that because the settlement class would not have the right to opt out from the injunctive settlement and the settlement did not release the monetary claims of class members, class notice was not necessary); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.").

In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required. *See, e.g., Penland v. Warren Cty. Jail*, 797

F.2d 332, 334 (6th Cir. 1986) ("[T]his court has specifically held that notice to class members is not required in all F.R.C.P. 23(b)(2) class actions . . . .") (internal quotation marks omitted); *DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013) ("[T]he district courts within these circuits that have directly considered the issue have applied the requirement more flexibly in situations where individual notice to class members is not required, such as suits for equitable relief.") (internal quotation marks and citations omitted); *Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 214 CM, 2012 WL 2505644, *12 (S.D.N.Y. June 27, 2012) ("Because this injunctive settlement specifically preserves and does not release the class members' monetary claims, notice to the class members is not required"); *Green v. Am. Express Co.,* 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001) (no notice is required under several circumstances, such as "when the settlement provides for only injunctive relief, and therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of the class"); *Linquist v. Bowen*, 633 F. Supp. 846, 862 (W.D. Mo. 1986) ("When a class is certified pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, notice to the class members is not required.") (internal citations omitted); *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 572 (S.D. Ohio 1983) ("This Court has certified this action as a class action under Rule 23(b)(2), and, as such, notice to class members is not required under Rule 23(c)(2).").

Here, the terms of the Agreement provide for injunctive relief only and further expressly preserve the rights of the class to bring claims for monetary relief. (Agreement at §§ III (Settlement of Injunctive Class), V (Release of Claims)). Further, even if notice was sent, class members would not have the right to opt out. *See Lilly*, 2015 WL 1248027, at *9. Accordingly, the Court concludes that notice to the Rule 23(b)(2) class is not required.

Although the Court determines that notice to class members is not necessary, the Class Action Fairness Act ("CAFA") requires that notice be given to state and federal authorities. 28 U.S.C. § 1715. The CAFA provides that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant . . . shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement" and specified supporting documentation. *Id.* § 1715(b). Defendants served

CAFA notice on October 13, 2017.  Because Defendants complied with the statutory notice requirements under the CAFA, their obligations for adequate notice have been met.

## VI.    THE FINAL APPROVAL STANDARD

In the class action context, district courts must evaluate whether a proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon*, 150 F.3d at 1027.  The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement.  *Id.* at 1026 (citation omitted).  Each of the settlement approval factors applicable to this case weighs in favor of approval.

### A.    The Injunctive Relief Provided to Class Members

The negotiated injunction is fair, adequate, and reasonable.  Plaintiffs alleged that Columbia deceptively advertised illusory "former prices" on the Outlet SMU Builds and that it is impossible for consumers to identify the Outlet SMU Products, and therefore, impossible to determine if and when Columbia is truthfully advertising former prices at its Columbia Outlet stores.  The parties' injunctive relief settlement "stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking [monetary] legal recourse." *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-WQH (BGH), 2014 WL 888665, at *4 (S.D. Cal. Mar. 5, 2014).  Additionally, to ensure the class will receive benefits of the stipulated injunction quickly, while Columbia is in the process of complying with the stipulated injunction, it will place legible notices at the point of sale, which state the following:  "The higher price on our price tags refers to either the price the same Columbia product was offered at by Columbia in its own stores, its

own online properties, or at third party retailers, or the price at which a similar but not identical product was offered in any of those channels." (Agreement at § III.D.) Accordingly, this factor weighs in favor of granting final approval. *See Goldkorn v. Cty. of San Bernardino*, No. EDCV 06-707-VAP (OPx), 2012 WL 476279, at *6-7 (C.D. Cal. Feb. 13, 2012) (approving settlement providing solely injunctive relief, attorneys' fees, costs, and damages to named plaintiffs); *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, No. 08-1977-MHM, 2010 WL 3715138, at *4–6 (D. Ariz. Aug. 31, 2010) (same); *Kim v. Space Pencil, Inc.*, No. C. 11-03796 LB, 2012 WL 5948951, at *10 (N.D. Cal. Nov. 28, 2012) (same).

