**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JEANNE STATHAKOS, ET AL.,** Plaintiffs, vs. **COLUMBIA SPORTSWEAR COMPANY, ET AL.,** Defendants. | CASE NO. 15-cv-04543-YGR **ORDER RE: PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND SERVICE AWARDS** Re: Dkt. Nos. 129, 136 |

Plaintiffs Jeanne Stathakos and Nicolas Stathakos brought this class action against defendants Columbia Sportswear Company and Columbia Sportswear USA Corporation (collectively, "Columbia") for alleged use of deceptive and misleading labeling and marketing of merchandise in its company-owned Columbia outlet stores. Plaintiffs brought five causes of action: three under each prong of the Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL") for (i) unlawful, (ii) unfair, and (iii) fraudulent business practices; the fourth for violation of the False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*, (the "FAL"); and the fifth for violation of the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

In an order dated May 11, 2017, this Court granted plaintiffs' motion for certification of a Rule 23(b)(2) injunctive relief class but denied plaintiffs' motion with regard to a Rule 23(b)(3) damages class. (Dkt. No. 101.) The Court further granted defendants' motion for summary judgment with regard to plaintiffs' proposed models for monetary relief, but denied defendants' summary judgment motion in all other respects. (*Id.*)

On October 6, 2017, plaintiffs filed an unopposed motion for approval of a settlement agreement (the "Settlement Agreement") whereby Columbia agreed to stop using its "current price tag format." (Dkt. No. 127 (quoting Declaration of Hassan A. Zavareei ("Zavareei Decl."), Ex. A,

Class Action Settlement Agreement § III.A).) Further, "[t]o the extent Columbia uses a comparison price (*i.e.,* dual pricing) on the price tags for its Outlet [items] . . . in its outlet stores located in California, Columbia agree[d] for a period of three years following the Final Approval Date" to (i) refrain from using certain terms to describe the Outlet items or (ii) "post in-store signage explaining what Columbia means by whatever term it opts to use, including that the product to which the Outlet [item] is being compared to may not be identical to the Outlet [item]." (*Id*. at § III.B).) In addition the Settlement Agreement provided that:

> Until Columbia's compliance with the Settlement Agreement is completed . . . Columbia will place a legible sign under the plexiglass at each cashwrap in its California outlet stores such that it can be reasonably be viewed by an average consumer . . . . The signage shall state: "The higher price on our price tags refers to either the price the same Columbia product was offered by Columbia in its own stores, its own online properties, or at third party retailers, or the price at which a similar but not identical product was offered in any of those channels."

(*Id.* at § III.D.) Finally, with respect to the "procedure for attorneys' fees and service award" the Settlement Agreement provides that "Plaintiffs may file a petition for attorneys' fees and expenses with the Court. Columbia will not contest Plaintiffs' entitlement to some attorneys' fees and expenses, but Columbia may oppose the amount of fees and expenses that Plaintiffs may seek." (*Id*. at § VII.A.) The Court granted the unopposed motion for settlement approval on January 25, 2018. (Dkt. No. 139.)

Now before the Court is plaintiffs' motion for attorneys' fees, costs, and service awards. (Dkt. No. 129.)[1] Plaintiffs request $1,261,627.85 in attorneys' fees; $135,517.61 in expenses; and service awards in the amount of $5,000 each for Jeanne Stathakos and Nicolas Stathakos. (Dkt. No. 137, Reply at 2.) Defendants counter that "plaintiffs should be awarded fees and costs in an amount not to exceed $250,000" because plaintiffs' counsel (i) "obtained only minimal relief"; (ii)

---

[1] Plaintiffs have also filed an administrative motion to seal (i) an agreement between defense counsel and a litigation consulting firm; (ii) an agreement between defense counsel and a legal audit services firm; and (iii) documents which contain plaintiffs' counsel's credit card and checking account information. (Dkt. No. 136.) The Court finds the request is sufficiently justified under the applicable "good cause" standard. Accordingly, the Court **GRANTS** the motion to seal the designated excerpts and documents in question solely for purposes of resolving the instant motion. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006).