### B. Strength of Plaintiffs' Case

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Generally, "fact-intensive inquiries and developing case law present significant risks to Plaintiffs' claims and potential recovery." *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. C-07-1841 (EMC), 2011 WL 3352460, at *5 (N.D. Cal. Aug. 2, 2011).

Defendants' liability in this case would hinge on a factual determination of whether reasonable consumers were likely to be deceived by Defendants' pricing. Plaintiffs acknowledge the significant risk of non-recovery in this case, as any time that liability hinges on reasonableness, a favorable verdict cannot be certain. Because of the uncertainty of the recovery or injunctive relief after trial, this factor weighs in favor of approval. *Lilly*, 2015 WL 2062858, at *3.

### C. Risk of Continued Litigation

The risks, expense, complexity, and likely duration of litigation also weigh in favor of approving the settlement. *Lilly*, 2015 WL 2062858, at *3 (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)). These risks of continued litigation must be "balanced against the certainty and immediacy of recovery from the Settlement." *Kim*, 2012 WL 5948951, at *5 (internal quotation marks and citations omitted). "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of

relief in the future, after protracted and expensive litigation." *Id.* (internal quotation marks and citation omitted).

This factor supports final approval because, without a settlement, Plaintiffs would face further litigation and trial that would not be certain to result in injunctive relief. Because this settlement will result in changing the challenged pricing representations, continued litigation could not result in any greater injunctive relief to the class and would only deprive the class of immediate relief. *Lilly*, 2015 WL 2062858, at *3-4.

### D. Extent of Discovery and Stage of the Proceedings

Here, Plaintiffs conducted an extensive amount of formal discovery prior to reaching the settlement agreement. This case has already gone through a contested class certification and motion for summary judgment. The Court finds that the extent of discovery completed and the state of the proceedings weigh in favor of final approval.

### E. Counsel's Experience

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *See In re Omnivision*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (internal quotation marks and citation omitted). The reasons for this presumption is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]" *See Rodriguez*, 563 F.3d at 967 (internal quotation marks and citation omitted). Here, Class Counsel have demonstrated their experience in litigating similar consumer class actions. They have also demonstrated that they are well informed of the facts, claims, and defenses in this action. Accordingly, Class Counsel's endorsement weighs in favor of approving the settlement. *See, e.g., In re Omnivision,* 559 F. Supp. 2d at 1043.

### F. Government Participant and Reaction of the Class

Here, no government participant is involved, so the Court does not weigh this factor. Similarly, because the Court has decided that notice was not necessary, the reaction of the class is not considered in weighing the fairness factors. *See Lilly*, 2015 WL 2062858, at *4.

## VII. CONCLUSION

As all relevant factors weigh in favor of settlement, and the 90-day period set forth in 28 U.S.C. § 1715(d) has elapsed absent any objections, the Court hereby **GRANTS** final approval of the class action settlement for injunctive relief, and enters the injunction agreed to by the parties. Accordingly, the Court **ORDERS** as follows:

1. For the reasons set forth in its earlier orders, the Court confirms its certification of the Rule 23(b)(2) class.

2. Defendants shall begin compliance with § III(C) of the Agreement no later than 45 days after the settlement is deemed finally approved. (*See* Agreement at § III.)

3. Plaintiffs shall file their petition for fees and expenses no later than November 24, 2017, and shall include with the filing all of Plaintiffs' time and/or billing records.

4. Defendant shall file its response no later than December 22, 2017, or on a later date as specified by the Court.

5. Plaintiffs shall file their reply no later than January 5, 2018, or on a later date as specified by the Court.

6. To the extent required, the hearing on Plaintiffs' motion for fees and incentive awards shall be on January 30, 2018 at 2 p.m., or on a later date as specified by the Court.

7. The parties have reserved their rights to take discovery relating to the fee petition. In the event that there is any irreconcilable dispute regarding that discovery, the parties will follow the Court's rules governing discovery disputes.

8. The Court retains jurisdiction to oversee the implementation and enforcement of the Agreement.

This Order terminates Docket Number 127.