2

"spent substantial time pursuing an unsuccessful damages class after refusing to settlement on an injunction only basis in January 2017" and seeks (iii) fees which are unreasonable or non-compensable" as well as (iv) an "unreasonable" hourly rate. (Dkt. No. 130, Opposition.)[2]

Having carefully considered the fully-briefed motion and the prior filings in this matter, and for the reasons set forth below, the Court **ORDERS** as follows:

1. Plaintiffs' request for attorneys' fees in the amount of $1,261,627.85 is **DENIED**. The Court **AWARDS** plaintiffs attorneys' fees in the amount of $683,411.79.
2. Plaintiffs' request for $135,517.61 in expenses is **GRANTED**.
3. Plaintiffs' request for service awards in the amount of $5,000 each for Jeanne Stathakos and Nicolas Stathakos is **GRANTED** as unopposed.

## I. RELEVANT BACKGROUND

### A. ATTORNEYS' FEES

Plaintiffs proffer evidence of the work performed by plaintiffs' counsel in this matter including "an investigation relating to the use of illusory reference prices and the effects of those prices on consumers[;]" interviewing class representatives; drafting a complaint; drafting and serving initial disclosures; opposing Columbia's motion to dismiss; propounding and responding to discovery; submitting three expert reports; taking two depositions; defending three depositions; briefing and arguing a motion for class certification; opposing Colombia's motion for summary judgment and *Daubert* motions to exclude plaintiffs' experts; engaging in settlement discussions; and reaching a Settlement Agreement with Colombia. (*See* Zavareei Decl. ¶¶ 4–36; Dkt. No. 129, Declaration of Jeff M. Ostow ("Ostow Decl.") ¶¶ 4–27.) According to plaintiffs, "Class Counsel collectively worked 3,155.56 hours on this case for a total lodestar, at current billing rates, of $1,860,789.66." (Motion at 1 (citing Zavareei Decl. ¶¶ 54-55; Ostrow Decl. ¶¶ 36-37).) Plaintiffs' counsel "does not seek their full lodestar" and proposes to exclude "time entries related to monetary relief, travel time, as well as time spent by lawyers at hearings, depositions and mediations where other lawyers took the lead." (Zavereei Decl. ¶¶ 43-47, Exs. B, C; Ostrow Decl.

---

[2] "Columbia does not oppose Plaintiffs' request for a service award of $5,000 each." (*Id.* at 1 fn.1.)

3

¶¶ 34-37, Ex. A.) Plaintiffs' proposed deductions reduce the lodestar by $599,161.81, or from $1,860,789.66 to $1,261,627.85. (*See id*.)

### B. COSTS AND EXPENSES

Plaintiffs also offer evidence that counsel incurred costs and expenses in the aggregate amount of $244,607.35 in prosecuting this litigation. (Zavareei Decl. ¶ 55.) Plaintiffs' counsel agrees that it is not entitled to recover certain of these costs which counsel has deducted from its request. (*Id*. ¶ 52, Ex. C; Ostrow Decl. Ex. B.) For example, $91,535.14 in costs related to plaintiffs' damages expert, namely Art Olsen, were deducted from plaintiffs' request. (*Id.*; Ostrow Decl. ¶ 42.) Plaintiffs' proposed deductions reduce its request for costs and expenses by $109,089.74, from $244,607.35 to $135,517.61. (*See id.* ¶ 55.)

## II. LEGAL STANDARD

The lodestar figure is a presumptively reasonable amount of attorneys' fees. *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 554 (2010). While such a presumption is strong, it "may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee" *Id.* at 554. Thus, the Supreme Court has held that:

> the product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief.