**IT IS SO ORDERED**.

Dated:  January 25, 2018 

Hon. Yvonne Gonzalez Rogers
United States District Court Judge

# EXHIBIT 1

DocuSign Envelope ID: 846EA615-260C-4332-9DDB-048E3CD5371B

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (the "Agreement") is entered into as of September 29, 2017 (the "Effective Date") between plaintiffs Jeanne and Nicolas Stathakos ("Plaintiffs"), individually and as class representatives of the Class defined in Section II below, and defendants Columbia Sportswear Company and Columbia Brands USA, LLC (f.k.a. Columbia Sportswear USA Corporation) (collectively, "Columbia"). Plaintiffs and Columbia are referred to jointly as the "Parties," and individually as "Party."

I.    RECITALS

A.    On October 2, 2015, Plaintiffs filed a complaint in the United States District Court for the Northern District of California titled *Stathakos v. Columbia Sportswear Company*, Case No. 4:15-cv-04543-YGR (the "Lawsuit"). On March 7, 2016, Plaintiffs filed a Third Amended Complaint in the Lawsuit (the "TAC"). The TAC alleges claims for violation of California's Unfair Competition Law, violation of California's False Advertising Law, and violation of California's Consumers Legal Remedies Act.

B.    On May 11, 2017, the Court issued an Order Granting in Part Motions to Strike Experts; Granting in Part Defendants' Motion for Summary Judgment; Granting in Part Plaintiffs' Motion for Class Certification, ECF Dkt. No. 101 (the "Order"). In the Order, the Court conditionally certified a Rule 23(b)(2) class and denied certification of a Rule 23(b)(3) class. Thereafter, on May 26, 2017, pursuant to a further order, ECF Dkt. No. 104, the Court finally certified the 23(b)(2) class only. The certified class was: "All consumers who have purchased an Outlet SMU Build at a Columbia Outlet store in the State of California since July 1, 2014 through the conclusion of this action."

C.      On August 14, 2017, the Parties attended a full-day mediation session before retired United States Magistrate Judge Edward Infante. Following the mediation, the Parties reached a tentative agreement, executed a Confidential Settlement Term Sheet, and now this Agreement memorializes the Parties' settlement. At all times, the settlement negotiations were adversarial, non-collusive, and conducted at arm's-length.

D.      This Settlement represents a compromise of disputed claims. Columbia denies any and all allegations of liability, fault, or wrongdoing asserted in the Lawsuit and denies that any claims alleged in the Lawsuit are suitable for class certification other than for purposes of this Agreement.

II.    SETTLEMENT CLASS DEFINITION

A.      For purposes of this Agreement, the Settlement Class is the one the Court certified in this Action ("Class," the members of which are referred to as the "Class Members"):

> All consumers who have purchased an Outlet SMU Build at a
> Columbia Outlet store in the State of California since July 1, 2014
> through the conclusion of this action.

B.      For purposes of this Agreement, Class Counsel is the counsel that the Court appointed to represent the Rule 23(b)(2) Class: Tycko & Zavareei LLP and Kopelowitz Ostrow Ferguson Weiselberg Gilbert ("Class Counsel").

C.      For purposes of this Agreement, the Class Representatives are the Plaintiffs, whom the Court appointed to represent the Rule 23(b)(2) Class.

III.    SETTLEMENT OF INJUNCTIVE CLASS

A.    Columbia agrees that it will not use its current price tag format for Outlet SMU Builds in its California Outlet Stores, except as permitted during the implementation period described below in Section III.C.

B.    To the extent Columbia uses a comparison price (*i.e.*, dual pricing) on the price tags for its Outlet SMU Builds (which is defined to include only those items that are sold exclusively at Columbia's outlets) in its outlet stores located in California, Columbia agrees for a period of three years following the Final Approval Date (as defined below in Section IV) as follows:

1.    Columbia may either:

(a)    Include a label on its price tags describing the comparison prices as one of the following: Comparable Value, Comp. Value, Comparable Item, Comp. Item, Comparable Style, or Comp. Style; or

(b)    If Columbia does not use one of the terms identified in Section III.B.1.(a), Columbia can include a label on its price tags describing the comparison prices with a different word or phrase, except that, in addition, Columbia must also post in-store signage explaining what Columbia means by whatever term it opts to use, including that the product to which the Outlet SMU Build is being compared to may not be identical to the Outlet SMU Build. Such use shall be based on Columbia's reasonable belief as to prices at which the compared to item has actually sold at other stores. The signage shall include language consistent with the language agreed to pursuant to Section III.D. below.