*Hensley v. Eckerhart,* 461 U.S. 424, 434, (1983). Faced with these circumstances, a district court should consider reducing the lodestar when the claims on which plaintiff did not prevail were unrelated to those on which he succeeded, or when plaintiffs' success on any interrelated unsuccessful and successful claims was limited. *Gates v. Deukmejian,* 987 F.2d 1392, 1404 (9th Cir. 1992) (citing *Hensley,* 461 U.S. at 434–35); *see also Thorne v. City of El Segundo,* 802 F.2d 1131, 1141 (9th Cir. 1986).

//

//

4

## III. DISCUSSION

### A. ATTORNEYS' FEES

As an initial matter, the Court finds that plaintiffs' proposal to remove "time entries related to monetary relief, travel time, as well as time spent by lawyers at hearings, depositions and mediations where other lawyers took the lead" an appropriate starting point for calculating plaintiffs' lodestar in this case. Defendants oppose plaintiffs' proposal as insufficient and counter that "plaintiffs should be awarded fees and costs in an amount not to exceed $250,000" on four grounds, namely that plaintiffs' counsel (i) "obtained only minimal relief"; (ii) "spent substantial time pursuing an unsuccessful damages class after refusing to settlement on an injunction only basis in January 2017"; and seeks (iii) fees which are "unreasonable or non-compensable" as well as (iv) an "unreasonable" hourly rate. (*See* Opposition at 1, 3, 8, 13 and 19.) The Court addresses each argument.

#### 1. Relief Obtained by Plaintiffs' Counsel

Defendants argue that plaintiffs' attorneys' fees should be reduced due to plaintiffs' lack of success on their motion to certify a damages class. According to plaintiffs' third amended complaint (the "TAC"), plaintiffs sought "restitution" for "all members of the Class" as well as "actual and punitive damages." (Dkt. No. 35, TAC, Prayer for Relief.) Plaintiffs alleged that "the aggregate claims of the members of the putative Class exceed[ed] $5 million." (*Id*. ¶ 22.) As noted plaintiffs' counsel failed to obtain monetary relief for the class.

Plaintiffs argue against further reductions based on the novelty of the questions involved in the litigation, the contingency risks counsel accepted in representing plaintiffs, and, perhaps most importantly, the injunctive relief which plaintiffs obtained in this case. Specifically, with regard to the injunctive relief, as noted above Columbia agreed to stop using its "current price tag format" and either (i) refrain from using certain terms to describe Outlet items or (ii) "post in-store signage explaining what Columbia means by whatever term it opts to use, including that the product to which the Outlet [item] is being compared to may not be identical to the Outlet [item]." (*See* Class Action Settlement Agreement §§ III.A–D.) Further, Columbia agreed to "place a legible

sign under the plexiglass at each cashwrap in its California outlet stores" which contains additional disclosures. (*Id.* at § III.D.)

The Court finds that the plaintiffs' counsel obtained meaningful relief for the class. Specifically, the Settlement Agreement requires Columbia to change is labeling and marketing practices across outlet stores in California to clarify to consumers that the reference price on Outlet item tags may not refer to the same product offered "by Columbia in its own stores, its own online properties, or at third party retailers." (*See id.* at §§ III.A–D.) However, plaintiffs' success was limited in that plaintiffs did not (i) persuade this Court to certify a damages class or (ii) obtain monetary relief for the class. *See Henderson v. J.M. Smucker Co.*, 2014 WL 2723876, at *7 (C.D. Cal. 2014) (reducing attorneys' fee request of $3.25 million to $72,297.90 where no monetary relief was obtained for the class); *see also In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 949 (9th Cir. 2011) (remanding district court's approval of an $800,000 attorneys' fee award in settlement where no monetary relief was obtained for the class). Further, the factors plaintiffs claim warrant an upward adjustment are either subsumed in the lodestar calculation already, or are lacking in evidentiary support. Nevertheless, defendants concede that plaintiffs' lawsuit resulted in a change to Columbia's labeling and marketing practices across outlet stores in California and hundreds of items. (Opposition at 11.) Taking the foregoing into account, the Court finds that a 35% reduction in the lodestar is appropriate. Hence, a 35 percent reduction— significant while still recognizing that plaintiffs prevailed, in part—seems to the Court to be the fairest way of addressing the scope of relief obtained by plaintiffs' counsel. This brings the award to $820,058.10.