C.    Implementation Period. Columbia will comply with the above terms for Spring 2019 products being shipped to stores beginning in January 2019 and for all Outlet SMU Build

products within the stores by the later of July of 2019 or the date when Fall 2019 products begin shipping to stores.

        D.    <u>Signage During Implementation</u>.  Until Columbia's compliance with the above terms is completed as set forth in Section III.C., Columbia will place a legible sign under the plexiglass at each cashwrap in its California outlet stores such that it can reasonably be viewed by an average consumer utilizing the cash register.  If the plexiglass placement is not feasible at any location, Columbia may substitute the same signage in a standing placard.  Once Columbia is in compliance with the above terms, Columbia will have no further obligation to present this signage.  The signage shall state: "The higher price on our price tags refers to either the price the same Columbia product was offered at by Columbia in its own stores, its own online properties, or at third party retailers, or the price at which a similar but not identical product was offered in any of those channels."

## IV.    <u>APPROVAL PROCEDURES, CLASS NOTICE, AND COLUMBIA'S RIGHT TO WITHDRAW</u>

        A.    Preliminary and final Court approvals of this Agreement are contemplated by the Parties and are express conditions precedent to this Agreement.  If such approvals are not given, this Agreement shall be null and void.  Because this Agreement settles an injunctive-only, Rule 23(b)(2) class as above defined, and class members are not entitled to opt-out of such a settlement, the Parties agree that no notice to the class is required, and therefore the Court can preliminarily and finally approve the Agreement at the same time.  Accordingly, as soon as practicable after the signing of this Agreement, the Plaintiffs shall file an application asking the court to preliminarily and finally approve this Agreement as fair, reasonable, and adequate.  The date on which the Court finally approves this Agreement shall be referred to as the "Final Approval Date."

B.     To the extent the Court requires that notice be provided to the Class for approval to be ordered, the Parties and their respective counsel will cooperate with each other and do all things reasonably necessary to effectuate that notice. Columbia will bear the costs of providing any court-required notice. However, to the extent that the Court-required notice is anticipated to cost more than $30,000, Columbia has the right to withdraw from and terminate this Agreement. If Columbia withdraws from and terminates this Agreement, then the Agreement will be rescinded and will be without further legal effect.

C.     Whether Notice is ordered or not, in no event shall Plaintiffs or Class Counsel be entitled to receive or review any identifying or contact information for Class Members.

D.     The Parties and their respective counsel will cooperate with each other and do all things reasonably necessary to obtain final approval of the Agreement, protect and support the Agreement if an appeal is taken or any other form of judicial review is sought, and otherwise ensure that this Agreement is finally approved by the Court, subject to Section IV.B.

E.     In the event the Agreement does not receive final approval (including in the event that Columbia withdraws from and terminates the Agreement as set forth in Section IV.B.), or a final approval order is reversed on an appeal by an objector, then this Agreement and any preceding Settlement Term Sheet shall be of no force or effect and, in such event, the Parties agree that the Agreement and any preceding Settlement Term Sheet, and any and all negotiations, documents and discussions associated with them, shall be without prejudice to the rights of any Party, and shall not be deemed or construed to be an admission or evidence of any violation of any statute, law or regulation or of any liability or wrongdoing by Columbia or of the truth of any of the claims or allegations made by Plaintiffs in the Lawsuit. All Parties expressly reserve all of their rights if the Agreement is not finally approved, including but not limited to the right to oppose class

certification or to seek to decertify the class. If the Agreement does not receive final and non-appealable Court approval, Columbia shall not be obligated to make any payments or provide any other monetary or non-monetary relief to Plaintiffs or the Settlement Class members, any attorneys' fees or expenses to Class Counsel, or any service award ("Service Award") to the Plaintiff.