### 2. Fees Incurred After January 2017

Next, defendants assert that the lodestar should be reduced because plaintiffs "could have settled on an injunction only basis in January 2017, but chose to withdraw from settlement talks so that they could continue to pursue a damages class." (Opposition at 8.) Defendants proffer unrebutted expert testimony that plaintiffs incurred $600,511.26 in attorneys' fees[3] between

---

[3] This figure is reduced to $390,322.32 in light of the Court's prior reduction in § III.A.1, *supra*.

January 10, 2017 and mid-July 2017.[4] (Dkt. No. 130, Declaration of Andre Jardini ("Jardini Decl.") ¶ 45.) As an initial matter, the Court notes that the Ninth Circuit has stated that a district court need not consider settlement negotiations in determining a fee award and may "give those amounts as much or as little weight as it sees fit." *A.D. v. Cal. Highway Patrol*, 712. F.3d 446, 460-61 (9th Cir. 2013).

Here, the record does not support a finding that plaintiffs withdrew from settlement discussions solely to pursue a damages class. Rather, the record reflects a lack of agreement between the parties on material settlement terms such as the (i) duration of the injunction, (ii) restrictions on Columbia's use of the term "Compare At[,]" and (iii) requirement that Colombia include a legible sign under the plexiglass in its California outlet stores. (Dkt. No. 137, Declaration of Kristin L. Sagafi ("Sagafi Decl."), Ex. B.) These terms, which defense counsel characterized during negotiations as "unacceptable" to Columbia, were ultimately included in the Settlement Agreement and provided a material benefit to the class. (*See* Class Action Settlement §§ III.A–D.)

On the other hand, defendants proffer emails which indicate that on January 10, 2017, plaintiffs withdrew a settlement proposal and stated that plaintiffs were "no longer interested in resolving the case on a [Rule 23](b)(2)-only basis in advance of class certification. If Columbia is interested in a [Rule 23](b)(3) settlement, we would be happy to discuss that option. Otherwise, we can revisit the settlement after the Court rules on class cert and summary judgment." (Dkt. No. 130, Declaration of Craig P. Cardon ("Cardon Decl."), Ex. B at 1.) The Court thus finds that plaintiffs' withdrawal from settlement discussions was at least partly driven by a desire to pursue a damages class which was ultimately unsuccessful.

Taking the foregoing into account, and the Court's prior reduction from § III.A.I, *supra*, the Court finds that a further 35% reduction in the $390,322.32 for costs incurred between January

---

[4] The mid-July 2017 cutoff represents a date approximately one month before the parties proceeded to mediation before retired Magistrate Judge Edward Infante on August 14, 2017. Defendants concede that some "time for preparation for and attendance at the mediation" is compensable. (*Id*. ¶ 45.)

1  10, 2017 and mid-July 2017 is appropriate. A 35% reduction of the $390,322.32 in costs incurred during this time period —significant while still recognizing that the Settlement Agreement provided for injunctive relief which was broader and provided greater benefits to the class than the relief proposed by defendants in January 2017 —seems to the Court to be the fairest way of addressing the fact that plaintiffs' withdrawal from settlement discussions appears to reflect, at least in part, a desire to pursue a damages class which was ultimately unsuccessful. This brings the award to $683,411.79.