V.     RELEASE OF CLAIMS

A.     Provided that this Agreement is finally approved by the Court, Plaintiffs, on behalf of themselves and their heirs, representatives, successors, assigns, trusts, executors, and attorneys, hereby release and discharge Columbia, and each of Columbia's respective past and present officers, directors, employees, shareholders, members, partners, agents, representatives, predecessors, successors, parents, subsidiaries, affiliates, assigns, insurance companies, and attorneys, from any and all liabilities, claims, causes of action, damages (whether actual, compensatory, statutory, punitive or of any other type), penalties, losses, or demands, whether known or unknown, existing or suspected or unsuspected, that Plaintiffs have or might have against them as of the date of this Agreement. Nothing in this release affects Plaintiffs' rights under this Agreement to file an application for attorneys' fees and costs and for a Service Award, as set forth below in Section VII.

B.     Provided that this Agreement is finally approved by the Court, the Class Members other than Plaintiffs (the "Releasing Parties"), on behalf of themselves, and each of their respective heirs, representatives, successors, assigns, trusts, executors, and attorneys, hereby release and discharge Columbia, and each of Columbia's respective past and present officers, directors, employees, shareholders, members, partners, agents, representatives, predecessors, successors, parents, subsidiaries, affiliates, assigns, insurance companies, and attorneys, from any and all claims for injunctive relief, other similar equitable relief or any relief available under Rule 23(b)(2),

whether known or unknown, existing or suspected or unsuspected, that were or reasonably could have been asserted based on the factual allegations in this Lawsuit (collectively, the "Released Claims") that occurred during the Class Period. Releasing Parties specifically preserve and do not release their monetary claims.

C.      Plaintiffs knowingly and voluntarily waive the protections of Civil Code section 1542, and each Releasing Party is deemed to waive the protections of Section 1542 to the extent that Section 1542 applies to the release given by the Releasing Party. Section 1542 provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

## VI.   ACKNOWLEDGMENT AND STATEMENT OF PRESENT INTENT

Columbia represents that it would not enter into this Agreement without assurances that Class Counsel and each of Plaintiffs' counsel of record herein have no current intention to resume litigation over the same or similar issues. Class Counsel and Plaintiffs' counsel of record herein represent and warrant that they do not currently intend to bring any further claims against Columbia or any of the released parties based on the allegations in the Lawsuit, and they, along with Plaintiffs, are aware of no persons who have a currently expressed intent to assert or file claims against Columbia or any of the released parties related to the allegations in the Lawsuit. Further, Class Counsel, Plaintiffs' counsel of record herein, and Plaintiffs do not currently intend to solicit or actively seek clients, or advertise availability for representation of any person or entity, seeking relief against Columbia or any of the released parties with respect to the allegations in the Lawsuit.

VII.   PROCEDURE FOR ATTORNEYS' FEES AND SERVICE AWARD

     A.   After final approval of the Agreement, Plaintiffs may file a petition for attorneys' fees and expenses with the Court.  Columbia will not contest Plaintiffs' entitlement to some attorneys' fees and expenses, but Columbia may oppose the amount of fees and expenses that Plaintiffs may seek.  Plaintiff will not seek to recover fees and expenses incurred in connection with their Motion for Partial Summary Judgment filed on August 21, 2017.  The Parties retain full rights to any discovery they might be entitled to under the Local Rules of this Court and the Federal Rules of Civil Procedure in connection with such petition for attorneys' fees and expenses or any opposition thereto, and further retain full right to any evidentiary submissions in connection with the same.  The Parties also reserve all rights to appeal the Court's decision on Plaintiffs' anticipated petition for attorneys' fees and expenses.

     B.   Plaintiffs may also file a petition for a Service Award.  Columbia will not contest Plaintiffs' entitlement to some Service Award, but Columbia may oppose the amount of the Service Award Plaintiffs seek. The Parties reserve the right to appeal the Court's decision on Plaintiffs' petition for a Service Award.

     C.   With respect to each of the foregoing, the Parties will work with the Court to determine an appropriate briefing schedule on Plaintiffs' anticipated petitions.  In no event, however, shall Columbia's opposition to any such petition be due less than 60 days after submission of Plaintiffs' petition.