        3.         Reasonability and Compensability of Fees

Defendants also argue that the lodestar should be reduced because the number of hours requested is unreasonable. Defendants rely primarily on defense counsel's assertion that plaintiffs request is "2.25 times" the number of hours which defense counsel spent on this case. (Opposition at 1, 16.) As an initial latter, defendants' argument does not persuade because it lacks evidentiary support. Specifically, defendants failed to produce the underlying billing records of defense counsel, namely Sheppard, Mullin, Richter & Hampton LLP.[5] Further, and in any event, the Ninth Circuit has recognized that comparing the numbers of hours spent by opposing parties may not be an appropriate metric for assessing the reasonableness of hours billed. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001). In *Ferland*, the Court highlighted that "opposing parties do not always have the same responsibilities under the applicable rules, nor are they necessarily similarly situated with respect to their access to necessary facts, the need to do original legal research to make out their case, and so on." *Id*. The *Ferland* Court went on to state that a "[c]omparison of the hours spent in particular tasks by the attorney seeking fees and by the attorney for the opposing party, therefore, does not necessarily indicate whether the hours expended by the party seeking fees were excessive." *Id*.; *see also Deocampo v. Potts*, 2014 WL 788429, at *2-4 (E.D. Cal. 2014) ("While defendants frequently compare the number of hours that their attorneys spent on a task to the number of hours that plaintiffs' attorneys spent on a task,

---

[5] Accordingly, plaintiffs' objection to paragraph 7 of the declaration of Craig P. Cardon (Cardon Decl. ¶ 7) and paragraphs 42 and 43 of the declaration of Andre Jardini (Jardini Decl. ¶¶ 42–43) pursuant to Fed. R. Evid. 802 are **SUSTAINED** and the foregoing paragraphs are hereby **STRICKEN**.

8

these comparisons do not support the conclusion that plaintiffs' counsel billed an excessive number of hours."). Here, plaintiffs' counsel was responsible for investigating and substantiating plaintiffs' factual allegations and bore the burden of establishing the existence of a class. Accordingly, defendants' argument that the lodestar is unreasonable because plaintiffs request "2.25 times" the number of hours which defense counsel spent on this case does not persuade for this additional reason.

Defendants' expert, namely Andre Jardini, claims to have conducted a line-by-line review of plaintiffs' lodestar and avers that the hours contained therein are unreasonable. First, according to Mr. Jardini, plaintiffs' lodestar reflects that plaintiffs spent 180 hours on their motion for class certification, 356 hours preparing their omnibus reply in support of class certification and opposition to Columbia's motion for summary judgment, and 120 hours preparing for the hearing and oral argument on the same.[6] (Jardini Decl. ¶¶ 53–54.) Defendants do not persuade, as Mr. Jardini fails to explain how he calculated these figures or why his figurers are at least 75% greater

---

[6] Mr. Jardini goes on to opine that the class certification motion should have taken "at most 30 hours[,]" the omnibus reply in support of class certification and opposition to Columbia's motion for summary judgment "no more than 60 hours[,]" and "six hours of attorney time" would have been sufficient to prepare for the hearing and oral argument on the same. (*Id*.) He offers similar opinions regarding the appropriate amount of time spent on discovery responses, plaintiffs' opposition to defendants' motion to dismiss the TAC, trial plan, conferencing time, time spent by out-of-state attorneys, settlement negotiations, overhead, and plaintiffs' motion for fees and costs. (*Id.* ¶¶ 42–44, 45, 52–57, 62–64, 78–80, and Outline of Services Performed.) However, Mr. Jardini fails to offer any factual support for or articulate the principles or methods used to derive his opinions regarding the "reasonable" amount of time spent on these projects. Accordingly, plaintiffs' motion to strike paragraphs 42–44, 52–57, 62–64, 78–80, and the Outline of Services Performed of Mr. Jardini's declaration pursuant to Fed. R. Evid. 702(b)–(d) is **GRANTED** and these paragraphs are hereby **STRICKEN**. *See Lira v. Cate*, 2010 WL 727979, at *7 (N.D. Cal. 2010) (finding that defendants had not met their burden of showing that counsel's time should be reduced and rejecting Mr. Jardini's claim that counsel spent too much time on briefing projects that were "major in scope and potentially dispositive").