VIII.   EXTENSIONS OF TIME

     Unless otherwise ordered by the Court, the Parties may jointly agree in writing to reasonable extensions of time to carry out any provisions of this Agreement.

DocuSign Envelope ID: 846EA615-260C-4332-9DDB-048E3CD5371B

IX.    <u>MISCELLANEOUS</u>

     A.     Nothing in this Agreement constitutes an admission by any Party as to the validity of any claim or defense asserted in the Lawsuit or as to the propriety of class certification of any claims raised in the Lawsuit other than for purposes of this Agreement.

     B.     This Agreement may be modified only by a writing signed by the Parties.

     C.     This Agreement, including any exhibits, constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter of this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party, except as specifically set forth in this Agreement. All prior discussion and negotiations have been and are merged and integrated into, and are superseded by, this Agreement. This Agreement and exhibits will be construed each as a whole, and with reference to one another, according to their fair meaning and intent. The Parties agree that the rule of construction that ambiguities in agreements must be construed against the drafting party will not apply in interpreting this Agreement.

     D.     The Parties have each received independent legal advice from attorneys of their choice with respect to the advisability of making the settlement and release provided in this Agreement, and with respect to the advisability of executing this Agreement, and prior to the execution of this Agreement by each Party, that Party's attorney reviewed this Agreement at length, made negotiated changes, and signed this Agreement to indicate that the attorney approved this Agreement as to form and substance.

     E.     Except as expressly stated in this Agreement, no Party has made any statement or representation to any other Party regarding any fact relied upon by any other Party in entering into this Agreement, and each Party specifically does not rely upon any statement, representation, or

promise of any other Party in executing this Agreement, or in making the settlement provided for in this Agreement, except as expressly stated in this Agreement. There have been no other agreements or understandings between the Parties to this Agreement, or any of them, relating to the disputes referred to in this Agreement, except as expressly stated in this Agreement.

F.    Each individual signing this Agreement warrants that he or she has the authority to sign the Agreement on behalf of the Party for which he or she signs. Columbia warrants that it has obtained all necessary authorizations under its organizational documents and under the law to make this Agreement binding on it.

G.    Plaintiffs represent and warrant that they are the sole and lawful owner of all right, title and interest in and to every claim and other matter which they purport to release through this Agreement, and they have not heretofore assigned or transferred, or purported to assign or transfer to any person or entity any claim or other matters released in this Agreement.

H.    This Agreement shall bind and inure to the benefit of the respective successors, assigns, legatees, heirs, and personal representatives of each of the Parties.

I.    The Parties agree that this Agreement, and any and all disputes that arise from or in any way relate to this Agreement, will be governed by California law.

J.    This Agreement may be executed in counterparts.

K.    Each of the Parties shall execute and deliver any and all additional papers, documents and other assurances and shall do any and all acts or things reasonably necessary in connection with the performance of the Party's obligations under this Agreement to carry out the express intent of the Parties to the Agreement.

L.    Except as otherwise specifically provided for herein, each Party will bear its own attorneys' fees, costs and expenses.

DocuSign Envelope ID: 846EA615-260C-4332-9DDB-048E3CD5371B

M.   The United States District Court for the Northern District of California will retain continuing jurisdiction to interpret and enforce this Agreement.

IN WITNESS WHEREOF, the Parties accept and agree to this Agreement and hereby execute it voluntarily and with a full understanding of its consequences.

Dated: _9/29/2017_____, 2017

DocuSigned by:

_____
A337B7C73ED443B
JEANNE STATHAKOS

Dated: _9/29/2017_____, 2017

DocuSigned by:

_____
2DE2B21D09C540A
NICOLAS STATHAKOS

Dated: _9/29|_____, 2017

COLUMBIA SPORTSWEAR COMPANY and
COLUMBIA BRANDS USA, LLC

_____
By: Lindsey Kantauer

APPROVED AS TO FORM:

Dated: _9/29_____, 2017

TYCKO & ZAVAREEI LLP

_____
HASSAN ZAVAREEI
Attorneys for Plaintiffs

Dated: _9/29_____, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON
LLP

_____
CRAIG CARDON
Attorneys for Defendants