Further, the Court **GRANTS** plaintiffs' motion to strike paragraphs 17-20, 35, 37, 40, 45, 48-50, 62-64, 67-68, 71-74 of Mr. Jardini's declaration on the ground that these paragraphs contain improper legal opinions which either interpret or merely quote case law, the American Bar Associate Code of Professional Responsibility, the State Bar of California Professional Code, and the U.S. Attorney Offices' Attorney Fee Matrix. Expert testimony on such legal issues will not "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. Opinions on legal issues are properly the subject of attorney argument, not expert testimony. Accordingly, paragraphs 17-20, 35, 37, 40, 45, 48-50, 62-64, 67-68, 71-74 of Mr. Jardini's declaration are hereby **STRICKEN**.

than approximately the 200 hours which plaintiffs and this Court calculates for these projects.[7] (*See* Zvareei Decl. ¶¶ 14–15, Exs. 5, 6.)

Second, Mr. Jardini challenges plaintiffs' 352 hours spent on "conferencing." Plaintiffs counter that "[t]here is nothing inherently wrong with conferencing with co-counsel in a case; in fact, conferences between attorneys to discuss strategy and prepare for oral argument are an essential part of effective litigation." *Lauderdale v. City of Long Beach*, 2010 WL 11570514, at *9 (C.D. Cal. 2010); *see also McKenzie v. Kennickell,* 645 F. Supp. 437, 450 (D.D.C. 1986); *Berberena v. Coler*, 753 F.2d 629, 632–33 (7th Cir. 1985) (finding compensable the hours attorneys "spent mostly in consultation, negotiation, and on the telephone"). *Lira* is instructive. There, Judge Illston rejected Mr. Jardini's opinions on conferencing because he had "not shown that any of the work performed was unnecessary," and because "considering the complexity of this case it seem[ed] reasonable that plaintiff's counsel would need to confer with each other, review and coordinate pleadings and discovery, and attend important meetings with [plaintiff] and hearings in this case." *Lira*, 2010 WL 727979, at *4. Here, defendants similarly fail to offer any argument or legal authority as to why 352 hours of conferencing constitutes an unreasonable figure.

Third, defendants assert that the Court should exclude hours billed for out-of-state attorneys not barred in California or admitted to practice *pro hac vice*. *See Birbrower, Montalbano, Condon & Frank v. Superior Court*, 17 Cal. 4th 119 (1998). Defendants do not persuade in light of the Ninth Circuit's Opinion in *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 822–23 (9th. Cir. 2009). There, the Court held that hours billed for out-of-state attorneys not barred in California or admitted to practice *pro hac vice* are recoverable "if the attorney at issue would have certainly been permitted to appear *pro hac vice* as a matter of course had he or she applied" or if the attorneys' work did not "rise to the level of 'appearing' before the

---

[7] Mr. Jardini also points out that attorney Kristin Sagafi billed 24.4 hours in a single day. (Jardini Decl. ¶ 58.) Plaintiffs offer the declaration of Kristin Sagafi which indicates that these hours were actually spent over a two-day period and incorrectly attributed to a single day due legal assistant error. (Sagafi Decl. ¶¶ 9-14.)

10

district court." *Id.* Here, plaintiffs proffer sufficient evidence including certifications of good standing to show that the out-of-state attorneys were either admitted *pro hac vice* or would have been permitted to appear *pro hac vice* had they applied. (Dkt. Nos. 137-5, Ex. 1 (Kyra Taylor); 137-6 (Katherine M. Aizpuru), 137-7 (Avi Kaufman), 137-8 (Jonathan Streisfeld).) [8]

4. Reasonability of Hourly Rate

Finally, defendants argue that plaintiffs' blended hourly rate of $584.30 is unreasonable based on the U.S. Attorneys' Offices' Fees Matrix. Defendants not persuade for two reasons. First, the U.S. Attorneys' Offices' Fees Matrix fails to control for locality and thus likely understates the prevailing hourly rate in this district. Second, several courts in this district have approved hourly rates equal to or greater than the rates at issue here in similar cases. (*See* Zavareei Decl. ¶¶ 26-34, Ex. 13 (chart reflecting similar rates approved in this district).)[9]

Accordingly, the Court **AWARDS** plaintiffs' counsel $683,411.79 in attorneys' fees.

**B. COSTS AND EXPENSES**

With regard to costs and expenses, the Court finds that plaintiffs' counsel has submitted sufficient documentation for each of the requested expenses. (Zavareei Decl. ¶ 42, Exs. 25-26; Dkt. No. 137, Declaration of Scott Edelsberg ("Edelsberg Decl."), Exs. 1-2.) The Court notes that counsel has reduced its request to account for minor errors in its original submission. (*Id.* ¶ 42,

---

[8] Defendants object to several declarations which plaintiffs submitted in their reply brief, namely the declarations (i) of Kristen Sagafi; (ii) Hassan Zavareei; (iii) Scott Edelsberg; as well as (iv) Kyra Taylor, Katherine M. Aizpuru, Avi Kaufman, and Jonathan Streisfeld (collectively, the "Out-Of-State-Attorney Declarations"). (Dkt. No. 138, Objections.) With regard Ms. Sagafi's declaration, defendants' objections are **OVERRULED** on the ground that Ms. Sagafi's declaration is based on her "personal knowledge" of settlement discussions in which she participated personally. *See* Fed. R. Evid. 602. With regard to Hassan Zavareei's reply declaration, defendants argue that paragraphs 4–10 contain impermissible speculation regarding defense counsel's billable hours and billing practices. (Dkt. No. 137, Reply Declaration of Hassan Zavareei.) The Court concurs and **STRIKES** paragraphs 4–10 of Mr. Zavareei's reply declaration. By contrast, defendants' objection to paragraphs 26–35 and Exhibits 13–21 and 26 of Mr. Zavareei's reply declaration is **OVERRULED** on the ground that these paragraphs and the exhibits referenced therein are proper rebuttal evidence which is responsive to arguments raised in defendants' opposition. The objections to Scott Edelsberg's declaration and to the Out-Of-State-Attorney Declarations are **OVERRULED** on the same ground.

[9] The Court notes that plaintiffs do not oppose Mr. Jardini's suggestion to reduce plaintiffs' fee request by $30,949.72 for overhead. (*See* Zavareei Decl. ¶ 22.) Further, plaintiffs do not oppose Jardini's reduction of $25,960.90 for purported errors in billing. (*Id.* at ¶ 23.) These reductions are reflected in the lodestar figures discussed above.

11

Exs. 25-26; Edelsberg Decl., Exs. 1-2.) Plaintiffs' request for $135,517.61 costs and expenses represents 65% of the expenses incurred by plaintiffs' counsel and excludes $91,535.14 in fees and costs related to plaintiffs' damages expert. (*Id.* ¶ 52; Ostrow Decl. ¶ 42.) Further, plaintiffs have excluded travel expenses incurred in connection with plaintiffs' damages model, including hotel accommodations, airfare, and travel meals. (*Id.*) Accordingly, the Court **AWARDS** plaintiffs' counsel $135,517.61 in expenses.

## IV. CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

1. Plaintiffs' request for attorneys' fees in the amount of $1,261,627.85 is **DENIED**. The Court **AWARDS** attorneys' fees in the amount of $683,411.79.
2. Plaintiffs' request for $135,517.61 in expenses is **GRANTED**.
3. Plaintiffs' request for service awards in the amount of $5,000 each for Jeanne Stathakos and Nicolas Stathakos is **GRANTED** as unopposed.

This terminates Dkt. Nos. 129 and 136.

**IT IS SO ORDERED.**

Dated: April 9, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**